No. 22–1280
No. 22–1376

# United States Court of Appeals
# for the Third Circuit

EPSILON ENERGY USA, INC.,

*Plaintiff–Appellant,*

v.

CHESAPEAKE APPALACHIA, LLC,

*Defendant–Appellee.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
Case No. 1:21–cv–658

## APPENDIX VOLUME I
**(Pages Appx0001 to Appx0064)**

Gregory J. Krock
MCGUIREWOODS LLP
Tower Two–Sixty
260 Forbes Ave., Suite 1800
Pittsburgh, PA 15222–3142
(412) 667–6042

Matthew A. Fitzgerald
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-4716

Elizabeth M. Thomas
MCGUIREWOODS LLP
201 North Tryon Street
Suite 3000
Charlotte, NC 28202-2146
(704) 373-8060

*Counsel for Appellant/Cross–Appellee*
*Epsilon Energy USA, Inc.*

# TABLE OF CONTENTS

Page

**Volume I**

Dkt. 121:
>    Memorandum (Entered: 09/22/2021) .................................................................Appx0001

Dkt. 122:
>    Order (Entered: 09/22/2021)...........................................................................Appx0028

Dkt. 133:
>    Memorandum (Entered: 01/18/2022) .................................................................Appx0029

Dkt. 134,:
>    Order (Entered: 01/18/2022)...........................................................................Appx0048

Dkt. 135:
>    Notice of Appeal in Non-Prisoner Case (Entered: 02/15/2022) .........................Appx0049

Docket Sheet (Case No. 1:21-cv-00658-JPW) ......................................................Appx0052

**Volume II**

Dkt. 104:
>    Amended Complaint (Entered: 07/02/2021).......................................................Appx0065
>       Dkt. 104-1: Exhibit 1 ...............................................................Appx0109
>       Dkt. 104-2: Exhibit 2 ...............................................................Appx0177
>       Dkt. 104-3: Exhibit 3 ...............................................................Appx0244
>       Dkt. 104-4: Exhibit 4 ...............................................................Appx0321
>       Dkt. 104-5: Exhibit 5 ...............................................................Appx0444
>       Dkt. 104-6: Exhibit 6 ...............................................................Appx0451
>       Dkt. 104-7: Exhibit 7 ...............................................................Appx0453
>       Dkt. 104-8: Exhibit 8 ...............................................................Appx0461
>       Dkt. 104-9: Exhibit 9 ...............................................................Appx0481
>       Dkt. 104-10: Exhibit 10 ...........................................................Appx0489
>       Dkt. 104-11: Exhibit 11 ...........................................................Appx0496
>       Dkt. 104-12: Exhibit 12 ...........................................................Appx0500
>       Dkt. 104-13: Exhibit 13 ...........................................................Appx0503
>       Dkt. 104-14: Exhibit 14 ...........................................................Appx0507
>       Dkt. 104-15: Exhibit 15 ...........................................................Appx0512
>       Dkt. 104-16: Exhibit 16 ...........................................................Appx0516
>       Dkt. 104-17: Exhibit 17 ...........................................................Appx0519

**Volume III**

Dkt. 104-18: Exhibit 18 ...........................................................Appx0572
Dkt. 104-19: Exhibit 19 ...........................................................Appx0575
Dkt. 104-20: Exhibit 20 ...........................................................Appx0581
Dkt. 104-21: Exhibit 21 ...........................................................Appx0590

Dkt. 23-1:
     Exhibit A to Brief in Support of Motion to Dismiss for Failure to Join
     Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0643

Dkt. 23-2:
     Exhibit B to Brief in Support of Motion to Dismiss for Failure to Join
     Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0751

Dkt. 23-3:
     Exhibit C to Brief in Support of Motion to Dismiss for Failure to Join
     Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0775

Dkt. 23-4:
     Exhibit D to Brief in Support of Motion to Dismiss for Failure to Join
     Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0788

Dkt. 23-5:
     Exhibit E to Brief in Support of Motion to Dismiss for Failure to Join
     Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0812

Dkt. 23-6:
     Exhibit F to Brief in Support of Motion to Dismiss for Failure to Join
     Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0835

Dkt. 32-1:
     Exhibit A to Reply Brief in Support of Motion to Dismiss for Failure to Join
     Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0852

Dkt. 32-3:
     Exhibit C to Reply Brief in Support of Motion to Dismiss for Failure to Join
     Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0882

Dkt. 109-2:
     Exhibit A to Motion to Dismiss for Failure to State a Claim ..............................Appx0952

Dkt. 109-3:
     Exhibit B to Motion to Dismiss for Failure to State a Claim..............................Appx0961

Dkt. 109-4:
     Exhibit C to Motion to Dismiss for Failure to State a Claim..............................Appx1015

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EPSILON ENERGY USA, INC., | : | Civil No. 1:21-CV-00658 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHESAPEAKE APPALACHIA, LLC, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is a diversity action that calls upon the court to interpret the language of several contracts between two oil and gas companies. The case is presently before the court on a motion to dismiss filed by Defendant Chesapeake Appalachia, LLC ("Chesapeake"). For the reasons that follow, the motion to dismiss is granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Epsilon Energy USA, Inc. is an Ohio corporation with its principal place of business in Texas. (Doc. 4, ¶ 1; Doc. 72, ¶ 1.) Chesapeake is an Oklahoma corporation with its principal place of business in that state. (Doc. 4, ¶ 4; Doc. 72, ¶ 4.) Beginning in 2009, Epsilon, Chesapeake, and several other oil and gas companies entered into several Joint Operating Agreements ("JOAs") for the purpose of developing natural gas at locations in Pennsylvania.[1]

---

[1] The four JOAs relevant to this case are the Baltzley North JOA, dated October 18, 2010, the Baltzley South JOA, dated October 18, 2010, the Craige JOA, dated December 16, 2010, and the Poulsen JOA, which was a draft model JOA that was subsequently incorporated into the Farmout

1

Chesapeake is designated as the operator under the JOAs, which accordingly requires Chesapeake to "conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of [the JOAs]". (JOAs, Art. V.A.) Chesapeake may be permanently removed as operator under a JOA for good cause upon the affirmative vote of the other parties to the JOA that own a majority interest of the property that is subject to the JOA. (JOAs, Art. V.B.1.) In order for such a vote to be effective, a written notice must be provided to Chesapeake detailing its alleged defaults as operator. (*Id.*) Chesapeake then has thirty days in which to cure such defaults. (*Id.*)

Although Chesapeake is the operator, the JOAs provide that any party to the JOAs may propose the drilling of a new well or propose a project to rework, sidetrack, deepen, recomplete, or plug back a well. (*Id.* Art. VI.1.) A party proposing such work is required to provide the other JOA parties that "have not otherwise relinquished their interest in [the] objective Zone" of the proposal with written notice of the proposal "specifying the work to be performed, the location,

---

Agreement between Epsilon and Chesapeake. The court may consider the language of the JOAs in resolving the instant motion to dismiss because they are attached as exhibits to Epsilon's amended complaint and are explicitly relied upon in the amended complaint. (*See* Doc. 96 and attached exhibits.) Because the parties agree that the relevant provisions of the JOAs are legally indistinguishable from one another, *see* Transcript of Preliminary Injunction Hearing, May 11, 2021, pp. 90–91, the court will cite the four JOAs collectively as "JOAs" throughout the remainder of this opinion.

2

proposed depth, objective Zone, and the estimated cost of the operation." (*Id.*) The other parties receiving notice have thirty days after receipt of the notice "within which to notify the party proposing to do the work whether they elect to participate in the cost of the proposed operation." (*Id.*)

The JOAs require different procedures for projects that have received the unanimous consent of the JOA parties and projects that have not received unanimous consent. When a project has received unanimous consent:

> the parties shall be contractually committed to participate therein provided such operations are commenced within the period hereafter set forth, and Operator shall, no later than ninety (90) days after expiration of the notice period of thirty (30) days (or as promptly as practicable after the expiration of the forty-eight (48) hour period when a drilling rig is on location, as the case may be), actually commence the proposed operation and thereafter complete it with due diligence at the risk and expense of the parties participating therein; provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties, for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examination or curative matter required for title approval or acceptance. If the actual operation has not been commenced within the time provided (including any extension thereof specifically permitted herein or in the force majeure provisions of Article XI) and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accordance herewith as if no prior proposal had been made.

(*Id.* Art. VI.1.) When, on the other hand, a proposal receives less than unanimous support:

3

the party or parties giving the notice and such other parties as shall elect
to participate in the operation shall, no later than ninety (90) days after
the expiration of the notice period of thirty (30) days (or as promptly as
practicable after the expiration of the forty-eight (48) hour period when
a drilling rig is on location, as the case may be) actually commence the
proposed operation and complete it with due diligence. Operator shall
perform all work for the account of the Consenting Parties; provided,
however, if no drilling rig or other equipment is on location, and if
Operator is a Non-Consenting Party, the Consenting Parties shall either:
(i) request Operator to perform the work required by such proposed
operation for the account of the Consenting Parties, or (ii) designate one
of the Consenting Parties as Operator to perform such work. The rights
and duties granted to and imposed upon the Operator under this
agreement are granted to and imposed upon the party designated as
Operator for an operation in which the original Operator is a Non-
Consenting Party. Consenting Parties, when conducting operations on
the Contract Area pursuant to this Article VI.B.2 [sic], shall comply
with all terms and conditions of this agreement.

(*Id.* Art. VI.2(a).)

In 2018, a dispute arose over whether Chesapeake was complying with the

JOAs with regard to wells proposed by Epsilon. The dispute led to Epsilon filing

suit against Chesapeake in this district in September 2018. (*See Epsilon Energy

USA, Inc. v. Chesapeake Appalachia, LLC*, No. 3:18-CV-01852 (M.D. Pa. filed

Sept. 20, 2018) [hereinafter *Epsilon I*].) Epsilon moved for preliminary injunctive

relief in the suit. (*Epsilon I*, Doc. 2.) United States District Judge Malachy E.

Mannion scheduled the case for a preliminary injunction hearing. (*Epsilon I*, Doc.

17.) Before the court conducted the hearing, however, the parties settled the case.

(Doc. 96-8 [hereinafter Settlement Agreement].)

As part of the Settlement Agreement, the parties agreed that Epsilon could propose new wells under the JOAs "in accordance with the terms of the JOAs." (*Id.* ¶ 8.)  The parties further agreed that if Chesapeake did not consent to a proposal and did not agree to act as the operator, Chesapeake would "cooperate with the party designated, to the extent permitted under the JOA, as operator" and would "not unreasonably withhold cooperation, including but not limited to, permitting and access to co-owned assets, such as water withdrawal points and impoundments."  (*Id.* ¶ 8.d.)

The present dispute began when Epsilon formally proposed four new wells on December 22, 2020, which would be located on the Craige Well Pad in Rush Township, Susquehanna County.  The proposed wells were labeled as Craige N 1LH, Craige N 1UHC, Craige N 4UHC (collectively, "the Craige North Wells"), and Craige S 3LHC ("the Craige South Well").  (*Id.*)

On January 19, 2021, Chesapeake advised that it would not participate in the drilling of the proposed wells and that it would not serve as the operator on the projects.  (Doc. 1, ¶ 80.)  Chesapeake also stated its position that Epsilon was not allowed to serve as the operator with regard to the proposed wells and refused to grant Epsilon access to the Craige Well Pad on that basis.  (*Id.*)  In a separate communication on January 19, 2021, Chesapeake proposed a separate well, labeled the Koromlan 107HC ("Koromlan Well"), which Chesapeake asserted would

5

conflict with the proposed Craige Wells.  (Doc. 1, ¶¶ 81–82.)  Chesapeake announced plans to drill the Koromlan Well in January 2022.  (*Id.* ¶ 83.)

Subsequent to the proposal of the Craige Wells, Epsilon sent a draft commitment letter ("SRBC Letter") to Chesapeake that sought confirmation that Chesapeake was willing to provide water to Epsilon for the Craige Wells in accordance with permits that Chesapeake held with the Susquehanna River Basin Commission ("SRBC").  (*See* Doc. 96-9, p. 2 [hereinafter SRBC Letter].)  Chesapeake informed Epsilon on February 11, 2021 that it would not sign the letter.  (Doc. 1, ¶ 98.)

Epsilon brought suit against Chesapeake on March 10, 2021, seeking a declaration that if Chesapeake does not participate in the proposed Craige Wells, Epsilon has the right to drill the wells, Chesapeake is required to allow Epsilon to access and use jointly owned assets, and Chesapeake must cooperate with the operator of the proposed wells in order to facilitate the drilling of the wells.  (*See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, No. 1:21-CV-00433 (M.D. Pa. filed Mar. 10, 2021) [hereinafter *Epsilon II*].)  The complaint also brought claims for breach of the parties' JOAs and breach of the parties' settlement agreement in *Epsilon I*, sought a declaration that Chesapeake's proposed Koromlan Well did not comply with the terms of the JOAs, and sought specific performance and injunctive relief.  (*Epsilon II*, Doc. 5.)

6

Epsilon filed a motion for preliminary injunction in *Epsilon II* on March 10, 2021. (Doc. 7.) The court conducted a status conference with the parties on March 26, 2021 to discuss a briefing schedule for the preliminary injunction motion and to schedule a hearing on the motion. During that call, the parties discussed the fact that Chesapeake's filing for Chapter 11 bankruptcy was currently being litigated in the United States Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Court") and that Chesapeake had recently filed a motion for emergency relief in the Bankruptcy Court seeking to enjoin Epsilon from proceeding with a suit against Chesapeake in this district.

Following the March 26, 2021 conference, the court issued a scheduling order that set a briefing scheduled for Epsilon's motion for preliminary injunction, scheduled a preliminary injunction hearing, and set an expedited schedule for letter briefs on the issue of whether Chesapeake should be compelled to sign the SRBC Letter. (*Epsilon II*, Doc. 25.)

The Bankruptcy Court granted Chesapeake's motion for emergency relief on March 30, 2021, ordering Epsilon to dismiss the case in this district without prejudice and specifying that Epsilon could refile the case subject to conditions laid out by the Bankruptcy Court. (*See Epsilon II*, Doc. 30-1; *see also In re Chesapeake Energy Corp.*, No. 20-33233 (Bankr. S.D. Tex. hearing held Mar. 30, 2021).) Epsilon complied with the Bankruptcy Court's order on April 5, 2021, and

7

filed a notice of voluntary dismissal. (*Epsilon II*, Docs. 31–32.) This court accepted the notice of voluntary dismissal on April 6, 2021, and formally closed the case. (*Epsilon II*, Doc. 33.)

Epsilon filed the instant case three days later, on April 9, 2021, moving for a preliminary injunction and expedited discovery on the same day. (Docs. 4–5, 7.) On April 12, 2021, the court scheduled a status conference for April 19, 2021. (Doc. 13.) Prior to the conference, Epsilon filed a letter brief on the SRBC Letter issue in conformity with the requirements that the court had previously imposed in *Epsilon II*. (Doc. 15.) The court accordingly set an expedited schedule for an opposition letter brief and reply letter brief on that issue. (Doc. 16.)

On April 16, 2021, Chesapeake moved to dismiss the case for failure to join an indispensable party under Federal Rule of Civil Procedure 12(b)(7). (Doc. 22.) The motion sought dismissal on the grounds that Epsilon had failed to join the other parties to the JOAs, which Chesapeake contended were indispensable parties under Federal Rule of Civil Procedure 19. (*Id.*)

On April 26, 2021, the court denied Chesapeake's motion to dismiss for failure to join an indispensable party, concluding that the absent JOA parties were necessary parties under Federal Rule of Civil Procedure 19(a), but that they were not indispensable parties under Rule 19(b). (Docs. 33–34.) On April 27, 2021, the court denied Epsilon's request for preliminary injunctive relief on the SRBC Letter

8

issue without prejudice, concluding that Epsilon had not shown a sufficient likelihood of success on the merits as to that issue. (Docs. 44–45.) The court then denied Epsilon's motion for expedited discovery on May 3, 2021. (Docs. 50–51.)

Following a preliminary injunction hearing on May 11 and May 12, 2021, the court denied the motion for preliminary injunction on May 14, 2021. (Docs. 81, 89.)[2] The court found that Epsilon's well proposals had expired, and that Epsilon therefore had not shown a likelihood of success on the merits. (Doc. 89.) Given that conclusion, the court declined to decide whether Article VI.2(a), which specifies the procedures for certain projects receiving less than unanimous support from JOA parties, could apply to proposals to drill new wells. (*Id.* at p. 4 n.4.)

Following the denial of its motion for preliminary injunction, Epsilon reproposed the four Craige Wells on May 26, 2021. (*See* Doc. 104, ¶ 129.) Epsilon then moved for leave to amend its complaint on June 7, 2021, seeking to add allegations based on the reproposed wells. (Doc. 96.) Chesapeake opposed the motion, Doc. 98, and in response to Chesapeake's opposition, Epsilon conceded that Count IV of the proposed amended complaint could be dismissed along with the portions of Counts I–III that pertained to the Craige South Well. (Doc. 101, p. 9.) The court granted the motion for leave to amend on July 2, 2021, allowing

---

[2] Doc. 89 is a corrected version of the court's memorandum that was issued to correct typographical errors in the original version.

Epsilon to file its proposed amended complaint, but dismissing Count IV of the amended complaint and Counts I–III to the extent that they were based on the Craige South Well. (Docs. 102–03.) Epsilon's amended complaint was filed later that day. (Doc. 104.)

Chesapeake filed the instant motion to dismiss on July 16, 2021, *see* Doc. 109, and then filed a brief in support of the motion on July 30, 2021. (Doc. 110.) The primary issue that Chesapeake raises in its motion to dismiss is the one that the court deferred ruling on in resolving the motion for preliminary injunction: whether Article VI.2(a) of the JOAs could be used to shift operators for the drilling of new wells. (*Id.* at 13–14.) Chesapeake argues that the plain language of Article VI.2(a) limits operator shifting to proposals to rework, sidetrack, deepen, recomplete, or plug back an existing well and accordingly does not allow for operator shifting for the drilling of a new well. (*Id.*) Chesapeake also argues that even if Article VI.2(a) does allow operator shifting for new wells, Epsilon's amended complaint should still be dismissed because Epsilon has failed to allege that it has completed the necessary conditions precedent in order to complete such an operator shift under the terms of the JOAs. (*Id.* at 8–12.)

Epsilon opposes the motion to dismiss, arguing that the language of Article VI.2(a) allows operator shifting for new wells and that it has not failed to allege any conditions precedent for such operator shifting. (Doc. 111.) Chesapeake

10

responded to these arguments in a reply brief on August 19, 2021.  (Doc. 112.)
With briefing on the motion complete, it is now ripe for the court's review.  The
court considers the parties' arguments in more detail below.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332, which allows a district
court to exercise subject matter jurisdiction where the parties are citizens of
different states and the amount in controversy exceeds $75,000.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the
plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting
*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to
survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.
2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint
survives a motion to dismiss, a court identifies "the elements a plaintiff must plead
to state a claim for relief," disregards the allegations "that are no more than
conclusions and thus not entitled to the assumption of truth," and determines

11

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

**DISCUSSION**

### A. The Operator-Shifting Language of Article VI.2(a) Does Not Support Dismissal of the Complaint

Chesapeake's motion to dismiss calls upon the court to interpret the language of the parties' JOAs.  When interpreting a contract under Pennsylvania law, the court's task is to determine the intent of the parties and give effect to all of the provisions of the contract.  *Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001) (citing *Commonwealth of Pa., Dep't of Transp. v. Manor Mines, Inc.*, 565 A.2d 428, 432 (1989)).   The contract should be read as a whole, and one part of the contract cannot be interpreted in a way that would annul another part of the contract.  *Commonwealth ex rel. Shapiro v. UPMC*, 208 A.3d 898, 911 (Pa. 2019) (citing *Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 463–64 (Pa. 2015)).

The court can interpret the contract as a matter of law if there is only one reasonable interpretation of the contract.  *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 528 (3d Cir. 2018) (citing *Allied Erecting & Dismantling, Co., Inc. v. USX Corp.*, 249 F.3d 191, 201 (3d Cir. 2001)).  Where, on the other hand, the contract is susceptible to more than one reading, the proper

12

interpretation of the contract must be determined by the finder of fact.  *Id.* (citing

*Allied Erecting*, 249 F.3d at 201).

The court will first consider Chesapeake's argument that the complaint

should be dismissed because Epsilon's claims are foreclosed by the plain language

of Article VI.2(a) of the JOAs.  Article VI.2(a) provides in relevant part:

> If any party to whom such notice to Rework, Sidetrack, Deepen,
> Recomplete or Plug back is delivered as provided in Article VI.B.1 [sic]
> or VI.C.1 (Option No. 2) elects not to participate in the proposed
> operation, then, in order to be entitled to the benefits of this Article, the
> party or parties giving the notice and such other parties as shall elect to
> participate in the operation shall, no later than ninety (90) days after the
> expiration of the notice period of thirty (30) days (or as promptly as
> practicable after the expiration of the forty-eight (48) hour period when
> a drilling rig is on location, as the case may be) actually commence the
> proposed operation and complete it with due diligence.  Operator shall
> perform all work for the account of the Consenting Parties; provided,
> however, if no drilling rig or other equipment is on location, and if
> Operator is a Non-Consenting Party, the Consenting Parties shall either:
> (i) request Operator to perform the work required by such proposed
> operation for the account of the Consenting Parties, or (ii) designate one
> of the Consenting Parties as Operator to perform such work.  The rights
> and duties granted to and imposed upon the Operator under this
> agreement are granted to and imposed upon the party designated as
> Operator for an operation in which the original Operator is a Non-
> Consenting Party.  Consenting Parties, when conducting operations on
> the Contract Area pursuant to this Article VI.B.2. [sic], shall comply
> with all terms and conditions of this agreement.

(JOAs, Art. VI.2(a).)

Chesapeake argues that the language of Article VI.2(a) expressly limits its

operator-shifting provision to situations in which a party proposes work to

13

"rework, sidetrack, deepen, recomplete or plug back" a well. (Doc. 110, p. 14.) Chesapeake argues that Article VI.2(a) therefore does not apply to this case because Epsilon proposes new wells rather than work on existing wells. (*Id.*)

Epsilon argues that such a reading is "inconsistent with a common sense reading of the JOAs, the other provisions of the JOAs, and [Chesapeake's] own conduct" for three reasons. (Doc. 111, p. 16.) First, Epsilon argues that "the first sentence of Article VI.2(a) is an if/then clause," meaning that the language "to rework, sidetrack, deepen, recomplete or plug back" does not modify "the type of operations that less than all parties may pursue, but instead, only establishes a time limit for the enumerated operations." (*Id.*) In other words, "[t]he modification retains the 90-day commencement period for the listed operations but carves the drilling of new wells out of the 90-day limitation." (*Id.* at 16–17.)

Second, Epsilon argues that other subsections of Article VI confirm that "(1) proposals to drill new wells may proceed even if there is less than 100% participation and (2) one of the consenting parties may act as the operator if CHK elects not to conduct the drilling." (*Id.* at 17.) Epsilon specifically points to portions of Articles VI.2(b), VI.2(c), VI.2(d), VI.4, VI.5, VI.C.1, and VI.E, as sections of Article VI that specifically refer to drilling and argues that "the Court cannot interpret the JOAs in a manner that would render these provisions a nullity." (*Id.* at 18–19.)

14

Third, Epsilon argues that Chesapeake's own conduct is inconsistent with its argument because Chesapeake has "proposed and drilled other wells, as recently as 2020, without 100% participation," which runs contrary to Chesapeake's argument that "Article VI.2 does not apply to the drilling of new wells." (*Id.* at 19.)

Having reviewed the language of Article VI and the parties' arguments, the court will deny this portion of the motion to dismiss because the contract is susceptible to more than one reasonable reading as to whether Article VI.2(a) allows operating shifting for the drilling of a new well.

Chesapeake's reading of Article VI.2(a) is reasonable because the first sentence of Article VI.2(a) seems to specifically limit its scope to situations in which a party has proposed work "to Rework, Sidetrack, Deepen, Recomplete or Plug Back" an existing well. (JOAs, Art. VI.2(a).)

Although Epsilon argues that the relevant language in the first sentence of Article VI.2(a) is part of an "if/then clause" that sets a time limit for proposals to rework, sidetrack, deepen, recomplete, or plug back a well but does not modify the types of operations that can be pursued, the second sentence of Article VI.2(a) forecloses Epsilon's reading. That sentence provides that "Operator shall perform all work for the account of the Consenting Parties; provided, however, if no drilling rig or other equipment is on location, and if Operator is a Non-Consenting Party, the Consenting Parties shall either: (i) request Operator to perform the work

15

required by *such proposed operation* for the account of the Consenting Parties, or
(ii) designate one of the Consenting Parties as Operator to *perform such work*."
(JOAs, Art. VI.2(a) (emphasis added).)  The pronoun "such" refers to "someone or
something that has been or is being stated, implied, or exemplified."  *Such*,
MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-
webster.com/unabridged /such (last visited Aug. 25, 2021).  Thus, for the second
sentence of Article VI.2(a) to have a coherent meaning, "such" must refer back to
an antecedent "that has been . . . stated, implied, or exemplified."  *See id.*  Because
no such antecedent is present in the second sentence of Article VI.2(a), "such"
logically must refer back to the first sentence, and the only "proposed operation" or
"work" mentioned in the first sentence is a proposal to "Rework, Sidetrack,
Deepen, Recomplete or Plug Back" an existing well.  Thus, Chesapeake's reading
of Article VI.2(a) as limiting operator shifting to situations in which a party has
proposed work on an existing well is a reasonable interpretation of the contract.

Epsilon, however, also proposes a reasonable interpretation of the contract
that would *not* limit operator shifting under Article VI.2(a) to work on an existing
well.  Specifically, Epsilon argues that operator shifting for the drilling of new
wells must be allowed under Article VI.2(a) because a contrary reading of Article
VI.2(a) would render the language of Article VI.2(b) a nullity.  (Doc. 111, pp. 18–
19.)  Article VI.2(b) states in relevant part:

16

> If any well *drilled,* Reworked, Sidetracked, Deepened, Recompleted or Plugged Back under the provisions of this Article results in a well capable of producing Oil and/or Gas in paying quantities, the Consenting Parties shall Complete and equip the well to produce at their sole cost and risk, *and the well shall then be turned over to Operator (if the Operator did not conduct the operation)* and shall be operated by it at the expense and for the account of the Consenting Parties.

(JOAs, Art. VI.2(b) (emphasis added).)

The emphasized language of Article VI.2(b) clearly contemplates situations in which a drilling operation is completed without the operator conducting the operation. It is reasonable to infer from this language that a party consenting to a drilling proposal may be temporarily designated to act as operator in Chesapeake's place. Article VI.2(a) is the only temporary operator-shifting provision in the JOAs, so it is therefore reasonable to read Article VI.2(a) as allowing operator-shifting for the drilling of new wells.

Thus, because the parties present conflicting readings of Article VI.2(a) that are both reasonable interpretations of the contract, the court cannot decide this issue as a matter of law. *Wayne Land & Mineral Grp.*, 894 F.3d at 528. The motion to dismiss is therefore denied to the extent that it seeks dismissal as a matter of law based on the operator-shifting provision of Article VI.2(a).

## B. Whether Epsilon Has Alleged Sufficient Conditions Precedent

Chesapeake raises two additional arguments as to why its motion to dismiss should be granted even if the court accepts Epsilon's reading of Article VI.2(a).

17

Specifically, Chesapeake argues that Epsilon has failed to allege two conditions precedent that are necessary in order to complete an operator shift under Article VI.2(a). (Doc. 110, p. 8.) The court considers these arguments seriatim.

### 1. The JOAs Do Not Condition Operator Shifting on the Action of Multiple Consenting Parties

Chesapeake argues that a consenting party may only be designated as operator for a proposed well by the action of multiple consenting parties, rather than the actions of a single consenting party. (Doc. 110, pp. 9–11.) The relevant language of the JOAs states:

> [I]f Operator is a Non-Consenting Party, the Consenting Parties shall either: (i) request Operator to perform the work required by such proposed operation for the account of the Consenting Parties, or (ii) designate one of the Consenting Parties as Operator to perform such work.

JOAs, Art. VI.2(a). Chesapeake argues that the amended complaint should be dismissed based on this language because no other JOA parties have consented to the Craige North Wells, and Epsilon therefore cannot be designated as operator by the action of multiple consenting parties. (Doc. 110, pp. 9–11.)

Epsilon argues to the contrary that under the terms of the JOAs, words used in the singular include the plural and words used in the plural include the singular, unless the context clearly suggests otherwise. (Doc. 111, pp. 20–21; *see* JOAs,

18

Art. I.)  Thus, Epsilon argues, it should be allowed to designate itself as the operator on a proposal for which it is the only consenting party.  (Doc. 111, p. 21.)

Cheapeake argues that the context of Article VI.2(a) shows that the plural "Consenting Parties" should not be understood to include a single consenting party because the JOA parties carefully distinguished in the article between "Consenting Parties, a Non-Consenting Party, one of the Consenting Parties, any Consenting Party, and a Consenting Party."  (Doc. 112, p. 6.)

The court agrees with Epsilon that the JOAs do not condition operator shifting on the action of multiple consenting parties.  As Epsilon notes, references to a plural in the JOAs should be understood to include the singular unless the context clearly suggests otherwise, and the court does not find that the context of Article VI.2(a) clearly refutes the presumption that the plural should be understood to include the singular.  To the contrary, the language of Article VI.2(a) suggests that situations could arise in which the proposing party is the only consenting party.  (*See* JOAs, Art. VI.2(a) ("[I]n order to be entitled to the benefits of this Article, *the party or parties giving the notice* and such other parties as shall elect to participate in the operation shall . . . actually commence the proposed operation and complete it with due diligence." (emphasis added)).)  Accordingly, Chesapeake's argument is rejected.

19

### 2.  Epsilon Has Not Complied with the JOAs' Timing Requirements

Chesapeake's other condition precedent argument is based on the timing requirements of Article VI.2(a).  Article VI.2(a) states that in order to be entitled to the benefits of the article, the parties that have consented to a proposal must "actually commence the proposed operation" no later than "ninety (90) days after the expiration of the notice period of thirty (30) days."  JOAs, Art. VI.2(a). Epsilon's proposals for the Craige North Wells, which were made on May 26, 2021, proposed commencement dates that would fall outside this 120-day range.[3] Based on this fact, Chesapeake argues that Epsilon has not satisfied a necessary condition precedent to shift operators under Article VI.2(a), and that the complaint should be dismissed on that basis.  (Doc. 110, pp. 11–12.)  Chesapeake also argues that this court already ruled that the JOAs establish a 120-day timeline in its memorandum and order denying Epsilon's motion for preliminary injunction, and that this ruling constitutes law of the case.  (*Id.*)

Epsilon's primary argument in response relies on the provisions of Article XVI, which sets forth the requirements for proposing a new well.  (*See* Doc. 111, pp. 21–22; JOAs, Art. XVI.)  Under Article XVI, a party proposing a new well

---

[3] The proposed commencement dates for the Craige North Wells are October 1, 2021 for Craige N 1LH; October 16, 2021 for Craige N 1UHC; and November 8, 2021 for Craige N 4UHC. (*See* Doc. 96-10, pp. 76, 87, 100.)  The 120-day timeline established by Article VI.2(a) would expire on September 23, 2021 for a proposal made on May 26, 2021.

20

must include in the proposal: (1) an estimated commencement date; (2) a proposed depth for the well; (3) the objective formation or formations that will be penetrated or tested; (4) the authorized depth, surface and bottomhole locations, and proposed directional operations for the well; and (5) the estimated cost of the well.  (JOAs, Art. XVI.A.1.)  Article XVI does not include any time limits as to when a project must be commenced.  (*See* JOAs, Art. XVI.)  Article XVI also states that "in the event of a conflict between the provisions of this Article XVI and any other provision of this agreement, the provisions of this Article XVI shall control and prevail."  (JOAs, Art. XVI.N.)

Based on the language of Article XVI, Epsilon argues that its proposals for the Craige North Wells satisfy the terms of the JOAs because "Article XVI does not contain any requirement that a proposal for a new well include a date for commencement of operations that does not exceed 90 days following the close of the election period" and Article XVI "expressly trumps any inconsistent provisions set forth elsewhere in the JOA."  (Doc. 111, p. 22.)

Epsilon further argues that the court's prior opinion does not constitute law of the case on this issue because "the Court merely concluded that Epsilon did not have an additional 30 days in which to commence operations—after the date set forth in its then-existing proposals had passed—based on the existence of any title defects."  (*Id.*)  Finally, Epsilon argues that Chesapeake's prior conduct is

21

inconsistent with its litigation position, because Chesapeake has proposed numerous wells that included proposed commencement dates more than 90 days after the expiration of the notice period. (*Id.* at 22–23.)

The court rejects Epsilon's argument that Article XVI and Article VI are in conflict with one another. Article XVI requires a proposing party to include an estimated commencement date in its proposal. Article VI requires that the commencement of work occur within 90 days after the expiration of the notice period. The two provisions can both be honored at the same time by proposing a commencement date within 90 days after the expiration of the notice period. Thus, there is no conflict.

More fundamentally, Epsilon's argument fails based on a commonsense reading of the JOAs. The *absence* of a timing provision in Article XVI cannot create a conflict with a separate provision of the JOAs that does contain a timing provision, because this would effectively mean that *any* timing provision of the JOAs was nullified unless Article XVI also contained the same timing provision.

Consider, by way of example, the provision of Article VI.1 allowing the operator to obtain a 30-day extension based on a title defect. There is no provision of Article XVI that allows the operator to obtain such a 30-day extension, but Epsilon nonetheless relied on Article VI.1 earlier in this litigation to try to obtain a 30-day extension of its December 2020 well proposals. By Epsilon's current logic,

22

however, the *absence* of such a provision in Article XVI creates a conflict with the provision that does exist in Article VI, and the conflict must be resolved in favor of Article XVI's absence, which would mean that no 30-day extensions could ever be obtained.

Other examples easily come to mind. Consider the language of Article VI.2(a) that is the subject of much of the current dispute. Article VI.2(a) states that in certain situations, a consenting party may be designated as operator to perform certain work. The parties and the court have devoted a significant amount of time and resources to resolving whether this provision allows operator shifting for a new well, but Epsilon's current argument would make those efforts unnecessary: Article XVI does not contain any provision allowing a consenting party to be designated as operator, so, by Epsilon's current logic, the language of Article VI.2(a) must yield to the absence of language in Article XVI, which would mean that no operator shifting is permitted.

As the above examples make clear, reading the absence of a provision in one part of the JOAs as creating a conflict with a separate provision of the JOAs that actually does exist is nonsensical. Thus, the court concludes that the relevant provisions of Article XVI and Article VI are not in conflict with one another.

The remainder of the court's analysis is straightforward, as the plain language of Article VI.2(a) clearly requires commencement of a proposed

23

operation within 90 days after the expiration of the 30-day notice period. (*See* JOAs, Art VI.2(a) ("[I]n order to be entitled to the benefits of this Article, the party or parties giving the notice and such other parties as shall elect to participate in the operation shall, no later than ninety (90) days after the expiration of the notice period of thirty (30) days . . . actually commence the proposed operation and complete it with due diligence.").)[4]

Epsilon's argument that Chesapeake has engaged in prior conduct inconsistent with this reading of the contract does not change the court's conclusion. Epsilon argues that because Chesapeake has previously "proposed wells with a commencement date more than 90 days" after the expiration of the notice period, the JOAs clearly "do not impose a 90-day commencement period upon proposals to drill new wells." (Doc. 111, p. 22.)

Epsilon's argument calls upon the court to consider the parties' course of performance, which is "a sequence of conduct between the parties subsequent to formation of the contract during performance of the terms of the contract." *J.W.S. Delavau, Inc. v. E. Am. Transp. & Warehousing, Inc.*, 810 A.2d 672, 683–84 (Pa. Super. Ct. 2002). This is in contrast to a course of dealing, which is a "sequence of previous conduct between the parties which is fairly regarded as establishing a

---

[4] The court bases this conclusion on the plain language of the JOAs and does not reach the issue of whether the court's prior opinion constitutes law of the case.

24

common basis of understanding for interpreting their expressions and other conduct." *Id.*

Unlike course of dealing evidence, which may be used to supplement or qualify the terms of an agreement, course of performance evidence "may be used only to interpret a contract." *Id.* (citing *Matthews v. Unisource Worldwide, Inc.*, 748 A.2d 219 (Pa. Super. Ct. 2000)). Thus, where the course of performance contradicts the unambiguous language of the contract, the court should not allow the course of performance to supersede the language of the contract. *See, e.g.*, *Allegheny Clinic v. Total Wellness Psychiatry, PLLC*, No. 2:19-CV-00517, 2021 WL 2317415, at *5 (W.D. Pa. June 7, 2021) ("[T]he express terms of the Agreement are to be given greater weight than course of performance."); *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, No. 84-CV-6179, 1986 WL 10547, at *3 (E.D. Pa. Sept. 17, 1986) (noting that when parties have erroneously performed in a way that contradicts the plain language of the contract, "the court should not perpetuate the error." (quoting *In re Chi. & E.I. Ry. Co.*, 94 F.2d 296, 300 (7th Cir. 1938))).

That is exactly the case here. Epsilon argues that Chesapeake has previously proposed wells that did not comply with Article VI.2(a)'s 120-day time limit, but the language of Article VI.2(a) unambiguously requires proposals to comply with that time limit. The court therefore gives effect to the unambiguous language of

25

the contract and holds that Article VI.2(a) requires proposed operations to include a proposed commencement date that is no more than 90 days after the expiration of the 30-day notice period. Epsilon's proposals for the Craige North Wells do not comply with that time period, and the court will dismiss Epsilon's amended complaint on that basis.

### C. Epsilon Will Not Be Given Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted a district should grant the plaintiff leave to file an amended complaint unless amendment of the complaint would be inequitable or futile. *See, e.g.*, *Banks v. Allstate Fire & Cas. Ins. Co.*, 454 F. Supp. 3d 428, 438 (M.D. Pa. 2020). Here, the court will deny leave to amend because amendment of the complaint would be futile. Epsilon's currently operative proposals for the drilling of new wells do not comply with the timing requirements of Article VI.2(a), so any amended complaint would not withstand a renewed motion to dismiss. The court emphasizes, however, that while it is dismissing the amended complaint without further leave to amend, this decision is without prejudice to Epsilon's right to file a new lawsuit based on new proposals made after this opinion.

26

## CONCLUSION

For the foregoing reasons, Chesapeake's motion to dismiss is granted.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 22, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EPSILON ENERGY USA, INC., | : | Civil No. 1:21-CV-00658 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHESAPEAKE APPALACHIA, LLC, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## <u>ORDER</u>

**AND NOW**, on this 22nd day of September, 2021, for the reasons stated in the accompanying memorandum, **IT IS ORDERED AS FOLLOWS:**

1. Defendant's motion to dismiss (Doc. 109) is **GRANTED**.

2. Plaintiff's amended complaint (Doc. 104) is **DISMISSED** without further leave to amend.

3. Plaintiff's motion for oral argument (Doc. 113) is **DENIED**.

4. The telephone conference scheduled for September 23, 2021, at 10:30 a.m. is **CANCELLED**.

5. The Clerk of Court is directed to close this case.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EPSILON ENERGY USA, INC., | : | Civil No. 1:21-CV-00658 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHESAPEAKE APPALACHIA, LLC, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is a diversity action arising from several contracts between two oil and gas companies.  The court dismissed the case on September 22, 2021, finding that the well proposals on which Plaintiff's complaint were based had expired.  Plaintiff has moved for partial reconsideration, arguing that the dismissal of the case should have been limited to Plaintiff's claims for injunctive relief and that Plaintiff's declaratory judgment claim should not have been dismissed.  For the reasons that follow, the motion for reconsideration is denied.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Epsilon Energy USA, Inc. is an Ohio corporation with its principal place of business in Texas.  (Doc. 4, ¶ 1; Doc. 72, ¶ 1.)  Defendant Chesapeake Appalachia, LLC ("Chesapeake") is an Oklahoma corporation with its principal place of business in that state.  (Doc. 4, ¶ 4; Doc. 72, ¶ 4.)  Beginning in 2009, Epsilon, Chesapeake, and several other oil and gas companies entered into several

1

Joint Operating Agreements ("JOAs") for the purpose of developing natural gas at locations in Pennsylvania.[1]

Chesapeake is designated as the operator under the JOAs, which accordingly requires Chesapeake to "conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of [the JOAs]". (JOAs, Art. V.A.) Chesapeake may be permanently removed as operator under a JOA for good cause upon the affirmative vote of the other parties to the JOA that own a majority interest of the property that is subject to the JOA. (JOAs, Art. V.B.1.) In order for such a vote to be effective, a written notice must be provided to Chesapeake detailing its alleged defaults as operator. (*Id.*) Chesapeake then has thirty days in which to cure such defaults. (*Id.*)

Although Chesapeake is the operator, the JOAs provide that any party to the JOAs may propose the drilling of a new well or propose a project to rework, sidetrack, deepen, recomplete, or plug back a well. (*Id.* Art. VI.1.) A party proposing such work is required to provide the other JOA parties that "have not otherwise relinquished their interest in [the] objective Zone" of the proposal with

---

[1] The four JOAs relevant to this case are the Baltzley North JOA, dated October 18, 2010, the Baltzley South JOA, dated October 18, 2010, the Craige JOA, dated December 16, 2010, and the Poulsen JOA, which was a draft model JOA that was subsequently incorporated into the Farmout Agreement between Epsilon and Chesapeake. Because the parties agree that the relevant provisions of the JOAs are legally indistinguishable from one another, *see* Transcript of Preliminary Injunction Hearing, May 11, 2021, pp. 90–91, the court will cite the four JOAs collectively as "JOAs" throughout the remainder of this opinion.

2

written notice of the proposal "specifying the work to be performed, the location, proposed depth, objective Zone, and the estimated cost of the operation." (*Id.*) The other parties receiving notice have thirty days after receipt of the notice "within which to notify the party proposing to do the work whether they elect to participate in the cost of the proposed operation." (*Id.*)

The JOAs require different procedures for projects that have received the unanimous consent of the JOA parties and projects that have not received unanimous consent. When a project has received unanimous consent:

> the parties shall be contractually committed to participate therein provided such operations are commenced within the period hereafter set forth, and Operator shall, no later than ninety (90) days after expiration of the notice period of thirty (30) days (or as promptly as practicable after the expiration of the forty-eight (48) hour period when a drilling rig is on location, as the case may be), actually commence the proposed operation and thereafter complete it with due diligence at the risk and expense of the parties participating therein; provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties, for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examination or curative matter required for title approval or acceptance. If the actual operation has not been commenced within the time provided (including any extension thereof specifically permitted herein or in the force majeure provisions of Article XI) and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accordance herewith as if no prior proposal had been made.

Appx0031

(*Id.* Art. VI.1.)  When, on the other hand, a proposal receives less than unanimous support:

> the party or parties giving the notice and such other parties as shall elect to participate in the operation shall, no later than ninety (90) days after the expiration of the notice period of thirty (30) days (or as promptly as practicable after the expiration of the forty-eight (48) hour period when a drilling rig is on location, as the case may be) actually commence the proposed operation and complete it with due diligence.  Operator shall perform all work for the account of the Consenting Parties; provided, however, if no drilling rig or other equipment is on location, and if Operator is a Non-Consenting Party, the Consenting Parties shall either: (i) request Operator to perform the work required by such proposed operation for the account of the Consenting Parties, or (ii) designate one of the Consenting Parties as Operator to perform such work.  The rights and duties granted to and imposed upon the Operator under this agreement are granted to and imposed upon the party designated as Operator for an operation in which the original Operator is a Non-Consenting Party.  Consenting Parties, when conducting operations on the Contract Area pursuant to this Article VI.B.2 [sic], shall comply with all terms and conditions of this agreement.

(*Id.* Art. VI.2(a).)

In 2018, a dispute arose over whether Chesapeake was complying with the JOAs with regard to wells proposed by Epsilon.  The dispute led to Epsilon filing suit against Chesapeake in this district in September 2018.  (*See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, No. 3:18-CV-01852 (M.D. Pa. filed Sept. 20, 2018) [hereinafter *Epsilon I*].)  Epsilon moved for preliminary injunctive relief in the suit.  (*Epsilon I*, Doc. 2.)  United States District Judge Malachy E. Mannion scheduled the case for a preliminary injunction hearing.  (*Epsilon I*, Doc.

4

17.)  Before the court conducted the hearing, however, the parties settled the case. (Doc. 96-8 [hereinafter Settlement Agreement].)

As part of the Settlement Agreement, the parties agreed that Epsilon could propose new wells under the JOAs "in accordance with the terms of the JOAs." (*Id.* ¶ 8.)  The parties further agreed that if Chesapeake did not consent to a proposal and did not agree to act as the operator, Chesapeake would "cooperate with the party designated, to the extent permitted under the JOA, as operator" and would "not unreasonably withhold cooperation, including but not limited to, permitting and access to co-owned assets, such as water withdrawal points and impoundments."  (*Id.* ¶ 8.d.)

The present dispute began when Epsilon formally proposed four new wells on December 22, 2020, which would be located on the Craige Well Pad in Rush Township, Susquehanna County.  The proposed wells were labeled as Craige N 1LH, Craige N 1UHC, Craige N 4UHC (collectively, "the Craige North Wells"), and Craige S 3LHC ("the Craige South Well").  (*Id.*)

On January 19, 2021, Chesapeake advised that it would not participate in the drilling of the proposed wells and that it would not serve as the operator on the projects.  (Doc. 1, ¶ 80.)  Chesapeake also stated its position that Epsilon was not allowed to serve as the operator with regard to the proposed wells and refused to grant Epsilon access to the Craige Well Pad on that basis.  (*Id.*)  In a separate

5

communication on January 19, 2021, Chesapeake proposed a separate well, labeled the Koromlan 107HC ("Koromlan Well"), which Chesapeake asserted would conflict with the proposed Craige Wells.  (Doc. 1, ¶¶ 81–82.)  Chesapeake announced plans to drill the Koromlan Well in January 2022.  (*Id.* ¶ 83.)

Subsequent to the proposal of the Craige Wells, Epsilon sent a draft commitment letter ("SRBC Letter") to Chesapeake that sought confirmation that Chesapeake was willing to provide water to Epsilon for the Craige Wells in accordance with permits that Chesapeake held with the Susquehanna River Basin Commission ("SRBC").  (*See* Doc. 96-9, p. 2 [hereinafter SRBC Letter].)  Chesapeake informed Epsilon on February 11, 2021 that it would not sign the letter.  (Doc. 1, ¶ 98.)

Epsilon brought suit against Chesapeake on March 10, 2021, seeking declarations that (1) if Chesapeake did not participate in the proposed Craige Wells, Epsilon had the right to drill the wells; (2) Chesapeake was required to allow Epsilon to access and use jointly owned assets; and (3) Chesapeake must cooperate with the operator of the proposed wells in order to facilitate the drilling of the wells.  (*See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, No. 1:21-CV-00433 (M.D. Pa. filed Mar. 10, 2021) [hereinafter *Epsilon II*].)  The complaint also brought claims for breach of the parties' JOAs and breach of the parties' settlement agreement in *Epsilon I*, sought a declaration that Chesapeake's

6

proposed Koromlan Well did not comply with the terms of the JOAs, and sought specific performance and injunctive relief. (*Epsilon II*, Doc. 5.)

Epsilon filed a motion for preliminary injunction in *Epsilon II* on March 10, 2021. (Doc. 7.) The court conducted a status conference with the parties on March 26, 2021 to discuss a briefing schedule for the preliminary injunction motion and to schedule a hearing on the motion. During that call, the parties discussed the fact that Chesapeake's filing for Chapter 11 bankruptcy was being litigated in the United States Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Court") and that Chesapeake had recently filed a motion for emergency relief in the Bankruptcy Court seeking to enjoin Epsilon from proceeding with a suit against Chesapeake in this district.

Following the March 26, 2021 conference, the court issued a scheduling order that set a briefing scheduled for Epsilon's motion for preliminary injunction, scheduled a preliminary injunction hearing, and set an expedited schedule for letter briefs on the issue of whether Chesapeake should be compelled to sign the SRBC Letter. (*Epsilon II*, Doc. 25.)

The Bankruptcy Court granted Chesapeake's motion for emergency relief on March 30, 2021, ordering Epsilon to dismiss the case in this district without prejudice and specifying that Epsilon could refile the case subject to conditions laid out by the Bankruptcy Court. (*See Epsilon II*, Doc. 30-1; *see also In re*

7

*Chesapeake Energy Corp.*, No. 20-33233 (Bankr. S.D. Tex. hearing held Mar. 30, 2021).) Epsilon complied with the Bankruptcy Court's order on April 5, 2021, and filed a notice of voluntary dismissal. (*Epsilon II*, Docs. 31–32.) This court accepted the notice of voluntary dismissal on April 6, 2021, and formally closed the case. (*Epsilon II*, Doc. 33.)

Epsilon filed the instant case three days later, on April 9, 2021, moving for a preliminary injunction and expedited discovery on the same day. (Docs. 4–5, 7.) On April 12, 2021, the court scheduled a status conference for April 19, 2021. (Doc. 13.) Prior to the conference, Epsilon filed a letter brief on the SRBC Letter issue in conformity with the requirements that the court had previously imposed in *Epsilon II*. (Doc. 15.) The court accordingly set an expedited schedule for an opposition letter brief and reply letter brief on that issue. (Doc. 16.)

On April 16, 2021, Chesapeake moved to dismiss the case for failure to join an indispensable party under Federal Rule of Civil Procedure 12(b)(7). (Doc. 22.) The motion sought dismissal on the grounds that Epsilon had failed to join the other parties to the JOAs, which Chesapeake contended were indispensable parties under Federal Rule of Civil Procedure 19. (*Id.*)

On April 26, 2021, the court denied Chesapeake's motion to dismiss for failure to join an indispensable party, concluding that the absent JOA parties were necessary parties under Federal Rule of Civil Procedure 19(a), but that they were

8

not indispensable parties under Rule 19(b).  (Docs. 33–34.)  On April 27, 2021, the court denied Epsilon's request for preliminary injunctive relief on the SRBC Letter issue without prejudice, concluding that Epsilon had not shown a sufficient likelihood of success on the merits as to that issue.  (Docs. 44–45.)  The court then denied Epsilon's motion for expedited discovery on May 3, 2021.  (Docs. 50–51.)

Following a preliminary injunction hearing on May 11 and May 12, 2021, the court denied the motion for preliminary injunction on May 14, 2021, concluding that Epsilon's well proposals had expired and that Epsilon therefore had not shown a likelihood of success on the merits.  (Docs. 81, 89.)[2]  Given that conclusion, the court declined to decide whether Article VI.2(a), which specifies the procedures for certain projects receiving less than unanimous support from JOA parties, could apply to proposals to drill new wells.  (*Id.* at p. 4 n.4.)

Following the denial of its motion for preliminary injunction, Epsilon reproposed the four Craige Wells on May 26, 2021.  (*See* Doc. 104, ¶ 129.)  Epsilon then moved for leave to amend its complaint on June 7, 2021, seeking to add allegations based on the reproposed wells.  (Doc. 96.)  Epsilon's proposed amended complaint included four counts for relief.  In Count I, Epsilon sought a declaratory judgment declaring that it had the right to drill the proposed wells.  (*Id.*

---

[2] Doc. 89 is a corrected version of the court's memorandum that was issued to correct typographical errors in the original version.

¶¶ 144–54.)  In Count II, Epsilon sought specific performance of the parties'
settlement agreement in *Epsilon I*.  (*Id.* ¶¶ 154–66.)  In Count III, Epsilon sought
specific performance of the JOAs.  (*Id.* ¶¶ 167–83.)  In Count IV, Epsilon sought a
declaratory judgment declaring that the Koromlan Well proposal did not comply
with the terms of the JOAs.  (*Id.* ¶¶ 184–91.)

Chesapeake opposed the motion for leave to amend, Doc. 98, and in
response to Chesapeake's opposition, Epsilon conceded that Count IV of the
proposed amended complaint could be dismissed along with the portions of Counts
I–III that pertained to the Craige South Well.  (Doc. 101, p. 9.)  The court granted
the motion for leave to amend on July 2, 2021, allowing Epsilon to file its amended
complaint but dismissing Count IV of the amended complaint and Counts I–III to
the extent that they were based on the Craige South Well.  (Docs. 102–03.)
Epsilon's amended complaint was filed later that day.  (Doc. 104.)

Chesapeake moved to dismiss the amended complaint on July 16, 2021 and
filed a brief in support of the motion on July 30, 2021.  (Docs. 109–10.)
Chesapeake argued that dismissal was appropriate because the plain language of
Article VI.2(a) limited operator shifting to proposals to rework, sidetrack, deepen,
recomplete, or plug back an existing well and accordingly did not allow for
operator shifting for the drilling of a new well.  (Doc. 110, pp. 13–14.)
Chesapeake also argued that even if Article VI.2(a) did allow operator shifting for

new wells, Epsilon's amended complaint should still be dismissed because Epsilon had failed to allege that it had completed the necessary conditions precedent in order to complete such an operator shift under the terms of the JOAs.  (*Id.* at 8–12.) Specifically, Chesapeake argued that Epsilon's well proposals violated the JOAs because (1) no other parties had consented to the proposals, and the JOAs only allowed the designation of a consenting party as operator when multiple parties consented to that action and (2) the proposals proposed commencement dates that were past the 90-day time limit required by the JOAs.  (*Id.*)

The court addressed the motion to dismiss through a memorandum and order on September 22, 2021.  (Docs. 121–22.)  The court concluded that dismissal was not warranted based on the language of Article VI.2(a) because the parties presented conflicting readings of the contract that were both reasonable in light of the language of the contract.  (Doc. 121, pp. 12–17.)  The court also rejected Chesapeake's argument that the JOAs conditioned operator shifting on the action of multiple consenting parties.  (*Id.* at 18–19.)  The court ultimately granted the motion to dismiss, however, because Epsilon's well proposals included proposed commencement dates that violated the timing requirements of the JOAs.  (*Id.* at 20–26.)  The court accordingly dismissed the amended complaint without further leave to amend but emphasized that this dismissal was "without prejudice to

Appx0039

Epsilon's right to file a new lawsuit based on new proposals made after this opinion." (*Id.* at 26.)

Epsilon moved for partial reconsideration on October 4, 2021 and filed a brief in support of the motion on the same day. (Docs. 123–24.) Epsilon argues (1) that dismissal of its amended complaint should have been limited to its injunctive relief claims and should not have affected its declaratory judgment claim because the declaratory judgment claim was not tied to the validity of any particular well proposal; (2) that the court already ruled that Epsilon could pursue its declaratory judgment claim even in the absence of a valid well proposal; and (3) that it will suffer significant prejudice if reconsideration is denied because Chesapeake can always cause Epsilon's well proposals to expire by not cooperating with the proposals, meaning that Epsilon's declaratory judgment claim will never be decided if it must be tied to an unexpired well proposal. (Doc. 124.) The parties have fully briefed the motion for reconsideration, and it is ripe for the court's disposition. (*See* Docs. 124–26, 130.)

Epsilon has additionally filed a notice of supplemental evidence in support of the motion for reconsideration. (Doc. 131.) In the notice, Epsilon asserts that after the motion for reconsideration was filed, Chesapeake "took action that constitutes an additional violation of its settlement agreement with Epsilon." (*Id.* at 1.) Specifically, Epsilon asserts that it began the process of trying to propose

Appx0040

new wells after the case was dismissed and accordingly sought to renew the
requisite drilling permits with the Pennsylvania Department of Environmental
Protection. (*Id.* at 2.) Chesapeake actively opposed Epsilon's efforts to secure the
permits, which hindered Epsilon's ability to move forward with the renewed well
proposals. (*Id.*) Epsilon asserts that this court should consider this evidence of
Chesapeake's continued lack of cooperation as further support for its motion for
reconsideration. (*Id.*) Chesapeake responded to the notice on January 12, 2022.
(Doc. 132.) Chesapeake asserts that the additional evidence should not be
considered in conjunction with the motion for reconsideration. (*Id.*)

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332, which allows a district
court to exercise subject matter jurisdiction where the parties are citizens of
different states and the amount in controversy exceeds $75,000.

## STANDARD OF REVIEW

A party seeking reconsideration of a district court's order must show either
(1) "an intervening change in the controlling law"; (2) the availability of new
evidence that was not available when the court issued its prior order; or (3) "the
need to correct a clear error of law or fact or to prevent manifest injustice." *Max's
Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)
(citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d

13

Cir. 1995)).  Motions for reconsideration "cannot be used to reargue issues that the court has already considered and disposed of."  *McSparren v. Pennsylvania*, 289 F. Supp. 3d 616, 621 (M.D. Pa. 2018) (citing *Blanchard v. Gallick*, No. 1:09-CV-01875, 2011 WL 1878226 at \*1 (M.D. Pa. May 17, 2011)).  Additionally, a motion for reconsideration "may not be used to present a new legal theory for the first time" or "to raise new arguments that could have been made in support of the original motion."  *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 474 (M.D. PA. 2020) (citing *Vaidya Xerox Corp.*, No. 97-CV-00547, 1997 WL 732464, \*2 (E.D. Pa. Nov. 25, 1997)).  A "mere disagreement" with a court's legal conclusion is not a sufficient basis for reconsideration.  *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014) (citing *Mpala v. Smith*, No. 3:06-CV-00841, 2007 WL 136750, at \*2 (M.D. Pa. Jan. 16, 2007)).

Although a court may reconsider a prior order based on a party's motion, motions for reconsideration "should be granted sparingly as federal courts have a strong interest in the finality of judgments."  *Kitzmiller v. Dover Area Sch. Dist.*, 388 F. Supp. 2d 484, 488 (M.D. Pa. 2005).  The decision of whether to grant a motion for reconsideration is left to the discretion of the district court.  *Le v. Univ. of Pa.*, 321 F.3d 403, 405 (3d Cir. 2003).

14

### DISCUSSION

Epsilon's motion for reconsideration argues that the court committed a clear error of law when it dismissed Epsilon's declaratory judgment claim. (Doc. 124, pp. 1–2.) Epsilon asserts that its "request for declaratory relief in Count I was not dependent upon the existence of a valid, current proposal to drill a particular well" and that "the request for declaratory relief sets forth a ripe controversy even if no proposal is pending." (*Id.* at 5, 8.) Epsilon further argues that the court already ruled, in its May 14, 2021 opinion denying Epsilon's motion for preliminary injunction, that Epsilon may "pursue its claim for declaratory relief in the absence of any breach of contract claim." (*Id.* at 9.)

Epsilon's argument for reconsideration is belied by the plain language of its amended complaint. Contrary to Epsilon's argument, the amended complaint made clear, repeatedly, that its request for declaratory relief was based on the specific wells proposed in this case and not on the language of the JOAs pertaining to well proposals generally. (*See* Doc. 104, pp. 32–35.) Most notably, the heading of Count I labels the claim for relief "DECLARATORY JUDGMENT (Epsilon's Right to Drill the Proposed Wells)." (*Id.* at 32.) The text of the declaratory judgment claim also indicates that Epsilon's request for declaratory judgment is based on the proposed Craige Wells. (*See, e.g.*, *id.* ¶ 146 ("CHK has unambiguously communicated that it will not to [sic] participate in the Proposed

15

Wells and will not serve as the operator for the Proposed Wells"); *id.* ¶ 148 ("CHK continuously refuses to cooperate with Epsilon so that Epsilon . . . can drill and operate the Proposed Wells."); *id.* ¶ 154 (noting that an actual controversy arises from, inter alia, Chesapeake's "refusal to sign the SRBC commitment letter so that Epsilon may complete its permitting requirements to obtain water necessary to drill the Proposed Wells" and Chesapeake's "refusal to otherwise cooperate with Epsilon so that it can drill the Proposed Wells.").

Thus, while Epsilon is correct that it *could have* proceeded with a declaratory judgment claim based on the language of the JOAs generally rather than the specific wells proposed in this case, the claim that it actually raised sought declaratory relief only with regard to the proposed wells.[3]  The court's decision that the terms of the well proposals did not conform to the timing requirements of the JOAs was therefore fatal both to Epsilon's claims for injunctive relief and its claim for declaratory relief.  Because the well proposals did not comply with the JOAs, any declaratory relief that the court could issue with respect to the proposals would amount to an advisory opinion.

---

[3] The question of whether the court would have subject matter jurisdiction to decide a declaratory judgment claim based on the language of the JOAs generally rather than discrete wells proposed by Epsilon is not currently before the court and has not previously been raised in this litigation.  Accordingly, nothing in this opinion shall be construed as a ruling that the court would have subject matter jurisdiction over such a claim.

The court's prior opinion denying the motion for preliminary injunction is not to the contrary. In that opinion, the court considered and rejected a threshold argument made by Chesapeake that Epsilon's declaratory judgment claim needed to be dismissed because it was not tied to an independent substantive claim. (*See* Doc. 80, pp. 20–23.)[4] The court noted that the Declaratory Judgment Act does not extend the jurisdiction of federal courts and that a party seeking a declaratory judgment therefore "must establish that there is a justiciable case or controversy giving rise to the declaratory judgment claim." (Doc. 80, p. 21.) The court reasoned, however, that a plaintiff seeking a declaratory judgment does not have to bring a substantive claim for the court to have jurisdiction over the declaratory judgment claim, as the standard instead is whether there exists "a case or controversy between the parties that could give rise to a coercive judgment action for which the court would have subject matter jurisdiction." (*Id.* at 21–22.) The court concluded that Epsilon's declaratory judgment claim met that standard both because its injunctive relief claim remained viable and because a hypothetical breach of contract claim between the parties would still present a justiciable case or

---

[4] Chesapeake's argument was based on the fact that Epsilon had brought a breach of contract claim in *Epsilon II* but that it had abandoned the breach of contract claim when it voluntarily dismissed *Epsilon II* at the direction of the Bankruptcy Court. (*See* Doc. 53 at 17–19.)

controversy notwithstanding the Bankruptcy Court's order for Epsilon to dismiss its breach of contract claim. (*Id.* at 22–23.)

The court's opinion therefore addressed the narrow jurisdictional issue of whether the dismissal of Epsilon's breach of contract claim deprived the court of jurisdiction to hear Epsilon's declaratory judgment claim. It did not address the scope of the declaratory relief that Epsilon sought. And as Epsilon's amended complaint makes clear, the scope of the declaratory judgment claim was limited to a request for declaratory relief relating to the proposed Craige Wells. (*See* Doc. 104, pp. 32–35.) In light of this limitation, dismissal of the declaratory judgment claim was appropriate because the proposals for the Craige Wells did not comply with the timing requirements of the JOAs and there was therefore no basis for the court to declare the parties' rights with respect to the proposed Craige Wells.

Finally, the additional evidence provided by Epsilon that Chesapeake has refused to cooperate with Epsilon's efforts to secure drilling permits does not alter the court's conclusion. The drilling permits that Epsilon seeks are related to renewed well proposals and not to the May 26, 2021 well proposals at issue in Epsilon's amended complaint. Thus, this evidence is not relevant to the motion for reconsideration that is currently before the court.

## CONCLUSION

For the foregoing reasons, Epsilon's motion for reconsideration is denied.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 18, 2022

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON ENERGY USA, INC.,     :    Civil No. 1:21-CV-00658

         : 

      Plaintiff,         : 

         : 

      v.            : 

         : 

CHESAPEAKE APPALACHIA, LLC,   : 

         : 

      Defendant.       :    Judge Jennifer P. Wilson

## ORDER

    **AND NOW**, on this 18th day of January, 2022, for the reasons stated in the

accompanying memorandum, **IT IS ORDERED THAT** Plaintiff's motion for

reconsideration (Doc. 123) is **DENIED**.

                                 s/Jennifer P. Wilson

                                 JENNIFER P. WILSON

                                 United States District Court Judge

                                 Middle District of Pennsylvania

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON ENERGY USA, INC.,

      Plaintiff,

    v.

CHESAPEAKE APPALACHIA, LLC,

      Defendant.

Civil Action No. 1:21-cv-00658

District Court Judge Wilson

## NOTICE OF APPEAL TO THE U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

Notice is hereby given that Plaintiff Epsilon Energy USA, Inc. ("Epsilon") appeals to the United States Court of Appeals for the Third Circuit from the following: (1) Opinion and Order of the United States District Court, Middle District of Pennsylvania, entered in this action on September 22, 2021 (ECF Nos. 121-122) granting Defendant Chesapeake Appalachia, LLC ("CHK")'s Motion to Dismiss, (2) Opinion and Order of the United States District Court, Middle District of Pennsylvania, entered in this action on January 18, 2022 (ECF Nos. 133-134) denying Epsilon's Motion for Reconsideration, and (3) all earlier adverse interlocutory orders and rulings antecedent to the final judgment.

Dated: February 15, 2022

Respectfully submitted,

/s/    *Gregory J. Krock*

Gregory J. Krock
Pa. I.D. No. 78308
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222-3142
(412) 667-6042 (Telephone)
(412) 667-6050 (Facsimile)
gkrock@mcguirewoods.com

Elizabeth M. Thomas
Pa. I.D. No. 322002
MCGUIREWOODS LLP
Fifth Third Center
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
(704) 373-8060 (Telephone)
(704) 343-2300 (Facsimile)
ethomas@mcguirewoods.com

Jonathan T. Blank
Admitted *Pro Hac Vice*
MCGUIREWOODS LLP
323 Second Street SE
Suite 700
Charlottesville, VA 22902
(434) 977-2500 (Telephone)
(434) 980-2222 (Facsimile)
jblank@mcguirewoods.com

*Counsel for Plaintiff*
*Epsilon Energy USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

**Notice of Appeal to the U.S. Court of Appeals for the Third Circuit** has been

electronically served on the parties via the CM/ECF filing system.


*/s/ Gregory J. Krock*
Gregory J. Krock

APPEAL,CLOSED,EMERG,HBG,SPADFORM,STANDARD

# United States District Court
## Middle District of Pennsylvania (Harrisburg)
## CIVIL DOCKET FOR CASE #: 1:21-cv-00658-JPW

Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC
Assigned to: Honorable Jennifer P. Wilson
Related Cases: 3:18-cv-01852-MEM
              1:21-cv-00433-JPW
              3:22-cv-00679-JPW
Case in other court:  USCA, 22-01280
                Third Circuit, 22-01376
Cause: 28:1332 Diversity-Other Contract

Date Filed: 04/09/2021
Date Terminated: 09/22/2021
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Epsilon Energy USA, Inc.**

represented by **Elizabeth M. Thomas**
McGuireWoods
201 North Tryon Street
Fifth Third Center
Suite 3000
Charlotte, NC 28202
704-373-8060
Fax: 704-353-6190
Email: ethomas@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory J. Krock**
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
18th Floor
Pittsburgh, PA 15222-3142
412-667-6042
Fax: 412-402-4162
Email: gkrock@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan T Blank**
McGuire Woods LLP
310 Fourth Street N.E.
Suite 300
Charlottesville, VA 22902
Email: jblank@mcguirewoods.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Appx0052

**Yasser A. Madriz**
McGuireWoods LLP
600 Travis Street
Suite 7500
Houston, TX 77002
832-255-6361
Fax: 832-214-9931
Email: ymadriz@mcguirewoods.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Chesapeake Appalachia, LLC**     represented by     **Daniel T. Brier**
Myers Brier & Kelly, LLP
425 Spruce Street
Suite 200
Scranton, PA 18503
570-342-6100
Email: dbrier@mbklaw.com
*ATTORNEY TO BE NOTICED*

**John B. Dempsey**
MYERS, BRIER & KELLY, LLP
425 Spruce Street
Suite 200
Scranton, PA 18503
570-342-6100
Email: jdempsey@mbklaw.com
*ATTORNEY TO BE NOTICED*

**Nicholas F. Kravitz**
Myers, Brier & Kelly, LLP
425 Spruce Street
Suite 200
Scranton, PA 18505
570-342-6100
Email: nkravitz@mbklaw.com
*ATTORNEY TO BE NOTICED*

**Richard L Armezzani**
Myers, Brier & Kelly, LLP
425 Spruce Street
Suite 200
Scranton, PA 18503
570-342-6100
Email: rarmezzani@mbklaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/09/2021 | 2 | MOTION to File Document Under Seal 1 Complaint filed by Epsilon Energy USA, Inc. (pjr) (Entered: 04/12/2021) |
| 04/09/2021 | 4 | REDACTED COMPLAINT filed by Epsilon Energy USA, Inc. 1 Complaint. (Attachments: # 1 Exhibit 1, # 2 Exhibit B, # 3 Exhibit, # 4 Exhibit A, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(pjr) (Entered: 04/12/2021) |
| 04/09/2021 | 5 | MOTION for Preliminary Injunction filed by Epsilon Energy USA, Inc.(pjr) (Entered: 04/12/2021) |
| 04/09/2021 | 6 | BRIEF IN SUPPORT re 5 MOTION for Preliminary Injunction filed by Epsilon Energy USA, Inc. (Attachments: # 1 Exhibit 5)(pjr) # 2 Model Operating Agreement, # 3 Exhibits, # 4 Exhibit 3, # 5 Exhibit A1, # 6 Exhibit 7, # 7 Exhibit) (pjr). (Attachment 1 replaced on 5/5/2021) (ve). (Entered: 04/12/2021) |
| 04/09/2021 | 7 | MOTION for Leave to Serve Limited Expedited Discovery filed by Epsilon Energy USA, Inc. (Attachments: # 1 Proposed Order)(pjr) (Entered: 04/12/2021) |
| 04/09/2021 | 8 | BRIEF IN SUPPORT re 7 MOTION for Discovery filed by Epsilon Energy USA, Inc. (Attachments: # 1 Exhibit A)(pjr) (Entered: 04/12/2021) |
| 04/09/2021 | 9 | DISCLOSURE STATEMENT PURSUANT TO FRCP 7.1 filed by Epsilon Energy USA, Inc. (pjr) (Entered: 04/12/2021) |
| 04/12/2021 | | SPECIAL ADMISSION FORM for Jonathan Blank can be obtained at http://www.pamd.uscourts.gov/forms/petition-admission-practice. (pjr) (Entered: 04/12/2021) |
| 04/12/2021 | 10 | Summons Issued as to Chesapeake Appalachia, LLC and provided TO ATTORNEY ELECTRONICALLY VIA ECF for service on Defendant(s)in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure. (NOTICE TO ATTORNEYS RECEIVING THE SUMMONS ELECTRONICALLY: You must print the summons and the attachment when you receive it in your e-mail and serve the complaint on all defendants in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure). (Attachments: # 1 Summons Packet) (pjr) (Entered: 04/12/2021) |
| 04/12/2021 | 11 | ORDER granting 2 Motion to Seal Documents. Signed by Honorable Jennifer P. Wilson on 4/12/2021 (ve) (Entered: 04/12/2021) |
| 04/12/2021 | 13 | SCHEDULING ORDER - IT IS ORDERED AS FOLLOWS:1. Plaintiff shall immediately effect service of the complaint, the motion for preliminary injunction, the motion for expedited discovery, and this order upon Defendant, and, when identified, Defendants counsel.2. A telephonic status conference is scheduled for Monday, April 19, 2021 at 10:00 a.m. Plaintiffs counsel shall arrange a call-in number and pass code, and provide that information to the court and opposing counsel on or before April 16, 2021. See order for further details. Signed by Honorable Jennifer P. Wilson on 4/12/2021. (ve) (Entered: 04/12/2021) |
| 04/15/2021 | 14 | SUMMONS Returned Executed by Epsilon Energy USA, Inc. upon Chesapeake Appalachia, LLC and served on 4/13/2021, answer due 5/4/2021. (jw) (Entered: 04/15/2021) |
| 04/15/2021 | 15 | Letter from Gregory J. Krock on behalf of Epsilon Energy USA, Inc. *as Brief in Support of Preliminary Injunction Involving SRBC Commitment Letter*. (Attachments: # 1 Exhibit(s) A)(Krock, Gregory) (Entered: 04/15/2021) |
| 04/15/2021 | 16 | ORDER - AND NOW, on this 15th day of April, 2021, upon consideration of Plaintiffs |

| | | |
|---|---|---|
| | | letter brief regarding the SRBC commitment letter issue that was previously discussed during a status conference on March 26, 2021, see Doc. 15 , IT IS ORDERED AS FOLLOWS: 1. Defendant may file a letter brief in opposition to Plaintiffs letter brief on or before April 19, 2021 at 5:00 p.m. Plaintiff may then file a reply letter brief on or before April 20, 2021 at 5:00 p.m. See Order for further details. Signed by Honorable Jennifer P. Wilson on 4/15/21. (dmn) (Entered: 04/15/2021) |
| 04/16/2021 | 17 | NOTICE of Appearance by Daniel T. Brier on behalf of Chesapeake Appalachia, LLC. (Brier, Daniel) (Entered: 04/16/2021) |
| 04/16/2021 | 18 | NOTICE of Appearance by John B. Dempsey on behalf of Chesapeake Appalachia, LLC. (Dempsey, John) (Entered: 04/16/2021) |
| 04/16/2021 | 19 | NOTICE of Appearance by Nicholas F. Kravitz on behalf of Chesapeake Appalachia, LLC. (Kravitz, Nicholas) (Entered: 04/16/2021) |
| 04/16/2021 | 20 | NOTICE of Appearance by Richard L Armezzani on behalf of Chesapeake Appalachia, LLC. (Armezzani, Richard) (Entered: 04/16/2021) |
| 04/16/2021 | 21 | PETITION FOR SPECIAL ADMISSION (PRO HAC VICE) by Gregory J. Krock on behalf of Epsilon Energy USA, Inc. Attorney Jonathan Blank is seeking special admission. Filing fee $ 50, receipt number APAMDC-5547938.. (Krock, Gregory) (Entered: 04/16/2021) |
| 04/16/2021 | | Receipt of payment from BUSINESS RECORDS MANAGEMENT in the amount of $402.00 for CIVIL FILING FEE- NON-PRISONER. Transaction posted on 4/15/2021. Receipt number 111026975 processed by bdanilow. (jjs) (Entered: 04/16/2021) |
| 04/16/2021 | 22 | MOTION to Dismiss *for Failure to Join Necessary and Indispensible Parties* by Chesapeake Appalachia, LLC. (Attachments: # 1 Proposed Order)(Brier, Daniel) (Entered: 04/16/2021) |
| 04/16/2021 | 23 | BRIEF IN SUPPORT re 22 MOTION to Dismiss *for Failure to Join Necessary and Indispensible Parties* filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Exhibit(s) A - JOA Parties' Responses, # 2 Exhibit(s) B - Equinor Letter to Epsilon, # 3 Exhibit(s) C - CHK's Koromlan Proposal, # 4 Exhibit(s) D - CHK Letters dated 3-3-21, # 5 Exhibit(s) E - Letters dated 3-8-21, # 6 Exhibit(s) F - Answer, # 7 Appendix Unpublished Opinions) (Brier, Daniel) (Entered: 04/16/2021) |
| 04/16/2021 | 24 | NOTICE by Chesapeake Appalachia, LLC *of Related Filings in Form of Petition for Supersedeas* (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C) (Dempsey, John) (Entered: 04/16/2021) |
| 04/19/2021 | 26 | SCHEDULING ORDER re: briefing schedules and scheduling a telephonic oral argument on the SRBC commitment letter issue, see Docs. 15-16, is SCHEDULED for April 26, 2021 at 2:00 p.m. Counsel shall dial in for the oral argument using the call-in number 877-336-1828 and the access code 2529544. A hearing on Plaintiffs motion for preliminary injunction is SCHEDULED for May 11, 2021 at 9:00 a.m. The court has also reserved May 12, 2021 for the hearing. All logistics for the hearing, including whether the hearing will proceed in person or remotely, shall be determined at a later date. Signed by Honorable Jennifer P. Wilson on 4/19/2021. (ve) (Entered: 04/19/2021) |
| 04/19/2021 | 27 | Letter from Chesapeake Appalachia, LLC . (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D)(Dempsey, John) (Entered: 04/19/2021) |
| 04/19/2021 | 28 | AMENDED DOCUMENT by Chesapeake Appalachia, LLC. *Corrected SRBC Commitment Letter*. (Dempsey, John) (Entered: 04/19/2021) |
| 04/20/2021 | | DOCKET ANNOTATION: Petitioner, Jonathan Blank, and associate counsel bar status |

| | | |
|---|---|---|
| | | verified. (pjr) (Entered: 04/20/2021) |
| 04/20/2021 | 29 | Letter from Gregory J. Krock on behalf of Epsilon Energy USA, Inc. . (Attachments: # 1 Exhibit(s) 1)(Krock, Gregory) (Entered: 04/20/2021) |
| 04/21/2021 | 30 | SPECIAL ADMISSIONS FORM APPROVED as to Jonathan T. Blank, Esq. Signed by Honorable Jennifer P. Wilson on 4/21/2021. (ve) (Entered: 04/21/2021) |
| 04/21/2021 | 31 | BRIEF IN OPPOSITION re 22 MOTION to Dismiss *for Failure to Join Necessary and Indispensible Parties* filed by Epsilon Energy USA, Inc..(Krock, Gregory) (Entered: 04/21/2021) |
| 04/23/2021 | 32 | REPLY BRIEF re 22 MOTION to Dismiss *for Failure to Join Necessary and Indispensible Parties* filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Exhibit(s) A - Williams Declaration, # 2 Exhibit(s) B - Transcript Pages, # 3 Appendix Unpublished Opinions)(Dempsey, John) (Entered: 04/23/2021) |
| 04/26/2021 | 33 | MEMORANDUM (Order to follow as separate docket entry) re 22 MOTION to Dismiss *for Failure to Join Necessary and Indispensible Parties* filed by Chesapeake Appalachia, LLC. Signed by Honorable Jennifer P. Wilson on 4/26/2021. (ve) (Entered: 04/26/2021) |
| 04/26/2021 | 34 | ORDER (Memorandum filed previously as a separate entry) denying 22 Motion to Dismiss. Signed by Honorable Jennifer P. Wilson on 4/26/2021 (ve) (Entered: 04/26/2021) |
| 04/26/2021 | 35 | *Corrected* MEMORANDUM re 34 Order on Motion to Dismiss. Signed by Honorable Jennifer P. Wilson on 4/26/2021. (ve) (Entered: 04/26/2021) |
| 04/26/2021 | 36 | MOTION to File Document Under Seal filed by Epsilon Energy USA, Inc.(pjr) (Entered: 04/26/2021) |
| 04/26/2021 | 37 | SEALED DOCUMENT PURSUANT TO ORDER 43 . (Attachments: # 1 Proposed Order, # 2 Noticre, # 3 Cover letter, # 4 Brief in Support of Motion) (pjr) Modified on 4/27/2021 (ve). (Entered: 04/26/2021) |
| 04/26/2021 | 38 | NOTICE by Epsilon Energy USA, Inc. re 8 Brief in Support *Updated Exhibit* (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B)(Krock, Gregory) (Entered: 04/26/2021) |
| 04/26/2021 | 40 | COURT REPORTER NOTES OF PROCEEDINGS filed by Lori A. Fausnaught, RMR/CRR of telephonic oral argument before the Honorable Judge Jennifer P. Wilson on April 26, 2021. In accordance with 28 U.S.C. Section 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Middle District of PA held telephonically before the Honorable Judge Jennifer P. Wilson on April 26, 2021. By s/ Lori A. Fausnaught, RMR/CRR. (Court Reporter Notes are viewable by court staff only). (Fausnaught, Lori) (Entered: 04/26/2021) |
| 04/26/2021 | 41 | BRIEF IN OPPOSITION re 7 MOTION for Discovery filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Appendix Unpublished Opinions)(Kravitz, Nicholas) (Entered: 04/26/2021) |
| 04/26/2021 | 42 | NOTICE by Epsilon Energy USA, Inc. re 38 Notice *Revised* (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B)(Krock, Gregory) (Entered: 04/26/2021) |
| 04/27/2021 | 43 | ORDER granting 36 Motion to Seal Document. Signed by Honorable Jennifer P. Wilson on 4/27/2021 (ve) (Entered: 04/27/2021) |
| 04/27/2021 | 44 | MEMORANDUM (Order to follow as separate docket entry) re 15 Letter. Signed by Honorable Jennifer P. Wilson on 4/27/2021. (ve) (Entered: 04/27/2021) |
| 04/27/2021 | 45 | ORDER (memorandum filed previously as separate docket entry) - IT IS ORDERED |

Appx0056

| | | THAT Plaintiffs request for preliminary injunctive relief compelling Defendant to sign the SRBC Letter,1 see Doc. 15, is DENIED. Signed by Honorable Jennifer P. Wilson on 4/27/2021. (ve) (Entered: 04/27/2021) |
|---|---|---|
| 04/28/2021 | 46 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of proceedings, Emergency Telephonic Oral Argument held on April 26, 2021 before the Honorable Judge Jennifer P. Wilson. Court Reporter Lori A. Fausnaught, RMR/CRR, Telephone number 570.847.6295. Lori_Fausnaught@pamd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/19/2021. Redacted Transcript Deadline set for 6/1/2021. Release of Transcript Restriction set for 7/27/2021. (Fausnaught, Lori) (Entered: 04/28/2021) |
| 04/28/2021 | 47 | REPLY BRIEF re 7 MOTION for Discovery filed by Epsilon Energy USA, Inc..(Krock, Gregory) (Entered: 04/28/2021) |
| 04/30/2021 | 48 | VERBAL ORDER - AND NOW, on this 30th day of April, 2021, the court hereby ORDERS that the hearing on Plaintiff's motion for preliminary injunction scheduled for May 11 and 12, 2021, shall be held in person in Courtroom #4 of the Ronald Reagan Federal Building in Harrisburg, Pennsylvania. Signed by Honorable Jennifer P. Wilson on 4/30/2021. **(Text-only entry; no PDF document will issue. This text-only entry constitutes the order of the court or notice on the matter.)**(ve) (Entered: 04/30/2021) |
| 04/30/2021 | 49 | MOTION to Exceed Page Limitation by Chesapeake Appalachia, LLC. (Attachments: # 1 Proposed Order)(Dempsey, John) (Entered: 04/30/2021) |
| 05/03/2021 | 50 | MEMORANDUM (Order to follow as separate docket entry) re 7 MOTION for Discovery filed by Epsilon Energy USA, Inc. Signed by Honorable Jennifer P. Wilson on 5/3/2021. (ve) (Entered: 05/03/2021) |
| 05/03/2021 | 51 | ORDER (Memorandum filed previously as a separate entry) denying 7 Motion for Expedited Discovery. Signed by Honorable Jennifer P. Wilson on 5/3/2021 (ve) (Entered: 05/03/2021) |
| 05/03/2021 | 52 | ORDER granting 49 Motion for Leave to File Excess Pages. Signed by Honorable Jennifer P. Wilson on 5/3/2021 (ve) (Entered: 05/03/2021) |
| 05/03/2021 | 53 | BRIEF IN OPPOSITION re 5 MOTION for Preliminary Injunction filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Exhibit(s) A - Bankruptcy Order, # 2 Exhibit(s) B - EHB Order, # 3 Exhibit(s) C - Haskins Declaration, # 4 Exhibit(s) D - Reservation of Rights, # 5 Appendix Unpublished Opinions)(Dempsey, John) (Entered: 05/03/2021) |
| 05/07/2021 | 54 | MOTION to File Document Under Seal filed by Epsilon Energy USA, Inc..(ve) (Entered: 05/07/2021) |
| 05/07/2021 | 55 | DOCUMENT(S) PENDING SEALING DECISION - Unredacted Reply Brief. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5, # 6 Exhibit(s) 6, # 7 Exhibit(s) 7, # 8 Exhibit(s) 8, # 9 Exhibit(s) 9, # 10 Declaration, # 11 Proposed Order, # 12 Redacted Reply Brief) (ve) (Entered: 05/07/2021) |
| 05/07/2021 | 56 | MOTION to Strike *Reply Brief and Bar Admission of Extrinsic Evidence and/or for Continuance of Preliminary Injunction Hearing* by Chesapeake Appalachia, LLC. (Attachments: # 1 Proposed Order)(Dempsey, John) (Entered: 05/07/2021) |
| 05/07/2021 | 57 | BRIEF IN SUPPORT re 56 MOTION to Strike *Reply Brief and Bar Admission of Extrinsic Evidence and/or for Continuance of Preliminary Injunction Hearing* filed by Chesapeake Appalachia, LLC.(Dempsey, John) (Entered: 05/07/2021) |

| | | |
|---|---|---|
| 05/07/2021 | 58 | Letter from Chesapeake Appalachia, L.L.C. . (Brier, Daniel) (Entered: 05/07/2021) |
| 05/07/2021 | 59 | VERBAL ORDER - AND NOW, on this 7th day of May, 2021, IT IS ORDERED THAT a telephone status conference is SCHEDULED for May 7, 2021, at 4:00 p.m. The parties shall call-in to the conference call number 877-336-1828 using the access code 2529544. Signed by Honorable Jennifer P. Wilson on 5/7/2021. (ve) (Entered: 05/07/2021) |
| 05/08/2021 | 61 | ORDER granting 54 Motion to Seal Document 54 MOTION to File Document Under Seal Signed by Honorable Jennifer P. Wilson on 05/08/21 (pjr) (Entered: 05/08/2021) |
| 05/08/2021 | 62 | IT IS ORDERED AS FOLLOWS: 1. On or before Monday, May 10, 2021 at 9:00 a.m., Epsilon shall file a brief in opposition to the portion of Chesapeakes motion that seeks to strike the reply brief in support of Epsilons motion for preliminary injunction. Chesapeake may file a reply brief on this issue on or before Wednesday, May 12, 2021 at 5:00 p.m. 2. On or before Monday, May 10, 2021 at 9:00 a.m., Epsilon shall file a letter indicating whether it has chosen to (1) forego expert testimony and proceed with the preliminary injunction hearing as scheduled on May 11, 2021 and May 12, 2021; or (2) continue the preliminary injunction hearing to July 27, 2021 through July 29, 2021. Signed by Honorable Jennifer P. Wilson on 05/08/21. (pjr) (Main Document 62 replaced on 5/10/2021) (ve). (Entered: 05/08/2021) |
| 05/08/2021 | 69 | REPLY BRIEF re 5 MOTION for Preliminary Injunction filed by Epsilon Energy USA, Inc..(ve) (Entered: 05/10/2021) |
| 05/09/2021 | 63 | Letter from Gregory J. Krock on behalf of Epsilon Energy USA, Inc. . (Krock, Gregory) (Entered: 05/09/2021) |
| 05/09/2021 | 64 | MOTION for Reconsideration re 62 Order,, by Epsilon Energy USA, Inc.. (Attachments: # 1 Proposed Order)(Krock, Gregory) (Entered: 05/09/2021) |
| 05/09/2021 | 65 | BRIEF IN SUPPORT re 64 MOTION for Reconsideration re 62 Order,, filed by Epsilon Energy USA, Inc.. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B)(Krock, Gregory) (Entered: 05/09/2021) |
| 05/09/2021 | 66 | NOTICE by Epsilon Energy USA, Inc. re 64 MOTION for Reconsideration re 62 Order,, *Errata* (Krock, Gregory) (Entered: 05/09/2021) |
| 05/09/2021 | 67 | BRIEF IN OPPOSITION re 56 MOTION to Strike *Reply Brief and Bar Admission of Extrinsic Evidence and/or for Continuance of Preliminary Injunction Hearing* filed by Epsilon Energy USA, Inc..(Krock, Gregory) (Entered: 05/09/2021) |
| 05/10/2021 | 68 | BRIEF IN OPPOSITION re 64 MOTION for Reconsideration re 62 Order,, filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Exhibit(s) A - Reservation of Rights, # 2 Exhibit(s) B - Bankr. Order 4-8-21, # 3 Appendix Unpublished Opinions)(Dempsey, John) (Entered: 05/10/2021) |
| 05/10/2021 | | DOCKET ANNOTATION: Counsel is notified that the Order 62 has been replaced with the correct document. (ve) (Entered: 05/10/2021) |
| 05/10/2021 | 70 | PETITION FOR SPECIAL ADMISSION (PRO HAC VICE) by Gregory J. Krock on behalf of Epsilon Energy USA, Inc. Attorney Yasser Madriz is seeking special admission. Filing fee $ 50, receipt number APAMDC-5571444.. (Krock, Gregory) (Entered: 05/10/2021) |
| 05/10/2021 | 71 | ORDER denying 64 Motion for Reconsideration. Signed by Honorable Jennifer P. Wilson on 5/10/2021 (ve) (Entered: 05/10/2021) |
| 05/10/2021 | 72 | ANSWER to Complaint *and Affirmative Defenses* by Chesapeake Appalachia, LLC. (Dempsey, John) (Entered: 05/10/2021) |

| 05/11/2021 | | DOCKET ANNOTATION: Petitioner, Yasser Madriz, and Associate Counsel bar status verified (pjr) (Entered: 05/11/2021) |
|---|---|---|
| 05/11/2021 | 73 | SPECIAL ADMISSIONS FORM APPROVED as to Yasser A. Madriz, Esq. Signed by Honorable Jennifer P. Wilson on 5/11/2021. (ve) (Entered: 05/11/2021) |
| 05/12/2021 | 75 | COURT REPORTER NOTES OF PROCEEDINGS filed by Lori A. Fausnaught, RMR/CRR;Lori_Fausnaught@pamd.uscourts.gov of Preliminary Injunction Hearing before the Honorable Judge Jennifer P. Wilson on May 11, 2021 (Day 1). In accordance with 28 U.S.C. Section 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Middle District of PA before the Honorable Judge Jennifer P. Wilson on May 11, 2021 (Day 1). By s/ Lori A. Fausnaught, RMR/CRR (Court Reporter Notes are viewable by court staff only). (Fausnaught, Lori) (Entered: 05/12/2021) |
| 05/12/2021 | 76 | ORDER - AND NOW, on this 12th day of May, 2021, upon consideration of Defendants oral motion for extension of time during the preliminary injunction hearing on May 12, 2021, IT IS ORDERED THAT the motion is GRANTED. The deadline for Defendant to file a reply brief in support of its motion to strike (Doc. 56) is EXTENDED to May 13, 2021 at 5:00 p.m. Signed by Honorable Jennifer P. Wilson on 5/12/2021. (ve) (Entered: 05/12/2021) |
| 05/13/2021 | 78 | REPLY BRIEF re 56 MOTION to Strike *Reply Brief and Bar Admission of Extrinsic Evidence and/or for Continuance of Preliminary Injunction Hearing* filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Appendix Unpublished Opinions)(Dempsey, John) (Entered: 05/13/2021) |
| 05/14/2021 | 79 | Exhibit List re: PI hearing. (ve) (Entered: 05/14/2021) |
| 05/14/2021 | 80 | MEMORANDUM (Order to follow as separate docket entry) re 56 MOTION to Strike *Reply Brief and Bar Admission of Extrinsic Evidence and/or for Continuance of Preliminary Injunction Hearing* filed by Chesapeake Appalachia, LLC, 5 MOTION for Preliminary Injunction filed by Epsilon Energy USA, Inc. Signed by Honorable Jennifer P. Wilson on 5/14/2021. (ve) (Entered: 05/14/2021) |
| 05/14/2021 | 81 | ORDER (Memorandum filed previously as a separate entry) - IT IS ORDERED THAT Plaintiffs motion for preliminary injunction (Doc. 5) is DENIED and Defendants motion to strike (Doc. 56) is GRANTED IN PART AND DENIED IN PART. Signed by Honorable Jennifer P. Wilson on 5/14/2021 (ve) (Entered: 05/14/2021) |
| 05/14/2021 | 82 | SCHEDULING ORDER - IT IS ORDERED THAT: The initial case management conference pursuant to Federal Rule of Civil Procedure 16 will be conducted via telephone by the court on June 7, 2021, at 11:15 a.m. Plaintiffs counsel shall initiate the call when all parties are on the line to chambers at (717) 221-3970. See order for further details. Signed by Honorable Jennifer P. Wilson on 5/14/2021. (Attachments: # 1 Case Management Calendar 2020 - 2022, # 2 Case Management Calendar 2022 - 2024)(ve) (Entered: 05/14/2021) |
| 05/14/2021 | 83 | CIVIL PRACTICE ORDER. Signed by Honorable Jennifer P. Wilson on 5/14/2021. (ve) (Entered: 05/14/2021) |
| 05/14/2021 | 84 | COURT REPORTER NOTES OF PROCEEDINGS filed by Lori A. Fausnaught, RMR/CRR (Lori_Fausnaught@pamd.uscourts.gov) of Preliminary Injunction (Volume II) before the Honorable Jennifer P. Wilson on May 12, 2021. In accordance with 28 U.S.C. Section 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Middle District of PA before the Honorable Judge Jennifer P. Wilson on May 12, 2021. By s/ Lori A. Fausnaught, |

| | | RMR/CRR. (Court Reporter Notes are viewable by court staff only). (Fausnaught, Lori) (Entered: 05/14/2021) |
|---|---|---|
| 05/17/2021 | 85 | Letter from Chesapeake Appalachia, L.L.C. . (Brier, Daniel) (Entered: 05/17/2021) |
| 05/17/2021 | 86 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of proceedings, Preliminary Injunction Hearing (Volume I) held on May 11, 2021 before the Honorable Judge Jennifer P. Wilson. Court Reporter Lori A. Fausnaught, RMR/CRR, Telephone number 570.847.6295, Lori_Fausnaught@pamd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/7/2021. Redacted Transcript Deadline set for 6/17/2021. Release of Transcript Restriction set for 8/16/2021. (Fausnaught, Lori) (Entered: 05/17/2021) |
| 05/17/2021 | 87 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of proceedings, Preliminary Injunction Hearing (Volume II) held on May 12, 2021 before the Honorable Judge Jennifer P. Wilson. Court Reporter Lori A. Fausnaught, RMR/CRR, Telephone number 570.847.6295, Lori_Fausnaught@pamd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/7/2021. Redacted Transcript Deadline set for 6/17/2021. Release of Transcript Restriction set for 8/16/2021. (Fausnaught, Lori) (Entered: 05/17/2021) |
| 05/18/2021 | 88 | ORDER re 85 Letter - IT IS ORDERED THAT the request is GRANTED. The Clerk of Court is directed to docket a corrected version of the memorandum that has been corrected in accordance with Defendants request. Signed by Honorable Jennifer P. Wilson on 5/18/2021. (ve) (Entered: 05/18/2021) |
| 05/18/2021 | 89 | *Corrected* MEMORANDUM re 5 Motion for Preliminary Injunction; 56 Motion to Strike Reply Brief. Signed by Honorable Jennifer P. Wilson on 5/18/2021. (ve) (Entered: 05/18/2021) |
| 05/28/2021 | 90 | CASE MANAGEMENT PLAN by Epsilon Energy USA, Inc.. (Krock, Gregory) (Entered: 05/28/2021) |
| 06/04/2021 | 91 | MOTION to File Document Under Seal filed by Epsilon Energy USA, Inc.(pjr) (Entered: 06/04/2021) |
| 06/04/2021 | 92 | DOCUMENT(S) PENDING SEALING DECISION. (Attachments: # 1 BIS M/Seal, # 2 Prop. Sealing Order, # 3 Unred. Am. Comp., # 4 Ex. 5 Set. Agree., # 5 M/Amend, # 6 Prop. Or. M/Amend, # 7 Ex. A Red. Am. Comp., # 8 BIS M/Amend Comp., # 9 Ex. 1 Op. Agree., # 10 Ex. 2 Op. Agree., # 11 Ex. 3 Declaration, # 12 Farmout Agree., # 13 Ex. 5-15 Combined, # 14 Ex. 16-21 Combined) (pjr) (Entered: 06/04/2021) |
| 06/07/2021 | 94 | SCHEDULING ORDER - IT IS ORDERED THAT the case management conference is CONTINUED to June 29, 2021 at 9:00 a.m. Counsel for Plaintiff shall initiate the conference by calling chambers at (717) 221-3970 after all parties are on the line. Signed by Honorable Jennifer P. Wilson on 6/7/2021. (ve) (Entered: 06/07/2021) |
| 06/07/2021 | 95 | ORDER granting 91 Motion to Seal Document. SEE ORDER FOR FURTHER DETAILS. Signed by Honorable Jennifer P. Wilson on 6/7/2021 (ve) (Entered: 06/07/2021) |
| 06/07/2021 | 96 | MOTION to Amend/Correct 4 Complaint by Epsilon Energy USA, Inc. (Attachments: # 1 Redacted Proposed Amended Complaint, # 2 Proposed Order, # 3 Unredacted Proposed |

| | | Amended Complaint, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6-15, # 10 Exhibit 16-21)(ve) (Entered: 06/07/2021) |
|---|---|---|
| 06/07/2021 | 97 | BRIEF IN SUPPORT re 96 MOTION to Amend/Correct 4 Complaint filed by Epsilon Energy USA, Inc..(ve) (Entered: 06/07/2021) |
| 06/18/2021 | 98 | BRIEF IN OPPOSITION re 96 MOTION to Amend/Correct 4 Document Filed filed by Chesapeake Appalachia, LLC.(Dempsey, John) (Entered: 06/18/2021) |
| 06/23/2021 | 99 | VERBAL ORDER - AND NOW, on this 23rd day of June, 2021, IT IS ORDERED THAT the case management conference scheduled for June 29, 2021, at 9:00 a.m. is RESCHEDULED for June 29, 2021, at 10:30 a.m. Counsel for Plaintiff shall initiate the conference call by calling chambers at (717) 221-3970 once all parties are on the line. Issued by the Honorable Jennifer P. Wilson on June 23, 2021. (kjn) (Entered: 06/23/2021) |
| 07/01/2021 | 101 | REPLY BRIEF re 96 MOTION to Amend/Correct 4 Document Filed filed by Epsilon Energy USA, Inc.. (Attachments: # 1 Exhibit(s) 1)(Krock, Gregory) (Entered: 07/01/2021) |
| 07/02/2021 | 102 | MEMORANDUM (Order to follow as separate docket entry) re 96 MOTION to Amend/Correct 4 Document Filed filed by Epsilon Energy USA, Inc. Signed by Honorable Jennifer P. Wilson on 7/2/2021. (ve) (Entered: 07/02/2021) |
| 07/02/2021 | 103 | ORDER (memorandum filed previously as separate docket entry) granting 96 MOTION to Amend/Correct 4 Document Filed filed by Epsilon Energy USA, Inc. A case management conference will be conducted via telephone on July 14, 2021 at 8:30 a.m. Counsel for Plaintiff shall initiate the call by calling chambers at (717) 221-3970 after all parties are on the line. Signed by Honorable Jennifer P. Wilson on 7/2/2021. (ve) (Entered: 07/02/2021) |
| 07/02/2021 | 104 | AMENDED COMPLAINT against Chesapeake Appalachia, LLC. filed by Epsilon Energy USA, Inc..(ve) (Entered: 07/02/2021) |
| 07/02/2021 | 105 | UNREDACTED AMENDED COMPLAINT. (ve) (Entered: 07/02/2021) |
| 07/07/2021 | 106 | CASE MANAGEMENT PLAN *AMENDED* by Epsilon Energy USA, Inc.. (Krock, Gregory) (Entered: 07/07/2021) |
| 07/14/2021 | 108 | CASE MANAGEMENT ORDER. Signed by Honorable Jennifer P. Wilson on 7/14/2021. (ve) (Entered: 07/14/2021) |
| 07/16/2021 | 109 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint* by Chesapeake Appalachia, LLC. (Attachments: # 1 Proposed Order, # 2 Exhibit(s) A, # 3 Exhibit(s) B, # 4 Exhibit(s) C)(Dempsey, John) (Entered: 07/16/2021) |
| 07/30/2021 | 110 | BRIEF IN SUPPORT re 109 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint* filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Appendix Of Unpublished Opinions)(Dempsey, John) (Entered: 07/30/2021) |
| 08/05/2021 | 111 | BRIEF IN OPPOSITION re 109 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint* filed by Epsilon Energy USA, Inc.. (Attachments: # 1 Exhibit(s) A)(Krock, Gregory) (Entered: 08/05/2021) |
| 08/19/2021 | 112 | REPLY BRIEF re 109 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint* filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Appendix Of Unpublished Opinions)(Dempsey, John) (Entered: 08/19/2021) |
| 08/24/2021 | 113 | MOTION for Hearing re 109 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint* by Epsilon Energy USA, Inc.. (Attachments: # 1 Proposed Order)(Krock, Gregory) (Entered: 08/24/2021) |

Appx0061

| 09/10/2021 | [114](#) | MOTION for Judgment on the Pleadings by Epsilon Energy USA, Inc.. (Attachments: # 1 Proposed Order)(Krock, Gregory) (Entered: 09/10/2021) |
| 09/10/2021 | [115](#) | BRIEF IN SUPPORT re 114 MOTION for Judgment on the Pleadings filed by Epsilon Energy USA, Inc.. (Attachments: # 1 Unpublished Opinion(s))(Krock, Gregory) (Entered: 09/10/2021) |
| 09/10/2021 | [116](#) | MOTION for Summary Judgment by Epsilon Energy USA, Inc.. (Attachments: # 1 Proposed Order)(Krock, Gregory) (Entered: 09/10/2021) |
| 09/10/2021 | [117](#) | BRIEF IN SUPPORT re 116 MOTION for Summary Judgment filed by Epsilon Energy USA, Inc.. (Attachments: # 1 Unpublished Opinion(s))(Krock, Gregory) (Entered: 09/10/2021) |
| 09/10/2021 | [118](#) | STATEMENT OF FACTS filed by Epsilon Energy USA, Inc.. (Attachments: # 1 Exhibit(s) Index to Exhibits, # 2 Exhibit(s) 1, # 3 Exhibit(s) 2, # 4 Exhibit(s) 3, # 5 Exhibit(s) 4, # 6 Exhibit(s) 5, # 7 Exhibit(s) 6, # 8 Exhibit(s) 7, # 9 Exhibit(s) 8, # 10 Exhibit(s) 9, # 11 Exhibit(s) 10, # 12 Exhibit(s) 11, # 13 Exhibit(s) 12, # 14 Exhibit(s) 13, # 15 Exhibit(s) 14, # 16 Exhibit(s) 15, # 17 Exhibit(s) 16, # 18 Exhibit(s) 17, # 19 Exhibit(s) 18, # 20 Exhibit(s) 19, # 21 Exhibit(s) 20, # 22 Exhibit(s) 21, # 23 Exhibit(s) 22, # 24 Exhibit(s) 23, # 25 Exhibit(s) 24, # 26 Exhibit(s) 25, # 27 Exhibit(s) 26, # 28 Exhibit(s) 27, # 29 Exhibit(s) 28, # 30 Exhibit(s) 29, # 31 Exhibit(s) 30, # 32 Exhibit(s) 31, # 33 Exhibit(s) 32, # 34 Exhibit(s) 33, # 35 Exhibit(s) 34, # 36 Exhibit(s) 35, # 37 Exhibit(s) 36)(Krock, Gregory) (Entered: 09/10/2021) |
| 09/21/2021 | [119](#) | Letter from Chesapeake Appalachia, LLC *to Judge Jennifer P. Wilson*. (Brier, Daniel) (Entered: 09/21/2021) |
| 09/21/2021 | 120 | VERBAL ORDER - AND NOW, on this 21st day of September, 2021, IT IS ORDERED THAT a telephone conference is SCHEDULED for September 23, 2021, at 10:30 a.m. Plaintiff's counsel shall initiate the call when all parties are on the line to chambers at 717-221-3970. Signed by Honorable Jennifer P. Wilson on 9/21/2021. **(Text-only entry; no PDF document will issue. This text-only entry constitutes the order of the court or notice on the matter.)** (ve) (Entered: 09/21/2021) |
| 09/22/2021 | [121](#) | MEMORANDUM (Order to follow as separate docket entry) re 104 Amended Complaint filed by Epsilon Energy USA, Inc., 113 MOTION for Hearing re 109 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint* filed by Epsilon Energy USA, Inc., 109 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint* filed by Chesapeake Appalachia, LLC. Signed by Honorable Jennifer P. Wilson on 9/22/2021. (ve) (Entered: 09/22/2021) |
| 09/22/2021 | [122](#) | ORDER (Memorandum filed previously as a separate entry) - IT IS ORDERED AS FOLLOWS: 1. Defendants motion to dismiss (Doc. 109) is GRANTED. 2. Plaintiffs amended complaint (Doc. 104) is DISMISSED without further leave to amend. 3. Plaintiffs motion for oral argument (Doc. 113) is DENIED. 4. The telephone conference scheduled for September 23, 2021, at 10:30 a.m. is CANCELLED. 5. The Clerk of Court is directed to close this case. Signed by Honorable Jennifer P. Wilson on 9/22/2021 (ve) (Entered: 09/22/2021) |
| 10/04/2021 | [123](#) | MOTION for Reconsideration re 121 Memorandum (Order to follow as separate docket entry), by Epsilon Energy USA, Inc.. (Attachments: # 1 Proposed Order)(Krock, Gregory) (Entered: 10/04/2021) |
| 10/04/2021 | [124](#) | BRIEF IN SUPPORT re 123 MOTION for Reconsideration re 121 Memorandum (Order to follow as separate docket entry), filed by Epsilon Energy USA, Inc..(Krock, Gregory) (Entered: 10/04/2021) |

| 10/18/2021 | 125 | BRIEF IN OPPOSITION re 123 MOTION for Reconsideration re 121 Memorandum (Order to follow as separate docket entry), filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Appendix Unpublished Opinions)(Dempsey, John) (Entered: 10/18/2021) |
| 11/01/2021 | 126 | REPLY BRIEF re 123 MOTION for Reconsideration re 121 Memorandum (Order to follow as separate docket entry), filed by Epsilon Energy USA, Inc..(Krock, Gregory) (Entered: 11/01/2021) |
| 11/09/2021 | 127 | MOTION for Leave to File *Surreply* by Chesapeake Appalachia, LLC. (Attachments: # 1 Proposed Order)(Dempsey, John) (Entered: 11/09/2021) |
| 11/09/2021 | 128 | BRIEF IN SUPPORT re 127 MOTION for Leave to File *Surreply* filed by Chesapeake Appalachia, LLC. (Attachments: # 1 Exhibit(s) A - Surreply, # 2 Appendix Unpublished Opinions)(Dempsey, John) (Entered: 11/09/2021) |
| 11/12/2021 | 129 | ORDER granting 127 Motion for Leave to File. Signed by Honorable Jennifer P. Wilson on 11/12/2021 (ve) (Entered: 11/12/2021) |
| 11/12/2021 | 130 | SUR REPLY to REPLY to Response to Motion re 123 MOTION for Reconsideration re 121 Memorandum (Order to follow as separate docket entry), filed by Chesapeake Appalachia, LLC.(ve) (Entered: 11/12/2021) |
| 01/04/2022 | 131 | NOTICE by Epsilon Energy USA, Inc. re 123 MOTION for Reconsideration re 121 Memorandum (Order to follow as separate docket entry), (Attachments: # 1 Exhibit(s) 1) (Krock, Gregory) (Entered: 01/04/2022) |
| 01/12/2022 | 132 | Response to Notice of New Evidence by Chesapeake Appalachia, LLC. 131 Notice . (Dempsey, John) (Entered: 01/12/2022) |
| 01/18/2022 | 133 | MEMORANDUM (Order to follow as separate docket entry) re 123 MOTION for Reconsideration re 121 Memorandum (Order to follow as separate docket entry), filed by Epsilon Energy USA, Inc. Signed by Honorable Jennifer P. Wilson on 1/18/2022. (ve) (Entered: 01/18/2022) |
| 01/18/2022 | 134 | ORDER (Memorandum filed previously as a separate entry) denying 123 Motion for Reconsideration. Signed by Honorable Jennifer P. Wilson on 1/18/2022 (ve) (Entered: 01/18/2022) |
| 02/15/2022 | 135 | NOTICE OF APPEAL in NON-PRISONER Case as to 121 Memorandum (Order to follow as separate docket entry), by Epsilon Energy USA, Inc.. Filing Fee and Docket Fee PAID. Filing Fee $ 505, receipt number APAMDC-5848896. Court Reporter Lori A. Fausnaught. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Krock, Gregory) (Entered: 02/15/2022) |
| 02/15/2022 | 136 | TRANSCRIPT PURCHASE ORDER REQUEST by Epsilon Energy USA, Inc. for proceedings held on May 11, 2021 before Judge Jennifer P. Wilson, (Krock, Gregory) (Entered: 02/15/2022) |
| 03/01/2022 | 138 | NOTICE OF CROSS APPEAL in NON-PRISONER Case by Chesapeake Appalachia, LLC. Filing Fee and Docket Fee PAID. Filing fee $ 505, receipt number APAMDC-5864785. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Dempsey, John) (Entered: 03/01/2022) |
| 03/01/2022 | 139 | TRANSCRIPT PURCHASE ORDER REQUEST by Chesapeake Appalachia, LLC (Dempsey, John) (Entered: 03/01/2022) |

Appx0063

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/21/2022 10:10:19 | | | |
| **PACER Login:** | mcguire260 | **Client Code:** | 2080422-0001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00658-JPW |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

Appx0064