No. 22–1280
No. 22–1376

# United States Court of Appeals
# for the Third Circuit

EPSILON ENERGY USA, INC.,

*Plaintiff–Appellant,*

v.

CHESAPEAKE APPALACHIA, LLC,

*Defendant–Appellee.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
Case No. 1:21–cv–658

## APPENDIX VOLUME III
### (Pages Appx0572 to Appx1068)

Gregory J. Krock
MCGUIREWOODS LLP
Tower Two–Sixty
260 Forbes Ave., Suite 1800
Pittsburgh, PA 15222–3142
(412) 667–6042

Matthew A. Fitzgerald
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-4716

Elizabeth M. Thomas
MCGUIREWOODS LLP
201 North Tryon Street
Suite 3000
Charlotte, NC 28202-2146
(704) 373-8060

*Counsel for Appellant/Cross–Appellee*
*Epsilon Energy USA, Inc.*

# TABLE OF CONTENTS

Page

**Volume I**

Dkt. 121:
    Memorandum (Entered: 09/22/2021) .................................................................Appx0001

Dkt. 122:
    Order (Entered: 09/22/2021)...........................................................................Appx0028

Dkt. 133:
    Memorandum (Entered: 01/18/2022) .................................................................Appx0029

Dkt. 134,:
    Order (Entered: 01/18/2022)...........................................................................Appx0048

Dkt. 135:
    Notice of Appeal in Non-Prisoner Case (Entered: 02/15/2022) ..........................Appx0049

Docket Sheet (Case No. 1:21-cv-00658-JPW) ......................................................Appx0052

**Volume II**

Dkt. 104:
    Amended Complaint (Entered: 07/02/2021).........................................................Appx0065
        Dkt. 104-1: Exhibit 1 ....................................................Appx0109
        Dkt. 104-2: Exhibit 2 ....................................................Appx0177
        Dkt. 104-3: Exhibit 3 ....................................................Appx0244
        Dkt. 104-4: Exhibit 4 ....................................................Appx0321
        Dkt. 104-5: Exhibit 5 ....................................................Appx0444
        Dkt. 104-6: Exhibit 6 ....................................................Appx0451
        Dkt. 104-7: Exhibit 7 ....................................................Appx0453
        Dkt. 104-8: Exhibit 8 ....................................................Appx0461
        Dkt. 104-9: Exhibit 9 ....................................................Appx0481
        Dkt. 104-10: Exhibit 10 ..................................................Appx0489
        Dkt. 104-11: Exhibit 11 ..................................................Appx0496
        Dkt. 104-12: Exhibit 12 ..................................................Appx0500
        Dkt. 104-13: Exhibit 13 ..................................................Appx0503
        Dkt. 104-14: Exhibit 14 ..................................................Appx0507
        Dkt. 104-15: Exhibit 15 ..................................................Appx0512
        Dkt. 104-16: Exhibit 16 ..................................................Appx0516
        Dkt. 104-17: Exhibit 17 ..................................................Appx0519

**Volume III**

Dkt. 104-18: Exhibit 18 .........................................................Appx0572
Dkt. 104-19: Exhibit 19 .........................................................Appx0575
Dkt. 104-20: Exhibit 20 .........................................................Appx0581
Dkt. 104-21: Exhibit 21 .........................................................Appx0590

Dkt. 23-1:
   Exhibit A to Brief in Support of Motion to Dismiss for Failure to Join
   Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0643

Dkt. 23-2:
   Exhibit B to Brief in Support of Motion to Dismiss for Failure to Join
   Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0751

Dkt. 23-3:
   Exhibit C to Brief in Support of Motion to Dismiss for Failure to Join
   Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0775

Dkt. 23-4:
   Exhibit D to Brief in Support of Motion to Dismiss for Failure to Join
   Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0788

Dkt. 23-5:
   Exhibit E to Brief in Support of Motion to Dismiss for Failure to Join
   Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0812

Dkt. 23-6:
   Exhibit F to Brief in Support of Motion to Dismiss for Failure to Join
   Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0835

Dkt. 32-1:
   Exhibit A to Reply Brief in Support of Motion to Dismiss for Failure to Join
   Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0852

Dkt. 32-3:
   Exhibit C to Reply Brief in Support of Motion to Dismiss for Failure to Join
   Necessary and Indispensable Parties filed by Chesapeake Appalachia, LLC ......Appx0882

Dkt. 109-2:
   Exhibit A to Motion to Dismiss for Failure to State a Claim ..............................Appx0952

Dkt. 109-3:
   Exhibit B to Motion to Dismiss for Failure to State a Claim..............................Appx0961

Dkt. 109-4:
   Exhibit C to Motion to Dismiss for Failure to State a Claim..............................Appx1015

# EXHIBIT 18

Case: 22-1280    Document: 21-3    Page: 4    Date Filed: 07/25/2022



Date Filed: 07/25/2022   Page: 5   Document: 21-3   Case: 22-1280

March 31, 2010

Mr. Douglas J. Jacobson
Executive Vice-President
Chesapeake Appalachia LLC
PO Box 18496
Oklahoma, OK 73154

> Re:   Notice of Request for Transfers
>       Surface Water Withdrawals

Dear Mr. Jacobson:

This letter is acknowledgement that Epsilon Energy USA, Inc. (Epsilon) intends to transfer its ownership of surface water approvals for the East Branch of Wyalusing Creek, Wyalusing Creek, Elk Lake Stream, and Deer Lick Creek to Chesapeake Appalachia LLC. Surface water approval was given by the Susquehanna River Basin Commission (SRBC) under Docket Numbers 20081224, 20081225, 20081226, and 20081227.

This letter of acknowledgement from Epsilon and the transfer forms in preparation by Benham Companies LLC are necessary for the transfers to be accepted by the SRBC.

Should you have any questions or comments, please call me at (281) 670-0002.

Very Truly,

EPSILON ENERGY USA, Inc.

Daniel J. Ward
International Exploration Manager

---

Epsilon Energy USA, Inc.
Suite 930, 10700 North Freeway
Houston, Texas 77037
Phone: 1-281-670-0002
Fax: 1-281-668-0985

Epsilon Energy Ltd.
150 Jardin Drive, Suite #9
Concord, ON, Canada, L4K 3P9
Phone: 905.738.7877
Fax: 905.669.8220

Appx0573

## SHIPPING REQUEST FORM

**Chesapeake** Natural Gas. Natural Advantages.

UPS

YOUR CUSTOMER ID (IF NECESSARY) _____

| COMPANY NAME | SUSQUEHANNA RIVER BASIN COMMISSION |
|---|---|
| ATTENTION TO | Damian M. Zampogna |

ADDRESS *(STREET ADDRESS ONLY - No P.O. Box if possible please)*

1721 N. FRONT STREET

| CITY | HARRISBURG | STATE | PA | ZIP | 17102-2391 |
|---|---|---|---|---|---|
| PHONE # | 717-238-0425 ext 219 | RESIDENTIAL DELIVERY? | | | NO |

*handwritten:* 4-12-2010 SRBC. Notice of Request of Transfer

### SERVICE TYPE

#### SERVICES WITHIN CONTINENTAL U.S. via UPS

- xxx NEXT BUSINESS DAY BY 10:30 AM
- NEXT BUSINESS DAY BY END OF DAY
- NEXT BUSINESS DAY BY 8 AM
  *For an Additional $25.00 Charge*
- SECOND BUSINESS DAY - AM
- SECOND BUSINESS DAY - PM
- UPS GROUND - 1 to 5 DAYS
- INCLUDE RETURN ENVELOPE BACK TO SENDER
- SATURDAY DELIVERY if shipped on a Friday
  *For and Additional $10.00 Charge*
- $ _____ INSURANCE (IF VALUE EXCEEDS $100)
  (This must be included in order to receive loss claims)

_____ USPS EXPRESS MAIL (P.O. BOX ONLY)

(Please only use this if you CAN'T get a physical address)

#### **SERVICES OUTSIDE THE U.S.**

**Vary in delivery times from 1-5 business days depending upon where it's going
**Each shipment is guaranteed "Pending Normal Customs Clearance" which COULD delay a package
**If your shipment won't fit in an envelope, we'll need the value of the shipment for invoicing purposes

_____ WORLDWIDE EXPRESS - 1-3 DAYS
_____ WORLDWIDE EXPEDITED - 2 DAYS AND BEYOND

***IF YOU HAVE ANY QUESTIONS ABOUT DELIVERY SERVICES AND/OR TIMES, PLEASE CONTACT THE MAILROOM FOR SPECIFICS***

*ALL SERVICE TYPES ARE SUBJECT TO AVAILABILITY
PER DESTINATION LOCATION*

| SENDER'S NAME & E-MAIL | Bonnie Griggs - bonnie.griggs@chk.com |
|---|---|
| (E-mail must be included if you want UPS to send you TRACKING information) | |
| APPROVED BY | _____ |

*THE ABOVE FORM MUST BE FILLED OUT COMPLETELY
PLEASE PRINT CLEARLY*

Appx0574

Case: 22-1280    Document: 21-3    Page: 6    Date Filed: 07/25/2022

# EXHIBIT 19

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**EPSILON ENERGY USA, INC.,**

                    **Plaintiff,**

        **v.**

**CHESAPEAKE APPALACHIA, LLC,**

                 **Defendant.**

**Docket No. 1:21-cv-658**

**Honorable Jennifer P. Wilson**

## DECLARATION OF DANIEL J. WARD

I, Daniel Ward, declare that the following statements and information are true and correct, to the best of my knowledge and belief:

1.     I am over the age of 18 and competent to provide this affidavit.

2.     I currently live in Canyon Lake, Texas.

3.     I worked for Epsilon Energy USA, Inc. as a Geophysicists and Expiration Manager.

4.     Based on my work for Epsilon, I have personal knowledge of Epsilon's production and development in the Auburn Gas Gathering System area, which is located in northcentral Pennsylvania in Susquehanna County, between 2007 and 2011.

5.     I have reviewed a March 31, 2010 letter from myself to Douglas Jacobson, then Executive Vice President of Chesapeake Appalachia, LLC

1

Appx0576

("CHK"). Attached as Exhibit 1.

6.    The letter states that Epsilon "intends to transfer its ownership of surface water approvals" including Docket No. 20081227 approved by the Susquehanna River Basin Commission ("SRBC"). *Id.*

7.    The purpose of the March 31, 2010 letter was simply a paperwork exercise to transfer the name of the holder of the permit, Docket No. 20081227, to CHK because it was now the operator under the Farmout Agreement.

8.    I never intended for the March 31, 2010 letter to divest Epsilon of any ownership in the Docket No. 20081227 permit.

9.    Accordingly, the March 31, 2010 letter simply memorialized that CHK would be taking over operatorship of Docket No. 20081227 permit as understood by the SRBC and only for permitting purposes.

10.    This comports with my general understanding of industry custom based on at least 40 years of experience in the oil and gas industry.


I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S. Code § 1746.

Dated    MAY 3, 2021

Daniel J. Ward

# EXHIBIT 1



March 31, 2010

Mr. Douglas J. Jacobson
Executive Vice-President
Chesapeake Appalachia LLC
PO Box 18496
Oklahoma, OK 73154

Re:  Notice of Request for Transfers
Surface Water Withdrawals

Dear Mr. Jacobson:

This letter is acknowledgement that Epsilon Energy USA, Inc. (Epsilon) intends to transfer its ownership of surface water approvals for the East Branch of Wyalusing Creek, Wyalusing Creek, Elk Lake Stream, and Deer Lick Creek to Chesapeake Appalachia LLC. Surface water approval was given by the Susquehanna River Basin Commission (SRBC) under Docket Numbers 20081224, 20081225, 20081226, and 20081227.

This letter of acknowledgement from Epsilon and the transfer forms in preparation by Benham Companies LLC are necessary for the transfers to be accepted by the SRBC.

Should you have any questions or comments, please call me at (281) 670-0002.

Very Truly,

EPSILON ENERGY USA, Inc.

Daniel J. Ward
International Exploration Manager

Epsilon Energy USA, Inc.
Suite 930, 10700 North Freeway
Houston, Texas 77037
Phone: 1-281-670-0002
Fax: 1-281-668-0985

Epsilon Energy Ltd.
150 Jardin Drive, Suite #9
Concord, ON, Canada, L4K 3P9
Phone: 905.738.7877
Fax: 905.669.8220

Appx0579

Date Filed: 07/25/2022    Page: 11    Document: 21-3    Case: 22-1280

Case: 22-1280    Document: 21-3    Page: 12    Date Filed: 07/25/2022

# SHIPPING REQUEST FORM

**Chesapeake** Natural Gas. Natural Advantages.

UPS

**YOUR CUSTOMER ID (IF NECESSARY)**

**COMPANY NAME**    SUSQUEHANNA RIVER BASIN COMMISSION

**ATTENTION TO**    Damian M. Zampogna

**ADDRESS (STREET ADDRESS ONLY - No P.O. Box if possible please)**

1721 N. FRONT STREET

| CITY | HARRISBURG | STATE | PA | ZIP | 17102-2391 |
|---|---|---|---|---|---|

| PHONE # | 717-238-0425 ext 219 | RESIDENTIAL DELIVERY? | | NO |
|---|---|---|---|---|

*(handwritten:)* 4-12-2010 SRBC. Notice of Request of Transfer

## SERVICE TYPE

### SERVICES WITHIN CONTINENTAL U.S. via UPS

xxx NEXT BUSINESS DAY BY 10:30 AM

NEXT BUSINESS DAY BY END OF DAY

NEXT BUSINESS DAY BY 8 AM
*For an Additional $25.00 Charge*

SECOND BUSINESS DAY - AM

SECOND BUSINESS DAY - PM

UPS GROUND - 1 to 5 DAYS

INCLUDE RETURN ENVELOPE BACK TO SENDER

SATURDAY DELIVERY if shipped on a Friday
*For and Additional $10.00 Charge*

$_____ INSURANCE (IF VALUE EXCEEDS $100)
(This must be included in order to receive loss claims)

_____ **USPS EXPRESS MAIL (P.O. BOX ONLY)**
(Please only use this if you CAN'T get a physical address)

### **SERVICES OUTSIDE THE U.S.**

**Vary in delivery times from 1-5 business days depending upon where it's going

**Each shipment is guaranteed "Pending Normal Customs Clearance" which COULD delay a package

**If your shipment won't fit in an envelope, we'll need the value of the shipment for invoicing purposes

_____ WORLDWIDE EXPRESS - 1-3 DAYS

_____ WORLDWIDE EXPEDITED - 2 DAYS AND BEYOND

***IF YOU HAVE ANY QUESTIONS ABOUT DELIVERY SERVICES AND/OR TIMES, PLEASE CONTACT THE MAILROOM FOR SPECIFICS***

### ALL SERVICE TYPES ARE SUBJECT TO AVAILABILITY
### PER DESTINATION LOCATION

**SENDER'S NAME & E-MAIL**    Bonnie Griggs - bonnie.griggs@chk.com
(E-mail must be included if you want UPS to send you TRACKING information)

**APPROVED BY** _____

## THE ABOVE FORM *MUST* BE FILLED OUT COMPLETELY
## PLEASE PRINT CLEARLY

# EXHIBIT 20

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

EPSILON ENERGY USA, INC.,

                Plaintiff,

      v.

CHESAPEAKE APPALACHIA, LLC,

                Defendant.

Civil Action No. 1:21-cv-00658

District Court Judge Wilson

**STIPULATION OF EVIDENCE RELATED TO
EPSILON'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Epsilon Energy USA, Inc. ("Epsilon") and Defendant Chesapeake

Appalachia, LLC ("CHK") (collectively, the "parties") stipulate to the following:

1.      Lane Bond will testify to the following.

**Employment, Job Responsibilities, Education, and Background**

2.      Lane Bond is the Chief Financial Officer ("CFO") for Epsilon Energy

Ltd. and all of its subsidiaries, including Epsilon Energy USA, Inc. and Epsilon

Operating, LLC.

3.      Lane Bond obtained his Bachelor's of Science in Accounting from the

University of Arkansas in Little Rock in 1985.

1

4.    Mr. Bond obtained his Master's of Business Administration from the University of Tulsa in 1999.

5.    Prior to working with Epsilon, Mr. Bond worked for Occidental Petroleum Corporation ("Occidental") for almost twenty-three (23) years with increasing levels of responsibility and ending as the Finance Manager for Occidental's Libya Operation.

6.    Occidental is an international energy company and one of the largest oil producers in the United States.

7.    While working for Occidental, Mr. Bond completed many of the same job duties that he completes for Epsilon, including the review and implementation of accounting procedures under applicable JOAs.

8.    Mr. Bond started with Epsilon in January 2012 as the Director of Finance until he was confirmed by the Epsilon Board as the CFO in May 2012.

9.    Mr. Bond's job duties include all accounting functions, including internal and external reporting.

10.    When undertaking these job duties, Mr. Bond reviews and implements the auditing processes and procedures required under Epsilon's joint operating agreements with its partners.

11.    Mr. Bond's job activities were the same as the Director of Finance and as CFO of Epsilon.

2

12.    Based on his experience with Epsilon and Occidental, Mr. Bond has over twelve (12) years of experience reviewing and implementing accounting procedures pursuant to JOAs.

13.    Through this experience, Mr. Bond has also gained over twelve (12) years of experience with a standard accounting procedure document published by the Council of Petroleum Accountants Societies (otherwise known as a "COPAS" document).

14.    This COPAS document is an attachment to and used in conjunction with the relevant JOAs in this matter. ECF Nos. 1-1, 1-2, 1-3, 1-4, at Art. V.D.2, Art. V.D.5, Exhibit C.

**Epsilon's Ownership Interest in the Marbaker Impoundment**

15.    The Marbaker Impoundment is a co-owned asset of the JOAs in which Epsilon has an undivided ownership interest.

16.    Epsilon knows that it has an ownership interest in the Marbaker Impoundment because in the normal course of business Epsilon requested an audit of CHK's records pursuant to the JOAs in 2012. *See* Plaintiff's Exhibits 36-44; ECF Nos. 1-1, 1-2, 1-3, 1-4, at Art. V.D.2, Art. V.D.5, Exhibit C.

17.    Through the audit process, Epsilon learned it was charged and paid its pro rata share of $1,916,281.08 for the construction of the Marbaker Impoundment

3

during the drilling of the Koromlan 1H, 2H, and 3H and the Delhagen 5H Wells. Plaintiff's Exhibits 36-42.

18.    CHK's responses and rebuttals to Epsilon's audit request indicate CHK confirmed that costs paid by Epsilon for its co-ownership interest in the Marbaker Impoundment would be reallocated as additional wells were drilled in units other than the Koromlan Unit, including the Craige Unit, using the Marbaker Impoundment. *Id.*

19.    Plaintiff's Exhibit 42 identifies CHK charged the joint account and Epsilon paid its proportionate share for the descriptions in the document.

20.    Plaintiff's Exhibit 43 identifies CHK charged the joint account and Epsilon paid its proportionate share for the descriptions for CRAIGE 1H and CRAIGE 2H.

21.    Because the costs of the construction of the Marbaker Impoundment were allocated to Epsilon, it is a co-owner of the Marbaker Impoundment according to its prorated share under the JOA.

**Epsilon's Ownership Interest in the Craige Well Pad**

22.    Additionally, the audit indicated that in completing the drilling of the Craige 1H and 2H Wells, CHK charged the joint account and Epsilon paid its proportionate share for the construction of the Craige Well Pad. Plaintiff's Exhibit 44, at Line 10.

4

23. The joint account was charged $174,999.00 for that construction cost. *Id.*

24. Epsilon paid its proportionate share of that charge.

25. Accordingly, Epsilon learned from the 2012 audit that the joint account had been charged and Epsilon paid its proportionate share for the construction of the Marbaker Impoundment and Craige Well Pad in conjunction with the drilling of wells under JOAs to which Epsilon was a party, including the Craige Unit JOA.

26. Epsilon therefore has a an undivided ownership interest in both the Marbaker Impoundment and the Craige Well Pad because it has paid its pro rata share as charged by CHK pursuant to the JOA procedures.


IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


DATED: 05/12/2021        **McGuireWoods LLP**


By: _____
GREGORY J. KROCK
(Pa. I.D. No. 78308)
ELIZABETH M. THOMAS
(Pa. I.D. No. 322002)
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222-3142
(412) 667-6000 (Telephone)
(412) 667-6050 (Facsimile)

5

gkrock@mcguirewoods.com
ethomas@mcguirewoods.com

JONATHAN T. BLANK
*(admitted Pro Hac Vice)*
652 Peter Jefferson Parkway
Suite 350
Charlottesville, VA 22911
(434) 977-2500 (Telephone)
(434) 980-2222 (Facsimile)
jblank@mcguirewoods.com

YASSER A. MADRIZ
*(admitted Pro Hac Vice)*
JPMorgan Chase Tower
600 Travis Street
Suite 7500
Houston, TX 77002-2906
(832) 255 6361 (Telephone)
(832) 214 9931 (Facsimile)
ymadriz@mcguirewoods.com

*Counsel for Plaintiff Epsilon Energy USA, Inc.*

DATED: 05/12/2021        MYERS BRIER & KELLY, LLP

By:_____

JOHN B. DEMPSEY, ESQ.
DANIEL T. BRIER, ESQ.
NICHOLAS F. KRAVITZ, ESQ.
RICHARD L. ARMEZZANI, ESQ.
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
570-342-6100

*Counsel for Defendant Chesapeake Appalachia,
L.L.C.*

6

7

Appx0588

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing

**Stipulation of Evidence Related to Epsilon's Motion for Preliminary Injunction**

has been electronically served on the parties via the CM/ECF filing system.


*/s/ Gregory J. Krock*
Gregory J. Krock

8

# EXHIBIT 21

Craige N 1LH
May 26, 2021
Chesapeake Appalachia, L.L.C.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Chesapeake Appalachia, L.L.C.
Attn: Ms. Courtney Moad
6100 N. Western Ave.
Oklahoma City, OK 73118

Re:     Epsilon Energy's Proposed Craige N 1LH Well
        API: 37115228010000; Permit Number: 115-22801
        Baltzley South Unit
        Rush Township
        Susquehanna County, Pennsylvania

Ms. Moad:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1LH Well (the "Well") with a surface hole location of Latitude 41.755847° and Longitude -76.028635° (NAD 83); and an approximate bottom hole location of Latitude 41.770464° and Longitude -76.036905°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 12,123 feet, with an approximate vertical depth of 6,680 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $1,946,000.00 with a completed well costing approximately $5,398,707.00. We anticipate to commence the proposed operation on or about October 1, 2021.

This well will be a subsequent well drilled in the Baltzley South Unit, which covers 417.171123 acres.

The table below contains a summary of the working and net revenue interest ownership in the Well.

| Working Interest Owner | Craige N 1LH WI | Craige N 1LH NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 41.623478% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 20.821989% |
| Epsilon Energy USA, Inc. | 21.145145% | 18.322130% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.044433% |

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 1LH
May 26, 2021
Chesapeake Appalachia, L.L.C.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date. Accordingly, please indicate your election in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE. Failure to make a timely election shall be deemed an election not to participate.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA, Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0592

Craige N 1LH
May 26, 2021
Chesapeake Appalachia, L.L.C.

_____**Chesapeake Appalachia LLC** hereby elects to **operate and participate** with the full extent of its interest in the drilling of the Craige 1LH Well pursuant to the Baltzley South JOA.

_____**Chesapeake Appalachia LLC** hereby elects to **operate but not participate** with the full extent of its interest in the drilling of the Craige 1LH Well pursuant to the Baltzley South JOA.

_____**Chesapeake Appalachia LLC** hereby elects **not to operate nor participate** in the drilling of the Craige 1LH Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____

Name: _____

Title: _____

Date: _____

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0593



**EPSILON**
Energy USA, Inc.

AFE # : _____ D2110140 _____

| | |
|---|---|
| WELL NAME: | **CRAIGE N 1LH** |
| OPERATOR: | **EPSILON ENERGY USA, INC** |
| PROJECT: | **AUBURN** |
| LOCATION (TRACT): | **CRAIGE** |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** |
| API (PERMIT #): | **37-115-22081-0000 (115-22081)** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** |
| COMMENTS: | **D&C HZ LOWER MARCELLUS WELL** |

DATE: _____ **05/26/21** _____

PROPOSED TMD: **12,123**
PROPOSED TVD: **6,680**
PROPOSED CLAT: **5,080**

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A.  DRILLING COST | $        162,000 | $      1,784,000 | $      1,946,000 |
| B.  COMPLETION COST | $        776,000 | $      2,676,707 | $      3,452,707 |
| C.  PLANT & FACILITY COST | $              - | $              - | $              - |
| D.  WORKOVER COST | $              - | $              - | $              - |
| TOTALS: | $        938,000 | $      4,460,707 | $      5,398,707 |

WELL/PROJECT ID#: _____

EXPLORATORY ☐          DEVELOPMENT ☑

WORKOVER ☐          RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 50.898563% | $      2,747,864 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 25.456292% | $      1,374,311 |
| EPSILON ENERGY USA, INC. | | 21.145145% | $      1,141,564 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.500000% | $        134,968 |
| | | | |
| | | | |
| | | | |
| | | 100.000000% | $      5,398,707 |

**OPERATOR'S APPROVAL**

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N Clark* | OPERATIONS | DATE: 5/26/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 5/26/21 |
| APPROVED BY: | *Shannon E Lemke* | GEOLOGY | DATE: 5/26/21 |
| APPROVED BY: | *B Lou Bond* | ACCOUNTING | DATE: 5-26-21 |

**NON-OPERATOR'S APPROVAL**

COMPANY NAME: _____          DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only.  In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred.  Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

## Applicant/Well Operator Name: Epsilon Operating LLC
### DEP #: 328036
### Well Name: Craige
### Well Number: N1LH



**Azimuths to Grid North**
True North: -1.14°
Magnetic North: -13.24°

**Magnetic Field**
Strength: 52260.5nT
Dip Angle: 67.27°
Date: 6/22/2020
Model: HDGM

**PROJECT DETAILS:** Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1533' + KB 20' @ 1553.00usft (Prelim)

### DESIGN TARGET DETAILS

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|------|-----|-------|-------|----------|---------|----------|-----------|
| SHL (Craige N 1LH) | 0.00 | 0.00 | 0.00 | 583691.91 | 2438141.93 | 41° 45' 21.050 N | 76° 1' 43.087 W |
| PBHL (Craige N 1LH) | 6630.00 | 5280.53 | -2361.33 | 588972.44 | 2435780.60 | 41° 46' 13.672 N | 76° 2' 12.858 W |
| LP (Craige N 1LH) | 6680.00 | 548.45 | -517.53 | 584240.36 | 2437624.40 | 41° 45' 26.569 N | 76° 1' 49.770 W |



**Formation est. at SHL**

Base Elk SS  4325' TVD
Hamilton  4704' TVD

**Formation est. at LP**

Marcellus Shale  6420' TVD
Onondaga  6720' TVD



Appx0595

# Epsilon Energy

## Preliminary Geological Prognosis

API Number:              37115228010000

Permit Number:           115-22801

Well Name:               Craige N 1LH

Well Type:               Horizontal, development

Well Target:             Lower Marcellus

State:                   Pennsylvania

County:                  Susquehanna

Township:                Rush

Projection:              NAD83/Pennsylvania South

Surface Location:        Craige Pad

                         Lat/Long:  41.755847 / -76.028635

Landing Point:           Baltzley South Unit

                         Lat/Long:  41.75738 / -76.030491

Bottom Hole:             Baltzley South Unit

                         Lat/Long:  41.770464 / -76.036905

Surface Elevation:       1,533'

KB (est):                1,553'

Total Depth (est):       12,123'

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,593 | -3,040 | TVD @ pentetration point |
| Hamilton SH | 4,714 | -3,161 | TVD @ pentetration point |
| Marcellus | 6,680 | -5,127 | TVD @ pentetration point |
| Target | 6,680 | -5,113 | TVD @ pentetration point |
| Onondaga Limestone | 6,999 | -5,446 | |

Well Azimuth:            339°

Lateral Length:          5,080'

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

8000-PM-OOGM0002    Rev. 6/2014

**pennsylvania**
DEPARTMENT OF ENVIRONMENTAL
PROTECTION

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**OFFICE OF OIL AND GAS MANAGEMENT**
**WELL LOCATION PLAT**
PAGE 1 Surface Location

| | Auth ID#: | | G: |
|---|---|---|---|
| DEP | Permit #: | | |
| USE | Project #: | | C: |
| ONLY | | | |

☒ Denotes location of top of well on topo map.

Surface hole is located on topo map  13052  feet south of latitude   41 ° 47 ' 30 "

**SURFACE HOLE COORDINATES**
**NAD 83**
True Latitude: NORTH
**41° 45' 21.05"**
True Longitude: WEST
**76° 01' 43.09"**

**NAD 83**
N 41.755847°
W 76.028635°

**NAD 27**
N 41.755772°
W 76.028989°

N  583653.43
E 2469558.91

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°13'36" W | 722.91' |
| L2 | N68°23'20" W | 376.54' |

3000' RADIUS

PROPOSED SURFACE HOLE

ACCESS RD

EXISTING PRIVATE ROAD

COUNTY HOME RD

PA-SPC NORTH
GRID NORTH

Surface hole is located on topo map  7813  feet west of longitude   76 ° 00 ' 00 "

**NOTES**

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST

COMMONWEALTH
REGISTERED
PROFESSIONAL
TODD C. JACOBS
LAND
SURVEYOR
NO. SU 075184
PENNSYLVANIA

**LEGEND**
△ Well
● Found corner Iron Pin or Pipe
● Water Supply

**NOTE**
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: N1LH | Serial #: |
|---|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. | |

| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 380 ± | |
|---|---|---|---|---|---|---|
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/15/2020  9:48:23AM

- 1 -

Appx0598

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

### PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name:<br>EPSILON OPERATING LLC | DEP ID#<br>328036 | Well (Farm) Name<br>CRAIGE | Well #<br>N1LH | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor:<br>HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling):<br>N43°20'22"W  754.01'<br>N21°17'17"W  5078.67' | Anticipated True Vertical Depth Feet (TVD):<br>6630 | Anticipated Total Measured Depth Feet (TMD):<br>12122.93 | |
| Target Formation(s):<br>MARCELLUS | Deepest Formation to be penetrated:<br>MARCELLUS | Number of Laterals:<br>1 | Total footage to be drilled all laterals:<br>12122.93 | |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | | |
|---|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" | |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" | |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" | |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70"<br>C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" | |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" | |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.73" | | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36" W76°02'02.67" | | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89"<br>C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99"<br>D N41°44'57.58" W76°01'53.49" | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Municipality: where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality: where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 9/16/2020 9:46:52AM

Appx0599

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N1LH |

**SURFACE HOLE COORDINATES**
NAD 83
True Latitude: NORTH 41° 45' 21.05"
True Longitude: WEST 76° 01' 43.09"
NAD 83
N 41.755847°
W 76.028635°
NAD 27
N 41.755772°
W 76.028989°
N 583653.43
E 2469558.91

**KOP COORDINATES**
NAD 83
True Latitude: NORTH 41° 45' 21.03"
True Longitude: WEST 76° 01' 47.06"
NAD 83
N 41.755843°
W 76.029738°
NAD 27
N 41.755767°
W 76.030091°
N 583645.73
E 2469258.11

**LANDING POINT COORDINATES**
NAD 83
True Latitude: NORTH 41° 45' 26.57"
True Longitude: WEST 76° 01' 49.77"
NAD 83
N 41.757380°
W 76.030491°
NAD 27
N 41.757305°
W 76.030845°
N 584201.82
E 2469041.42

**BOTTOM HOLE COORDINATES**
NAD 83
True Latitude: NORTH 41° 46' 13.67"
True Longitude: WEST 76° 02' 12.86"
NAD 83
N 41.770464°
W 76.036905°
NAD 27
N 41.770389°
W 76.037258°
N 588933.91
E 2467197.60

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°13'36"W | 722.91' |
| L2 | N68°23'20"W | 376.54' |
| L3 | N43°20'22"W | 754.01' |

LEGEND
△ Well
⊗ Landing Point and Bottom Hole
● Found corner Iron Pin or Pipe

MAP SCALE: 1"=1,200'

PLOT DATE/TIME: 9/10/2020 1:22:39PM



Baltzley South

Susquehanna County

Rush Township

Craige

Auburn Township

0          2,000
FEET

- ● Surface Location
- --→ Proposed well
- ▭ Unit

Baltzley South Unit & Craige Unit

EPSILON
Energy

Appx0601

Craige N 1UHC
May 26, 2021
Chesapeake Appalachia, L.L.C.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Chesapeake Appalachia, L.L.C.
Attn: Ms. Courtney Moad
6100 N. Western Ave.
Oklahoma City, OK 73118

Re:    Epsilon Energy's Proposed Craige N 1UHC Well
       API: 3711522800000; Permit Number: 115-22800
       Baltzley South and Baltzley North Unit
       Rush Township
       Susquehanna County, Pennsylvania

Ms. Moad:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1UHC Well (the "Well") with a surface hole location of Latitude 41.755793° and Longitude -76.028656° (NAD 83); and an approximate bottom hole location of Latitude 41.789486° and Longitude -76.048982°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 19,344 feet, with an approximate vertical depth of 6,525 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,606,000.00 with a completed well costing approximately $9,122,124.00. We anticipate to commence the proposed operation on or about October 16, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to the Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **40.9633345%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **59.0366655%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0602

Craige N 1UHC
May 26, 2021
Chesapeake Appalachia, L.L.C.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 1UHC WI | Craige N 1UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.354436% | 39.738353% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.118155% | 19.827832% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 25.027410% | 21.313343% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054918% |

Epsilon Energy USA Inc. and Chesapeake Appalachia, L.L.C. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit, specifically Article VI.1 and XVI.A.2 as referenced above (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 1UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0603

Craige N 1UHC
May 26, 2021
Chesapeake Appalachia, L.L.C.

_____**Chesapeake Appalachia, L.L.C.** hereby elects to **operate and participate** with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley South JOA.

_____**Chesapeake Appalachia, L.L.C.** hereby elects to **operate but not participate** with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley South JOA.

_____**Chesapeake Appalachia, L.L.C.** hereby elects **not to operate nor participate** in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By:_____

Name:_____

Title:_____

Date:_____

_____**Chesapeake Appalachia, L.L.C.** hereby elects to **operate and participate** with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

_____**Chesapeake Appalachia, L.L.C.** hereby elects to **operate but not participate** with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

_____**Chesapeake Appalachia, L.L.C.** hereby elects **not to operate nor participate** in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By:_____

Name:_____

Title:_____

Date:_____

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0604

Craige N 1UHC
May 26, 2021

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1.  That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2.  That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By: _____

Name: _____

Title: _____

Date: _____

# EPSILON
## Energy USA, Inc.

AFE # : **D2110141**

| | | | |
|---|---|---|---|
| WELL NAME: | **CRAIGE N 1UHC** | DATE: | **05/26/21** |
| OPERATOR: | **EPSILON ENERGY USA, INC** | | |
| PROJECT: | **AUBURN** | | |
| LOCATION (TRACT): | **CRAIGE** | | |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** | | |
| API (PERMIT #): | **37-115-22800-0000 (115-22800)** | PROPOSED TMD: | **19,344** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** | PROPOSED TVD: | **6,525** |
| COMMENTS: | **D&C HZ UPPER MARCELLUS WELL** | PROPOSED CLAT | **12,265** |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 151,000 | $ 2,455,000 | $ 2,606,000 |
| B. COMPLETION COST | $ 925,000 | $ 5,591,124 | $ 6,516,124 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,076,000 | $ 8,046,124 | $ 9,122,124 |

WELL/PROJECT ID# : 

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.354436% | $ 4,410,952 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.118155% | $ 2,200,088 |
| EPSILON ENERGY USA, INC. | | 25.027410% | $ 2,283,031 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.500000% | $ 228,053 |
| | | | |
| | | | |
| | | | |
| | | 100.000000% | $ 9,122,124 |

## OPERATOR'S APPROVAL

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | *Henry N. Clarke* | OPERATIONS | DATE: | 5/26/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: | 5/26/21 |
| APPROVED BY: | *Shannon E. Lemke* | GEOLOGY | DATE: | 5/26/21 |
| APPROVED BY: | *B Lou Boyd* | ACCOUNTING | DATE: | 5-26-21 |

## NON-OPERATOR'S APPROVAL

COMPANY NAME: _____     DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



| Applicant/Well Operator Name: | Epsilon Operating LLC |
| --- | --- |
| DEP #: | 328036 |
| Well Name: | Craige |
| Well Number: | N1UHC |

Azimuths to Grid North
True North: -1.14°
Magnetic North: -13.24°

Magnetic Field
Strength: 52260.5nT
Dip Angle: 67.27°
Date: 6/22/2020
Model: HDGM

PROJECT DETAILS: Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1533' + KB 20' @ 1553.00usft (Prelim)

### DESIGN TARGET DETAILS

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
| --- | --- | --- | --- | --- | --- | --- | --- |
| SHL (Craige N 1UHC) | 0.00 | 0.00 | 0.00 | 583672.15 | 2438136.73 | 41° 45' 20.856 N | 76° 1' 43.160 W |
| PBHL (Craige N 1UHC) | 6175.00 | 12165.21 | -5786.11 | 595837.36 | 2432350.62 | 41° 47' 22.148 N | 76° 2' 56.336 W |
| WP3 (Craige N 1UHC) | 6225.05 | 10556.81 | -5086.87 | 594228.96 | 2433049.86 | 41° 47' 6.126 N | 76° 2' 47.525 W |
| WP2 (Craige N 1UHC) | 6262.28 | 9335.67 | -4631.43 | 593007.82 | 2433505.30 | 41° 46' 53.975 N | 76° 2' 41.831 W |
| WP1 (Craige N 1UHC) | 6296.45 | 8189.88 | -4279.09 | 591862.03 | 2433857.64 | 41° 46' 42.589 N | 76° 2' 37.479 W |
| LP (Craige N 1UHC) | 6525.00 | 708.94 | -1443.18 | 584381.09 | 2436693.55 | 41° 45' 28.142 N | 76° 2' 2.013 W |

Formation est. at SHL

Base Elk SS 4325' TVD
Hamilton 4704' TVD

Formation est. at LP

Marcellus Shale 6485' TVD
Onondaga 6785' TVD





Appx0607

# Epsilon Energy

## Preliminary Geological Prognosis

API Number:            37115228000000

Permit Number:         115-22800

Well Name:             Craige N 1UHC

Well Type:             Horizontal, development

Well Target:           Upper Marcellus

State:                 Pennsylvania

County:                Susquehanna

Township:              Rush

Projection:            NAD83/Pennsylvania South

Surface Location:      Craige Pad

                       Lat/Long:  41.755793 / -76.028656

Landing Point:         Baltzley South Unit

                       Lat/Long:  41.757817 / -76.033893

Bottom Hole:           Baltzley North Unit

                       Lat/Long:  41.789486 / -76.048982

Surface Elevation:     1,533'

KB (est):              1,553'

Total Depth (est):     19,344'

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,580 | -3,027 | TVD @ pentetration point |
| Hamilton SH | 4,670 | -3,117 | TVD @ pentetration point |
| Marcellus | 6,517 | -4,964 | TVD @ pentetration point |
| Target | 6,525 | -4,957 | TVD @ pentetration point |
| Onondaga Limestone | 6,836 | -5,283 | |

Well Azimuth:          339°

Lateral Length:        12,265'

**Contacts:**

|  |  | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office |  | 281-670-0002 |  |  |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 |  | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |



8000-PM-OOGM0002 Rev. 6/2014

pennsylvania
DEPARTMENT OF ENVIRONMENTAL PROTECTION

# COMMONWEALTH OF PENNSYLVANIA
# DEPARTMENT OF ENVIRONMENTAL PROTECTION
# OFFICE OF OIL AND GAS MANAGEMENT
# WELL LOCATION PLAT

PAGE 1 Surface Location

| DEP USE ONLY | | |
|---|---|---|
| | Auth ID#: | G: |
| | Permit #: | |
| | Project #: | C: |

Denotes location of top of well on topo map.

Surface hole is located on topo map 13071 feet south of latitude 41 ° 47 ' 30 "

Surface hole is located on topo map 7819 feet west of longitude 76 ° 00 ' 00 "

**SURFACE HOLE COORDINATES**
NAD 83
True Latitude: NORTH
41° 45' 20.86"
True Longitude: WEST
76° 01' 43.16"

NAD 83
N 41.755793°
W 76.028656°

NAD 27
N 41.755718°
W 76.029009°

N 583633.67
E 2469553.71

NOTES

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST.

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N80°36'51"W | 720.71' |
| L2 | N65°19'30"W | 379.53' |

COMMONWEALTH OF PENNSYLVANIA
REGISTERED PROFESSIONAL
TODD C. JACOBS
LAND SURVEYOR
NO. SU 075184

LEGEND
Well
Found corner Iron Pin or Pipe
Water Supply

NOTE
*No Wetlands Within 100' of Disturbance*
*No Wetlands Within 300' of Well Bore*

| | | | | |
|---|---|---|---|---|
| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | Well #: N1UHC | Serial #: |
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 856 ± | |
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/16/2020 10:06:08AM

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158** .

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N1UHC | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling): N63°50'25"W 1607.96' N20°45'37"W 8000.43' N17°05'35"W 1198.74' N20°27'13"W 1303.31' N23°29'48"W 1753.82' | | Anticipated True Vertical Depth Feet (TVD): 6175 | Anticipated Total Measured Depth Feet (TMD): 19343.85 |
| Target Formation(s): MARCELLUS | | Deepest Formation to be penetrated: MARCELLUS | Number of Laterals: 1 | Total footage to be drilled all laterals: 19343.85 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70" C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.75" | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89" C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99" D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality: where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality: where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 9/16/2020 10:06:30AM

-2-

Appx0611

8000-PM-OOGM0002    Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



Applicant/Well Operator Name: EPSILON OPERATING LLC

DEP ID# 328036

Well (Farm) Name: CRAIGE

Well # N1UHC

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N80°36'51"W | 720.71' |
| L2 | N65°19'30"W | 379.53' |
| L3 | N63°50'25"W | 1607.96' |

**SURFACE HOLE COORDINATES**
True Latitude: NORTH 41° 45' 20.86"
True Longitude: WEST 76° 01' 43.16"
NAD 83
N 41.755793°
W 76.028656°
NAD 27
N 41.755718°
W 76.029009°
N 583633.67
E 2469553.71

**KOP COORDINATES NAD 83**
True Latitude: NORTH 41° 45' 22.63"
True Longitude: WEST 76° 01' 59.39"
NAD 83
N 41.756287°
W 76.033164°
NAD 27
N 41.756212°
W 76.033517°
N 583788.98
E 2468320.32

**WAYPOINT 2 COORDINATES NAD 83**
True Latitude: NORTH 41° 46' 53.98"
True Longitude: WEST 76° 02' 41.83"
NAD 83
N 41.781660°
W 76.044953°
NAD 27
N 41.781584°
W 76.045306°
N 592969.25
E 2464922.32

**LANDING POINT COORDINATES NAD 83**
True Latitude: NORTH 41° 45' 28.14"
True Longitude: WEST 76° 02' 02.01"
NAD 83
N 41.757817°
W 76.033893°
NAD 27
N 41.757742°
W 76.034246°
N 584342.58
E 2468110.48

**WAYPOINT 3 COORDINATES NAD 83**
True Latitude: NORTH 41° 47' 06.13"
True Longitude: WEST 76° 02' 47.52"
NAD 83
N 41.785035°
W 76.046535°
NAD 27
N 41.784960°
W 76.046888°
N 594190.38
E 2464466.89

**WAYPOINT 1 COORDINATES NAD 83**
True Latitude: NORTH 41° 46' 42.59"
True Longitude: WEST 76° 02' 37.48"
NAD 83
N 41.778497°
W 76.043744°
NAD 27
N 41.778422°
W 76.044097°
N 591823.48
E 2465274.66

**BOTTOM HOLE COORDINATES NAD 83**
True Latitude: NORTH 41° 47' 22.15"
True Longitude: WEST 76° 02' 56.34"
NAD 83
N 41.789486°
W 76.048982°
NAD 27
N 41.789410°
W 76.049335°
N 595798.77
E 2463767.65

PROPOSED BOTTOM HOLE

N23°29'48"W 1753.82'

PROPOSED WAYPOINT 3

N20°27'13"W 1303.31'

N17°05'35"W 1198.74'

PROPOSED WAYPOINT 2

PROPOSED WAYPOINT 1

INSET

N1UHC
135.07'
1196.7'

CRAIGE PAD ORIENTATION 1" = 400'

NOTE: TRACT BOUNDARY IS NOT THE UNIT BOUNDARY AND WILL NOT DETERMINE ROYALTY

N20°45'37"W 8000.43'

N/F COLIN R BURRIDGE 157-1-43

TRACT BOUNDARY 856 ACRES±

N/F POND VIEW PARTNERSHIP 176-1-8

N/F DAVID E BALTZLEY 176-1-12

N/F DAVID WHIPPLE 176-1-15

N/F STEPHEN J MOLNAR 176-1-14

N/F ALLIANCE TO PROTECT LIFE 177-1-47

PROPOSED LANDING POINT

KOP

ACCESS RD EXISTING PRIVATE ROAD

N/F JOYCE E PATTON 177-1-35

N/F LAURIE A YARD 177-1-33

N/F JOSEPH GRILLO DONNA GRILLO 177-1-32

N/F JOSEPH GRILLO DONNA GRILLO 177-1-31

N/F ALLIANCE TO PROTECT LIFE 177-1-43

N/F HAROLD C CRAIGE GLORIA CRAIGE 177-1-28.01

PROPOSED SURFACE HOLE

PA-SPC NORTH

GRID NORTH

N

L1 L2 L3

COUNTY LINE ROAD TWP 573

**LEGEND**
△ Well
⊗ Landing Point and Bottom Hole
● Found corner iron Pin or Pipe

MAP SCALE: 1" = 2,500'

COMMONWEALTH REGISTERED PROFESSIONAL TODD C. JACOBS LAND SURVEYOR NO. SU 075184 PENNSYLVANIA

PLOT DATE/TIME: 9/10/2020 13:45:57PM

- 3A -

Appx0612

8000-PM-OOGM0002    Rev. 6/2014

## WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



- 3B -



Jessup Township

Susquehanna County

Baltzley North

Baltzley South

Rush Township

Craige

Auburn Township

FEET

● Surface Location
- - -► Proposed multi-unit well
▭ Unit

**Baltzley North Unit, Baltzley South
Unit & Craige Unit**

EPSILON
Energy

Appx0614

Craige N 4UHC
May 26, 2021
Chesapeake Appalachia, L.L.C.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Chesapeake Appalachia, L.L.C.
Attn: Ms. Courtney Moad
6100 N. Western Ave.
Oklahoma City, OK 73118

Re:    Epsilon Energy's Proposed Craige N 4UHC Well
       API: 37115228080000; Permit Number: 115-22808
       Baltzley South and Baltzley North Unit
       Rush Township
       Susquehanna County, Pennsylvania

Ms. Moad:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 4UHC Well (the "Well") with a surface hole location of Latitude 41.755855° and Longitude -76.028526° (NAD 83); and an approximate bottom hole location of Latitude 41.789462° and Longitude -76.044140°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 18,494 feet, with an approximate vertical depth of 6,410 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,508,000.00 with a completed well costing approximately $8,574,115.00. We anticipate to commence the proposed operation on or about November 8, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **41.4203317%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **58.5796683%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0615

Craige N 4UHC
May 26, 2021
Chesapeake Appalachia, L.L.C.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 4UHC WI | Craige N 4UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.374130% | 39.752946% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.128513% | 19.835527% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 24.997357% | 21.290188% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054837% |

Epsilon Energy USA Inc. and Chesapeake Appalachia, L.L.C. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit, specifically Article VI.1 and XVI.A.2 as referenced above (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 4UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0616

Craige N 4UHC
May 26, 2021
Chesapeake Appalachia, L.L.C.

_____**Chesapeake Appalachia, L.L.C.** hereby elects to **operate and participate** with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley South JOA.

_____**Chesapeake Appalachia, L.L.C.** hereby elects to **operate but not participate** with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley South JOA.

_____**Chesapeake Appalachia, L.L.C.** hereby elects **not to operate nor participate** in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By:_____

Name:_____

Title:_____

Date:_____

_____**Chesapeake Appalachia, L.L.C.** hereby elects to **operate and participate** with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley North JOA.

_____**Chesapeake Appalachia, L.L.C.** hereby elects to **operate but not participate** with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley North JOA.

_____**Chesapeake Appalachia, L.L.C.** hereby elects **not to operate nor participate** in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By:_____

Name:_____

Title:_____

Date:_____

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0617

Craige N 4UHC
May 26, 2021

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1.  That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2.  That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By: _____

Name: _____

Title: _____

Date: _____


**EPSILON**
Energy USA, Inc.

| | | AFE # : | D2110145 |
|---|---|---|---|
| WELL NAME: | CRAIGE N 4UHC | DATE: | 05/26/21 |
| OPERATOR: | EPSILON ENERGY USA, INC | | |
| PROJECT: | AUBURN | | |
| LOCATION (TRACT): | CRAIGE | | |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE | | |
| API (PERMIT #): | 37-115-22808-0000 (115-22808) | PROPOSED TMD: | 18,494 |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA | PROPOSED TVD: | 6,410 |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL | PROPOSED CLAT | 11,705 |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 151,000 | $ 2,357,000 | $ 2,508,000 |
| B. COMPLETION COST | $ 903,000 | $ 5,163,115 | $ 6,066,115 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,054,000 | $ 7,520,115 | $ 8,574,115 |

WELL/PROJECT ID# :

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.374130% | $ 4,147,653 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.128513% | $ 2,068,806 |
| EPSILON ENERGY USA, INC. | | 24.997357% | $ 2,143,302 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.500000% | $ 214,353 |
| | | | |
| | | | |
| | | 100.000000% | $ 8,574,115 |

**OPERATOR'S APPROVAL**

| PREPARED BY: | *Henry N Clarts* | OPERATIONS | DATE: 5/26/21 |
|---|---|---|---|
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 5/26/21 |
| APPROVED BY: | *Shannon E Lemke* | GEOLOGY | DATE: 5/26/21 |
| APPROVED BY: | *B Lou Bond* | ACCOUNTING | DATE: 5-26-21 |

**NON-OPERATOR'S APPROVAL**

COMPANY NAME: _____     DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



Applicant/Well Operator Name: Epsilon Operating LLC
DEP #: 328036
Well Name: Craige
Well Number: N4UHC

Azimuths to Grid North
True North: -1.14°
Magnetic North: -13.22°

Magnetic Field
Strength: 52231.3nT
Dip Angle: 67.23°
Date: 10/13/2020
Model: HDGM

PROJECT DETAILS: Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1633' + KB 20' @ 1553.00usft (Permit)

### DESIGN TARGET DETAILS

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|------|-----|-------|-------|----------|---------|----------|-----------|
| SHL (Craige N 4UHC) | 0.00 | 0.00 | 0.00 | 583695.45 | 2438171.72 | 41° 45' 21.079 N | 76° 1' 42.693 W |
| PBHL (Craige N 4UHC) | 6160.00 | 12159.10 | -4500.73 | 595854.55 | 2433670.99 | 41° 47' 22.062 N | 76° 2' 38.905 W |
| WP2 (Craige N 4UHC) | 6182.96 | 11147.39 | -4158.76 | 594842.84 | 2434012.96 | 41° 47' 12.002 N | 76° 2' 34.654 W |
| WP1 (Craige N 4UHC) | 6202.70 | 10303.69 | -3783.05 | 593999.34 | 2434388.66 | 41° 47' 3.597 N | 76° 2' 29.915 W |
| LP (Craige N 4UHC) | 6410.00 | 1250.62 | -293.49 | 584946.07 | 2437878.23 | 41° 45' 33.490 N | 76° 1' 46.236 W |

Formation est. at SHL

Base Elk SS  4325' TVD
Hamilton  4704' TVD

Formation est. at LP

Marcellus Shale  6385' TVD
Onondaga  6685' TVD





Craige N 4UHC/Permit Plan

Case: 22-1280   Document: 21-3   Page: 52   Date Filed: 07/25/2022

Appx0620

# Epsilon Energy

## Preliminary Geological Prognosis

| | |
|---|---|
| API Number: | 37115228080000 |
| Permit Number: | 115-22808 |
| Well Name: | Craige N 4UHC |
| Well Type: | Horizontal, development |
| Well Target: | Upper Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long: 41.755855 / -76.028526 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long: 41.759303 / -76.029510 |
| Bottom Hole: | Baltzley North Unit |
| | Lat/Long: 41.789462 / -76.044140 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 18,494' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,540 | -2,987 | TVD @ pentetration point |
| Hamilton SH | 4,650 | -3,097 | TVD @ pentetration point |
| Marcellus | 6,410 | -4,882 | TVD @ pentetration point |
| Target | 6,410 | -4,897 | TVD @ pentetration point |
| Onondaga Limestone | 6,729 | -5,174 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 11,705' |

Appx0621

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

8000-PM-OOGM0002    Rev. 6/2014

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION
### OFFICE OF OIL AND GAS MANAGEMENT
# WELL LOCATION PLAT
PAGE 1 Surface Location

**pennsylvania**
DEPARTMENT OF ENVIRONMENTAL PROTECTION

| DEP | Auth ID #: | G: |
| USE | Permit #: | |
| ONLY | Project #: | C: |



Surface hole is located on topo map **13049** feet south of latitude **41° 47' 30"**

**SURFACE HOLE COORDINATES NAD 83**
True Latitude: NORTH
41° 45' 21.08"
True Longitude: WEST
76° 01' 42.69"

**NAD 83**
N 41.755855°
W 76.028526°

**NAD 27**
N 41.755780°
W 76.028879°
N 583656.97
E 2469588.70

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°48'04"W | 751.98' |
| L2 | N70°24'59"W | 403.18' |

**NOTES**

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST

**PROPOSED SURFACE HOLE**

ACCESS RD

EXISTING PRIVATE ROAD

COUNTY HOME RD

**NOTE**
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

3000' RADIUS

Surface hole is located on topo map **7783** feet west of longitude **76° 00' 00"**

**LEGEND**
△ Well
● Found corner Iron Pin or Pipe
⊕ Water Supply

(Surveyor seal: COMMONWEALTH OF PENNSYLVANIA, REGISTERED PROFESSIONAL LAND SURVEYOR, TODD C. JACOBS, NO. SU 075184)

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | Well #: N4UHC | Serial #: |
|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. |
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 10/22/2020 | Scale: 1"=1,000' | Tract Acreage: 931 ± |
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 10/21/2020 6:38:09PM

- 1 -

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll-free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158** .

| Applicant/Well Operator Name:<br>EPSILON OPERATING LLC | DEP ID#<br>328036 | Well (Farm) Name<br>CRAIGE | Well #<br>N4UHC | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor:<br>HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling):<br>N13°12'25"W 1284.60' N21°04'45"W 9702.51'<br>N24°00'31"W 923.39' N18°40'33"W 1067.94' | | Anticipated True Vertical<br>Depth Feet (TVD):<br>6160 | Anticipated Total<br>Measured Depth<br>Feet (TMD):<br>18494.09 |
| Target Formation(s):<br>MARCELLUS | Deepest Formation to be penetrated:<br>MARCELLUS | | Number of<br>Laterals:<br>1 | Total footage to be<br>drilled all laterals:<br>18494.09 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70"<br>C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.86" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.73" | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89"<br>C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99"<br>D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality: where the well will be drilled,<br>adjacent to the well, or within 3000 feet | Municipality: where the well will be drilled,<br>adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 10/21/2020 0:37:10PM

- 2 -

Appx0624

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N4UHC |

**SURFACE HOLE COORDINATES**

| | |
|---|---|
| NAD 83 True Latitude: NORTH | 41° 45' 21.08" |
| True Longitude: WEST | 76° 01' 42.69" |
| NAD 83 | N 41.755855° W 76.028526° |
| NAD 27 | N 41.755780° W 76.028879° |
| | N 583656.97 E 2469588.70 |

**KOP COORDINATES**

| | |
|---|---|
| NAD 83 True Latitude: NORTH | 41° 45' 28.06" |
| True Longitude: WEST | 76° 01' 43.60" |
| NAD 83 | N 41.757794° W 76.028779° |
| NAD 27 | N 41.757719° W 76.029132° |
| | N 584361.96 E 2469505.70 |

**LANDING POINT COORDINATES**

| | |
|---|---|
| NAD 83 True Latitude: NORTH | 41° 45' 33.49" |
| True Longitude: WEST | 76° 01' 46.24" |
| NAD 83 | N 41.759303° W 76.029510° |
| NAD 27 | N 41.759227° W 76.029864° |
| | N 584907.58 E 2469295.21 |

**WAYPOINT 1 COORDINATES**

| | |
|---|---|
| NAD 83 True Latitude: NORTH | 41° 47' 03.60" |
| True Longitude: WEST | 76° 02' 29.92" |
| NAD 83 | N 41.784333° W 76.041643° |
| NAD 27 | N 41.784257° W 76.041996° |
| | N 593960.76 E 2465805.67 |

**WAYPOINT 2 COORDINATES**

| | |
|---|---|
| NAD 83 True Latitude: NORTH | 41° 47' 12.00" |
| True Longitude: WEST | 76° 02' 34.65" |
| NAD 83 | N 41.786667° W 76.042960° |
| NAD 27 | N 41.786592° W 76.043313° |
| | N 594804.25 E 2465429.97 |

**BOTTOM HOLE COORDINATES**

| | |
|---|---|
| NAD 83 True Latitude: NORTH | 41° 47' 22.06" |
| True Longitude: WEST | 76° 02' 38.90" |
| NAD 83 | N 41.789462° W 76.044140° |
| NAD 27 | N 41.789386° W 76.044493° |
| | N 595815.95 E 2465088.01 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°48'04"W | 751.98' |
| L2 | N70°24'59"W | 403.18' |
| L3 | N13°12'25"W | 1284.60' |

PLOT DATE/TIME: 10/21/2020 1:00:01PM

8000-PM-OOGM0002   Rev. 6/2014

# WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



| Applicant/Well Operator Name:<br>EPSILON OPERATING LLC | DEP ID#<br>328036 | Well (Farm) Name<br>CRAIGE | Well #<br>N4UHC |
|---|---|---|---|

- 3B -

Appx0626



Baltzley North Unit, Baltzley South
Unit & Craige Unit

Craige S 3LHC
May 26, 2021
Chesapeake Appalachia, L.L.C.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Chesapeake Appalachia, L.L.C.
Attn: Ms. Courtney Moad
6100 N. Western Ave.
Oklahoma City, OK 73118

Re:     Epsilon Energy's Proposed Craige S 3LHC Well
        API: 37115227970000; Permit Number: 115-22797
        Craige Unit, Poulsen North Unit, and Poulsen South Unit
        Rush Township, Susquehanna County, Pennsylvania
        Auburn Township, Susquehanna County, Pennsylvania

Ms. Moad:

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Farmout Agreement between Epsilon Energy USA, Inc. ("EPSN") and Chesapeake Appalachia, L.L.C. dated effective February 1, 2010 with Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulsen North and Poulsen South Units (both of these Joint Operating Agreements to be collectively referred to hereinafter as the "Subject JOAs").

EPSN hereby proposes to drill the Craige S 3LHC Well (the "Well") with a surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township, Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,611,000.00 with a completed well costing approximately $9,226,398.00. We anticipate to commence the proposed operation on or about November 30, 2021.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0628

Craige S 3LHC
May 26, 2021
Chesapeake Appalachia, L.L.C.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulsen North Unit, which covers 132.810484 acres
- Poulsen South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to the Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the Poulsen North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well being in the Poulsen South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulsen North Unit WI | Poulsen South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% | 35.528850% | 36.941747% | 36.080090% |
| Equinor USA Onshore Properties Inc. | 18.345441% | 17.106484% | 17.786767% | 17.817658% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.338430% | 0.000000% | 0.000000% | 2.299235% |
| Enerplus Resources (USA) Corporation | 2.859873% | 0.000000% | 0.000000% | 1.231733% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.557414% | 0.000000% | 0.000000% | 0.240075% |

EPSN and Chesapeake Appalachia, L.L.C. hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
May 26, 2021
Chesapeake Appalachia, L.L.C.


Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.


Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.


At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.


Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.



Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator




Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0630

Craige S 3LHC
May 26, 2021
Chesapeake Appalachia, L.L.C.

_____ **Chesapeake Appalachia, L.L.C.** hereby elects to **operate and participate** with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

_____ **Chesapeake Appalachia, L.L.C.** hereby elects to **operate but not participate** with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

_____ **Chesapeake Appalachia, L.L.C.** hereby elects **not to operate nor participate** in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By:_____

Name:_____

Title:_____

Date:_____


_____ **Chesapeake Appalachia, L.L.C.** hereby elects to **operate and participate** with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen North Unit.

_____ **Chesapeake Appalachia, L.L.C.** hereby elects to **operate but not participate** with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen North Unit.

_____ **Chesapeake Appalachia, L.L.C.** hereby elects **not to operate nor participate** in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen North Unit.

By:_____

Name:_____

Title:_____

Date:_____

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0631

Craige S 3LHC
May 26, 2021
Chesapeake Appalachia, L.L.C.

_____ **Chesapeake Appalachia, L.L.C.** hereby elects to **operate and participate** with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen South Unit.

_____ **Chesapeake Appalachia, L.L.C.** hereby elects to **operate but not participate** with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen South Unit.

_____ **Chesapeake Appalachia, L.L.C.** hereby elects **not to operate nor participate** in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen South Unit.

By:_____

Name:_____

Title:_____

Date:_____

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
May 26, 2021

Exhibit "A"

Allocation Consent Agreement


Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the existing Craige Unit, Poulsen North Unit and Poulsen South Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulsen North Unit.

3. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulsen South Unit.


All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit, Poulsen North Unit and Poulsen South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Craige S 3LHC
May 26, 2021


By:_____

Name:_____

Title:_____

Date:_____

**EPSILON**
Energy USA, Inc.

| | | AFE # : | D2110144 |
|---|---|---|---|
| WELL NAME: | **CRAIGE S 3LHC** | DATE: | **05/26/21** |
| OPERATOR: | **EPSILON ENERGY USA, INC** | | |
| PROJECT: | **AUBURN** | | |
| LOCATION (TRACT): | **CRAIGE** | | |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** | | |
| API (PERMIT #): | **37-115-22797-0000 (115-22797)** | PROPOSED TMD: | **20,248** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** | PROPOSED TVD: | **7,050** |
| COMMENTS: | **D&C HZ LOWER MARCELLUS WELL** | PROPOSED CLAT | **12,750** |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 151,000 | $ 2,460,000 | $ 2,611,000 |
| B. COMPLETION COST | $ 948,000 | $ 5,667,398 | $ 6,615,398 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,099,000 | $ 8,127,398 | $ 9,226,398 |

WELL/PROJECT ID# : _____

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 36.080090% | $ 3,328,893 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 17.817658% | $ 1,643,928 |
| EPSILON ENERGY USA, INC. | | 40.919737% | $ 3,775,418 |
| JAMESTOWN RESOURCES, L.L.C. | | 1.076738% | $ 99,344 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | | 2.299235% | $ 212,137 |
| ENERPLUS RESOURCES (USA) CORPORATION | | 1.231733% | $ 113,645 |
| RADLER 2000 LIMITED PARTNERSHIP | | 0.334733% | $ 30,884 |
| TUG HILL MARCELLUS, LLC | | 0.240075% | $ 22,150 |
| | | 100.000000% | $ 9,226,398 |

**OPERATOR'S APPROVAL**

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | *Henry N Clate* | OPERATIONS | DATE: | 5/26/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: | 5/26/21 |
| APPROVED BY: | *Shannon E. Lemke* | GEOLOGY | DATE: | 5/26/21 |
| APPROVED BY: | *B Lou Dowd* | ACCOUNTING | DATE: | 5-26-21 |

**NON-OPERATOR'S APPROVAL**

COMPANY NAME: _____     DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



| Applicant/Well Operator Name: Epsilon Operating LLC |
| DEP #: 328036 |
| Well Name: Craige |
| Well Number: S3LHC |

**Azimuths to Grid North**
True North: -1.14°
Magnetic North: -13.24°

**Magnetic Field**
Strength: 52260.0nT
Dip Angle: 67.27°
Date: 6/22/2020
Model: HDGM

**PROJECT DETAILS:** Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1533' + KB 20' @ 1553.00usft (Prelim)

**DESIGN TARGET DETAILS**

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|------|-----|-------|-------|----------|---------|----------|-----------|
| SHL (Craige S 3LHC) | 0.00 | 0.00 | 0.00 | 583680.99 | 2438211.02 | 41° 45' 20.929 N | 76° 1' 42.178 W |
| LP (Craige S 3LHC) | 6900.00 | -35.92 | 1361.71 | 583645.07 | 2439572.72 | 41° 45' 20.308 N | 76° 1' 24.225 W |
| WP1 (Craige S 3LHC) | 6935.48 | -2842.19 | 2422.11 | 580838.80 | 2440633.12 | 41° 44' 52.378 N | 76° 1' 10.976 W |
| WP2 (Craige S 3LHC) | 6961.82 | -4958.09 | 3152.06 | 578722.90 | 2441363.07 | 41° 44' 31.334 N | 76° 1' 1.907 W |
| WP3 (Craige S 3LHC) | 6979.70 | -6350.11 | 3747.65 | 577330.88 | 2441958.66 | 41° 44' 17.466 N | 76° 0' 54.419 W |
| WP4 (Craige S 3LHC) | 7006.22 | -8704.35 | 4850.53 | 574976.64 | 2442861.54 | 41° 43' 54.033 N | 76° 0' 43.135 W |
| PBHL (Craige S 3LHC) | 7050.00 | -11642.93 | 6496.20 | 572038.06 | 2444707.21 | 41° 43' 24.640 N | 76° 0' 19.578 W |

| Formation est. at SHL |
| Base Elk SS 4325' TVD |
| Hamilton 4704' TVD |

| Formation est. at LP |
| Marcellus Shale 6877' TVD |
| Onondaga 7177' TVD |





Case: 22-1280    Document: 21-3    Page: 68    Date Filed: 07/25/2022

Appx0636

# Epsilon Energy

## Preliminary Geological Prognosis

API Number:            37115227970000

Permit Number:         115-22797

Well Name:             Craige S 3LHC

Well Type:             Horizontal, development

Well Target:           Lower Marcellus

State:                 Pennsylvania

County:                Susquehanna

Township:              Rush & Auburn

Projection:            NAD83/Pennsylvania South

Surface Location:      Craige Pad

                       Lat/Long:  41.755814 / -76.028383

Landing Point:         Craige Unit

                       Lat/Long:  41.755641 / -76.023396

Bottom Hole:           Poulson South Unit

                       Lat/Long:  41.723511 / -76.005438

Surface Elevation:     1,533'

KB (est):              1,553'

Total Depth (est):     20,248'

Formations:

| Formation | TVD | Subsea Depth | Notes |
|-----------|-----|--------------|-------|
| Tully LS | 4,571 | -3,018 | TVD @ pentetration point |
| Hamilton SH | 4,681 | -3,128 | TVD @ pentetration point |
| Marcellus | 6,684 | -5,131 | TVD @ pentetration point |
| Target | 7,050 | -5,347 | TVD @ pentetration point |
| Onondaga Limestone | 7,003 | -5,450 | |

Well Azimuth:          159°

Lateral Length:        12,750'

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

8000-PM-OOGM0002    Rev. 6/2014

**pennsylvania**
DEPARTMENT OF ENVIRONMENTAL PROTECTION

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**OFFICE OF OIL AND GAS MANAGEMENT**
**WELL LOCATION PLAT**
PAGE 1 Surface Location

| | Auth ID#: | | G: |
|---|---|---|---|
| DEP | | | |
| USE | Permit #: | | G: |
| ONLY | Project #: | | C: |



Denotes location of top of well on topo map.

Surface hole is located on topo map 13064 feet south of latitude 41° 47' 30"

**SURFACE HOLE COORDINATES NAD 83**
True Latitude: NORTH
41° 45' 20.93"
True Longitude: WEST
76° 01' 42.18"

**NAD 83**
N 41.755814'
W 76.028383'

**NAD 27**
N 41.755738'
W 76.028736'

N 583642.51
E 2469628.00

Surface hole is located on topo map 7744 feet west of longitude 76° 00' 00"

3000' RADIUS

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |

PROPOSED SURFACE HOLE

ACCESS RD

EXISTING PRIVATE ROAD

COUNTY HOME RD

**NOTES**

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST.

COMMONWEALTH REGISTERED PROFESSIONAL **TODD C. JACOBS** LAND SURVEYOR NO. SU 075184 PENNSYLVANIA

**LEGEND**
△ Well
● Found corner Iron Pin or Pipe
● Water Supply

**NOTE**
No Wetlands Within 100' of Disturbance
No Wetlands Within 100' of Well Bore

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: S3LHC | Serial #: |
|---|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½ Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. | |
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 723 ± |
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/16/2020 10:16:16AM

- 1 -

Appx0639

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158** .

| Applicant/Well Operator Name: EPSILON OPERATING LLC | | DEP ID# 328036 | Well (Farm) Name CRAIGE | | Well # S3LHC | Serial # |
|---|---|---|---|---|---|---|
| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | | Angle & Course of Deviation (Drilling): S88°29'19"E 1362.18'  S20°42'00"E 2999.92'  S19°02'01"E 2238.27' S23°09'51"E 1514.08'  S20°42'00"E 2248.74'  S31°29'27"E 3740.08' | | | Anticipated True Vertical Depth Feet (TVD): 7050 | Anticipated Total Measured Depth Feet (TMD): 20248.13 |
| Target Formation(s): MARCELLUS | | | Deepest Formation to be penetrated: MARCELLUS | | Number of Laterals: 1 | Total footage to be drilled all laterals: 20248.13 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70" C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.73" | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89" C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99" D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality: where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality: where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 9/16/2020 10:16:51 AM

-2-

Appx0640

8000-PM-OOGM0002    Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # S3LHC |
|---|---|---|---|---|

**SURFACE HOLE COORDINATES**

| NAD 83 | WAYPOINT 2 COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 45' 20.93" | True Latitude: NORTH 41° 44' 31.33" |
| True Longitude: WEST 76° 01' 42.18" | True Longitude: WEST 76° 01' 01.91" |
| NAD 83 N 41.755814° W 76.028383° | NAD 83 N 41.742037° W 76.017196° |
| NAD 27 N 41.755738° W 76.028736° | NAD 27 N 41.741962° W 76.017550° |
| N 583642.51 E 2469628.00 | N 578684.46 E 2472780.00 |

**KOP COORDINATES**

| NAD 83 | WAYPOINT 3 COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 45' 25.68" | True Latitude: NORTH 41° 44' 17.47" |
| True Longitude: WEST 76° 01' 26.78" | True Longitude: WEST 76° 00' 54.42" |
| NAD 83 N 41.757135° W 76.024104° | NAD 83 N 41.738185° W 76.015116° |
| NAD 27 N 41.757059° W 76.024458° | NAD 27 N 41.738109° W 76.015470° |
| N 584147.00 E 2470785.48 | N 577292.45 E 2473375.58 |

**LANDING POINT COORDINATES**

| NAD 83 | WAYPOINT 4 COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 45' 20.31" | True Latitude: NORTH 41° 43' 56.53" |
| True Longitude: WEST 76° 01' 24.22" | True Longitude: WEST 76° 00' 44.49" |
| NAD 83 N 41.755641° W 76.023396° | NAD 83 N 41.732369° W 76.012359° |
| NAD 27 N 41.755565° W 76.023749° | NAD 27 N 41.732294° W 76.012713° |
| N 583606.58 E 2470989.69 | N 575188.89 E 2474170.43 |

**WAYPOINT 1 COORDINATES**

| NAD 83 | BOTTOM HOLE COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 44' 52.38" | True Latitude: NORTH 41° 43' 24.64" |
| True Longitude: WEST 76° 01' 10.98" | True Longitude: WEST 76° 00' 19.58" |
| NAD 83 N 41.747883° W 76.019716° | NAD 83 N 41.723511° W 76.005438° |
| NAD 27 N 41.747807° W 76.020069° | NAD 27 N 41.723435° W 76.005793° |
| N 580800.34 E 2472050.07 | N 571999.66 E 2476124.08 |

Drawing labels:
- N/F ALLIANCE TO PROTECT LIFE 177-1-9.5
- PROPOSED SURFACE HOLE
- N/F HAROLD C CRAIGE GLORIA CRAIGE 177-1-28.01
- TRACT BOUNDARY 723 ACRES±
- KOP
- PROPOSED LANDING POINT
- NOTE: TRACT BOUNDARY IS NOT THE UNIT BOUNDARY AND WILL NOT DETERMINE ROYALTY
- N/F ANTHONY P LITWIN 177-1-25
- ACCESS RD
- COUNTY ROUTE 1509
- EXISTING PRIVATE ROAD
- N/F CHARLES GROHE 196-1-1
- S20°42'00"E 2999.92'
- S15°02'01"E 2238.27'
- PROPOSED WAYPOINT 1
- N/F LINDA SMITH COREY SMITH 196-2-8.02
- PROPOSED WAYPOINT 2
- N/F WILLIAM WASHER 196-2-8.01
- RUSH TWP AUBURN TWP
- N/F LEON C SIDOREK 196-2-8.02
- N/F SHANE KELLEY 196-2-54
- S23°09'51"E 1514.08'
- N/F DOROTHY JACKSON 196-2-8.04
- N/F BONNIE LEA TYLER 196-2-8
- N/F DENNIS H TALBERT LINDA M TALBERT 196-2-57
- PROPOSED WAYPOINT 3
- N/F MATTHEW S DEPUE REBECCA L DEPUE 196-2-8.03
- S20°42'00"E 2248.74'
- N/F BLANCHE C PFARR 196-2-11
- N/F RAYMOND W POULSEN CHRISTINE POULSEN 196-2-11.02
- PROPOSED WAYPOINT 4
- N/F CARL P POULSEN 196-2-11.01
- S31°29'27"E 3740.08'
- N/F HARRY H ROSS JUDY K ROSS 196-2-31
- N/F ALBERT P LUDWIG 196-2-30
- PROPOSED BOTTOM HOLE

COMMONWEALTH REGISTERED PROFESSIONAL LAND SURVEYOR TODD C. JACOBS NO SU 075184 PENNSYLVANIA

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |
| L3 | S88°29'19"E | 1362.18' |

PA-SPC NORTH / GRID NORTH / N

S3LHC 190.12' 20.16'

CRAIGE PAD ORIENTATION 1" = 400'

**LEGEND**
- △ Well
- ⊗ Landing Point and Bottom Hole
- ● Found corner Iron Pin or Pipe

MAP SCALE: 1"=2,300'

PLOT DATE/TIME: 9/10/2020 1:43:25PM

Appx0641



Bluegrass South Unit, Craige Unit, Poulson
North Unit & Poulson South Unit

Appx0642

# Exhibit A

Craige S 3LHC
December 22, 2020
Enerplus Resources (USA) Corporation



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Enerplus Resources (USA) Corporation
Attn:Mr. Beau Fritz
950 17th Street, Suite 2200
Denver, CO 80202

Re:    Epsilon Energy's Proposed Craige S 3LHC Well
       API: 37115227970000; Permit Number: 115-22797
       Craige Unit, Poulson North Unit, and Poulson South Unit
       Rush Township, Susquehanna County, Pennsylvania
       Auburn Township, Susquehanna County, Pennsylvania

Mr. Fritz:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige S 3LHC Well (the "Well") with a surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township, Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,660,000.00 with a completed well costing approximately $9,019,243.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulson North Unit, which covers 132.810484 acres
- Poulson South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the Poulson North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Enerplus Resources (USA) Corporation

being in the Poulson South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulson North Unit WI | Poulson South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% | 35.528850% | 36.941747% | 36.080090% |
| Equinor USA Onshore Properties Inc. | 18.345441% | 17.106484% | 17.786767% | 17.817658% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.338430% | 0.000000% | 0.000000% | 2.299235% |
| Enerplus Resources (USA) Corporation | 2.859873% | 0.000000% | 0.000000% | 1.231733% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.557414% | 0.000000% | 0.000000% | 0.240075% |
| Unconventionals Natural Gas, LLC | 0.000000% | 0.000000% | 0.000000% | 0.000000% |

EPSN and Enerplus Resources (USA) Corporation hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit. Accordingly, please indicate your election as to the Craige Unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Enerplus Resources (USA) Corporation

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

Rachel Collins

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0646

Craige S 3LHC
December 22, 2020
Enerplus Resources (USA) Corporation

_____**Enerplus Resources (USA) Corporation** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

_____**Enerplus Resources (USA) Corporation** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By:_____

Name:_____
      Nathan Fisher (Jan 19, 2021 10:25 MST)

Title:_____

Date: Jan 19, 2021

Appx0647



Via E-mail: Rachel.Collins@epsilonenergyltd.com
And Lone Star Overnight

January 22, 2021

Ms. Rachel Collins
Epsilon Energy USA, Inc.
16945 Northchase Dr., Ste 1610
Houston, Texas 77060

Re:     CRAIGE S 3LHC
        Auburn Township
        Susquehanna County, Pennsylvania

Dear Ms. Collins,

Please find enclosed the following documents that have been executed on behalf of
Tug Hill, Inc. the general partner of Radler 2000 Limited Partnership (Radler) and as
manager of Tug Hill Marcellus, LLC (Tug Hill):

- Signed letters dated January 8, 2021 whereby Radler and Tug Hill elect to
  participate in the drilling of the Craige S 3LHC.

- Signed Authority for Expenditure for the Craige S 3LHC well.

- Radler and Tug Hill's Well Data Requirements form which sets out the
  information that will need to be provided to Tug Hill during operations.

Thank you and should you have any questions regarding any of the above, please feel
free to contact the undersigned at (817) 632-5200 or chussey@tug-hillop.com.

Sincerely,

TUG HILL, INC.
Radler 2000 Limited Partnership
Tug Hill Marcellus, LLC

Ciara Hussey
Land Analyst

Enclosures

1320 S UNIVERSITY DRIVE, SUITE 500 ● FORT WORTH, TX 76107 ● T 817.632.5200 ● F 817.632.5220

Appx0648

RECEIVED

DEC 2 4 2020

Craige S 3LHC
December 22, 2020
Radler 2000 Limited Partnership



December 22, 2020

VIA FEDEX AND ELECTRONIC MAIL

Radler 2000 Limited Partnership
Attn: Mr. David D. Kalish
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107

Re:    Epsilon Energy's Proposed Craige S 3LHC Well
       API: 3711527970000; Permit Number: 115-22797
       Craige Unit, Poulson North Unit, and Poulson South Unit
       Rush Township, Susquehanna County, Pennsylvania
       Auburn Township, Susquehanna County, Pennsylvania

Mr. David D. Kalish:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige S 3LHC Well (the "Well") with a
surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate
bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township,
Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be
drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet,
to test the Marcellus Formation and all other formations that may be encountered in the wellbore.
Estimated costs to drill the Well are $2,660,000.00 with a completed well costing approximately
$9,019,243.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulson North Unit, which covers 132.810484 acres
- Poulson South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto
as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate,
based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the
Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the
Poulson North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0649

Craige S 3LHC
December 22, 2020
Radler 2000 Limited Partnership

_✓_ **Radler 2000 Limited Partnership** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

_____ **Radler 2000 Limited Partnership** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By: _David D. Kalish_

Name: David D. Kalish

Title: Sr. Vice President - Land

Date: 1/22/2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the existing Craige Unit, Poulson North Unit and Poulson South Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1.  That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2.  That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson North Unit.

3.  That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson South Unit.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit, Poulson North Unit and Poulson South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in a Cross Unit Well as to one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Craige S 3LHC
December 22, 2020

**Radler 2000 Limited Partnership**
By Tug Hill, Inc., its General Partner

By: _David D. Kalish_
Printed Name: David D. Kalish
Title: Sr. Vice President — Land
Date: _1/22/2021_

RECEIVED

DEC 24 2020

Craige S 3LHC
December 22, 2020
Tug Hill Marcellus, LLC


EPSILON

December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Tug Hill Marcellus, LLC
Attn:Mr. David D. Kalish
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107

Re:     Epsilon Energy's Proposed Craige S 3LHC Well
        API: 37115227970000; Permit Number: 115-22797
        Craige Unit, Poulson North Unit, and Poulson South Unit
        Rush Township, Susquehanna County, Pennsylvania
        Auburn Township, Susquehanna County, Pennsylvania

Mr. David D. Kalish:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige S 3LHC Well (the "Well") with a surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township, Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,660,000.00 with a completed well costing approximately $9,019,243.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulson North Unit, which covers 132.810484 acres
- Poulson South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the Poulson North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610. Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Tug Hill Marcellus, LLC

✔ **Tug Hill Marcellus, LLC** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

_____ **Tug Hill Marcellus, LLC** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By: _David D. Kalish_

Name: David D. Kalish

Title: Sr. Vice President - Land

Date: 1/22/2021

Appx0654

Craige S 3LHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the existing Craige Unit, Poulson North Unit and Poulson South Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson North Unit.

3. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson South Unit.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit, Poulson North Unit and Poulson South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Craige S 3LHC
December 22, 2020

**Tug Hill Marcellus, LLC**
By Tug Hill, Inc., its Manager

By: _David D. Kalish_
Printed Name: David D. Kalish
Title: Sr. Vice President -- Land
Date: 1/22/2021

**EPSILON**
Energy USA, Inc.

| | | AFE # : | D2110144 |
|---|---|---|---|

| WELL NAME: | CRAIGE S 3LHC | DATE: | 11/17/20 |
|---|---|---|---|
| OPERATOR: | EPSILON ENERGY USA, INC | | |
| PROJECT: | AUBURN | | |
| LOCATION (TRACT): | CRAIGE | | |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE | | |
| API (PERMIT #): | 37-115-22797-0000 (115-22797) | PROPOSED TMD: | 20,724 |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA | PROPOSED TVD: | 6,876 |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL | PROPOSED CLAT: | 12,499 |

| SUMMARY OF ESTIMATED COSTS | | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|---|
| A. DRILLING COST | | $ 119,000 | $ 2,541,000 | 2,660,000 |
| B. COMPLETION COST | | $ 811,000 | $ 5,548,243 | 6,359,243 |
| C. PLANT & FACILITY COST | | $ - | $ - | $ - |
| D. WORKOVER COST | | $ - | $ - | $ - |
| | TOTALS: | $ 930,000 | $ 8,089,243 | 9,019,243 |

WELL/PROJECT ID#:

| | EXPLORATORY ☐ | DEVELOPMENT ☒ |
|---|---|---|
| | WORKOVER ☐ | RECOMPLETION ☐ |

| WORKING INTEREST OWNER: | PERCENT: | COST SHARE: |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | 36.080090% | $ 3,254,161 |
| EQUINOR USA ONSHORE PROPERTIES INC. | 17.817668% | $ 1,607,018 |
| EPSILON ENERGY USA, INC. | 40.919737% | $ 3,690,651 |
| JAMESTOWN RESOURCES, L.L.C. | 1.076738% | $ 97,114 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | 2.299235% | $ 207,374 |
| ENERPLUS RESOURCES (USA) CORPORATION | 1.231733% | $ 111,093 |
| RADLER 2000 LIMITED PARTNERSHIP | 0.334733% | $ 30,190 |
| TUG HILL MARCELLUS, LLC | 0.240075% | $ 21,653 |
| | | |
| | 100.00000% | $ 9,019,243 |

**OPERATOR'S APPROVAL**

| PREPARED BY: | Henry N Carter | OPERATIONS | DATE: | 1/8/21 |
|---|---|---|---|---|
| APPROVED BY: | Shadron S Lemke | ~~LAND/LEGAL~~ GEO | DATE: | 1/8/21 |
| APPROVED BY: | Rachel Collins | ~~GEOLOGY~~ LAND | DATE: | 1/8/2021 |
| APPROVED BY: | B Lou Bond | ACCOUNTING | DATE: | 1-8-21 |

**NON-OPERATOR'S APPROVAL**

| COMPANY NAME: | Radler 2000 Limited Partnership and Tug Hill Marcellus, LLC | DATE: 1/22/2021 |
|---|---|---|
| | By: Tug Hill, Inc., its general partner   By: Tug Hill, Inc., its manager | |
| APPROVED BY: | David D.Kalish | |
| TITLE: | David D. Kalish, Sr. Vice President - Land | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



## Radler 2000 Limited Partnership / Tug Hill Marcellus LLC / Tug Hill Energy LLC / TH Exploration II LLC

### WELL DATA REQUIREMENTS

(Outside Operated)

1) State Regulatory forms, including location plats for drilling and completing a well or performing a workover operation.

2) Well Prognosis - logging program, casing point, completion procedures, etc.

3) Well Data - (programs may vary):

| | |
|---|---|
| • Mud Log | 1 Daily and 3 Final Prints |
| • Open Hole Logs | 1 Field Copy and 3 Final Prints |
| • Well Surveys (DIL-Sonic LDT-CNL, GR, Cal, Micrologs) | 1 Field Copy and 3 Final Prints |
| • Core Analysis | 1 Preliminary and 2 Final Prints |
| • Directional Surveys | 1 Copy |
| • Velocity Surveys | 2 Copies |
| • Dipmeter | 2 Copies |
| • Water / Gas Analysis | 1 Copy |
| • Drillstem Test Report(s) | 1 Copy |
| • Drawdown and Buildup Test Data | 1 Copy |
| • Digital Well Log Data in LAS Format | 1 Copy |
| • Completion Data | 1 Copy |
| • Production Data | 1 Copy |
| *(daily production if available)* | |

The above data to be sent to Ms. Winnie Scott via email to nonop@tug-hillop.com and mailed to
**TUG-HILL – 1320 S. UNIVERSITY DRIVE – SUITE 500 - FORT WORTH, TEXAS 76107**

4) Daily Drilling/Completion reports from beginning through completion of a drilling, completion or workover operation should be e-mailed to nonop@tug-hillop.com until the well is completed or abandoned with a complete set of daily drilling/completion reports furnished after the well is plugged or placed in production.

5) Regulatory Forms - One copy of each emailed to Mr. Geoff Radler at nonop@tug-hillop.com or mailed to the address stated below.

6) One copy of Preliminary Title Opinions, Drilling Opinions and/or Division Order Title Opinions to Mrs. Holly Bowman, Division Order Supervisor, at the address stated below.

7) NOTIFICATION via email or phone for spud, testing, logging, drill stem tests, P&A, etc. (24 hour notice):

    a) Geologist responsible for operation:
      Project Geologist
      Phone: (817) 632-5200
      E-mail:nonop@tug-hillop.com

8) If operator has an Online Reporting System, please provide access credentials to Mr. Geoff Radler at nonop@tug-hillop.com

**MAILING ADDRESS:**

    TUG-HILL - 1320 S. UNIVERSITY DRIVE - SUITE 500 - FORT WORTH, TEXAS 76107
    PHONE: (817) 632-5200    FAX: (817) 632-5220    WWW.TUG-HILL.COM

Appx0658



# JAMESTOWN
# RESOURCES, L.L.C.

January 27, 2021

**VIA ELECTRONIC MAIL (rachel.collins@epsilonenergyltd.com**
**henry.clanton@epsilonenergyltd.com)**

Ms. Rachel Collins
Epsilon Energy Usa, Inc
16945 NORTHCHASE DRIVE, SUITE 1610
Houston, TX 77060

**Re:** Proposed Drilling Operation (Non-Consent)
CRAIGE S 3LHC
Susquehanna County, PA

Dear Ms. Collins,

Pursuant to your proposal letter dated December 22, 2020, please be advised that Jamestown Resources, L.L.C hereby elects NOT to participate in the proposed drilling of the captioned well. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**

Black Falcon Energy, LLC
717 Texas Avenue, Suite 3100 | Houston, Texas 77002

Generated By AFE Nav

Appx0659

Craige S 3LHC
December 22, 2020
Jamestown Resources, L.L.C.



December 22, 2020



VIA FEDEX AND ELECTRONIC MAIL

Jamestown Resources, L.L.C.
Attn:Mr. Brian P. Shannon
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:     Epsilon Energy's Proposed Craige S 3LHC Well
        API: 37115227970000; Permit Number: 115-22797
        Craige Unit, Poulson North Unit, and Poulson South Unit
        Rush Township, Susquehanna County, Pennsylvania
        Auburn Township, Susquehanna County, Pennsylvania

Mr. Shannon:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige S 3LHC Well (the "Well") with a
surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate
bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township,
Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be
drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet,
to test the Marcellus Formation and all other formations that may be encountered in the wellbore.
Estimated costs to drill the Well are $2,660,000.00 with a completed well costing approximately
$9,019,243.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulson North Unit, which covers 132.810484 acres
- Poulson South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto
as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate,
based on approximately 43.0695026%of the productive drainhole of the Cross Unit Well being in the
Craige Unit, approximately 30.8294457% of the productive drainhole of the Cross Unit well being in the
Poulson North Unit, and approximately 26.1010516% of the productive drainhole of the Cross Unit Well

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0660

Craige S 3LHC
December 22, 2020
Jamestown Resources, L.L.C.

being in the Poulson South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulson North Unit WI | Poulson South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% | 35.528850% | 36.941747% | 36.080090% |
| Equinor USA Onshore Properties Inc. | 18.345441% | 17.106484% | 17.786767% | 17.817658% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.338430% | 0.000000% | 0.000000% | 2.299235% |
| Enerplus Resources (USA) Corporation | 2.859873% | 0.000000% | 0.000000% | 1.231733% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.557414% | 0.000000% | 0.000000% | 0.240075% |
| Unconventionals Natural Gas, LLC | 0.000000% | 0.000000% | 0.000000% | 0.000000% |

EPSN and Jamestown Resources, L.L.C. hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit. Accordingly, please indicate your election as to the Craige Unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0661

Craige S 3LHC
December 22, 2020
Jamestown Resources, L.L.C.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

Appx0662

Craige S 3LHC
December 22, 2020
Jamestown Resources, L.L.C.


_____**Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

____✓____**Jamestown Resources, L.L.C.** hereby elects not to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.


By: _____

Name: _Michael Fuget_

Title: _Manager_

Date: _1·27·21_

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0663

Craige S 3LHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the existing Craige Unit, Poulson North Unit and Poulson South Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson North Unit.

3. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson South Unit.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit, Poulson North Unit and Poulson South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Craige S 3LHC
December 22, 2020

By: _____

Name: _____

Title: _____

Date: _____

Appx0665

# EPSILON
## Energy USA, Inc.

AFE # :     D2110144

DATE:     11/17/20

| | |
|---|---|
| WELL NAME: | CRAIGE S 3LHC |
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22797-0000 (115-22797) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL |

PROPOSED TMD:    20,724
PROPOSED TVD:    6,875
PROPOSED CLAT:   12,499

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,541,000 | $ 2,660,000 |
| B. COMPLETION COST | $ 811,000 | $ 5,548,243 | $ 6,359,243 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 930,000 | $ 8,089,243 | $ 9,019,243 |

WELL/PROJECT ID#: _____

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | PERCENT: | COST SHARE: |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | 36.080090% | $ 3,254,151 |
| EQUINOR USA ONSHORE PROPERTIES INC. | 17.817658% | $ 1,607,018 |
| EPSILON ENERGY USA, INC. | 40.919737% | $ 3,690,651 |
| JAMESTOWN RESOURCES, L.L.C. | 1.076738% | $ 97,114 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | 2.299235% | $ 207,374 |
| ENERPLUS RESOURCES (USA) CORPORATION | 1.231733% | $ 111,093 |
| RADLER 2000 LIMITED PARTNERSHIP | 0.334733% | $ 30,190 |
| TUG HILL MARCELLUS, LLC | 0.240075% | $ 21,653 |
| | | |
| | 100.00000% | $ 9,019,243 |

## OPERATOR'S APPROVAL

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N. Clarka* | OPERATIONS | DATE: 1/8/21 |
| APPROVED BY: | *Shannon E Lemke* | LAND/LEGAL GEO | DATE: 1/8/21 |
| APPROVED BY: | *Rachel Collins* | GEOLOGY LAND | DATE: 1/8/2021 |
| APPROVED BY: | *B Lou Bond* | ACCOUNTING | DATE: 1-8-21 |

## NON-OPERATOR'S APPROVAL

| | | |
|---|---|---|
| COMPANY NAME: | *Jamestown* | DATE: 1.27.21 |
| APPROVED BY: | | |
| TITLE: | *Manager* | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



**Epsilon Energy**

Preliminary Geological Prognosis

API Number:           37115227970000

Permit Number:        115-22797

Well Name:            Craige S 3LHC

Well Type:            Horizontal, development

Well Target:          Lower Marcellus

State:                Pennsylvania

County:               Susquehanna

Township:             Rush & Auburn

Projection:           NAD83/Pennsylvania South

Surface Location:     Craige Pad

                      Lat/Long: 41.755814 / -76.028383

Landing Point:        Craige Unit

                      Lat/Long: 41.755641 / -76.023396

Bottom Hole:          Poulson South Unit

                      Lat/Long: 41.723511 / -76.005438

Surface Elevation:    1,533'

KB (est):             1,553'

Total Depth (est):    20,248'

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,571 | -3,018 | TVD @ pentetration point |
| Hamilton SH | 4,681 | -3,128 | TVD @ pentetration point |
| Marcellus | 6,684 | -5,131 | TVD @ pentetration point |
| Target | 7,050 | -5,347 | TVD @ pentetration point |
| Onondaga Limestone | 7,003 | -5,450 | |

Well Azimuth:         159°

Lateral Length:       12,750'

Appx0668

Contacts:

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Lilian Hernandez | JIB / AP | 281-453-3393 | | lilian.hernandez@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Appx0669

8000-PM-OOGM0002    Rev. 6/2014

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**OFFICE OF OIL AND GAS MANAGEMENT**
**WELL LOCATION PLAT**
PAGE 1 Surface Location

pennsylvania
DEPARTMENT OF ENVIRONMENTAL PROTECTION

| | |
|---|---|
| DEP | Auth ID#: |
| USE | Permit #: |
| ONLY | Project #: |



SURFACE HOLE COORDINATES NAD 83
True Latitude: NORTH
41° 45' 20.93"
True Longitude: WEST
76° 01' 42.18"

NAD 83
N 41.755814'
W 76.028383'

NAD 27
N 41.755738'
W 76.028736'

N 583642.51
E 2469628.00

Surface hole is located on topo map 13064 feet south of latitude 41° 47' 30"

Surface hole is located on topo map 7744 feet west of longitude 76° 00' 00"

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |

PROPOSED SURFACE HOLE

ACCESS RD

EXISTING PRIVATE ROAD

COUNTY HOME RD

NOTES
1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST

TODD C. JACOBS
REGISTERED PROFESSIONAL LAND SURVEYOR NO. SU 075184
COMMONWEALTH OF PENNSYLVANIA

LEGEND
△ Well
⊚ Found corner iron Pin or Pipe
⊙ Water Supply

NOTE
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

| | | | | |
|---|---|---|---|---|
| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | Well #: S3LHC | Serial #: |
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½ Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. |
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 723 ± |
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/16/2020

- 1 -

Appx0670

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # | Serial # |
|---|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | S3LHC | |

| Surface Landowner/Lessor: | Angle & Course of Deviation (Drilling) | | Anticipated True Vertical Depth Feet (TVD): | Anticipated Total Measured Depth Feet (TMD): |
|---|---|---|---|---|
| HAROLD C. AND GLORIA CRAIGE | S88°29'19"E 1362.18' S20°42'00"E 2999.92' S19°02'01"E 2238.27' S23°09'51"E 1514.08' S20°42'00"E 2248.74' S31°29'27"E 3740.08' | | 7050 | 20248.13 |

| Target Formation(s): | Deepest Formation to be penetrated: | Number of Laterals: | Total footage to be drilled all laterals: |
|---|---|---|---|
| MARCELLUS | MARCELLUS | 1 | 20248.13 |

| | Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply |
|---|---|---|---|
| ① | KEVIN C AND MELANIE A PIERSON | 177–1–33.01 | A N41°45'48.15" W76°01'49.28"  B N41°45'47.86" W76°01'48.22" |
| ② | JOSEPH AND DONNAGRILLO | 177–1–32 | N41°45'44.1" W76°01'52.37" |
| ③ | RICHARD F DOLAN | 177–1–30.01 | N41°45'38.92" W76°01'54.84" |
| ④ | STEPHEN JAMES MOLNAR | 176–1–14 | A N41°45'38.40" W76°02'07.46"  B N41°45'38.23" W76°02'07.53" |
| ⑤ | STEPHEN J MOLNAR | 177–1–30 | A N41°45'37.02" W76°01'59.72"  B N41°45'35.27" W76°02'02.65" |
| ⑥ | ANGELA VERY | 177–1–29 | A N41°45'34.87" W76°01'55.70"  B N41°45'34.48" W76°01'55.22"  C N41°45'33.84" W76°01'56.11" |
| ⑦ | ALLIANCE TO PROTECT LIFE | 176–1–47 | N41°45'29.17" W76°02'10.17" |
| ⑧ | ALLIANCE TO PROTECT LIFE | 177–1–43 | N41°45'18.88" W76°02'01.21" |
| ⑨ | HAROLD C AND GLORIA CRAIGE | 177–1–28.01 | A N41°45'14.41" W76°02'04.56"  B N41°45'14.78" W76°02'03.55" |
| ⑩ | ELIZABETH SPICKERMAN | 176–1–23 | N41°45'04.68" W76°02'09.73" |
| ⑪ | ROBERT N SHAFFER | 176–1–23.01 | N41°44'56.35" W76°02'02.67" |
| ⑫ | RAYMOND AND CHRISTINE K POULSEN | 177–1–26 | A N41°44'56.14" W76°01'59.89"  B N41°45'01.21" W76°02'00.99"  C N41°44'57.94" W76°01'54.90"  D N41°44'57.56" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | ... . ... |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 9/16/2020 10:16:51AM

-2-

Appx0671

8000-PM-OOGM0002   Rev. 6/2014

# WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



| Applicant/Well Operator Name: | | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|---|
| EPSILON OPERATING LLC | | 328036 | CRAIGE | S3LHC |

**SURFACE HOLE COORDINATES NAD 83**
True Latitude: NORTH 41° 45' 20.93"
True Longitude: WEST 76° 01' 42.18"
NAD 83  N 41.755814°  W 76.028383°
NAD 27  N 41.755738°  W 76.028736°
N 583642.51  E 2469628.00

**WAYPOINT 2 COORDINATES NAD 83**
True Latitude: NORTH 41° 44' 31.33"
True Longitude: WEST 76° 01' 01.91"
NAD 83  N 41.742037°  W 76.017196°
NAD 27  N 41.741962°  W 76.017550°
N 578684.46  E 2472780.00

**KOP COORDINATES NAD 83**
True Latitude: NORTH 41° 45' 25.68"
True Longitude: WEST 76° 01' 26.78"
NAD 83  N 41.757135°  W 76.024104°
NAD 27  N 41.757059°  W 76.024458°
N 584147.00  E 2470785.48

**WAYPOINT 3 COORDINATES NAD 83**
True Latitude: NORTH 41° 44' 17.47"
True Longitude: WEST 76° 00' 54.42"
NAD 83  N 41.738185°  W 76.015116°
NAD 27  N 41.738109°  W 76.015470°
N 577292.45  E 2473375.58

**LANDING POINT COORDINATES NAD 83**
True Latitude: NORTH 41° 45' 20.31"
True Longitude: WEST 76° 01' 24.22"
NAD 83  N 41.755641°  W 76.023396°
NAD 27  N 41.755565°  W 76.023749°
N 583606.58  E 2470989.69

**WAYPOINT 4 COORDINATES NAD 83**
True Latitude: NORTH 41° 43' 56.53"
True Longitude: WEST 76° 00' 44.49"
NAD 83  N 41.732369°  W 76.012359°
NAD 27  N 41.732294°  W 76.012713°
N 575188.89  E 2474170.43

**WAYPOINT 1 COORDINATES NAD 83**
True Latitude: NORTH 41° 44' 52.38"
True Longitude: WEST 76° 01' 10.98"
NAD 83  N 41.747883°  W 76.019716°
NAD 27  N 41.747807°  W 76.020069°
N 580800.34  E 2472050.07

**BOTTOM HOLE COORDINATES NAD 83**
True Latitude: NORTH 41° 43' 24.64"
True Longitude: WEST 76° 00' 19.58"
NAD 83  N 41.723511°  W 76.005438°
NAD 27  N 41.723435°  W 76.005793°
N 571999.66  E 2476124.08

PROPOSED SURFACE HOLE
KOP
PROPOSED LANDING POINT
TRACT BOUNDARY 723 ACRES±
NOTE: TRACT BOUNDARY IS NOT THE UNIT BOUNDARY AND WILL NOT DETERMINE ROYALTY

N/F ALLIANCE TO PROTECT LIFE 177-1-43
N/F HAROLD C CRAIGE GLORIA CRAIGE 177-1-28.01
N/F ANTHONY P LITWIN 177-1-25
N/F CHARLES GROHE 196-1-1
ACCESS RD
EXISTING PRIVATE ROAD
COUNTY HOUSE ROAD

PROPOSED WAYPOINT 1
N/F LINDA SMITH COREY SMITH 196-2-52
N/F LEON C SIDOREK 196-2-8.02
RUSH TWP
AUBURN TWP
S25°09'51"E 1514.08'
N/F BONNIE LEA TYLER 195-2-8
PROPOSED WAYPOINT 3
N/F MATTHEW S DEPUE REBECCA C DEPUE 196-2-8.03
S20°42'00"E 2248.74'
N/F RAYMOND W POULSEN CHRISTINE POULSEN 195-2-11.02
S20°02'01"E 2899.92'
S19°02'01"E 2238.27'
PROPOSED WAYPOINT 2
N/F WILLIAM WASHER 196-2-8.01
N/F SHANE KELLEY 196-2-54
N/F DOROTHY JACKSON 196-2-8.04
N/F DENNIS H TALBERT LINDA M TALBERT 196-2-57
N/F BLANCHE C PFARR 196-2-11
PROPOSED WAYPOINT 4
N/F CARL P POULSEN 196-2-11.01
S31°29'27"E 3740.08'
N/F HARRY R ROSS JUDY K ROSS 196-2-31
N/F ALBERT P LUDWIG 196-2-30
PROPOSED BOTTOM HOLE

COMMONWEALTH REGISTERED PROFESSIONAL TODD C. JACOBS LAND SURVEYOR NO SU 075184 PENNSYLVANIA

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |
| L3 | S88°29'19"E | 1362.18' |

PA-SPC NORTH / GRID NORTH
N

S3LHC
190.12'
20.14'
CRAIGE PAD ORIENTATION 1" = 400'

**LEGEND**
△ Well
⊗ Landing Point and Bottom Hole
⊚ Found corner Iron Pin or Pipe

MAP SCALE: 1"=2,300'

PLOT DATE/TIME: 9/10/2020 1:43:22PM

-3-

Appx0672



Bluegrass South Unit, Craige Unit, Poulson
North Unit & Poulson South Unit

Craige S 3LHC
December 22, 2020
Chief Exploration & Development LLC



December 22, 2020


VIA FEDEX AND ELECTRONIC MAIL


Chief Exploration & Development LLC
Attn:Mr. Paul Lettieri
8111 Westchester Drive, Suite 900
Dallas, TX 75225


Re:   Epsilon Energy's Proposed Craige S 3LHC Well
      API: 37115227970000; Permit Number: 115-22797
      Craige Unit, Poulson North Unit, and Poulson South Unit
      Rush Township, Susquehanna County, Pennsylvania
      Auburn Township, Susquehanna County, Pennsylvania

Mr. Lettieri:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige S 3LHC Well (the "Well") with a surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township, Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,660,000.00 with a completed well costing approximately $9,019,243.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in each of the following units:
  • Craige Unit, which covers 591.870858 acres
  • Poulson North Unit, which covers 132.810484 acres
  • Poulson South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately 43.0695026%of the productive drainhole of the Cross Unit Well being in the Craige Unit, approximately 30.8294457% of the productive drainhole of the Cross Unit well being in the Poulson North Unit, and approximately 26.1010516% of the productive drainhole of the Cross Unit Well

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0674

Craige S 3LHC
December 22, 2020
Chief Exploration & Development LLC

being in the Poulson South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulson North Unit WI | Poulson South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.634447% | 35.528850% | 36.941747% | 35.943111% |
| Equinor USA Onshore Properties Inc. | 18.669483% | 17.106484% | 17.786767% | 17.957221% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.335070% | 0.000000% | 0.000000% | 2.297788% |
| Enerplus Resources (USA) Corporation | 2.858073% | 0.000000% | 0.000000% | 1.230958% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.556574% | 0.000000% | 0.000000% | 0.239714% |
| Unconventionals Natural Gas, LLC | 0.000000% | 0.000000% | 0.000000% | 0.000000% |

EPSN and Chief Exploration & Development LLC hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit. Accordingly, please indicate your election as to the Craige Unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0675

Craige S 3LHC
December 22, 2020
Chief Exploration & Development LLC


At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.


Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.


Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator


Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

Appx0676

Craige S 3LHC
December 22, 2020
Chief Exploration & Development LLC



    __X__   **Chief Exploration & Development LLC** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

    _____ **Chief Exploration & Development LLC** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By: _____

Name: _____
      Marcia Reeves Simpson

Title: _____
    SVP of Engineering and Operations

Date: _____
   1/7/21

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0677

Craige S 3LHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the existing Craige Unit, Poulson North Unit and Poulson South Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson North Unit.

3. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson South Unit.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit, Poulson North Unit and Poulson South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Craige S 3LHC
December 22, 2020


By:_____

Name:_____

Title:_____

Date:_____

Appx0679

# EPSILON
## Energy USA, Inc.

AFE # : **D2110144**

DATE: **11/17/20**

| | |
|---|---|
| WELL NAME: | **CRAIGE S 3LHC** |
| OPERATOR: | **EPSILON ENERGY USA, INC** |
| PROJECT: | **AUBURN** |
| LOCATION (TRACT): | **CRAIGE** |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** |
| API (PERMIT #): | **37-115-22797-0000 (115-22797)** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** |
| COMMENTS: | **D&C HZ LOWER MARCELLUS WELL** |

PROPOSED TMD: **20,724**
PROPOSED TVD: **6,875**
PROPOSED OLAT: **12,499**

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,541,000 | $ 2,660,000 |
| B. COMPLETION COST | $ 811,000 | $ 5,548,243 | $ 6,359,243 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 930,000 | $ 8,089,243 | $ 9,019,243 |

WELL/PROJECT ID#: _____

EXPLORATORY ☐       DEVELOPMENT ☑
WORKOVER ☐       RECOMPLETION ☐

| WORKING INTEREST OWNER: | PERCENT: | COST SHARE: |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | 35.94311100% | $ 3,241,797 |
| EQUINOR USA ONSHORE PROPERTIES INC. | 17.95722100% | $ 1,619,605 |
| EPSILON ENERGY USA, INC. | 40.91973700% | $ 3,690,651 |
| JAMESTOWN RESOURCES, L.L.C. | 1.07673800% | $ 97,114 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | 2.29778800% | $ 207,243 |
| ENERPLUS RESOURCES (USA) CORPORATION | 1.23095800% | $ 111,023 |
| RADLER 2000 LIMITED PARTNERSHIP | 0.33473300% | $ 30,190 |
| TUG HILL MARCELLUS, LLC | 0.23971400% | $ 21,620 |
| | 100.00000000% | $ 9,019,243 |

## OPERATOR'S APPROVAL

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N. Clayton* | OPERATIONS | DATE: 12/22/20 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 12/22/20 |
| APPROVED BY: | *Shannon Henke* | GEOLOGY | DATE: 12/22/20 |
| APPROVED BY: | *B. Van Bond* | ACCOUNTING | DATE: 12-22-20 |

## NON-OPERATOR'S APPROVAL

COMPANY NAME: _____       DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



# Epsilon Energy

### Preliminary Geological Prognosis

| | |
|---|---|
| API Number: | 37115227970000 |
| Permit Number: | 115-22797 |
| Well Name: | Craige S 3LHC |
| Well Type: | Horizontal, development |
| Well Target: | Lower Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush & Auburn |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long: 41.755814 / -76.028383 |
| Landing Point: | Craige Unit |
| | Lat/Long: 41.755641 / -76.023396 |
| Bottom Hole: | Poulson South Unit |
| | Lat/Long: 41.723511 / -76.005438 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 20,248' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,571 | -3,018 | TVD @ pentetration point |
| Hamilton SH | 4,681 | -3,128 | TVD @ pentetration point |
| Marcellus | 6,684 | -5,131 | TVD @ pentetration point |
| Target | 7,050 | -5,347 | TVD @ pentetration point |
| Onondaga Limestone | 7,003 | -5,450 | |

| | |
|---|---|
| Well Azimuth: | 159° |
| Lateral Length: | 12,750' |

Appx0682

Contacts:

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Lilian Hernandez | JIB / AP | 281-453-3393 | | lilian.hernandez@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |



8000-PM-OOGM0002    Rev. 6/2014

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**OFFICE OF OIL AND GAS MANAGEMENT**
**WELL LOCATION PLAT**
PAGE 1 Surface Location



Surface hole is located on topo map **13064** feet south of latitude **41** ° **47** ' **30** "

| SURFACE HOLE COORDINATES NAD 83 | |
|---|---|
| True Latitude: NORTH | 41° 45' 20.93" |
| True Longitude: WEST | 76° 01' 42.18" |
| **NAD 83** | |
| N 41.755814' | W 76.028383' |
| **NAD 27** | |
| N 41.755738' | W 76.028736' |
| N 583642.51 | E 2469628.00 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |

**NOTES**

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST.

PROPOSED SURFACE HOLE

ACCESS RD.

EXISTING PRIVATE ROAD

County Home Rd.

TODD C. JACOBS

**LEGEND**
△ Well
● Found corner iron Pin or Pipe
○ Water Supply

**NOTE**
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: S3LHC | Serial #: |
|---|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. | |
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 723 ± |
| Lat. & Long Measurement Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/16/2020 10:16:16AM

-1-

Appx0684

8000-PM-OOGM0002  Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll−free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | | Well # S3LHC | Serial # |
|---|---|---|---|---|---|
| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling): S88°29'19"E 1362.18' S20°42'00"E 2999.92' S19°02'01"E 2238.27' S23°09'51"E 1514.08' S20°42'00"E 2248.74' S31°29'27"E 3740.08' | | | Anticipated True Vertical Depth Feet (TVD): 7050 | Anticipated Total Measured Depth Feet (TMD): 20248.13 |
| Target Formation(s): MARCELLUS | | Deepest Formation to be penetrated: MARCELLUS | | Number of Laterals: 1 | Total footage to be drilled all laterals: 20248.13 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude, Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177−1−33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177−1−32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177−1−30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176−1−14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177−1−30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177−1−29 | A N41°45'34.87" W76°01'55.70" C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176−1−47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177−1−43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177−1−28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176−1−23 | N41°45'04.68" W76°02'09.73" | |
| ⑪ ROBERT N SHAFFER | 176−1−23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177−1−26 | A N41°44'56.14" W76°01'59.89" C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99" D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality: where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality: where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 9/16/2020 10:16:51 AM

- 2 -

Appx0685

8000-PM-OOGM0002   Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # S3LHC |
|---|---|---|---|---|



### SURFACE HOLE COORDINATES NAD 83
True Latitude: NORTH 41° 45' 20.93"
True Longitude: WEST 76° 01' 42.18"

**NAD 83**
N 41.755814°
W 76.028383°

**NAD 27**
N 41.755738°
W 76.028736°

N 583642.51
E 2469628.00

### WAYPOINT 2 COORDINATES NAD 83
True Latitude: NORTH 41° 44' 31.33"
True Longitude: WEST 76° 01' 01.91"

**NAD 83**
N 41.742037°
W 76.017196°

**NAD 27**
N 41.741962°
W 76.017550°

N 578684.46
E 2472780.00

### KOP COORDINATES NAD 83
True Latitude: NORTH 41° 45' 25.68"
True Longitude: WEST 76° 01' 26.78"

**NAD 83**
N 41.757135°
W 76.024104°

**NAD 27**
N 41.757059°
W 76.024458°

N 584147.00
E 2470785.48

### WAYPOINT 3 COORDINATES NAD 83
True Latitude: NORTH 41° 44' 17.47"
True Longitude: WEST 76° 00' 54.42"

**NAD 83**
N 41.738185°
W 76.015116°

**NAD 27**
N 41.738109°
W 76.015470°

N 577292.45
E 2473375.58

### LANDING POINT COORDINATES NAD 83
True Latitude: NORTH 41° 45' 20.31"
True Longitude: WEST 76° 01' 24.22"

**NAD 83**
N 41.755641°
W 76.023396°

**NAD 27**
N 41.755565°
W 76.023749°

N 583606.58
E 2470989.69

### WAYPOINT 4 COORDINATES NAD 83
True Latitude: NORTH 41° 43' 56.53"
True Longitude: WEST 76° 00' 44.49"

**NAD 83**
N 41.732369°
W 76.012359°

**NAD 27**
N 41.732294°
W 76.012713°

N 575188.89
E 2474170.43

### WAYPOINT 1 COORDINATES NAD 83
True Latitude: NORTH 41° 44' 52.38"
True Longitude: WEST 76° 01' 10.98"

**NAD 83**
N 41.747883°
W 76.019716°

**NAD 27**
N 41.747807°
W 76.020069°

N 580800.34
E 2472050.07

### BOTTOM HOLE COORDINATES NAD 83
True Latitude: NORTH 41° 43' 24.64"
True Longitude: WEST 76° 00' 19.58"

**NAD 83**
N 41.723511°
W 76.005438°

**NAD 27**
N 41.723435°
W 76.005793°

N 571999.66
E 2476124.08

LEGEND
⚠ Well
△ Landing Point and Bottom Hole.
● Found corner Iron Pin or Pipe

**Courses on map:**
| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |
| L3 | S88°29'19"E | 1362.18' |

S3LHC
190.12'
CRAIGE PAD ORIENTATION
1" = 400'

MAP SCALE: 1"=2,300'

PLAT DATE/TIME: 9/10/2020 1:43:25PM

PA-SPC NORTH
GRID NORTH

- 3 -

Appx0686



Bluegrass South Unit, Craige Unit, Poulson
North Unit & Poulson South Unit



# JAMESTOWN
## RESOURCES, L.L.C.

January 27, 2021

**VIA ELECTRONIC MAIL (rachel.collins@epsilonenergyltd.com**
**henry.clanton@epsilonenergyltd.com)**

Ms. Rachel Collins
Epsilon Energy Usa, Inc
16945 NORTHCHASE DRIVE, SUITE 1610
Houston, TX 77060

Re: Proposed Drilling Operation (Non-Consent)
    CRAIGE N 4UHC
    Susquehanna County, PA

Dear Ms. Collins,

Pursuant to your proposal letter dated December 22, 2020, please be advised that Jamestown Resources, L.L.C hereby elects NOT to participate in the proposed drilling of the captioned well. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**

Craige N 4UHC
December 22, 2020
Jamestown Resources, L.L.C.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>



Jamestown Resources, L.L.C.
Attn: Mr. Brian P. Shannon
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:     Epsilon Energy's Proposed Craige 4 UHC Well
        API: 37115228080000; Permit Number: 115-22808
        Baltzley South and Baltzley North Unit
        Rush Township
        Susquehanna County, Pennsylvania

Mr. Shannon:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 4UHC Well (the "Well") with a surface hole location of Latitude 41.755855° and Longitude -76.028526° (NAD 83); and an approximate bottom hole location of Latitude 41.789462° and Longitude -76.044140°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 18,494 feet, with an approximate vertical depth of 6,410 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,550,000.00 with a completed well costing approximately $8,504,943.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in the following units:
* Baltzley South Unit, which covers 417.171123 acres
* Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **41.4203317%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **58.5796683%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 4UHC
December 22, 2020
Jamestown Resources, L.L.C.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 4UHC WI | Craige N 4UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.374130% | 39.752946% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.128513% | 19.835527% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 24.997357% | 21.290188% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054837% |

Epsilon Energy USA Inc. and Jamestown Resources, L.L.C. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

Rachel Collins

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 4UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

Craige N 4UHC
December 22, 2020
Jamestown Resources, L.L.C.


_____**Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley North JOA.

_____**Jamestown Resources, L.L.C.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.


By: _____

Name: _____

Title: _____

Date: _____

Appx0691

Craige N 4UHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By: _____

Name: _Michael Frust_

Title: _Manager_

Date: _1.27.21_

# EPSILON Energy USA, Inc.

AFE # : D2110145

| | |
|---|---|
| WELL NAME: | CRAIGE N 4UHC |
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22808-0000 (115-22808) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL |

DATE: 11/17/20

PROPOSED TMD: 19,878
PROPOSED TVD: 6,410
PROPOSED CLAT: 11,446

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,431,000 | $ 2,550,000 |
| B. COMPLETION COST | $ 795,000 | $ 5,159,943 | $ 5,954,943 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 914,000 | $ 7,590,943 | $ 8,504,943 |

WELL/PROJECT ID#:

EXPLORATORY ☐ DEVELOPMENT ☒
WORKOVER ☐ RECOMPLETION ☐

| WORKING INTEREST OWNER: | | | PERCENT: | COST SHARE: |
|---|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | | 48.37413000% | $ 4,114,192 |
| EQUINOR USA ONSHORE PROPERTIES INC | | | 24.12851300% | $ 2,052,116 |
| EPSILON ENERGY USA, INC. | | | 24.99735700% | $ 2,126,011 |
| JAMESTOWN RESOURCES, L.L.C. | | | 2.50000000% | $ 212,624 |
| | | | 100.00000000% | $ 8,504,943 |

## OPERATOR'S APPROVAL

| PREPARED BY: | Henry N. Clarter | OPERATIONS | DATE: 1/6/21 |
|---|---|---|---|
| APPROVED BY: | Rachel Collins | LAND/LEGAL | DATE: 1/6/2021 |
| APPROVED BY: | Shannon E. Lemke | GEOLOGY | DATE: 1/6/21 |
| APPROVED BY: | B Lou Bond | ACCOUNTING | DATE: 1-6-21 |

## NON-OPERATOR'S APPROVAL

COMPANY NAME: Jamestown   DATE: 1.27.21
APPROVED BY: 
TITLE: Michael Frost

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Appx0693

8000-PM-OOGM0002   Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



- 3A -

Appx0694



Baltzley North Unit, Baltzley South
Unit & Craige Unit



# Epsilon Energy

### Preliminary Geological Prognosis

| | |
|---|---|
| API Number: | 37115228080000 |
| Permit Number: | 115-22808 |
| Well Name: | Craige N 4UHC |
| Well Type: | Horizontal, development |
| Well Target: | Upper Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long: 41.755855 / -76.028526 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long: 41.759303 / -76.029510 |
| Bottom Hole: | Baltzley North Unit |
| | Lat/Long: 41.789462 / -76.044140 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 18,494' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,540 | -2,987 | TVD @ pentetration point |
| Hamilton SH | 4,650 | -3,097 | TVD @ pentetration point |
| Marcellus | 6,410 | -4,882 | TVD @ pentetration point |
| Target | 6,410 | -4,897 | TVD @ pentetration point |
| Onondaga Limestone | 6,729 | -5,174 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 11,705' |

Appx0697

Contacts:

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Lilian Hernandez | JIB / AP | 281-453-3393 | | lilian.hernandez@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |



Appx0699

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll-free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N4UHC | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE |  | Angle & Course of Deviation (Drilling): N13°12'25"W 1284.80' N21°04'45"W 9702.51' N24°00'31"W 923.39' N18°40'33"W 1087.94' | Anticipated True Vertical Depth Feet (TVD): 6160 | Anticipated Total Measured Depth Feet (TMD): 18494.09 |
| Target Formation(s): MARCELLUS | | Deepest Formation to be penetrated: MARCELLUS | Number of Laterals: 1 | Total footage to be drilled all laterals: 18494.09 |

| Surface Owner/Water Purveyor w/Water Supply within 1000/3000 | | Latitude Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.85" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70" C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.68" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.73" | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'58.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89" C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99" D N41°44'57.56" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME 10/21/2020 03:51:49PM

-2-

Appx0700

8000-PM-OOGM0002   Rev. 6/2014

# WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N4UHC |
|---|---|---|---|



LEGEND
△ Well
⊗ Landing Point and Bottom Hole
⊕ Found corner Iron Pin or Pipe

MAP SCALE: 1"=800'

- 3B -

Appx0701



# JAMESTOWN
## RESOURCES, L.L.C.

January 27, 2021

**VIA ELECTRONIC MAIL (rachel.collins@epsilonenergyltd.com**
**henry.clanton@epsilonenergyltd.com)**

Ms. Rachel Collins
Epsilon Energy Usa, Inc
16945 NORTHCHASE DRIVE, SUITE 1610
Houston, TX 77060

**Re:** Proposed Drilling Operation (Non-Consent)
CRAIGE N 1UHC
Susquehanna County, PA

Dear Ms. Collins,

Pursuant to your proposal letter dated December 22, 2020, please be advised that Jamestown Resources, L.L.C hereby elects NOT to participate in the proposed drilling of the captioned well. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**

Black Falcon Energy, LLC
717 Texas Avenue, Suite 3100 | Houston, Texas 77002

Generated By AFENav

Appx0702

Craige N 1UHC
December 22, 2020
Jamestown Resources, L.L.C.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Jamestown Resources, L.L.C.
Attn: Mr. Brian P. Shannon
717 Texas Avenue, Suite 3100
Houston, TX 77002



Re:     Epsilon Energy's Proposed Craige N 1UHC Well
        API: 3711522800000; Permit Number: 115-22800
        Baltzley South and Baltzley North Unit
        Rush Township
        Susquehanna County, Pennsylvania

Mr. Shannon:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1UHC Well (the "Well") with a surface hole location of Latitude 41.755793° and Longitude -76.028656° (NAD 83); and an approximate bottom hole location of Latitude 41.789486° and Longitude -76.048982°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 19,344 feet, with an approximate vertical depth of 6,525 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,657,000.00 with a completed well costing approximately $8,855,452.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **40.9633345%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **59.0366655%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0703

Craige N 1UHC
December 22, 2020
Jamestown Resources, L.L.C.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 1UHC WI | Craige N 1UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.354436% | 39.738353% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.118155% | 19.827832% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 25.027410% | 21.313343% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054918% |

Epsilon Energy USA Inc. and Jamestown Resources, L.L.C. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 1UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0704

Craige N 1UHC
December 22, 2020
Jamestown Resources, L.L.C.

_____ **Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

___✓___ **Jamestown Resources, L.L.C.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: _____

Name: _Michael Frozit_

Title: _Manager_

Date: _1·27·21_

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610. Houston. TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0705

Craige N 1UHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1.  That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2.  That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By: _____
Name: _Michael Frug t_
Title: _Manage_
Date: _1-27-21_

# EPSILON
## Energy USA, Inc.

AFE # : **D2110141**

| | |
|---|---|
| WELL NAME: | **CRAIGE N 1UHC** |
| OPERATOR: | **EPSILON ENERGY USA, INC** |
| PROJECT: | **AUBURN** |
| LOCATION (TRACT): | **CRAIGE** |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** |
| API (PERMIT #): | **37-115-22800-0000 (115-22800)** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** |
| COMMENTS: | **D&C HZ UPPER MARCELLUS WELL** |

DATE: **11/17/20**

PROPOSED TMD: **20,489**
PROPOSED TVD: **6,525**
PROPOSED CLAT: **12,014**

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,538,000 | $ 2,657,000 |
| B. COMPLETION COST | $ 807,000 | $ 5,391,452 | $ 6,198,452 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 926,000 | $ 7,929,452 | $ 8,855,452 |

WELL/PROJECT ID#: _____

EXPLORATORY ☐    DEVELOPMENT ☑
WORKOVER ☐    RECOMPLETION ☐

| WORKING INTEREST OWNER: | PERCENT: | COST SHARE: |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | 48.35443576% | 4,282,004 |
| EQUINOR USA ONSHORE PROPERTIES INC. | 24.11815454% | 2,135,772 |
| EPSILON ENERGY USA, INC. | 25.02740970% | 2,216,290 |
| JAMESTOWN RESOURCES, L.L.C. | 2.50000000% | 221,386 |
| | | |
| | | |
| | | |
| | 100.00000000% | $ 8,855,452 |

## OPERATOR'S APPROVAL

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N. Clair* | OPERATIONS | DATE: 1/6/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 1/6/2021 |
| APPROVED BY: | *Shannon E. Lemke* | GEOLOGY | DATE: 1/6/21 |
| APPROVED BY: | *B Xan Bond* | ACCOUNTING | DATE: 1-6-21 |

## NON-OPERATOR'S APPROVAL

| | | |
|---|---|---|
| COMPANY NAME: | *Jamestown* | DATE: 1.27-21 |
| APPROVED BY: | | |
| TITLE: | *Manager* | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

8000-PM-OOGM0002   Rev. 6/2014

## WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



-3A-



Baltzley North Unit, Baltzley South
Unit & Craige Unit



## Epsilon Energy

### Preliminary Geological Prognosis

| | |
|---|---|
| API Number: | 37115228000000 |
| Permit Number: | 115-22800 |
| Well Name: | Craige N 1UHC |
| Well Type: | Horizontal, development |
| Well Target: | Upper Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long: 41.755793 / -76.028656 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long: 41.757817 / -76.033893 |
| Bottom Hole: | Baltzley North Unit |
| | Lat/Long: 41.789486 / -76.048982 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 19,344' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,580 | -3,027 | TVD @ penetration point |
| Hamilton SH | 4,670 | -3,117 | TVD @ penetration point |
| Marcellus | 6,517 | -4,964 | TVD @ penetration point |
| Target | 6,525 | -4,957 | TVD @ pentetration point |
| Onondaga Limestone | 6,836 | -5,283 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 12,265' |

Appx0711

Contacts:

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Lilian Hernandez | JIB / AP | 281-453-3393 | | lilian.hernandez@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

8000-PM-OOGM0002    Rev. 6/2014

## pennsylvania
### DEPARTMENT OF ENVIRONMENTAL PROTECTION

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**OFFICE OF OIL AND GAS MANAGEMENT**
# WELL LOCATION PLAT
### PAGE 1 Surface Location

| DEP | Auth ID#: | | |
|-----|-----------|--|--|
| USE | Permit #: | | G: |
| ONLY | Project #: | | C: |



**SURFACE HOLE COORDINATES NAD 83**
True Latitude: NORTH
41° 45′ 20.86″
True Longitude: WEST
76° 01′ 43.16″

**NAD 83**
N 41.755793°
W 76.028656°

**NAD 27**
N 41.755718°
W 76.029009°

N 583633.67
E 2469553.71

**NOTES**

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST.

Surface hole is located on topo map **13071** feet south of latitude **41° 47′ 30″**

Surface hole is located on topo map **7819** feet west of longitude **76° 00′ 00″**

3000' RADIUS

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | N80°36′51″W | 720.71′ |
| L2 | N65°19′30″W | 379.53′ |

PROPOSED SURFACE HOLE

ACCESS RD

EXISTING PRIVATE ROAD

COUNTY HOME RD

**LEGEND**
△ Well
● Found corner Iron Pin or Pipe
● Water Supply

REGISTERED PROFESSIONAL
TODD C. JACOBS
LAND SURVEYOR
NO. SU 075184
COMMONWEALTH OF PENNSYLVANIA

**NOTE**
No Wetlands Within 100′ of Disturbance
No Wetlands Within 300′ of Well Bore

| Applicant/Well Operator Name: EPSILON OPERATING LLC | | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well # N1UHC | Serial #: |
|---|---|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | | USGS 7½ Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. | |
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1″ = 1,000′ | Tract Acreage: 856 ± | |
| Lat. & Long Metadata Method: GPSDF(L1,L2)RTK | Accuracy: 0.033′ ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/16/2020 10:08:08AM

- 1 -

Appx0713

8000-PM-OOGM0002 Rev. 6/2014

## WELL LOCATION PLAT

### PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N1UHC | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling): N63°50'25"W 1607.96' N20°45'37"W 8000.43' N17°05'35"W 1198.74' N20°27'13"W 1303.31' N23°29'48"W 1753.82' | | Anticipated True Vertical Depth Feet (TVD): 6175 | Anticipated Total Measured Depth Feet (TMD): 19343.85 |
| Target Formation(s): MARCELLUS | | Deepest Formation to be penetrated: MARCELLUS | Number of Laterals: 1 | Total footage to be drilled all laterals: 19343.85 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | |
|---|---|---|---|
| 1 KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| 2 JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | |
| 3 RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | |
| 4 STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.25" W76°02'07.53" |
| 5 STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| 6 ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70" C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| 7 ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | |
| 8 ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | |
| 9 HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.55" | B N41°45'14.78" W76°02'03.55" |
| 10 ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.73" | |
| 11 ROBERT N SHAFFER | 176-1-23.01 | N41°44'58.36" W76°02'02.67" | |
| 12 RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89" C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99" D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located In) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLAT DATE/TIME: 9/16/2020 10:06:50AM

-2-

Appx0714

8000-PM-OOGM0002   Rev. 6/2014

# WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



- 3B -

Appx0715



# JAMESTOWN
## RESOURCES, L.L.C.

January 27, 2021

**VIA ELECTRONIC MAIL (rachel.collins@epsilonenergyltd.com**
**henry.clanton@epsilonenergyltd.com)**

Ms. Rachel Collins
Epsilon Energy Usa, Inc
16945 NORTHCHASE DRIVE, SUITE 1610
Houston, TX 77060

**Re:** Proposed Drilling Operation (Non-Consent)
CRAIGE N 1LH
Susquehanna County, PA

Dear Ms. Collins,

Pursuant to your proposal letter dated January 6, 2021, please be advised that Jamestown Resources, L.L.C hereby elects NOT to participate in the proposed drilling of the captioned well. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**

Black Falcon Energy, LLC
717 Texas Avenue, Suite 3100 | Houston, Texas 77002

Generated By AFENav

Appx0716

Craige N 1LH
January 6, 2021
Jamestown Resources, L.L.C.



January 6, 2021

VIA FEDEX AND ELECTRONIC MAIL

Jamestown Resources, L.L.C.
Attn: Mr. Brian P. Shannon
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:     Epsilon Energy's Proposed Craige N 1LH Well
        API: 37115228010000; Permit Number: 115-22801
        Baltzley South Unit
        Rush Township
        Susquehanna County, Pennsylvania

Mr. Shannon:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1LH Well (the "Well") with a
surface hole location of Latitude 41.755847° and Longitude -76.028635° (NAD 83); and an approximate
bottom hole location of Latitude 41.770464° and Longitude -76.036905°, in Rush Township,
Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 12,123
feet, with an approximate vertical depth of 6,680 feet, to test the Marcellus Formation and all other
formations that may be encountered in the wellbore. Estimated costs to drill the Well are $1,984,000.00
with a completed well costing approximately $5,378,706.00. The anticipated spud date for the Well is on
or about April 22, 2021.

This well will be a subsequent well drilled in the Baltzley South Unit, which covers 417.171123 acres.

The table below contains a summary of the working and net revenue interest ownership in the Well.

| Working Interest Owner | Craige N 1LH WI | Craige N 1LH NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 41.623478% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 20.821989% |
| Epsilon Energy USA, Inc. | 21.145145% | 18.322130% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.044433% |

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 1LH
January 6, 2021
Jamestown Resources, L.L.C.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit. Accordingly, please indicate your election in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE. Failure to make a timely election shall be deemed an election not to participate.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA, Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

Appx0718

Craige N 1LH
January 6, 2021
Jamestown Resources, L.L.C.

_____**Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1LH Well pursuant to the Baltzley South JOA.

_____**Jamestown Resources, L.L.C.** hereby elects **not** to participate in the drilling of the Craige N 1LH Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By: _M-/-/-/_____

Name: _Michael Frizet_____

Title: _Manager_____

Date: _1-27-21_____

Appx0719

**EPSILON**
Energy USA, Inc.

AFE # : D2110140

DATE: 11/17/20

| | |
|---|---|
| WELL NAME: | CRAIGE N 1LH |
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22081-0000 (115-22081) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL |

PROPOSED TMD: 13,200
PROPOSED TVD: 6,700
PROPOSED CLAT: 5,000

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 127,000 | $ 1,857,000 | $ 1,984,000 |
| B. COMPLETION COST | $ 707,000 | $ 2,687,706 | $ 3,394,706 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 834,000 | $ 4,544,706 | $ 5,378,706 |

WELL/PROJECT ID#:

EXPLORATORY ☐   DEVELOPMENT ☑

WORKOVER ☐   RECOMPLETION ☐

| WORKING INTEREST OWNER: | PERCENT: | COST SHARE: |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | 50.89856300% | $ 2,737,684 |
| EQUINOR USA ONSHORE PROPERTIES INC. | 25.45629200% | $ 1,369,219 |
| EPSILON ENERGY USA, INC. | 21.14514500% | $ 1,137,335 |
| JAMESTOWN RESOURCES, L.L.C. | 2.50000000% | $ 134,468 |
| | | |
| | | |
| | | |
| | | |
| | 100.00000000% | $ 5,378,706 |

**OPERATOR'S APPROVAL**

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N. Clayton* | OPERATIONS | DATE: 1/6/20 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 1/6/2021 |
| APPROVED BY: | *Shannon P. Lemke* | GEOLOGY | DATE: 1/6/21 |
| APPROVED BY: | *B. Lori Bond* | ACCOUNTING | DATE: 1-6-21 |

**NON-OPERATOR'S APPROVAL**

| | | |
|---|---|---|
| COMPANY NAME: | *Jamestown* | DATE: 1·27·21 |
| APPROVED BY: | *M. Y.* | |
| TITLE: | *Manager* | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Appx0720



## Epsilon Energy

### Preliminary Geological Prognosis

| | |
|---|---|
| API Number: | 37115228010000 |
| Permit Number: | 115-22801 |
| Well Name: | Craige N 1LH |
| Well Type: | Horizontal, development |
| Well Target: | Lower Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long: 41.755847 / -76.028635 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long: 41.75738 / -76.030491 |
| Bottom Hole: | Baltzley South Unit |
| | Lat/Long: 41.770464 / -76.036905 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 12,123' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,593 | -3,040 | TVD @ pentetration point |
| Hamilton SH | 4,714 | -3,161 | TVD @ pentetration point |
| Marcellus | 6,680 | -5,127 | TVD @ pentetration point |
| Target | 6,680 | -5,113 | TVD @ pentetration point |
| Onondaga Limestone | 6,999 | -5,446 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 5,080' |

Appx0722

Contacts:

|  |  | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office |  | 281-670-0002 |  |  |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Lilian Hernandez | JIB / AP | 281-453-3393 |  | lilian.hernandez@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Appx0723

8000-PM-OOGM0002    Rev. 6/2014

**pennsylvania**
DEPARTMENT OF ENVIRONMENTAL PROTECTION

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
OFFICE OF OIL AND GAS MANAGEMENT
**WELL LOCATION PLAT**
PAGE 1 Surface Location

| DEP | Auth ID#: | | C: |
|-----|-----------|---|---|
| USE | Permit #: | | C: |
| ONLY | Project #: | | |

☐ Denotes location of top of well on topo map

Surface hole is located on topo map **13052** feet south of latitude **41° 47' 30"**

SURFACE HOLE
COORDINATES
NAD 83
True Latitude: NORTH
41° 45' 21.05"
True Longitude: WEST
76° 01' 43.09"

NAD 83
N 41.755847°
W 76.028635°

NAD 27
N 41.755772°
W 76.028989°

N 583653.43
E 2469558.91

3000' RADIUS

| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | N87°13'36" W | 722.91' |
| L2 | N68°23'20" W | 376.54' |

PROPOSED SURFACE HOLE

ACCESS RD

EXISTING PRIVATE ROAD

COUNTY HOME RD

Surface hole is located on topo map 7813 feet west of longitude 76 00 00

PA-SPC NORTH
GRID NORTH
N

NOTES
1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST

LEGEND
△ Well
● Found corner Iron Pin or Pipe
⊕ Water Supply

NOTE
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

[Seal: COMMONWEALTH OF PENNSYLVANIA — REGISTERED PROFESSIONAL — TODD C. JACOBS — LAND SURVEYOR NO. SU 075184]

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: N1LH | Serial #: |
|---|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. | |

| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 380 ± | |
|---|---|---|---|---|---|---|
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

- 1 -

Appx0724

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # | Serial # |
|---|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N1LH | |
| Surface Landowner/Lessor: | | Angle & Course of Deviation (Drilling) | Anticipated True Vertical Depth Feet (TVD): | Anticipated Total Measured Depth Feet (TMD): |
| HAROLD C. AND GLORIA CRAIGE | | N43°20'22"W 754.01'<br>N21°17'17"W 5078.67' | 6630 | 12122.93 |
| Target Formation(s): | | Deepest Formation to be penetrated: | Number of Laterals: | Total footage to be drilled all laterals: |
| MARCELLUS | | MARCELLUS | 1 | 12122.93 |

| | Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | |
|---|---|---|---|---|
| (1) | KEVIN C AND MELANIE A PIERSON | 177–1–33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| (2) | JOSEPH AND DONNAGRILLO | 177–1–32 | N41°45'44.14" W76°01'52.37" | |
| (3) | RICHARD F DOLAN | 177–1–30.01 | N41°45'38.92" W76°01'54.84" | |
| (4) | STEPHEN JAMES MOLNAR | 176–1–14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| (5) | STEPHEN J MOLNAR | 177–1–30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| (6) | ANGELA VERY | 177–1–29 | A N41°45'34.87" W76°01'55.70"<br>C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| (7) | ALLIANCE TO PROTECT LIFE | 176–1–47 | N41°45'29.17" W76°02'10.17" | |
| (8) | ALLIANCE TO PROTECT LIFE | 177–1–43 | N41°45'18.88" W76°02'01.21" | |
| (9) | HAROLD C AND GLORIA CRAIGE | 177–1–28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| (10) | ELIZABETH SPICKERMAN | 176–1–23 | N41°45'04.68" W76°02'09.73" | |
| (11) | ROBERT N SHAFFER | 176–1–23.01 | N41°44'56.35" W76°02'02.67" | |
| (12) | RAYMOND AND CHRISTINE K POULSEN | 177–1–26 | A N41°44'56.14" W76°01'59.89"<br>C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99"<br>D N41°44'57.58" W76°01'53.49" |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 3/16/2020 9:48:53 AM

Appx0725

8000-PM-OOGM0002    Rev. 6/2014

# WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



- 3 -

Appx0726



Baltzley South Unit & Craige Unit

- ● Surface Location
- --→ Proposed well
- ☐ Unit

EPSILON
Energy



January 21, 2021

VIA ELECTRONIC MAIL
Ms. Rachel Collins
Epsilon Energy USA, Inc.
16945 Northchase Drive, Suite 1610
Houston, TX 77060

Re:   Epsilon Energy's Proposed Craige S 3LHC, Craige N 1UHC, Craige N 4UHC, Craige N 1LH
       Craige Unit
       Poulsen North and Poulsen South Units
       Baltzley South and Baltzley North Units
       Rush Township, Susquehanna County, Pennsylvania
       Auburn Township, Susquehanna County, Pennsylvania

Ms. Collins:

Equinor USA Onshore Properties Inc. is in receipt of Epsilon Energy's proposal letters dated December 22, 2020 for the Craige S 3LHC, Craige N 1UHC, Craige N 4UHC, Craige N 1LH wells. Enclosed please find Equinor's executed elections not to participate in the following:

- Craige S 3LHC, pursuant to the Operating Agreement dated December 16, 2010 for the Craige Unit, and the Operating Agreement listed under Schedule 7.1.2 of Farmout Agreement dated February 3, 2010 for the Poulsen North and Poulsen South Units;
- Craige N 1 UHC Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit, and the Operating Agreement dated October 18, 2010 for the Baltzley North Unit;
- Craige N 4UHC Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit, and the Operating Agreement dated October 18, 2010 for the Baltzley North Unit;
- Craige N 1 LH Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit.

Equinor recognizes Chesapeake Appalachia, LLC is the operator under the above referenced Operating Agreements.

If you have any questions, please do not hesitate to contact me.

Best regards,

E-SIGNED by Danny McGraw
on 2021-01-22 16:33:15 GMT

Danny McGraw
Prinicpal Landman

Enclosure

Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy., Building 2, Suite 100
Austin, Texas 78730

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Epsilon Energy's Proposed Craige 4 UHC Well
        API: 37115228080000; Permit Number: 115-22808
        Baltzley South and Baltzley North Unit
        Rush Township
        Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 4UHC Well (the "Well") with a surface hole location of Latitude 41.755855° and Longitude -76.028526° (NAD 83); and an approximate bottom hole location of Latitude 41.789462° and Longitude -76.044140°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 18,494 feet, with an approximate vertical depth of 6,410 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,550,000.00 with a completed well costing approximately $8,504,943.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **41.4203317%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **58.5796683%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 4UHC WI | Craige N 4UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.374130% | 39.752946% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.128513% | 19.835527% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 24.997357% | 21.290188% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054837% |

Epsilon Energy USA Inc. and Equinor USA Onshore Properties Inc. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 4UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0730

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.

_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley South JOA.

___X___**Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By:_____
     E-SIGNED by Danny McGraw on 2021-01-22 16:31:52 GMT

Name:__Danny McGraw_____

Title:__Prin. Consultant Land_____

Date:__January 22, 2021_____

_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley North JOA.

___X___**Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By:_____
     E-SIGNED by Danny McGraw on 2021-01-22 16:31:58 GMT

Name:__Danny McGraw_____

Title:__Prin. Consultant Land_____

Date:__January 22, 2021_____

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0731

Craige N 4UHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By:_____
Name:_____
Title:_____
Date:_____

Appx0732



AFE # : **D2110145**

DATE: **11/17/20**

| | |
|---|---|
| WELL NAME: | CRAIGE N 4UHC |
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22808-0000 (115-22808) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL |

PROPOSED TMD: 19,878
PROPOSED TVD: 6,410
PROPOSED CLAT: 11,446

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,431,000 | $ 2,550,000 |
| B. COMPLETION COST | $ 795,000 | $ 5,159,943 | $ 5,954,943 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 914,000 | $ 7,590,943 | $ 8,504,943 |

WELL/PROJECT ID#:

EXPLORATORY ☐      DEVELOPMENT ☑

WORKOVER ☐      RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.37413000% | $ 4,114,192 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.12851300% | $ 2,052,116 |
| EPSILON ENERGY USA, INC. | | 24.99735700% | $ 2,126,011 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 212,624 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | 100.00000000% | $ 8,504,943 |

**OPERATOR'S APPROVAL**

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N. Claston* | OPERATIONS | DATE: 1/6/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 1/6/2021 |
| APPROVED BY: | *Shannon E. Lemke* | GEOLOGY | DATE: 1/6/21 |
| APPROVED BY: | *B. Lou Boul* | ACCOUNTING | DATE: 1-6-21 |

**NON-OPERATOR'S APPROVAL**

COMPANY NAME: _____      DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Craige N 1UHC
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Epsilon Energy's Proposed Craige N 1UHC Well
        API: 37115228000000; Permit Number: 115-22800
        Baltzley South and Baltzley North Unit
        Rush Township
        Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1UHC Well (the "Well") with a surface hole location of Latitude 41.755793° and Longitude -76.028656° (NAD 83); and an approximate bottom hole location of Latitude 41.789486° and Longitude -76.048982°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 19,344 feet, with an approximate vertical depth of 6,525 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,657,000.00 with a completed well costing approximately $8,855,452.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **40.9633345%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **59.0366655%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 1UHC
December 22, 2020
Equinor USA Onshore Properties Inc.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 1UHC WI | Craige N 1UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.354436% | 39.738353% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.118155% | 19.827832% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 25.027410% | 21.313343% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054918% |

Epsilon Energy USA Inc. and Equinor USA Onshore Properties Inc. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 1UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 1UHC
December 22, 2020
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley South JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects to the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____
E-SIGNED by Danny McGraw
on 2021-01-22 16:31:19 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: _____
E-SIGNED by Danny McGraw
on 2021-01-22 16:31:28 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0736

Craige N 1UHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement


Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins


By: _____

Name: _____

Title: _____

Date: _____

# EPSILON
## Energy USA, Inc.

AFE # : **D2110141**

DATE: **11/17/20**

WELL NAME: CRAIGE N 1UHC
OPERATOR: EPSILON ENERGY USA, INC
PROJECT: AUBURN
LOCATION (TRACT): CRAIGE
SURFACE OWNER: HAROLD C AND GLORIA CRAIGE
API (PERMIT #): 37-115-22800-0000 (115-22800)
COUNTY, STATE: SUSQUEHANNA, PENNSYLVANIA
COMMENTS: D&C HZ UPPER MARCELLUS WELL

PROPOSED TMD: 20,489
PROPOSED TVD: 6,525
PROPOSED CLAT: 12,014

| SUMMARY OF ESTIMATED COSTS | | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|---|
| A. DRILLING COST | | $ 119,000 | $ 2,538,000 | $ 2,657,000 |
| B. COMPLETION COST | | $ 807,000 | $ 5,391,452 | $ 6,198,452 |
| C. PLANT & FACILITY COST | | $ - | $ - | $ - |
| D. WORKOVER COST | | $ - | $ - | $ - |
| | TOTALS: | $ 926,000 | $ 7,929,452 | $ 8,855,452 |

WELL/PROJECT ID#:

EXPLORATORY ☐          DEVELOPMENT ☑

WORKOVER ☐          RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.35443576% | $ 4,282,004 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.11815454% | $ 2,135,772 |
| EPSILON ENERGY USA, INC. | | 25.02740970% | $ 2,216,290 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 221,386 |
| | | | |
| | | | |
| | | 100.00000000% | $ 8,855,452 |

## OPERATOR'S APPROVAL

PREPARED BY: _Henry N. Clauton_          OPERATIONS          DATE: 1/6/21

APPROVED BY: _Rachel Collins_          LAND/LEGAL          DATE: 1/6/2021

APPROVED BY: _Shannon E. Lemke_          GEOLOGY          DATE: 1/6/21

APPROVED BY: _B Lane Bond_          ACCOUNTING          DATE: 1-6-21

## NON-OPERATOR'S APPROVAL

COMPANY NAME: _____          DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.

 EPSILON

December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:   Epsilon Energy's Proposed Craige N 1LH Well
      API: 37115228010000; Permit Number: 115-22801
      Baltzley South Unit
      Rush Township
      Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1LH Well (the "Well") with a
surface hole location of Latitude 41.755847° and Longitude -76.028635° (NAD 83); and an approximate
bottom hole location of Latitude 41.770464° and Longitude -76.036905°, in Rush Township,
Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 12,123
feet, with an approximate vertical depth of 6,680 feet, to test the Marcellus Formation and all other
formations that may be encountered in the wellbore. Estimated costs to drill the Well are $1,984,000.00
with a completed well costing approximately $5,378,706.00. The anticipated spud date for the Well is on
or about April 22, 2021.

This well will be a subsequent well drilled in the Baltzley South Unit, which covers 417.171123 acres.

The table below contains a summary of the working and net revenue interest ownership in the Well.

| Working Interest Owner | Craige N 1LH WI | Craige N 1LH NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 41.623478% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 20.821989% |
| Epsilon Energy USA, Inc. | 21.145145% | 18.322130% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.044433% |

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0739

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit. Accordingly, please indicate your election in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE. Failure to make a timely election shall be deemed an election not to participate.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA, Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0740

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1LH Well pursuant to the Baltzley South JOA.

_____X_____ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1LH Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____
ESIGNED by Danny McGraw
on 2021-01-22 16:32:16 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

# EPSILON
## Energy USA, Inc.

| | | AFE # : | D2110140 |
|---|---|---|---|
| | | DATE: | 11/17/20 |

| WELL NAME: | CRAIGE N 1LH | | |
|---|---|---|---|
| OPERATOR: | EPSILON ENERGY USA, INC | | |
| PROJECT: | AUBURN | | |
| LOCATION (TRACT): | CRAIGE | | |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE | | |
| API (PERMIT #): | 37-115-22081-0000 (115-22081) | PROPOSED TMD: | 13,200 |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA | PROPOSED TVD: | 6,700 |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL | PROPOSED CLAT: | 5,000 |

WELL/PROJECT ID#:

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 127,000 | $ 1,857,000 | $ 1,984,000 |
| B. COMPLETION COST | $ 707,000 | $ 2,687,706 | $ 3,394,706 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 834,000 | $ 4,544,706 | $ 5,378,706 |

EXPLORATORY ☐    DEVELOPMENT ☒

WORKOVER ☐    RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 50.88956300% | $ 2,737,684 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 25.45629200% | $ 1,369,219 |
| EPSILON ENERGY USA, INC. | | 21.14514500% | $ 1,137,335 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 134,468 |
| | | | |
| | | | |
| | | | |
| | | 100.00000000% | $ 5,378,706 |

## OPERATOR'S APPROVAL

| PREPARED BY: | _Henry N. Claxter_ | OPERATIONS | DATE: 1/6/20 |
|---|---|---|---|
| APPROVED BY: | _Rachel Collins_ | LAND/LEGAL | DATE: 1/6/2021 |
| APPROVED BY: | _Shannon P. Lemke_ | GEOLOGY | DATE: 1/6/21 |
| APPROVED BY: | _B. Lori Bond_ | ACCOUNTING | DATE: 1-6-21 |

## NON-OPERATOR'S APPROVAL

| COMPANY NAME: | | DATE: |
|---|---|---|
| APPROVED BY: | | |
| TITLE: | | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Appx0742

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Epsilon Energy's Proposed Craige S 3LHC Well
        API: 37115227970000; Permit Number: 115-22797
        Craige Unit, Poulson North Unit, and Poulson South Unit
        Rush Township, Susquehanna County, Pennsylvania
        Auburn Township, Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige S 3LHC Well (the "Well") with a
surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate
bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township,
Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be
drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet,
to test the Marcellus Formation and all other formations that may be encountered in the wellbore.
Estimated costs to drill the Well are $2,660,000.00 with a completed well costing approximately
$9,019,243.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulson North Unit, which covers 132.810484 acres
- Poulson South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto
as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate,
based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the Poulson North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well being in the Poulson South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulson North Unit WI | Poulson South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% | 35.528850% | 36.941747% | 36.080090% |
| Equinor USA Onshore Properties Inc. | 18.345441% | 17.106484% | 17.786767% | 17.817658% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.338430% | 0.000000% | 0.000000% | 2.299235% |
| Enerplus Resources (USA) Corporation | 2.859873% | 0.000000% | 0.000000% | 1.231733% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.557414% | 0.000000% | 0.000000% | 0.240075% |
| Unconventionals Natural Gas, LLC | 0.000000% | 0.000000% | 0.000000% | 0.000000% |

EPSN and Equinor USA Onshore Properties Inc. hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit and that certain Farmout Agreement between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. dated effective February 1, 2010 with Exhibit Schedule 7.1.2 as Joint

Appx0744

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

Operating Agreement covering the Poulson North and Poulson South Units (both of these Joint Operating Agreements to be collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002: Fax: 281.668.0985*

Appx0745

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.


_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.


By: _____

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson North Unit.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson North Unit.


By: _____

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson South Unit.

\_\_\_X\_\_\_ **Equinor USA Onshore Properties Inc.** hereby elects not to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson South Unit.

By: E-SIGNED by Danny McGraw on 2021-01-22 18:33:00 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0747

Craige S 3LHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the existing Craige Unit, Poulson North Unit and Poulson South Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson North Unit.

3. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson South Unit.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit shall be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit, Poulson North Unit and Poulson South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Craige S 3LHC
December 22, 2020

By:_____

Name:_____

Title:_____

Date:_____

Appx0749

# EPSILON
## Energy USA, Inc.

AFE # : **D2110144**

| | |
|---|---|
| WELL NAME: | **CRAIGE S 3LHC** |
| OPERATOR: | **EPSILON ENERGY USA, INC** |
| PROJECT: | **AUBURN** |
| LOCATION (TRACT): | **CRAIGE** |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** |
| API (PERMIT #): | **37-115-22797-0000 (115-22797)** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** |
| COMMENTS: | **D&C HZ LOWER MARCELLUS WELL** |

DATE: **11/17/20**

PROPOSED TMD: 20,724
PROPOSED TVD: 6,875
PROPOSED CLAT: 12,499

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,541,000 | $ 2,660,000 |
| B. COMPLETION COST | $ 811,000 | $ 5,548,243 | $ 6,359,243 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 930,000 | $ 8,089,243 | $ 9,019,243 |

WELL/PROJECT ID#:

EXPLORATORY ☐      DEVELOPMENT ☑

WORKOVER ☐      RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 36.080090% | $ 3,254,151 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 17.817658% | $ 1,607,018 |
| EPSILON ENERGY USA, INC. | | 40.919737% | $ 3,690,651 |
| JAMESTOWN RESOURCES, L.L.C. | | 1.076738% | $ 97,114 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | | 2.299235% | $ 207,374 |
| ENERPLUS RESOURCES (USA) CORPORATION | | 1.231733% | $ 111,093 |
| RADLER 2000 LIMITED PARTNERSHIP | | 0.334733% | $ 30,190 |
| TUG HILL MARCELLUS, LLC | | 0.240075% | $ 21,653 |
| | | 100.00000% | $ 9,019,243 |

## OPERATOR'S APPROVAL

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | *Henry N. Clarton* | OPERATIONS | DATE: | 1/8/21 |
| APPROVED BY: | *Shannon E Lemke* | ~~LAND/LEGAL~~ GEO | DATE: | 1/8/21 |
| APPROVED BY: | *Rachel Collins* | ~~GEOLOGY~~ LAND | DATE: | 1/8/2021 |
| APPROVED BY: | *B Lou Bond* | ACCOUNTING | DATE: | 1-8-21 |

## NON-OPERATOR'S APPROVAL

COMPANY NAME: _____      DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Appx0750

# Exhibit B



January 21, 2021

VIA ELECTRONIC MAIL
Ms. Rachel Collins
Epsilon Energy USA, Inc.
16945 Northchase Drive, Suite 1610
Houston, TX 77060

Re:     Epsilon Energy's Proposed Craige S 3LHC, Craige N 1UHC, Craige N 4UHC, Craige N 1LH
        Craige Unit
        Poulsen North and Poulsen South Units
        Baltzley South and Baltzley North Units
        Rush Township, Susquehanna County, Pennsylvania
        Auburn Township, Susquehanna County, Pennsylvania

Ms. Collins:

Equinor USA Onshore Properties Inc. is in receipt of Epsilon Energy's proposal letters dated December 22, 2020 for the Craige S 3LHC, Craige N 1UHC, Craige N 4UHC, Craige N 1LH wells. Enclosed please find Equinor's executed elections not to participate in the following:

- Craige S 3LHC, pursuant to the Operating Agreement dated December 16, 2010 for the Craige Unit, and the Operating Agreement listed under Schedule 7.1.2 of Farmout Agreement dated February 3, 2010 for the Poulsen North and Poulsen South Units;
- Craige N 1 UHC Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit, and the Operating Agreement dated October 18, 2010 for the Baltzley North Unit;
- Craige N 4UHC Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit, and the Operating Agreement dated October 18, 2010 for the Baltzley North Unit;
- Craige N 1 LH Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit.

Equinor recognizes Chesapeake Appalachia, LLC is the operator under the above referenced Operating Agreements.

If you have any questions, please do not hesitate to contact me.

Best regards,

E-SIGNED by Danny McGraw
on 2021-01-22 16:33:15 GMT

Danny McGraw
Prinicpal Landman

Enclosure

Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy., Building 2, Suite 100
Austin, Texas 78730

Appx0752

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Epsilon Energy's Proposed Craige 4 UHC Well
        API: 37115228080000; Permit Number: 115-22808
        Baltzley South and Baltzley North Unit
        Rush Township
        Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 4UHC Well (the "Well") with a surface hole location of Latitude 41.755855° and Longitude -76.028526° (NAD 83); and an approximate bottom hole location of Latitude 41.789462° and Longitude -76.044140°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 18,494 feet, with an approximate vertical depth of 6,410 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,550,000.00 with a completed well costing approximately $8,504,943.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in the following units:
* Baltzley South Unit, which covers 417.171123 acres
* Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **41.4203317%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **58.5796683%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 4UHC WI | Craige N 4UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.374130% | 39.752946% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.128513% | 19.835527% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 24.997357% | 21.290188% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054837% |

Epsilon Energy USA Inc. and Equinor USA Onshore Properties Inc. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 4UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.


_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley South JOA.

\_\_\_X\_\_\_**Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By: E-SIGNED by Danny McGraw on 2021-01-22 16:31:52 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley North JOA.

\_\_\_X\_\_\_**Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: E-SIGNED by Danny McGraw on 2021-01-22 16:31:56 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0755

Craige N 4UHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing
Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to
be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which
production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the
following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as
"ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to
the following Operating Agreements:

1. That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and
   between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and
   between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The
Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the
productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which
is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied
be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be
summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit
Well. The productive drainhole length shall be measured from the first take point to the last take point along the
lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements
and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting
estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the
Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit
and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive
drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not
limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent
penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the
interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating
Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By:_____

Name:_____

Title:_____

Date:_____



| | | AFE # : | | D2110145 |
|---|---|---|---|---|
| WELL NAME: | CRAIGE N 4UHC | DATE: | | 11/17/20 |
| OPERATOR: | EPSILON ENERGY USA, INC | | | |
| PROJECT: | AUBURN | | | |
| LOCATION (TRACT): | CRAIGE | | | |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE | | | |
| API (PERMIT #): | 37-115-22808-0000 (115-22808) | PROPOSED TMD: | | 19,878 |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA | PROPOSED TVD: | | 6,410 |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL | PROPOSED CLAT: | | 11,446 |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,431,000 | $ 2,550,000 |
| B. COMPLETION COST | $ 795,000 | $ 5,159,943 | $ 5,954,943 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 914,000 | $ 7,590,943 | $ 8,504,943 |

WELL/PROJECT ID#:

EXPLORATORY ☐   DEVELOPMENT ☑

WORKOVER ☐   RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.37413000% | $ 4,114,192 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.12851300% | $ 2,052,116 |
| EPSILON ENERGY USA, INC. | | 24.99735700% | $ 2,126,011 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 212,624 |
| | | | |
| | | | |
| | | | |
| | | 100.00000000% | $ 8,504,943 |

OPERATOR'S APPROVAL

| PREPARED BY: | *Henry N. Clant* | OPERATIONS | DATE: 1/6/21 |
|---|---|---|---|
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 1/6/2021 |
| APPROVED BY: | *Shannon E. Lemke* | GEOLOGY | DATE: 1/6/21 |
| APPROVED BY: | *B. Lou Bond* | ACCOUNTING | DATE: 1-6-21 |

NON-OPERATOR'S APPROVAL

COMPANY NAME: _____   DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Craige N 1UHC
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Epsilon Energy's Proposed Craige N 1UHC Well
        API: 37115228000000; Permit Number: 115-22800
        Baltzley South and Baltzley North Unit
        Rush Township
        Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1UHC Well (the "Well") with a
surface hole location of Latitude 41.755793° and Longitude -76.028656° (NAD 83); and an approximate
bottom hole location of Latitude 41.789486° and Longitude -76.048982°, in Rush Township,
Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 19,344
feet, with an approximate vertical depth of 6,525 feet, to test the Marcellus Formation and all other
formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,657,000.00
with a completed well costing approximately $8,855,452.00. The anticipated spud date for the Well is on
or about April 22, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto
as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate,
based on approximately **40.9633345%** of the productive drainhole of the Cross Unit Well being in the
Baltzley South Unit, and approximately **59.0366655%** of the productive drainhole of the Cross Unit Well
being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following
completion of the Well to reflect the actual percentages of the productive drainhole length within each
unit. The table below contains a summary of the estimated working and net revenue interest ownership in
the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 1UHC
December 22, 2020
Equinor USA Onshore Properties Inc.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 1UHC WI | Craige N 1UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.354436% | 39.738353% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.118155% | 19.827832% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 25.027410% | 21.313343% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054918% |

Epsilon Energy USA Inc. and Equinor USA Onshore Properties Inc. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 1UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0759

Craige N 1UHC
December 22, 2020
Equinor USA Onshore Properties Inc.


_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley South JOA.

\_\_\_X\_\_\_ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects to the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____ E-SIGNED by Danny McGraw on 2021-01-22 16:31:19 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

\_\_\_X\_\_\_ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: _____ E-SIGNED by Danny McGraw on 2021-01-22 16:31:28 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0760

Craige N 1UHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By: _____

Name: _____

Title: _____

Date: _____

# EPSILON
Energy USA, Inc.

AFE # :     D2110141

| | |
|---|---|
| WELL NAME: | CRAIGE N 1UHC |
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22800-0000 (115-22800) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL |

DATE:     11/17/20

PROPOSED TMD:     20,489
PROPOSED TVD:     6,525
PROPOSED CLAT:     12,014

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,538,000 | $ 2,657,000 |
| B. COMPLETION COST | $ 807,000 | $ 5,391,452 | $ 6,198,452 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 926,000 | $ 7,929,452 | $ 8,855,452 |

WELL/PROJECT ID#: _____

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.35443576% | $ 4,282,004 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.11815454% | $ 2,135,772 |
| EPSILON ENERGY USA, INC. | | 25.02740970% | $ 2,216,290 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 221,386 |
| | | | |
| | | | |
| | | | |
| | | 100.00000000% | $ 8,855,452 |

## OPERATOR'S APPROVAL

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | _Henry N. Claiton_ | OPERATIONS | DATE: | 1/6/21 |
| APPROVED BY: | _Rachel Collins_ | LAND/LEGAL | DATE: | 1/6/2021 |
| APPROVED BY: | _Shannon P. Lemke_ | GEOLOGY | DATE: | 1/6/21 |
| APPROVED BY: | _B Lane Bond_ | ACCOUNTING | DATE: | 1-6-21 |

## NON-OPERATOR'S APPROVAL

COMPANY NAME: _____     DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:    Epsilon Energy's Proposed Craige N 1LH Well
       API: 3711528010000; Permit Number: 115-22801
       Baltzley South Unit
       Rush Township
       Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1LH Well (the "Well") with a surface hole location of Latitude 41.755847° and Longitude -76.028635° (NAD 83); and an approximate bottom hole location of Latitude 41.770464° and Longitude -76.036905°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 12,123 feet, with an approximate vertical depth of 6,680 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $1,984,000.00 with a completed well costing approximately $5,378,706.00. The anticipated spud date for the Well is on or about April 22, 2021.

This well will be a subsequent well drilled in the Baltzley South Unit, which covers 417.171123 acres.

The table below contains a summary of the working and net revenue interest ownership in the Well.

| Working Interest Owner | Craige N 1LH WI | Craige N 1LH NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 41.623478% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 20.821989% |
| Epsilon Energy USA, Inc. | 21.145145% | 18.322130% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.044433% |

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0763

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit. Accordingly, please indicate your election in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE. Failure to make a timely election shall be deemed an election not to participate.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA, Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

Appx0764

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.


_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent
of its interest in the drilling of the Craige N 1LH Well pursuant to the Baltzley South JOA.

____X____ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of
the Craige N 1LH Well and elects the Non-Consent provision pursuant to the Baltzley South
JOA.


By: _____
      E-SIGNED by Danny McGraw
      on 2021-01-22 16:32:16 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0765


**EPSILON**
Energy USA, Inc.

AFE # :       D2110140

WELL NAME:     CRAIGE N 1LH                     DATE:       11/17/20
OPERATOR:      EPSILON ENERGY USA, INC
PROJECT:         AUBURN
LOCATION (TRACT): CRAIGE
SURFACE OWNER: HAROLD C AND GLORIA CRAIGE
API (PERMIT #):    37-115-22081-0000 (115-22081)        PROPOSED TMD:     13,200
COUNTY, STATE:   SUSQUEHANNA, PENNSYLVANIA       PROPOSED TVD:      6,700
COMMENTS:      D&C HZ LOWER MARCELLUS WELL       PROPOSED CLAT:      5,000

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A.  DRILLING COST | $ 127,000 | $ 1,857,000 | $ 1,984,000 |
| B.  COMPLETION COST | $ 707,000 | $ 2,687,706 | $ 3,394,706 |
| C.  PLANT & FACILITY COST | $ - | $ - | $ - |
| D.  WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 834,000 | $ 4,544,706 | $ 5,378,706 |
| | | | $ - |

WELL/PROJECT ID#: _____

EXPLORATORY ☐          DEVELOPMENT ☑

WORKOVER ☐          RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 50.89856300% | $ 2,737,684 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 25.45629200% | $ 1,369,219 |
| EPSILON ENERGY USA, INC. | | 21.14514500% | $ 1,137,335 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 134,468 |
| | | | |
| | | | |
| | | | |
| | | 100.00000000% | $ 5,378,706 |

OPERATOR'S APPROVAL

PREPARED BY: _Henry N. Clayton_       OPERATIONS        DATE: 1/6/21
APPROVED BY: _Rachel Collins_        LAND/LEGAL         DATE: 1/6/2021
APPROVED BY: _Shannon P. Lemke_       GEOLOGY           DATE: 1/6/21
APPROVED BY: _B Lori Bond_          ACCOUNTING       DATE: 1-6-21

NON-OPERATOR'S APPROVAL

COMPANY NAME: _____       DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only.  In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred.  Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Epsilon Energy's Proposed Craige S 3LHC Well
        API: 37115227970000; Permit Number: 115-22797
        Craige Unit, Poulson North Unit, and Poulson South Unit
        Rush Township, Susquehanna County, Pennsylvania
        Auburn Township, Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige S 3LHC Well (the "Well") with a surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township, Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,660,000.00 with a completed well costing approximately $9,019,243.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulson North Unit, which covers 132.810484 acres
- Poulson South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0767

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the Poulson North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well being in the Poulson South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulson North Unit WI | Poulson South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% | 35.528850% | 36.941747% | 36.080090% |
| Equinor USA Onshore Properties Inc. | 18.345441% | 17.106484% | 17.786767% | 17.817658% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.338430% | 0.000000% | 0.000000% | 2.299235% |
| Enerplus Resources (USA) Corporation | 2.859873% | 0.000000% | 0.000000% | 1.231733% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.557414% | 0.000000% | 0.000000% | 0.240075% |
| Unconventionals Natural Gas, LLC | 0.000000% | 0.000000% | 0.000000% | 0.000000% |

EPSN and Equinor USA Onshore Properties Inc. hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit and that certain Farmout Agreement between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. dated effective February 1, 2010 with Exhibit Schedule 7.1.2 as Joint

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.


Operating Agreement covering the Poulson North and Poulson South Units (both of these Joint Operating Agreements to be collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.


At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.


Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.



Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator




Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0769

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By: _____
E-SIGNED by Danny McGraw
on 2021-01-22 16:32:50 GMT
Name: Danny McGraw
Title: Prin. Consultant Land
Date: January 22, 2021

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson North Unit.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson North Unit.

By: _____
E-SIGNED by Danny McGraw
on 2021-01-22 16:32:04 GMT
Name: Danny McGraw
Title: Prin. Consultant Land
Date: January 22, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson South Unit.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects not to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson South Unit.

By: E-SIGNED by Danny McGraw on 2021-01-22 18:33:00 GMT
Name: Danny McGraw
Title: Prin. Consultant Land
Date: January 22, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0771

Craige S 3LHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the
existing Craige Unit, Poulson North Unit and Poulson South Unit (any well drilled which extends into all
of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon
desires to establish the method by which production and costs will be allocated via this Allocation
Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively
referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a
working interest in one or all of the aforementioned Units under and subject to the following Operating
Agreements:

1.  That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between
    Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-
    Operators.

2.  That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA,
    Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint
    Operating Agreement covering the Poulson North Unit.

3.  That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA,
    Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint
    Operating Agreement covering the Poulson South Unit.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA
Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the
length of that portion of the productive drainhole length of a Cross Unit Well that lies within each
respective unit, and the denominator of which is equal to the entire productive drainhole length of the
Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and
net revenue interest in each unit, and the equation for each unit will be summed together to determine
each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive
drainhole length shall be measured from the first take point to the last take point along the lateral of the
Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and
shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the
resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the
Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit,
Poulson North Unit and Poulson South Unit will govern the rights and obligations of the parties as to that
portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective
unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to
one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the
costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to
the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Craige S 3LHC
December 22, 2020


By:_____

Name:_____

Title:_____

Date:_____



**EPSILON**
Energy USA, Inc.

AFE # :     D2110144

| | |
|---|---|
| WELL NAME: | CRAIGE S 3LHC |
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22797-0000 (115-22797) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL |

DATE:     11/17/20

PROPOSED TMD:     20,724
PROPOSED TVD:     6,875
PROPOSED CLAT:     12,499

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,541,000 | $ 2,660,000 |
| B. COMPLETION COST | $ 811,000 | $ 5,548,243 | $ 6,359,243 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 930,000 | $ 8,089,243 | $ 9,019,243 |

WELL/PROJECT ID#:

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 36.080090% | $ 3,254,151 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 17.817658% | $ 1,607,018 |
| EPSILON ENERGY USA, INC. | | 40.919737% | $ 3,690,651 |
| JAMESTOWN RESOURCES, L.L.C. | | 1.076738% | $ 97,114 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | | 2.299235% | $ 207,374 |
| ENERPLUS RESOURCES (USA) CORPORATION | | 1.231733% | $ 111,093 |
| RADLER 2000 LIMITED PARTNERSHIP | | 0.334733% | $ 30,190 |
| TUG HILL MARCELLUS, LLC | | 0.240075% | $ 21,653 |
| | | | |
| | | | |
| | | 100.00000% | $ 9,019,243 |

OPERATOR'S APPROVAL

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N. Clanton* | OPERATIONS | DATE: 1/8/21 |
| APPROVED BY: | *Shannon E Lemke* | ~~LAND/LEGAL~~ GEO | DATE: 1/8/21 |
| APPROVED BY: | *Rachel Collins* | ~~GEOLOGY~~ LAND | DATE: 1/8/2021 |
| APPROVED BY: | *B Lou Bond* | ACCOUNTING | DATE: 1-8-21 |

NON-OPERATOR'S APPROVAL

COMPANY NAME:            DATE:

APPROVED BY:

TITLE:

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

# Exhibit C



**CHESAPEAKE**
*ENERGY*

**Courtney Moad**
*Staff Landman – Appalachia*

**January 21, 2021**

<u>**VIA ELECTRONIC MAIL**</u>

Mr. Paul Lettieri
Chief Exploration & Development LLC
8111 Westchester Drive, Suite 900
Dallas, TX 75225

Re:     Chesapeake's Proposed Koromlan 107HC Well
        Craige, Poulsen North, Poulsen South, Davis and Bradbury Units
        Rush and Auburn Townships, Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. Lettieri:

Pursuant to Operating Agreement dated December 16, 2010, covering the Craige Unit, Operating Agreement dated July 31, 2014, covering the Davis Unit, Farmout Agreement dated February 3, 2010, covering the Poulsen North and Poulsen South Units, and Operating Agreement dated TBD, covering the Bradbury Unit, Chesapeake Appalachia, L.L.C. ("CHK") hereby proposes to drill the Koromlan 107HC Well (the "Well") with a surface hole location of Latitude 41.738843° and Longitude -76.029805° (NAD 27); and an approximate bottom hole location of Latitude 41.706214° and Longitude -76.000833°, in Auburn Township and, Susquehanna County, Pennsylvania.  The Well will be drilled to an approximate measured depth of 24,607' feet, with an approximate vertical depth of 6,795' feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,898,000.00 with a completed well costing approximately $8,865,000.00.

Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt.

Should you have any questions in this regard, please do not hesitate to call me at 405-935-9164.

Sincerely,

**Chesapeake Appalachia, L.L.C**

Courtney Moad

**Chesapeake Energy Corporation**
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / fax: 405-849-0092 / courtney.moad@chk.com

Koromlan 107HC Proposal
January 21, 2021

_____ **Chief Exploration & Development LLC** hereby elects to participate with the full extent of its interest in the drilling of the Koromlan 107HC well under the governing unit JOA.

_____ **Chief Exploration & Development LLC** hereby elects **not** to participate in the drilling of the Koromlan 107HC well and elects to go non-consent under the governing unit JOA.

By: _____

Name: _____

Title: _____

Date: _____

2

**CHESAPEAKE**
*ENERGY*

<div align="right">

**Courtney Moad**
*Staff Landman – Appalachia*

</div>

**January 21, 2021**

<u>**VIA ELECTRONIC MAIL**</u>

Mr. Beau Fritz
Enerplus Resources (USA) Corporation
950 17th Street, Suite 2200
Denver, CO 80202

Re:    Chesapeake's Proposed Koromlan 107HC Well
        Craige, Poulsen North, Poulsen South, Davis and Bradbury Units
        Rush and Auburn Townships, Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. Fritz:

Pursuant to Operating Agreement dated December 16, 2010, covering the Craige Unit, Operating Agreement dated July 31, 2014, covering the Davis Unit, Farmout Agreement dated February 3, 2010, covering the Poulsen North and Poulsen South Units, and Operating Agreement dated TBD, covering the Bradbury Unit, Chesapeake Appalachia, L.L.C. ("CHK") hereby proposes to drill the Koromlan 107HC Well (the "Well") with a surface hole location of Latitude 41.738843° and Longitude -76.029805° (NAD 27); and an approximate bottom hole location of Latitude 41.706214° and Longitude -76.000833°, in Auburn Township and, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 24,607' feet, with an approximate vertical depth of 6,795' feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,898,000.00 with a completed well costing approximately $8,865,000.00.

Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt.

Should you have any questions in this regard, please do not hesitate to call me at 405-935-9164.

Sincerely,

**Chesapeake Appalachia, L.L.C**

Courtney Moad

**Chesapeake Energy Corporation**
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
<u>405-935-9164 / fax: 405-849-0092 / courtney.moad@chk.com</u>

Appx0778

Koromlan 107HC Proposal
January 21, 2021

_____ **Enerplus Resources (USA) Corporation** hereby elects to participate with the full extent of its interest in the drilling of the Koromlan 107HC well under the governing unit JOA.

_____ **Enerplus Resources (USA) Corporation** hereby elects **not** to participate in the drilling of the Koromlan 107HC well and elects to go non-consent under the governing unit JOA.

By: _____

Name: _____

Title: _____

Date: _____

2



**CHESAPEAKE**
*ENERGY*

**Courtney Moad**
*Staff Landman - Appalachia*

**January 21, 2021**

<u>**VIA ELECTRONIC MAIL**</u>

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Chesapeake's Proposed Koromlan 107HC Well
        Craige, Poulsen North, Poulsen South, Davis and Bradbury Units
        Rush and Auburn Townships, Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. McGraw:

Pursuant to Operating Agreement dated December 16, 2010, covering the Craige Unit, Operating Agreement dated July 31, 2014, covering the Davis Unit, Farmout Agreement dated February 3, 2010, covering the Poulsen North and Poulsen South Units, and Operating Agreement dated TBD, covering the Bradbury Unit, Chesapeake Appalachia, L.L.C. ("CHK") hereby proposes to drill the Koromlan 107HC Well (the "Well") with a surface hole location of Latitude 41.738843° and Longitude -76.029805° (NAD 27); and an approximate bottom hole location of Latitude 41.706214° and Longitude -76.000833°, in Auburn Township and, Susquehanna County, Pennsylvania.  The Well will be drilled to an approximate measured depth of 24,607' feet, with an approximate vertical depth of 6,795' feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore.  Estimated costs to drill the Well are $2,898,000.00 with a completed well costing approximately $8,865,000.00.

Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt.

Should you have any questions in this regard, please do not hesitate to call me at 405-935-9164.

Sincerely,

**Chesapeake Appalachia, L.L.C**

Courtney Moad

Appx0780

Koromlan 107HC Proposal
January 21, 2021

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Koromlan 107HC well under the governing unit JOA.

_____ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Koromlan 107HC well and elects to go non-consent under the governing unit JOA.

By: _____

Name: _____

Title: _____

Date: _____

2



**CHESAPEAKE**
*ENERGY*

<div align="right">

**Courtney Moad**
*Staff Landman – Appalachia*

</div>

**January 21, 2021**

**VIA ELECTRONIC MAIL**

Mr. Mike Fiuzat
Jamestown Resources, LLC
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:    Chesapeake's Proposed Koromlan 107HC Well
      Craige, Poulsen North, Poulsen South, Davis and Bradbury Units
      Rush and Auburn Townships, Susquehanna County, Pennsylvania
      Mehoopany Prospect

Dear Mr. Fiuzat:

Pursuant to Operating Agreement dated December 16, 2010, covering the Craige Unit, Operating Agreement dated July 31, 2014, covering the Davis Unit, Farmout Agreement dated February 3, 2010, covering the Poulsen North and Poulsen South Units, and Operating Agreement dated TBD, covering the Bradbury Unit, Chesapeake Appalachia, L.L.C. ("CHK") hereby proposes to drill the Koromlan 107HC Well (the "Well") with a surface hole location of Latitude 41.738843° and Longitude -76.029805° (NAD 27); and an approximate bottom hole location of Latitude 41.706214° and Longitude -76.000833°, in Auburn Township and, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 24,607' feet, with an approximate vertical depth of 6,795' feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,898,000.00 with a completed well costing approximately $8,865,000.00.

Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt.

Should you have any questions in this regard, please do not hesitate to call me at 405-935-9164.

Sincerely,

Chesapeake Appalachia, L.L.C

Courtney Moad

**Chesapeake Energy Corporation**
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / fax: 405-849-0092 / courtney.moad@chk.com

Appx0782

Koromlan 107HC Proposal
January 21, 2021


_____ **Jamestown Resources, LLC** hereby elects to participate with the full extent of its interest in the drilling of the Koromlan 107HC well under the governing unit JOA.

_____ **Jamestown Resources, LLC** hereby elects **not** to participate in the drilling of the Koromlan 107HC well and elects to go non-consent under the governing unit JOA.


By: _____

Name: _____

Title: _____

Date: _____

2



**Courtney Moad**
*Staff Landman - Appalachia*

**January 21, 2021**

**VIA ELECTRONIC MAIL**

Mr. David D. Kalish
Radler 2000 Limited Partnership
1320 S. University Dr., Suite 500
Ft. Worth, TX  76107

Re:     Chesapeake's Proposed Koromlan 107HC Well
        Craige, Poulsen North, Poulsen South, Davis and Bradbury Units
        Rush and Auburn Townships, Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. Kalish:

Pursuant to Operating Agreement dated December 16, 2010, covering the Craige Unit, Operating Agreement dated July 31, 2014, covering the Davis Unit, Farmout Agreement dated February 3, 2010, covering the Poulsen North and Poulsen South Units, and Operating Agreement dated TBD, covering the Bradbury Unit, Chesapeake Appalachia, L.L.C. ("CHK") hereby proposes to drill the Koromlan 107HC Well (the "Well") with a surface hole location of Latitude 41.738843° and Longitude -76.029805° (NAD 27); and an approximate bottom hole location of Latitude 41.706214° and Longitude -76.000833°, in Auburn Township and, Susquehanna County, Pennsylvania.  The Well will be drilled to an approximate measured depth of 24,607' feet, with an approximate vertical depth of 6,795' feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore.  Estimated costs to drill the Well are $2,898,000.00 with a completed well costing approximately $8,865,000.00.

Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt.

Should you have any questions in this regard, please do not hesitate to call me at 405-935-9164.

Sincerely,

Chesapeake Appalachia, L.L.C

Courtney Moad

Chesapeake Energy Corporation
P.O. Box 18496  /  Oklahoma City, OK 73154-0496  /  6100 N. Western Avenue  /  Oklahoma City, OK 73118
405-935-9164 / fax: 405-849-0092 / courtney.moad@chk.com

Appx0784

Koromlan 107HC Proposal
January 21, 2021

_____ **Radler 2000 Limited Partnership** hereby elects to participate with the full extent of its interest in the drilling of the Koromlan 107HC well under the governing unit JOA.

_____ **Radler 2000 Limited Partnership** hereby elects **not** to participate in the drilling of the Koromlan 107HC well and elects to go non-consent under the governing unit JOA.

By: _____

Name: _____

Title: _____

Date: _____

Appx0785



**CHESAPEAKE**
*ENERGY*

**Courtney Moad**
*Staff Landman - Appalachia*

January 21, 2021

<u>**VIA ELECTRONIC MAIL**</u>

Mr. David D. Kalish
Tug Hill Marcellus LLC
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107

Re:     Chesapeake's Proposed Koromlan 107HC Well
        Craige, Poulsen North, Poulsen South, Davis and Bradbury Units
        Rush and Auburn Townships, Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. Kalish:

Pursuant to Operating Agreement dated December 16, 2010, covering the Craige Unit, Operating Agreement dated July 31, 2014, covering the Davis Unit, Farmout Agreement dated February 3, 2010, covering the Poulsen North and Poulsen South Units, and Operating Agreement dated TBD, covering the Bradbury Unit, Chesapeake Appalachia, L.L.C. ("CHK") hereby proposes to drill the Koromlan 107HC Well (the "Well") with a surface hole location of Latitude 41.738843° and Longitude -76.029805° (NAD 27); and an approximate bottom hole location of Latitude 41.706214° and Longitude -76.000833°, in Auburn Township and, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 24,607' feet, with an approximate vertical depth of 6,795' feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,898,000.00 with a completed well costing approximately $8,865,000.00.

Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt.

Should you have any questions in this regard, please do not hesitate to call me at 405-935-9164.

Sincerely,

Chesapeake Appalachia, L.L.C

Courtney Moad

**Chesapeake Energy Corporation**
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / fax: 405-849-0092 / courtney.moad@chk.com

Appx0786

Koromlan 107HC Proposal
January 21, 2021

_____ **Tug Hill Marcellus LLC** hereby elects to participate with the full extent of its interest in the drilling of the Koromlan 107HC well under the governing unit JOA.

_____ **Tug Hill Marcellus LLC** hereby elects **not** to participate in the drilling of the Koromlan 107HC well and elects to go non-consent under the governing unit JOA.

By: _____

Name: _____

Title: _____

Date: _____

2

Appx0787

# Exhibit D



<div align="right">

**Courtney D. Moad, CPL**
*Staff Landman - Appalachia*

</div>

March 3, 2021

**VIA OVERNIGHT MAIL**

Mr. David D. Kalish
Radler 2000 Limited Partnership
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107

Re:     Craige Unit - Non-Consent Acreage
          Koromlan 107HC
          Rush and Auburn Townships
          Susquehanna County, Pennsylvania
          Mehoopany Prospect

Dear Mr. Kalish:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that approximately 39.007590% of the total working interest at an estimated 33.837658% net revenue interest elected not to participate in the drilling attempt under the terms of the Joint Operating Agreement ("JOA") dated effective December 16, 2010, between Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties Inc. ("EQNR"), et al, governing this 39.007590% working interest. Pursuant to the terms and conditions of said JOA, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that Radler select one of the following options in accordance with the JOA:

1) Elect to limit participation to Radler's interest as shown on Exhibit "A".

2) Elect to carry only Radler's proportionate part of Non-Consenting Parties' interest.

3) Elect to carry Radler's proportionate part of Non-Consenting Parties' interest together with all or a portion of Radler's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

<div align="center">

**Chesapeake Energy Corporation**
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / f: 405-849-9164 / Courtney.moad@chk.com

</div>

<div align="right">

Appx0789

</div>

Mr. David D. Kalish
Radler 2000 Limited Partnership
March 3, 2021
Page 2


Please indicate whether or not you wish to take your share of said non-consent interest by signing below and returning an executed copy of this letter to Chesapeake within forty-eight (48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the letterhead or by email at courtney.moad@chk.com.

Sincerely,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

Enclosures


_____ Radler hereby elects limit participation to Radler's interest as shown on Exhibit "A".

_____ Radler hereby elects to carry only Radler's proportionate part of Non-Consenting Parties' interest.

_____ Radler hereby elects to carry Radler's proportionate part of Non-Consenting Parties' interest together with all or a portion of Radler's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.


By: _____

Name: _____

Title: _____

Date: _____

EXHIBIT "A"

ATTACHED TO AND MADE A PART OF THAT CERTAIN OPERATING AGREEMENT
DATED DECEMBER 16, 2010,
BY AND BETWEEN CHESAPEAKE APPALACHIA, L.L.C., OPERATOR,
AND STATOIL USA ONSHORE PROPERTIES INC., ET AL, NON-OPERATOR

1.      DESCRIPTION OF LANDS SUBJECT TO THIS AGREEMENT

THOSE CERTAIN LEASES AND/OR INTERESTS LOCATED WITHIN THE CONTRACT AREA AS
FURTHER DESCRIBED ON EXHIBIT "A-1" (LEASE LISTING) AND AS SHOWN ON THE PLAT
OF THE CONTRACT AREA ATTACHED AS EXHIBIT "A-2" HEREOF.

2.      RESTRICTIONS, IF ANY, AS TO DEPTHS, FORMATIONS AND SUBSTANCES

NONE

3.      PARTIES TO AGREEMENT WITH ADDRESS AND TELEPHONE NUMBER FOR NOTICE
PURPOSES

Chesapeake Appalachia, L.L.C.
6100 N. Western Avenue
P. O. Box 18496
Oklahoma City, Oklahoma
Attention: Courtney Moad

Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730
Attention: Mr. James Jeter

Jamestown Resources, L.L.C.
301 NW 63rd Street, Suite 101
Oklahoma City, OK 73116
Attention: Mr. Brian P. Shannon

Chief Exploration & Development LLC
5956 Sherry Lane, Suite 1500
Dallas, TX 75225
Attention: Mr. Paul Lettieri

Epsilon Energy USA, Inc.
16701 Greenspoint Dr., Ste 195
Houston, TX 77060
Attention: Mr. Henry Clanton

Enerplus Resources (USA) Corporation
950 17th Street, Suite 2200
Denver, CO 80202
Attention: Mr. Beau Fritz

Radler 2000 Limited Partnership
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107
Attention: Mr. David D. Kalish

Tug Hill Marcellus, LLC
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107
Attention: Mr. David D. Kalish

4. **PERCENTAGES OR FRACTIONAL INTERESTS OF PARTIES TO THIS AGREEMENT**

| PARTIES | WORKING INTEREST |
|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% |
| Equinor USA Onshore Properties Inc.* | 18.345441% |
| Jamestown Resources, LLC | 2.50000% |
| Chief Exploration & Development LLC | 5.338430% |
| Epsilon Energy USA, Inc. | 33.669160% |
| Enerplus resources (USA) Corporation | 2.859873% |
| Radler 2000 Limited Partnership | 0.777193% |
| Tug Hill Marcellus, LLC | .557414% |
| Unconventionals Natural Gas, LLC | 0.000000% |
| | 100.000000% |

5. **OIL AND GAS LEASES AND/OR OIL AND GAS INTEREST SUBJECT TO THIS AGREEMENT**

The oil and gas lease or oil and gas interest, or portions thereof, included in the Contract Area and described on Exhibit A-1 attached hereto.

6. **BURDENS ON PRODUCTION**

Lease Royalty                                      13.727750%

7. **PLAT OF CONTRACT AREA**

See attached Exhibit A-2

*The working interests of the Parties above are to be determined in accordance with the terms and conditions of that certain Development Agreement ("DA") by and between the Parties dated November 10, 2008.

It is understood by the Parties hereto that in the event additional interest is acquired in the Contract Area and all Parties with a right under the DA do not elect and pay for their proportionate share of said interest, the interests above shall be adjusted to reflect actual interest owned by the Parties in the Contract Area. An interest adjustment shall also occur in the event of participation from unleased mineral interests and/or third parties.


*ENERGY*

Courtney D. Moad, CPL
*Staff Landman - Appalachia*

March 3, 2021

**VIA OVERNIGHT MAIL**

Mr. David D. Kalish
Tug Hill Marcellus LLC
1320 S. University Dr., Suite 500
Ft. Worth, TX  76107

Re:　Carige Unit - Non-Consent Acreage
　　　Koromlan 107HC
　　　Rush and Auburn Townships
　　　Susquehanna County, Pennsylvania
　　　Mehoopany Prospect

Dear Mr. Kalish:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that approximately 39.007590% of the total working interest at an estimated 33.837658% net revenue interest elected not to participate in the drilling attempt under the terms of the Joint Operating Agreement ("JOA") dated effective December 16, 2010, between Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties Inc. ("EQNR"), et al, governing this 39.007590% working interest. Pursuant to the terms and conditions of said JOA, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that Tug Hill select one of the following options in accordance with the JOA:

1) Elect to limit participation to Tug Hill's interest as shown on Exhibit "A".

2) Elect to carry only Tug Hill's proportionate part of Non-Consenting Parties' interest.

3) Elect to carry Tug Hill's proportionate part of Non-Consenting Parties' interest together with all or a portion of Tug Hill's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

**Chesapeake Energy Corporation**
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / f: 405-849-9164 / Courtney.moad@chk.com

Appx0793

Mr. David D. Kalish
Tug Hill Marcellus LLC
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by signing below and returning an executed copy of this letter to Chesapeake within forty-eight (48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the letterhead or by email at courtney.moad@chk.com.

Sincerely,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

Enclosures


_____ Tug Hill hereby elects limit participation to Tug Hill's interest as shown on Exhibit "A".

_____ Tug Hill hereby elects to carry only Tug Hill's proportionate part of Non-Consenting Parties' interest.

_____ Tug Hill hereby elects to carry Tug Hill's proportionate part of Non-Consenting Parties' interest together with all or a portion of Tug Hill's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.


By: _____

Name: _____

Title: _____

Date: _____

EXHIBIT "A"

ATTACHED TO AND MADE A PART OF THAT CERTAIN OPERATING AGREEMENT
DATED DECEMBER 16, 2010,
BY AND BETWEEN CHESAPEAKE APPALACHIA, L.L.C., OPERATOR,
AND STATOIL USA ONSHORE PROPERTIES INC., ET AL, NON-OPERATOR

1. **DESCRIPTION OF LANDS SUBJECT TO THIS AGREEMENT**

THOSE CERTAIN LEASES AND/OR INTERESTS LOCATED WITHIN THE CONTRACT AREA AS
FURTHER DESCRIBED ON EXHIBIT "A-1" (LEASE LISTING) AND AS SHOWN ON THE PLAT
OF THE CONTRACT AREA ATTACHED AS EXHIBIT "A-2" HEREOF.

2. **RESTRICTIONS, IF ANY, AS TO DEPTHS, FORMATIONS AND SUBSTANCES**

NONE

3. **PARTIES TO AGREEMENT WITH ADDRESS AND TELEPHONE NUMBER FOR NOTICE PURPOSES**

Chesapeake Appalachia, L.L.C.
6100 N. Western Avenue
P. O. Box 18496
Oklahoma City, Oklahoma
Attention: Courtney Moad

Jamestown Resources, L.L.C.
301 NW 63rd Street, Suite 101
Oklahoma City, OK 73116
Attention: Mr. Brian P. Shannon

Epsilon Energy USA, Inc.
16701 Greenspoint Dr., Ste 195
Houston, TX 77060
Attention: Mr. Henry Clanton

Radler 2000 Limited Partnership
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107
Attention: Mr. David D. Kalish

Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730
Attention: Mr. James Jeter

Chief Exploration & Development LLC
5956 Sherry Lane, Suite 1500
Dallas, TX 75225
Attention: Mr. Paul Lettieri

Enerplus Resources (USA) Corporation
950 17th Street, Suite 2200
Denver, CO 80202
Attention: Mr. Beau Fritz

Tug Hill Marcellus, LLC
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107
Attention: Mr. David D. Kalish

4. **PERCENTAGES OR FRACTIONAL INTERESTS OF PARTIES TO THIS AGREEMENT**

| PARTIES | WORKING INTEREST |
|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% |
| Equinor USA Onshore Properties Inc.* | 18.345441% |
| Jamestown Resources, LLC | 2.50000% |
| Chief Exploration & Development LLC | 5.338430% |
| Epsilon Energy USA, Inc. | 33.669160% |
| Enerplus resources (USA) Corporation | 2.859873% |
| Radler 2000 Limited Partnership | 0.777193% |
| Tug Hill Marcellus, LLC | .557414% |
| Unconventionals Natural Gas, LLC | 0.000000% |
| | 100.000000% |

5. **OIL AND GAS LEASES AND/OR OIL AND GAS INTEREST SUBJECT TO THIS AGREEMENT**

The oil and gas lease or oil and gas interest, or portions thereof, included in the Contract Area and described on Exhibit A-1 attached hereto.

6. **BURDENS ON PRODUCTION**

Lease Royalty                                        13.727750%

7. **PLAT OF CONTRACT AREA**

See attached Exhibit A-2

*The working interests of the Parties above are to be determined in accordance with the terms and conditions of that certain Development Agreement ("DA") by and between the Parties dated November 10, 2008.

It is understood by the Parties hereto that in the event additional interest is acquired in the Contract Area and all Parties with a right under the DA do not elect and pay for their proportionate share of said interest, the interests above shall be adjusted to reflect actual interest owned by the Parties in the Contract Area. An interest adjustment shall also occur in the event of participation from unleased mineral interests and/or third parties.

Appx0796



**CHESAPEAKE**
*ENERGY*

Courtney D. Moad, CPL
*Staff Landman - Appalachia*

March 3, 2021

<u>**VIA OVERNIGHT MAIL**</u>

Mr. Beau Fritz
Enerplus Resources (USA) Corporation
950 17th Street, Suite 2200
Denver, CO 80202

Re:    Craige Unit - Non-Consent Acreage
        Koromlan 107HC
        Rush and Auburn Townships
        Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. Fritz:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that approximately 39.007590% of the total working interest at an estimated 33.837658% net revenue interest elected not to participate in the drilling attempt under the terms of the Joint Operating Agreement ("JOA") dated effective December 16, 2010, between Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties Inc. ("EQNR"), et al, governing this 39.007590% working interest. Pursuant to the terms and conditions of said JOA, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that Enerplus select one of the following options in accordance with the JOA:

1) Elect to limit participation to Enerplus's interest as shown on Exhibit "A".

2) Elect to carry only Enerplus's proportionate part of Non-Consenting Parties' interest.

3) Elect to carry Enerplus's proportionate part of Non-Consenting Parties' interest together with all or a portion of Enerplus's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

**Chesapeake Energy Corporation**
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / f: 405-849-9164 / Courtney.moad@chk.com

Appx0797

Mr. Beau Fritz
Enerplus Resources (USA) Corporation
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by signing below and returning an executed copy of this letter to Chesapeake within forty-eight (48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the letterhead or by email at courtney.moad@chk.com.

Sincerely,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

Enclosures

_____ Enerplus hereby elects limit participation to Enerplus's interest as shown on Exhibit "A".

_____ Enerplus hereby elects to carry only Enerplus's proportionate part of Non-Consenting Parties' interest.

_____ Enerplus hereby elects to carry Enerplus's proportionate part of Non-Consenting Parties' interest together with all or a portion of Enerplus's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

By: _____

Name: _____

Title: _____

Date: _____

Appx0798

EXHIBIT "A"

ATTACHED TO AND MADE A PART OF THAT CERTAIN OPERATING AGREEMENT
DATED DECEMBER 16, 2010,
BY AND BETWEEN CHESAPEAKE APPALACHIA, L.L.C., OPERATOR,
AND STATOIL USA ONSHORE PROPERTIES INC., ET AL, NON-OPERATOR

1.   DESCRIPTION OF LANDS SUBJECT TO THIS AGREEMENT

THOSE CERTAIN LEASES AND/OR INTERESTS LOCATED WITHIN THE CONTRACT AREA AS
FURTHER DESCRIBED ON EXHIBIT "A-1" (LEASE LISTING) AND AS SHOWN ON THE PLAT
OF THE CONTRACT AREA ATTACHED AS EXHIBIT "A-2" HEREOF.

2.   RESTRICTIONS, IF ANY, AS TO DEPTHS, FORMATIONS AND SUBSTANCES

NONE

3.   PARTIES TO AGREEMENT WITH ADDRESS AND TELEPHONE NUMBER FOR NOTICE
PURPOSES

Chesapeake Appalachia, L.L.C.
6100 N. Western Avenue
P. O. Box 18496
Oklahoma City, Oklahoma
Attention:  Courtney Moad

Jamestown Resources, L.L.C.
301 NW 63rd Street, Suite 101
Oklahoma City, OK 73116
Attention: Mr. Brian P. Shannon

Epsilon Energy USA, Inc.
16701 Greenspoint Dr., Ste 195
Houston, TX  77060
Attention:  Mr. Henry Clanton

Radler 2000 Limited Partnership
1320 S. University Dr., Suite 500
Ft. Worth, TX  76107
Attention: Mr. David D. Kalish

Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730
Attention: Mr. James Jeter

Chief Exploration & Development LLC
5956 Sherry Lane, Suite 1500
Dallas, TX  75225
Attention: Mr. Paul Lettieri

Enerplus Resources (USA) Corporation
950 17th Street, Suite 2200
Denver, CO  80202
Attention: Mr. Beau Fritz

Tug Hill Marcellus, LLC
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107
Attention: Mr. David D. Kalish

4. **PERCENTAGES OR FRACTIONAL INTERESTS OF PARTIES TO THIS AGREEMENT**

| PARTIES | WORKING INTEREST |
|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% |
| Equinor USA Onshore Properties Inc.* | 18.345441% |
| Jamestown Resources, LLC | 2.50000% |
| Chief Exploration & Development LLC | 5.338430% |
| Epsilon Energy USA, Inc. | 33.669160% |
| Enerplus resources (USA) Corporation | 2.859873% |
| Radler 2000 Limited Partnership | 0.777193% |
| Tug Hill Marcellus, LLC | .557414% |
| Unconventionals Natural Gas, LLC | 0.000000% |
| | 100.000000% |

5. **OIL AND GAS LEASES AND/OR OIL AND GAS INTEREST SUBJECT TO THIS AGREEMENT**

The oil and gas lease or oil and gas interest, or portions thereof, included in the Contract Area and described on Exhibit A-1 attached hereto.

6. **BURDENS ON PRODUCTION**

Lease Royalty                                    13.727750%

7. **PLAT OF CONTRACT AREA**

See attached Exhibit A-2

*The working interests of the Parties above are to be determined in accordance with the terms and conditions of that certain Development Agreement ("DA") by and between the Parties dated November 10, 2008.

It is understood by the Parties hereto that in the event additional interest is acquired in the Contract Area and all Parties with a right under the DA do not elect and pay for their proportionate share of said interest, the interests above shall be adjusted to reflect actual interest owned by the Parties in the Contract Area. An interest adjustment shall also occur in the event of participation from unleased mineral interests and/or third parties.

Appx0800


*ENERGY*

Courtney D. Moad, CPL
*Staff Landman - Appalachia*

March 3, 2021

<u>VIA OVERNIGHT MAIL</u>

Mr. Mike Fiuzat
Jamestown Resources, LLC
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:    Craige Unit - Non-Consent Acreage
        Koromlan 107HC
        Rush and Auburn Townships
        Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. Fiuzat:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that approximately 39.007590% of the total working interest at an estimated 33.837658% net revenue interest elected not to participate in the drilling attempt under the terms of the Joint Operating Agreement ("JOA") dated effective December 16, 2010, between Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties Inc. ("EQNR"), et al, governing this 39.007590% working interest. Pursuant to the terms and conditions of said JOA, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that JRLLC select one of the following options in accordance with the JOA:

1) Elect to limit participation to JRLLC's interest as shown on Exhibit "A".

2) Elect to carry only JRLLC's proportionate part of Non-Consenting Parties' interest.

3) Elect to carry JRLLC's proportionate part of Non-Consenting Parties' interest together with all or a portion of JRLLC's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

**Chesapeake Energy Corporation**

P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / f: 405-849-9164 / Courtney.moad@chk.com

Appx0801

Mr. Mike Fiuzat
Jamestown Resources, LLC
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by signing below and returning an executed copy of this letter to Chesapeake within forty-eight (48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the letterhead or by email at courtney.moad@chk.com.

Sincerely,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

Enclosures


_____ JRLLC hereby elects limit participation to JRLLC's interest as shown on Exhibit "A".

_____ JRLLC hereby elects to carry only JRLLC's proportionate part of Non-Consenting Parties' interest.

_____ JRLLC hereby elects to carry JRLLC's proportionate part of Non-Consenting Parties' interest together with all or a portion of JRLLC's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.


By:      _____

Name:  _____

Title:    _____

Date:    _____

Appx0802

EXHIBIT "A"

**ATTACHED TO AND MADE A PART OF THAT CERTAIN OPERATING AGREEMENT
DATED DECEMBER 16, 2010,
BY AND BETWEEN CHESAPEAKE APPALACHIA, L.L.C., OPERATOR,
AND STATOIL USA ONSHORE PROPERTIES INC., ET AL, NON-OPERATOR**

1.   **DESCRIPTION OF LANDS SUBJECT TO THIS AGREEMENT**

THOSE CERTAIN LEASES AND/OR INTERESTS LOCATED WITHIN THE CONTRACT AREA AS FURTHER DESCRIBED ON EXHIBIT "A-1" (LEASE LISTING) AND AS SHOWN ON THE PLAT OF THE CONTRACT AREA ATTACHED AS EXHIBIT "A-2" HEREOF.

2.   **RESTRICTIONS, IF ANY, AS TO DEPTHS, FORMATIONS AND SUBSTANCES**

NONE

3.   **PARTIES TO AGREEMENT WITH ADDRESS AND TELEPHONE NUMBER FOR NOTICE PURPOSES**

Chesapeake Appalachia, L.L.C.
6100 N. Western Avenue
P. O. Box 18496
Oklahoma City, Oklahoma
Attention:  Courtney Moad

Jamestown Resources, L.L.C.
301 NW 63rd Street, Suite 101
Oklahoma City, OK 73116
Attention: Mr. Brian P. Shannon

Epsilon Energy USA, Inc.
16701 Greenspoint Dr., Ste 195
Houston, TX  77060
Attention:  Mr. Henry Clanton

Radler 2000 Limited Partnership
1320 S. University Dr., Suite 500
Ft. Worth, TX  76107
Attention: Mr. David D. Kalish

Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730
Attention: Mr. James Jeter

Chief Exploration & Development LLC
5956 Sherry Lane, Suite 1500
Dallas, TX 75225
Attention: Mr. Paul Lettieri

Enerplus Resources (USA) Corporation
950 17th Street, Suite 2200
Denver, CO  80202
Attention: Mr. Beau Fritz

Tug Hill Marcellus, LLC
1320 S. University Dr., Suite 500
Ft. Worth, TX  76107
Attention: Mr. David D. Kalish

4.   **PERCENTAGES OR FRACTIONAL INTERESTS OF PARTIES TO THIS AGREEMENT**

| PARTIES | WORKING INTEREST |
|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% |
| Equinor USA Onshore Properties Inc.* | 18.345441% |
| Jamestown Resources, LLC | 2.50000% |
| Chief Exploration & Development LLC | 5.338430% |
| Epsilon Energy USA, Inc. | 33.669160% |
| Enerplus resources (USA) Corporation | 2.859873% |
| Radler 2000 Limited Partnership | 0.777193% |
| Tug Hill Marcellus, LLC | .557414% |
| Unconventionals Natural Gas, LLC | 0.000000% |
|  | 100.000000% |

5.   **OIL AND GAS LEASES AND/OR OIL AND GAS INTEREST SUBJECT TO THIS AGREEMENT**

The oil and gas lease or oil and gas interest, or portions thereof, included in the Contract Area and described on Exhibit A-1 attached hereto.

6.   **BURDENS ON PRODUCTION**

Lease Royalty                                    13.727750%

7.   **PLAT OF CONTRACT AREA**

See attached Exhibit A-2

*The working interests of the Parties above are to be determined in accordance with the terms and conditions of that certain Development Agreement ("DA") by and between the Parties dated November 10, 2008.

It is understood by the Parties hereto that in the event additional interest is acquired in the Contract Area and all Parties with a right under the DA do not elect and pay for their proportionate share of said interest, the interests above shall be adjusted to reflect actual interest owned by the Parties in the Contract Area.  An interest adjustment shall also occur in the event of participation from unleased mineral interests and/or third parties.



**CHESAPEAKE**
*ENERGY*

Courtney D. Moad, CPL
*Staff Landman - Appalachia*

March 3, 2021

**VIA OVERNIGHT MAIL**

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Non-Consent Acreage
        Koromlan 107HC
        Rush and Auburn Townships
        Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. McGraw:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that Chief Exploration & Development LLC and Epsilon Energy USA Inc. have elected not to participate in the drilling attempt under the terms of the governing Joint Operating Agreements ("JOAs"). Please see the attached Exhibit "A" for the available additional working interest and net revenue interest for each unit. Pursuant to the terms and conditions of said JOAs, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that EQNR select one of the following options in accordance with the JOA:

1) Elect to limit participation to EQNR's interest as shown on Exhibit "A".

2) Elect to carry only EQNR's proportionate part of Non-Consenting Parties' interest.

3) Elect to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

Appx0805

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by
signing below and returning an executed copy of this letter to Chesapeake within forty-eight
(48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall
be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the
letterhead or by email at courtney.moad@chk.com.

Sincerely,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

Enclosures

<u>Craige Unit</u>

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A"
in the Craige Unit.

_____ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting
Parties' interest in the Craige Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting
Parties' interest together with all or a portion of EQNR's proportionate part of any
Non-Consenting Parties' interest that any Consenting Party did not elect to take
in the Craige Unit.

By: _____

Name: _____

Title: _____

Date: _____

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 3

<u>Poulsen North Unit</u>

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Poulsen North Unit.

_____ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Poulsen North Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Poulsen North Unit.

By: _____

Name: _____

Title: _____

Date: _____

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 4

Poulsen South Unit

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Poulsen South Unit.

_____ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Poulsen South Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Poulsen South Unit.

By: _____

Name: _____

Title: _____

Date: _____

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 5

Davis Unit

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Davis Unit.

_____ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Davis Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Davis Unit.

By:       _____

Name:   _____

Title:    _____

Date:    _____

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 6

Bradbury Unit

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Bradbury Unit.

_____ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Bradbury Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Bradbury Unit.

By: _____

Name: _____

Title: _____

Date: _____

EXHIBIT "A"

| Craige Unit | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.35952489 | 0.30212873 |
| Equinor USA Onshore Properties Inc. | 0.18345441 | 0.15418659 |
| Epsilon Energy USA Inc. | 0.33669160 | 0.29166532 |
| Jamestown Resources, L.L.C. | 0.02600000 | 0.02109524 |
| Chief Exploration & Development LLC | 0.05338430 | 0.04671126 |
| Enerplus Resources (USA) Corporation | 0.02859873 | 0.02502389 |
| Radler 2000 Limited Partnership | 0.00777193 | 0.00680044 |
| Tug Hill Marcellus, LLC | 0.00557414 | 0.00487738 |
| TOTAL | 1.00000000 | 0.85248885 |

| Poulsen North | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.35528850 | 0.30998801 |
| Equinor USA Onshore Properties Inc. | 0.17106484 | 0.14925349 |
| Epsilon Energy USA Inc. | 0.47364666 | 0.41444083 |
| TOTAL | 1.00000000 | 0.87368233 |

| Poulsen South | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.36941747 | 0.32303911 |
| Equinor USA Onshore Properties Inc. | 0.17786767 | 0.15553734 |
| Epsilon Energy USA Inc. | 0.45271485 | 0.39612550 |
| TOTAL | 1.00000000 | 0.87470195 |

| Davis Unit | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.67269953 | 0.55889219 |
| Equinor USA Onshore Properties Inc. | 0.31851663 | 0.26473742 |
| Epsilon Energy USA Inc. | 0.00878384 | 0.00768586 |
| TOTAL | 1.00000000 | 0.83131547 |

| Bradbury Unit | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.63820021 | 0.55889219 |
| Equinor USA Onshore Properties Inc. | 0.25602970 | 0.26473742 |
| Epsilon Energy USA Inc. | 0.10577009 | 0.00768586 |
| TOTAL | 1.00000000 | 0.83131547 |

# Exhibit E



Via E-mail: courtney.moad@chk.com
And Lone Star Overnight

March 8, 2021

Ms. Courtney Moad
Chesapeake Energy Corporation
6100 N. Western Avenue
Oklahoma City, OK 73118

Re:    **KOROLMLAN 107HC**
       Rush & Auburn Townships
       Susquehanna County, Pennsylvania

Dear Ms. Moad,

Please find enclosed the following document that has been executed on behalf of Tug Hill, Inc. the general partner of Radler 2000 Limited Partnership (Radler) and as manager for Tug Hill Marcellus, LLC (Tug Hill):

- Letter dated March 3, 2021, containing an Election Ballot, whereby Radler and Tug Hill elects to carry only Radler's and Tug Hill's proportionate part of the Non-Consenting parties' interest.

Thank you and should you have any questions regarding any of the above, please feel free to contact the undersigned at (817) 632-5200 or hstackhouse@tug-hillop.com.

Sincerely,

TUG HILL, INC.
Radler 2000 Limited Partnership
Tug Hill Marcellus, LLC

Haley Stackhouse
Division Order Tech

Enclosures



CHESAPEAKE
*ENERGY*

Courtney D. Moad, CPL
*Staff Landman - Appalachia*

March 3, 2021

**VIA OVERNIGHT MAIL**

Mr. David D. Kalish
Radler 2000 Limited Partnership
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107

Re:   Craige Unit – Non-Consent Acreage
      Koromlan 107HC
      Rush and Auburn Townships
      Susquehanna County, Pennsylvania
      Mehoopany Prospect

Dear Mr. Kalish:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that approximately 39.007590% of the total working interest at an estimated 33.837658% net revenue interest elected not to participate in the drilling attempt under the terms of the Joint Operating Agreement ("JOA") dated effective December 16, 2010, between Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties Inc. ("EQNR"), et al, governing this 39.007590% working interest. Pursuant to the terms and conditions of said JOA, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that Radler select one of the following options in accordance with the JOA:

1) Elect to limit participation to Radler's interest as shown on Exhibit "A".

2) Elect to carry only Radler's proportionate part of Non-Consenting Parties' interest.

3) Elect to carry Radler's proportionate part of Non-Consenting Parties' interest together with all or a portion of Radler's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

Appx0814

Mr. David D. Kalish
Radler 2000 Limited Partnership
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by signing below and returning an executed copy of this letter to Chesapeake within forty-eight (48) hours from receipt of this letter.  Failure to elect within the forty-eight (48) hours shall be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the letterhead or by email at courtney.moad@chk.com.

Sincerely,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

Enclosures

_____ Radler hereby elects limit participation to Radler's interest as shown on Exhibit "A".

___X___ Radler hereby elects to carry only Radler's proportionate part of Non-Consenting Parties' interest.

_____ Radler hereby elects to carry Radler's proportionate part of Non-Consenting Parties' interest together with all or a portion of Radler's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

By: _____

Name: ___David Buchanan___

Title: ___Vice President-Land___

Date: ___3/8/21___



**CHESAPEAKE**
*ENERGY*

Courtney D. Moad, CPL
*Staff Landman - Appalachia*

March 3, 2021

<u>**VIA OVERNIGHT MAIL**</u>

Mr. David D. Kalish
Tug Hill Marcellus LLC
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107

Re:    Carige Unit - Non-Consent Acreage
       Koromlan 107HC
       Rush and Auburn Townships
       Susquehanna County, Pennsylvania
       Mehoopany Prospect

Dear Mr. Kalish:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that approximately 39.007590% of the total working interest at an estimated 33.837658% net revenue interest elected not to participate in the drilling attempt under the terms of the Joint Operating Agreement ("JOA") dated effective December 16, 2010, between Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties Inc. ("EQNR"), et al, governing this 39.007590% working interest. Pursuant to the terms and conditions of said JOA, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that Tug Hill select one of the following options in accordance with the JOA:

   1)  Elect to limit participation to Tug Hill's interest as shown on Exhibit "A".

   2)  Elect to carry only Tug Hill's proportionate part of Non-Consenting Parties' interest.

   3)  Elect to carry Tug Hill's proportionate part of Non-Consenting Parties' interest together with all or a portion of Tug Hill's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

Appx0816

Mr. David D. Kalish
Tug Hill Marcellus LLC
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by
signing below and returning an executed copy of this letter to Chesapeake within forty-eight
(48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall
be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the
letterhead or by email at courtney.moad@chk.com.

Sincerely,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

Enclosures

_____ Tug Hill hereby elects limit participation to Tug Hill's interest as shown on Exhibit
"A".

__X__ Tug Hill hereby elects to carry only Tug Hill's proportionate part of Non-Consenting
Parties' interest.

_____ Tug Hill hereby elects to carry Tug Hill's proportionate part of Non-Consenting
Parties' interest together with all or a portion of Tug Hill's proportionate part of any
Non-Consenting Parties' interest that any Consenting Party did not elect to take.

By: _____

Name: David Buchanan

Title: Vice President-Land

Date: 3/8/21



**CHESAPEAKE**
*ENERGY*

Courtney D. Moad, CPL
*Staff Landman - Appalachia*

March 3, 2021

**VIA OVERNIGHT MAIL**

Mr. Beau Fritz
Enerplus Resources (USA) Corporation
950 17th Street, Suite 2200
Denver, CO 80202

Re:     Craige Unit - Non-Consent Acreage
        Koromlan 107HC
        Rush and Auburn Townships
        Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. Fritz:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that approximately 39.007590% of the total working interest at an estimated 33.837658% net revenue interest elected not to participate in the drilling attempt under the terms of the Joint Operating Agreement ("JOA") dated effective December 16, 2010, between Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties Inc. ("EQNR"), et al, governing this 39.007590% working interest. Pursuant to the terms and conditions of said JOA, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that Enerplus select one of the following options in accordance with the JOA:

1) Elect to limit participation to Enerplus's interest as shown on Exhibit "A".

2) Elect to carry only Enerplus's proportionate part of Non-Consenting Parties' interest.

3) Elect to carry Enerplus's proportionate part of Non-Consenting Parties' interest together with all or a portion of Enerplus's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

**Chesapeake Energy Corporation**

P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / f: 405-849-9164 / Courtney.moad@chk.com

Appx0818

Mr. Beau Fritz
Enerplus Resources (USA) Corporation
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by signing below and returning an executed copy of this letter to Chesapeake within forty-eight (48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the letterhead or by email at courtney.moad@chk.com.

Sincerely,

Chesapeake Appalachia, L.L.C.

Courtney Moad

Enclosures

_____ Enerplus hereby elects limit participation to Enerplus's interest as shown on Exhibit "A".

___X___ Enerplus hereby elects to carry only Enerplus's proportionate part of Non-Consenting Parties' interest.

_____ Enerplus hereby elects to carry Enerplus's proportionate part of Non-Consenting Parties' interest together with all or a portion of Enerplus's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

By: _Nathan fisher (Mar 8, 2021 07:54 MST)_____

Name: _Nathan Fisher_____

Title: _VP, United States Business Unit_____

Date: _Mar 8, 2021_____

EXHIBIT "A"

ATTACHED TO AND MADE A PART OF THAT CERTAIN OPERATING AGREEMENT
DATED DECEMBER 16, 2010,
BY AND BETWEEN CHESAPEAKE APPALACHIA, L.L.C., OPERATOR,
AND STATOIL USA ONSHORE PROPERTIES INC., ET AL, NON-OPERATOR

1.  **DESCRIPTION OF LANDS SUBJECT TO THIS AGREEMENT**

    THOSE CERTAIN LEASES AND/OR INTERESTS LOCATED WITHIN THE CONTRACT AREA AS
    FURTHER DESCRIBED ON EXHIBIT "A-1" (LEASE LISTING) AND AS SHOWN ON THE PLAT
    OF THE CONTRACT AREA ATTACHED AS EXHIBIT "A-2" HEREOF.

2.  **RESTRICTIONS, IF ANY, AS TO DEPTHS, FORMATIONS AND SUBSTANCES**

    NONE

3.  **PARTIES TO AGREEMENT WITH ADDRESS AND TELEPHONE NUMBER FOR NOTICE
    PURPOSES**

    Chesapeake Appalachia, L.L.C.
    6100 N. Western Avenue
    P. O. Box 18496
    Oklahoma City, Oklahoma
    Attention:  Courtney Moad

    Equinor USA Onshore Properties Inc.
    6300 Bridge Point Pkwy, Bldg 2, Ste 100
    Austin, TX 78730
    Attention: Mr. James Jeter

    Jamestown Resources, L.L.C.
    301 NW 63rd Street, Suite 101
    Oklahoma City, OK 73116
    Attention: Mr. Brian P. Shannon

    Chief Exploration & Development LLC
    5956 Sherry Lane, Suite 1500
    Dallas, TX 75225
    Attention: Mr. Paul Lettieri

    Epsilon Energy USA, Inc.
    16701 Greenspoint Dr., Ste 195
    Houston, TX 77060
    Attention:  Mr. Henry Clanton

    Enerplus Resources (USA) Corporation
    950 17th Street, Suite 2200
    Denver, CO 80202
    Attention: Mr. Beau Fritz

    Radler 2000 Limited Partnership
    1320 S. University Dr., Suite 500
    Ft. Worth, TX 76107
    Attention: Mr. David D. Kalish

    Tug Hill Marcellus, LLC
    1320 S. University Dr., Suite 500
    Ft. Worth, TX 76107
    Attention: Mr. David D. Kalish

Appx0820

4. **PERCENTAGES OR FRACTIONAL INTERESTS OF PARTIES TO THIS AGREEMENT**

| PARTIES | WORKING INTEREST |
|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% |
| Equinor USA Onshore Properties Inc.* | 18.345441% |
| Jamestown Resources, LLC | 2.50000% |
| Chief Exploration & Development LLC | 5.338430% |
| Epsilon Energy USA, Inc. | 33.669160% |
| Enerplus resources (USA) Corporation | 2.859873% |
| Radler 2000 Limited Partnership | 0.777193% |
| Tug Hill Marcellus, LLC | .557414% |
| Unconventionals Natural Gas, LLC | 0.000000% |
| | 100.000000% |

5. **OIL AND GAS LEASES AND/OR OIL AND GAS INTEREST SUBJECT TO THIS AGREEMENT**

The oil and gas lease or oil and gas interest, or portions thereof, included in the Contract Area and described on Exhibit A-1 attached hereto.

6. **BURDENS ON PRODUCTION**

Lease Royalty                                                13.727750%

7. **PLAT OF CONTRACT AREA**

See attached Exhibit A-2

*The working interests of the Parties above are to be determined in accordance with the terms and conditions of that certain Development Agreement ("DA") by and between the Parties dated November 10, 2008.

It is understood by the Parties hereto that in the event additional interest is acquired in the Contract Area and all Parties with a right under the DA do not elect and pay for their proportionate share of said interest, the interests above shall be adjusted to reflect actual interest owned by the Parties in the Contract Area. An interest adjustment shall also occur in the event of participation from unleased mineral interests and/or third parties.

# Koromlan 107HC - Non-Consent Proposal (ENR)

Final Audit Report          2021-03-08

| | |
|---|---|
| Created: | 2021-03-08 |
| By: | Vince Bernal (vbernal@enerplus.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAV0Evws6FvdrCr3mtQObGQjfMs1XgDbPo |

## "Koromlan 107HC - Non-Consent Proposal (ENR)" History

Document created by Vince Bernal (vbernal@enerplus.com)
2021-03-08 - 2:53:19 PM GMT- IP address: 74.63.179.116

Document emailed to Nathan fisher (nfisher@enerplus.com) for signature
2021-03-08 - 2:54:05 PM GMT

Email viewed by Nathan fisher (nfisher@enerplus.com)
2021-03-08 - 2:54:22 PM GMT- IP address: 174.198.165.19

Document e-signed by Nathan fisher (nfisher@enerplus.com)
Signature Date: 2021-03-08 - 2:54:56 PM GMT - Time Source: server- IP address: 174.198.165.19

Agreement completed.
2021-03-08 - 2:54:56 PM GMT

**Adobe Sign**



# JAMESTOWN
# RESOURCES, L.L.C.

March 8, 2021

**VIA ELECTRONIC MAIL (jennifer.l.johnson@chk.com  courtney.moad@chk.com)**

Ms. Courtney Moad
Chesapeake Appalachia  LLC
6100 N. Western Avenue
Oklahoma City, OK  73118

**Re:**  Non-Consent WI Offer
       KOROMLAN 107HC
       Susquehanna County, PA

Dear  Ms. Moad,

Pursuant to your proposal letter dated March 3, 2021, please be advised that Jamestown Resources, L.L.C hereby elects to carry only its proportionate share of Non-Consent Interest. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**



**CHESAPEAKE** *ENERGY*

Courtney D. Moad, CPL
*Staff Landman - Appalachia*

March 3, 2021

<u>VIA OVERNIGHT MAIL</u>

Mr. Mike Fiuzat
Jamestown Resources, LLC
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:  Craige Unit - Non-Consent Acreage
Koromlan 107HC
Rush and Auburn Townships
Susquehanna County, Pennsylvania
Mehoopany Prospect

Dear Mr. Fiuzat:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that approximately 39.007590% of the total working interest at an estimated 33.837658% net revenue interest elected not to participate in the drilling attempt under the terms of the Joint Operating Agreement ("JOA") dated effective December 16, 2010, between Chesapeake Appalachia, L.L.C. ("Chesapeake") and Equinor USA Onshore Properties Inc. ("EQNR"), et al, governing this 39.007590% working interest. Pursuant to the terms and conditions of said JOA, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that JRLLC select one of the following options in accordance with the JOA:

1)  Elect to limit participation to JRLLC's interest as shown on Exhibit "A".

2)  Elect to carry only JRLLC's proportionate part of Non-Consenting Parties' interest.

3)  Elect to carry JRLLC's proportionate part of Non-Consenting Parties' interest together with all or a portion of JRLLC's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

Chesapeake Energy Corporation
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / f: 405-849-9164 / Courtney.moad@chk.com

Appx0824

Mr. Mike Fiuzat
Jamestown Resources, LLC
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by signing below and returning an executed copy of this letter to Chesapeake within forty-eight (48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the letterhead or by email at courtney.moad@chk.com.

Sincerely,

Chesapeake Appalachia, L.L.C.

Courtney Moad

Enclosures

_____ JRLLC hereby elects limit participation to JRLLC's interest as shown on Exhibit "A".

___✓___ JRLLC hereby elects to carry only JRLLC's proportionate part of Non-Consenting Parties' interest.

_____ JRLLC hereby elects to carry JRLLC's proportionate part of Non-Consenting Parties' interest together with all or a portion of JRLLC's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

By: _____

Name: _Mathew Reynolds_____

Title: _Manager_____

Date: _3/8/21_____

# EXHIBIT "A"

**ATTACHED TO AND MADE A PART OF THAT CERTAIN OPERATING AGREEMENT**
**DATED DECEMBER 16, 2010,**
**BY AND BETWEEN CHESAPEAKE APPALACHIA, L.L.C., OPERATOR,**
**AND STATOIL USA ONSHORE PROPERTIES INC., ET AL, NON-OPERATOR**

1.  **DESCRIPTION OF LANDS SUBJECT TO THIS AGREEMENT**

    THOSE CERTAIN LEASES AND/OR INTERESTS LOCATED WITHIN THE CONTRACT AREA AS FURTHER DESCRIBED ON EXHIBIT "A-1" (LEASE LISTING) AND AS SHOWN ON THE PLAT OF THE CONTRACT AREA ATTACHED AS EXHIBIT "A-2" HEREOF.

2.  **RESTRICTIONS, IF ANY, AS TO DEPTHS, FORMATIONS AND SUBSTANCES**

    NONE

3.  **PARTIES TO AGREEMENT WITH ADDRESS AND TELEPHONE NUMBER FOR NOTICE PURPOSES**

Chesapeake Appalachia, L.L.C.
6100 N. Western Avenue
P. O. Box 18496
Oklahoma City, Oklahoma
Attention: Courtney Moad

Jamestown Resources, L.L.C.
301 NW 63rd Street, Suite 101
Oklahoma City, OK 73116
Attention: Mr. Brian P. Shannon

Epsilon Energy USA, Inc.
16701 Greenspoint Dr., Ste 195
Houston, TX 77060
Attention: Mr. Henry Clanton

Radler 2000 Limited Partnership
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107
Attention: Mr. David D. Kalish

Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730
Attention: Mr. James Jeter

Chief Exploration & Development LLC
5956 Sherry Lane, Suite 1500
Dallas, TX 75225
Attention: Mr. Paul Lettieri

Enerplus Resources (USA) Corporation
950 17th Street, Suite 2200
Denver, CO 80202
Attention: Mr. Beau Fritz

Tug Hill Marcellus, LLC
1320 S. University Dr., Suite 500
Ft. Worth, TX 76107
Attention: Mr. David D. Kalish

Appx0826

4. **PERCENTAGES OR FRACTIONAL INTERESTS OF PARTIES TO THIS AGREEMENT**

| PARTIES | WORKING INTEREST |
|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% |
| Equinor USA Onshore Properties Inc.* | 18.345441% |
| Jamestown Resources, LLC | 2.50000% |
| Chief Exploration & Development LLC | 5.338430% |
| Epsilon Energy USA, Inc. | 33.669160% |
| Enerplus resources (USA) Corporation | 2.859873% |
| Radler 2000 Limited Partnership | 0.777193% |
| Tug Hill Marcellus, LLC | .557414% |
| Unconventionals Natural Gas, LLC | 0.000000% |
| | 100.000000% |

5. **OIL AND GAS LEASES AND/OR OIL AND GAS INTEREST SUBJECT TO THIS AGREEMENT**

The oil and gas lease or oil and gas interest, or portions thereof, included in the Contract Area and described on Exhibit A-1 attached hereto.

6. **BURDENS ON PRODUCTION**

Lease Royalty                                             13.727750%

7. **PLAT OF CONTRACT AREA**

See attached Exhibit A-2

*The working interests of the Parties above are to be determined in accordance with the terms and conditions of that certain Development Agreement ("DA") by and between the Parties dated November 10, 2008. It is understood by the Parties hereto that in the event additional interest is acquired in the Contract Area and all Parties with a right under the DA do not elect and pay for their proportionate share of said interest, the interests above shall be adjusted to reflect actual interest owned by the Parties in the Contract Area. An interest adjustment shall also occur in the event of participation from unleased mineral interests and/or third parties.

Appx0827



Courtney D. Moad, CPL
*Staff Landman – Appalachia*

March 3, 2021

**VIA OVERNIGHT MAIL**

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:    Non-Consent Acreage
       Koromlan 107HC
       Rush and Auburn Townships
       Susquehanna County, Pennsylvania
       Mehoopany Prospect

Dear Mr. McGraw:

Pursuant to your election to participate in the Koromlan 107HC well, please be advised that Chief Exploration & Development LLC and Epsilon Energy USA Inc. have elected not to participate in the drilling attempt under the terms of the governing Joint Operating Agreements ("JOAs"). Please see the attached Exhibit "A" for the available additional working interest and net revenue interest for each unit. Pursuant to the terms and conditions of said JOAs, you are hereby offered your proportionate share of the non-consent working interest.

Chesapeake respectfully requests that EQNR select one of the following options in accordance with the JOA:

1) Elect to limit participation to EQNR's interest as shown on Exhibit "A".

2) Elect to carry only EQNR's proportionate part of Non-Consenting Parties' interest.

3) Elect to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take.

**Chesapeake Energy Corporation**

P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / f: 405-849-9164 / Courtney.moad@chk.com

Appx0828

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 2

Please indicate whether or not you wish to take your share of said non-consent interest by signing below and returning an executed copy of this letter to Chesapeake within forty-eight (48) hours from receipt of this letter. Failure to elect within the forty-eight (48) hours shall be deemed an election under option one (1).

Should you have any questions, please contact the undersigned at the number on the letterhead or by email at courtney.moad@chk.com.

Sincerely,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

Enclosures

<u>Craige Unit</u>

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Craige Unit.

__X__ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Craige Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Craige Unit.

By: _____
     E-SIGNED by Danny McGraw
     on 2021-03-08 13:53:36 GMT

Name: ___Danny McGraw_____

Title: ___Principal Landman_____

Date: ___March 8, 2021_____

Appx0829

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 3

<u>Poulsen North Unit</u>

_____   EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Poulsen North Unit.

___X___   EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Poulsen North Unit.

_____   EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Poulsen North Unit.

By:  _____
     E-SIGNED by Danny McGraw
     on 2021-03-08 13:53:41 GMT

Name:  _____Danny McGraw_____

Title:  _____Principal Landman_____

Date:  _____March 8, 2021_____

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 4

Poulsen South Unit

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Poulsen South Unit.

___X___ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Poulsen South Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Poulsen South Unit.

By: _____
E-SIGNED by Danny McGraw
on 2021-03-08 13:53:44 GMT

Name: _____
Danny McGraw

Title: _____
Principal Landman

Date: _____
March 8, 2021

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 5

<u>Davis Unit</u>

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Davis Unit.

___X___ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Davis Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Davis Unit.

By: _____
E-SIGNED by Danny McGraw
on 2021-03-08 13:53:47 GMT

Name: ____Danny McGraw_____

Title: ____Principal Landman_____

Date: ____March 8, 2021_____

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
March 3, 2021
Page 6

EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A"

Bradbury Unit

_____ EQNR hereby elects limit participation to EQNR's interest as shown on Exhibit "A" in the Bradbury Unit.

___X___ EQNR hereby elects to carry only EQNR's proportionate part of Non-Consenting Parties' interest in the Bradbury Unit.

_____ EQNR hereby elects to carry EQNR's proportionate part of Non-Consenting Parties' interest together with all or a portion of EQNR's proportionate part of any Non-Consenting Parties' interest that any Consenting Party did not elect to take in the Bradbury Unit.

E-SIGNED by Danny McGraw
on 2021-03-08 13:53:50 GMT

By: _____

Name: Danny McGraw

Title: Principal Landman

Date: March 8, 2021

EXHIBIT "A"

### Craige Unit

| | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.35952489 | 0.30212873 |
| Equinor USA Onshore Properties Inc. | 0.18345441 | 0.15418659 |
| Epsilon Energy USA Inc. | 0.33669160 | 0.29166532 |
| Jamestown Resources, L.L.C. | 0.02500000 | 0.02109524 |
| Chief Exploration & Development LLC | 0.05338430 | 0.04671126 |
| Enerplus Resources (USA) Corporation | 0.02859873 | 0.02502389 |
| Radler 2000 Limited Partnership | 0.00777193 | 0.00680044 |
| Tug Hill Marcellus, LLC | 0.00557414 | 0.00487738 |
| TOTAL | 1.00000000 | 0.85248885 |

### Poulsen North

| | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.35528850 | 0.30998801 |
| Equinor USA Onshore Properties Inc. | 0.17106484 | 0.14925349 |
| Epsilon Energy USA Inc. | 0.47364666 | 0.41444083 |
| TOTAL | 1.00000000 | 0.87368233 |

### Poulsen South

| | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.36941747 | 0.32303911 |
| Equinor USA Onshore Properties Inc. | 0.17786767 | 0.15553734 |
| Epsilon Energy USA Inc. | 0.45271485 | 0.39612550 |
| TOTAL | 1.00000000 | 0.87470195 |

### Davis Unit

| | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.67269953 | 0.55889219 |
| Equinor USA Onshore Properties Inc. | 0.31851663 | 0.26473742 |
| Epsilon Energy USA Inc. | 0.00878384 | 0.00768586 |
| TOTAL | 1.00000000 | 0.83131547 |

### Bradbury Unit

| | WI | NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 0.63820021 | 0.55889219 |
| Equinor USA Onshore Properties Inc. | 0.25602970 | 0.26473742 |
| Epsilon Energy USA Inc. | 0.10577009 | 0.00768586 |
| TOTAL | 1.00000000 | 0.83131547 |

# Exhibit F

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

ELBOW ENERGY, LLC,                           No. 4:19-cv-1873-MWB

             Plaintiff,                      **Electronically Filed**

    vs.

EQUINOR USA ONSHORE
PROPERTIES Inc.

             Defendant.

## DEFENDANT EQUINOR USA ONSHORE PROPERTIES INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT

Defendant Equinor USA Onshore Properties Inc. ("Equinor") files the following Answer and Affirmative Defenses to the Complaint:

### ANSWER

1.      Equinor lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint.

2.      The allegations in Paragraph 2 regarding the oil and gas lease (the "Lease") attached to the Complaint as Exhibit A purport to describe a written document, which speaks for itself. The remaining allegations in Paragraph 2 of the Complaint state conclusions of law to which no response is required.

3.      The allegations in Paragraph 3 of the Complaint are admitted in part and denied in part. Equinor is a Delaware corporation with its principal place of business at 6300 Bridge Point Pkwy, Austin TX 78730.

4.    The allegations of Paragraph 4 of the Complaint state conclusions of law to which no response is required.

5.    The allegations of Paragraph 5 of the Complaint state conclusions of law to which no response is required.

6.    The allegations in Paragraph 6 regarding the oil and gas lease attached to the Complaint as Exhibit A purport to describe a written document, which speaks for itself.  The remaining allegations in Paragraph 6 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.  It is specifically denied that Equinor failed to comply with its obligations under the Lease.

7.    The allegations in Paragraph 7 regarding the oil and gas lease attached to the Complaint as Exhibit A purport to describe a written document, which speaks for itself.  The remaining allegations in Paragraph 7 of the Complaint state conclusions of law to which no response is required.

8.    After reasonable investigation, Equinor is without knowledge or information sufficient to form a belief as to the allegations concerning Plaintiff's conduct as described in Paragraph 8 of the Complaint.

9.    Equinor lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint.

Appx0837

10.     The allegations in Paragraph 10 describing royalty statements received by Plaintiff from Alta and Equinor purport to describe written documents which speak for themselves.  The remaining allegations in Paragraph 10 are admitted in part and denied in part.  Equinor admits that Plaintiff has provided Equinor with documents purporting to be monthly royalty statements Plaintiff received from Alta for the production months from August, 2017 to December, 2018.  Equinor denies that the Alta statements provided by Plaintiff contain "fifteen (15) bona fide transactions per month" or "show that the prices obtained by Alta" "far exceed the prices shown on the Equinor monthly royalty statements."

11.     Denied as stated.  Equinor admits that Plaintiff has provided Equinor with documents purporting to be monthly royalty statements Plaintiff received from Alta for the production months from August, 2017 to December, 2018.  Equinor denies that the Alta statements provided by Plaintiff "trigger Defendant Equinor's obligation to pay additional royalties under Section 14.1 of the Addendum to the Lease."

12.     The allegations in Paragraph 12 regarding the oil and gas lease attached to the Complaint as Exhibit A purport to describe a written document, which speaks for itself.  The remaining allegations in Paragraph 12 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

Appx0838

13.    The allegations in Paragraph 13 regarding the oil and gas lease attached to the Complaint as Exhibit A purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 13 of the Complaint state conclusions of law to which no response is required.   To the extent a response is required, denied.

14.    The allegations in Paragraph 14 regarding the oil and gas lease attached to the Complaint as Exhibit A purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 14 of the Complaint state conclusions of law to which no response is required.   To the extent a response is required, Equinor denies Plaintiff is entitled to the relief described in Paragraph 14.

15.    The allegations of Paragraph 15 of the Complaint state conclusions of law to which no response is required.

16.    Equinor lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of the Complaint.   Equinor admits only that it sells gas from wells on Plaintiff's property subject to the Lease.

17.    The allegations of Paragraph 17 of the Complaint are admitted in part and denied in part.   Equinor admits only that it sells gas produced from wells on Plaintiff's property subject to the Lease to Equinor Natural Gas LLC.   Equinor denies that it "sets the price" at which it sells gas produced from the wells on

Appx0839

Plaintiff's property subject to the Lease. The remaining allegations of Paragraph 17 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.

18.    The allegations in Paragraph 18 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.

19.    Denied as stated. Equinor makes royalty payments to Plaintiff in accordance with the terms of the Lease. The remaining allegations in Paragraph 19 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.

20.    Admitted.

21.    The allegations in Paragraph 21 regarding monthly royalty statements attached to the Complaint as Exhibit B purport to describe written documents which speaks for themselves.

22.    The allegations in Paragraph 22 regarding monthly royalty statements attached to the Complaint as Exhibit B purport to describe written documents which speaks for themselves.

23.    The allegations in Paragraph 23 regarding monthly royalty statements attached to the Complaint as Exhibit B purport to describe written documents which speaks for themselves. The remaining allegations of Paragraph 23 relate to

Appx0840

Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.

24.    The allegations in Paragraph 24 regarding monthly royalty statements attached to the Complaint as Exhibit B purport to describe written documents which speaks for themselves.

25.    The allegations in Paragraph 25 regarding monthly royalty statements attached to the Complaint as Exhibit C purport to describe written documents which speaks for themselves.  After reasonable investigation, Equinor is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 25.

26.    The allegations in Paragraph 26 regarding monthly royalty statements attached to the Complaint as Exhibit C purport to describe written documents which speaks for themselves. The remaining allegations of Paragraph 26 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

27.    The allegations in Paragraph 27 regarding monthly royalty statements attached to the Complaint as Exhibit C purport to describe written documents which speaks for themselves. The remaining allegations of Paragraph 27 of the Complaint state conclusions of law to which no response is required.

- 6 -

28. The allegations in Paragraph 28 regarding monthly royalty statements attached to the Complaint as Exhibits B and C purport to describe written documents which speaks for themselves. The remaining allegations of Paragraph 28 of the Complaint state conclusions of law to which no response is required. To the extent a response is required, denied.

29. The allegations in Paragraph 29 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself. The remaining allegations in Paragraph 29 of the Complaint state conclusions of law to which no response is required.

30. The allegations in Paragraph 30 regarding monthly royalty statements attached to the Complaint as Exhibit C purport to describe written documents which speaks for themselves. The remaining allegations of Paragraph 30 of the Complaint state conclusions of law to which no response is required. To the extent a response is required, denied.

31. The allegations in Paragraph 31 regarding monthly royalty statements attached to the Complaint as Exhibit C purport to describe written documents which speaks for themselves. The remaining allegations of Paragraph 31 of the Complaint state conclusions of law to which no response is required. To the extent a response is required, denied.

32.    The allegations in Paragraph 32 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.  The remaining allegations in Paragraph 32 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

33.    The allegations in Paragraph 33 are denied to the extent they relate to Equinor.  The remaining allegations of Paragraph 33 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.

34.    The allegations in Paragraph 34 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.  The remaining allegations in Paragraph 34 of the Complaint state conclusions of law to which no response is required.  The remaining allegations of Paragraph 34 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.

35.    The allegations in Paragraph 35 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.  The remaining allegations in Paragraph 35 of the Complaint state conclusions of law to which no response is required.

Appx0843

36.    The allegations in Paragraph 36 regarding a July 31, 2018 letter attached to the Complaint as Exhibit D purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 36 of the Complaint state conclusions of law to which no response is required.

37.    The allegations in Paragraph 37 regarding a July 31, 2018 letter attached to the Complaint as Exhibit D purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 37 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

38.    The allegations in Paragraph 38 regarding a July 31, 2018 letter attached to the Complaint as Exhibit D purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 38 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

39.    The allegations in Paragraph 39 regarding a March 18, 2019 letter attached to the Complaint as Exhibit E purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 39 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

Appx0844

40.    The allegations in Paragraph 40 regarding a September 6, 2018 letter attached to the Complaint as Exhibit F purport to describe a written document, which speaks for itself.

41.    The allegations in Paragraph 41 regarding a September 19, 2018 letter attached to the Complaint as Exhibit G purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 41 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

42.    The allegations in Paragraph 42 regarding a September 19, 2018 letter attached to the Complaint as Exhibit G purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 42 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, Equinor denies Plaintiff is entitled to the relief described in Paragraph 42.

43.    The allegations in Paragraph 43 regarding a March 7, 2019 letter attached to the Complaint as Exhibit H purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 43 of the Complaint state conclusions of law to which no response is required.   The remaining allegations of Paragraph 43 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.  To the

Appx0845

extent a response is required, Equinor denies Plaintiff is entitled to the relief described in Paragraph 43.

44.    The allegations in Paragraph 44 regarding a March 7, 2019 letter attached to the Complaint as Exhibit H purport to describe a written document, which speaks for itself.    The remaining allegations in Paragraph 44 of the Complaint state conclusions of law to which no response is required.    To the extent a response is required, Equinor denies Plaintiff is entitled to the relief described in Paragraph 44.

45.    Denied as stated.    Equinor denies that it has any obligation to produce the documents or information referred to in Paragraph 45.    Further, the documents or information sought by Plaintiff and referenced in Paragraph 45 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.

46.    The remaining allegations in Paragraph 46 of the Complaint state conclusions of law to which no response is required.    To the extent a response is required, Equinor denies Plaintiff is entitled to the relief described in Paragraph 46.

## COUNT I

47.    Equinor incorporates its response to Paragraphs 1 through 46 of the Complaint above.

Appx0846

48.    The allegations in Paragraph 48 regarding monthly royalty statements attached to the Complaint as Exhibit B purport to describe written documents which speaks for themselves.  The remaining allegations of Paragraph 48 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.

49.    The allegations in Paragraph 49 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 49 of the Complaint state conclusions of law to which no response is required.

50.    The allegations in Paragraph 50 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 50 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

51.    The allegations in Paragraph 51 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.   The remaining allegations in Paragraph 51 of the Complaint state conclusions of law to which no response is required.  To the extent a response is required, denied.

52.    Denied.

- 12 -

WHEREFORE, Equinor requests that this Court enter judgment on Count I of the Complaint in Equinor's favor and against the Plaintiff, all at Plaintiff's cost.

## COUNT II

53.     Equinor incorporates its response to Paragraphs 1 through 52 of the Complaint above.

54.     The allegations in Paragraph 54 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.  The allegations in Paragraph 54 of the Complaint further state conclusions of law to which no response is required.  The remaining allegations in Paragraph 54 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.  To the extent a response is required, denied.

55.     The allegations in Paragraph 55 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.  The allegations in Paragraph 55 of the Complaint further state conclusions of law to which no response is required.  The remaining allegations in Paragraph 55 relate to Equinor Natural Gas LLC, an entity that is not a party to the lawsuit, and therefore no response is required.  To the extent a response is required, denied.

56.     The allegations in Paragraph 56 regarding the oil and gas lease attached as Exhibit A purport to describe a written document, which speaks for itself.  The remaining allegations in Paragraph 56 of the Complaint state

Appx0848

conclusions of law to which no response is required. To the extent a response is required, denied.

57. The allegations in Paragraph 57 state conclusions of law to which no response is required. To the extent a response is required, denied.

WHEREFORE, Equinor requests that this Court enter judgment on Count II of the Complaint in Equinor's favor and against the Plaintiff, all at Plaintiff's cost.

## AFFIRMATIVE DEFENSES

1. Equinor incorporates its responses to Paragraphs 1 through 57 of the Complaint above.

2. All allegations not expressly admitted above are denied.

3. The Complaint fails to state a claim upon which relief may be granted.

4. At all times Equinor has complied with the language of the Lease.

5. At all times Equinor has acted reasonably, prudently, in good faith, and in conformance with applicable statutes, regulations, and standards of the industry.

6. The claims of Plaintiff are barred, in whole or in part, by the provisions of the Lease that govern the payment of royalties.

7. The claims of Plaintiff may be barred, in whole or in part, by the applicable statute of limitations.

- 14 -

8.      The claims of Plaintiff may be barred, in whole or in part, by the doctrines of laches, waiver, consent, estoppel, and limitations which affects substantially the making of royalty payments.

9.      The claims of Plaintiffs may be barred, in whole or in part, by the doctrines of payment, settlement, release, ratification, accord and satisfaction, and performance.

10.     Equinor expressly reserves the right to plead further including the reservation of all affirmative defenses required to be pleaded in its initial pleading.

REED SMITH LLP

Dated: November 5, 2019

/s/ *Nicolle R. Snyder Bagnell*
Nicolle R. Snyder Bagnell
Pa. ID No. 87936

Thomas J. Galligan
Pa. ID No. 319487

Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA  15222
412-288-3131
nbagnell@reedsmith.com
tgalligan@reedsmith.com

*Counsel for Equinor USA Onshore Properties Inc.*

- 15 -

Appx0850

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served by U.S. First Class Mail, postage-prepaid upon the following:

Joseph C. Crawford, Esquire
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, PA 19103

Dated:  November 5, 2019                    /s/ Nicolle R. Snyder Bagnell

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON ENERGY USA, INC.,      :
        :
        **Plaintiff,**      :
        :
        **v.**      :      **NO. 1:21-cv-01852**
        :
CHESAPEAKE APPALACHIA, L.L.C.,  :
        :
        **Defendant.**      :

## DECLARATION OF EQUINOR REPRESENTATIVE

I, Carter L. Williams, declare and acknowledge as follows:

1.      I am the Chief Litigation Counsel, and I am authorized to provide this declaration on behalf of Equinor USA Onshore Properties Inc. ("Equinor").

2.      Equinor received a proposal from Epsilon Energy USA, Inc. ("Epsilon") for four (4) wells (the "EPSN Proposed Wells") to be drilled in the Baltzly North Unit, the Baltzly South Unit, the Craige Unit, the Poulson North Unit and/or the Poulson South Unit.

3.      Each of the units identified in Epsilon's proposal is governed by a separate Joint Operating Agreement[1] or – with regard to the Poulson North and

---

[1] The Baltzly North and Baltzly South Operating Agreements are dated October 18, 2010, and the Craige Operating Agreement is dated December 16, 2010.

Poulson South Units – the Operating Agreement attached at Schedule 7.1.2 of the February 3, 2010 Farmout Agreement.

4.      Equinor owns production rights in these units and is a party to each of the Operating Agreements and the Farmout Agreement.

5.      Equinor's total anticipated share of the costs to drill and complete the EPSN Proposed Wells is $7,164,125, based on the following projected costs per well:

   a.  Craige N 4UHC - $2,052,116;

   b.  Craige N 1UHC - $2,135,772;

   c.  Craige N 1LH - $1,369,219; and

   d.  Craige S 3LHC - $1,607,018.

6.      Pursuant to the terms of the Operating Agreements, Equinor elected not to participate in the EPSN Proposed Wells in a letter dated January 21, 2021. A true and correct copy of Equinor's elections are attached hereto as Exhibit "1". The elections attached as Exhibit 1 include copies of Epsilon's proposals reflecting, *inter alia*, the estimated costs to Equinor identified in Paragraph 5, above.

7.      In the January 21, 2021 letter, Equinor reaffirmed that "Chesapeake Appalachia, LLC is the operator under the above referenced Operating Agreements."  (*See* Exhibit "1").

8.      The Joint Operating Agreements designate Chesapeake Appalachia, L.L.C. as Operator.

9.      The Joint Operating Agreements also include "Relinquishment of Interest for Non-Participation" provisions in Article VI that, if applicable, include a 200% or 400% surcharge that Epsilon may seek to impose to the detriment of Equinor if Epsilon were permitted to drill and complete the EPSN Proposed Wells.

10.      Equinor has elected to participate in the Koromlan 107HC Well proposed by Chesapeake Appalachia on January 19, 2021.

11.      Equinor is a Delaware corporation with its principal place of business in Texas.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Date:  _____April 22, 2021_____

_____
Carter L. Williams

Appx0855

# Exhibit 1



January 21, 2021

VIA ELECTRONIC MAIL
Ms. Rachel Collins
Epsilon Energy USA, Inc.
16945 Northchase Drive, Suite 1610
Houston, TX 77060

Re:     Epsilon Energy's Proposed Craige S 3LHC, Craige N 1UHC, Craige N 4UHC, Craige N 1LH
        Craige Unit
        Poulsen North and Poulsen South Units
        Baltzley South and Baltzley North Units
        Rush Township, Susquehanna County, Pennsylvania
        Auburn Township, Susquehanna County, Pennsylvania

Ms. Collins:

Equinor USA Onshore Properties Inc. is in receipt of Epsilon Energy's proposal letters dated December 22, 2020 for the Craige S 3LHC, Craige N 1UHC, Craige N 4UHC, Craige N 1LH wells.  Enclosed please find Equinor's executed elections not to participate in the following:

- Craige S 3LHC, pursuant to the Operating Agreement dated December 16, 2010 for the Craige Unit, and the Operating Agreement listed under Schedule 7.1.2 of Farmout Agreement dated February 3, 2010 for the Poulsen North and Poulsen South Units;
- Craige N 1 UHC Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit, and the Operating Agreement dated October 18, 2010 for the Baltzley North Unit;
- Craige N 4UHC Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit, and the Operating Agreement dated October 18, 2010 for the Baltzley North Unit;
- Craige N 1 LH Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit.

Equinor recognizes Chesapeake Appalachia, LLC is the operator under the above referenced Operating Agreements.

If you have any questions, please do not hesitate to contact me.

Best regards,

E-SIGNED by Danny McGraw
on 2021-01-22 16:33:15 GMT

Danny McGraw
Prinicpal Landman

Enclosure

Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy., Building 2, Suite 100
Austin, Texas 78730

Appx0857

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:   Epsilon Energy's Proposed Craige 4 UHC Well
      API: 37115228080000; Permit Number: 115-22808
      Baltzley South and Baltzley North Unit
      Rush Township
      Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 4UHC Well (the "Well") with a surface hole location of Latitude 41.755855° and Longitude -76.028526° (NAD 83); and an approximate bottom hole location of Latitude 41.789462° and Longitude -76.044140°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 18,494 feet, with an approximate vertical depth of 6,410 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,550,000.00 with a completed well costing approximately $8,504,943.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **41.4203317%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **58.5796683%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 4UHC WI | Craige N 4UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.374130% | 39.752946% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.128513% | 19.835527% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 24.997357% | 21.290188% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054837% |

Epsilon Energy USA Inc. and Equinor USA Onshore Properties Inc. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 4UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0859

Craige N 4UHC
December 22, 2020
Equinor USA Onshore Properties Inc.


_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley South JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.


By:____E-SIGNED by Danny McGraw_____
          on 2021-01-22 16:31:52 GMT

Name:__Danny McGraw_____

Title:__Prin. Consultant Land_____

Date:__January 22, 2021_____


_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley North JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.


By:____E-SIGNED by Danny McGraw_____
          on 2021-01-22 16:31:56 GMT

Name:__Danny McGraw_____

Title:__Prin. Consultant Land_____

Date:__January 22, 2021_____


*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 4UHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins


By: _____

Name: _____

Title: _____

Date: _____

# EPSILON
## Energy USA, Inc.

AFE # : **D2110145**

| | |
|---|---|
| WELL NAME: | **CRAIGE N 4UHC** |
| OPERATOR: | **EPSILON ENERGY USA, INC** |
| PROJECT: | **AUBURN** |
| LOCATION (TRACT): | **CRAIGE** |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** |
| API (PERMIT #): | **37-115-22808-0000 (115-22808)** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** |
| COMMENTS: | **D&C HZ UPPER MARCELLUS WELL** |

DATE: **11/17/20**

PROPOSED TMD: **19,878**
PROPOSED TVD: **6,410**
PROPOSED CLAT: **11,446**

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,431,000 | $ 2,550,000 |
| B. COMPLETION COST | $ 795,000 | $ 5,159,943 | $ 5,954,943 |
| C. PLANT & FACILITY COST | $ -- | $ -- | $ - |
| D. WORKOVER COST | $ -- | $ - | $ - |
| TOTALS: | $ 914,000 | $ 7,590,943 | $ 8,504,943 |

WELL/PROJECT ID#: _____

EXPLORATORY ☐      DEVELOPMENT ☑

WORKOVER ☐      RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.37413000% | $ 4,114,192 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.12851300% | $ 2,052,116 |
| EPSILON ENERGY USA, INC. | | 24.99735700% | $ 2,126,011 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 212,624 |
| | | | |
| | | | |
| | | | |
| | | 100.00000000% | $ 8,504,943 |

## OPERATOR'S APPROVAL

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | *Henry N. Clautz* | OPERATIONS | DATE: | 1/6/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: | 1/6/2021 |
| APPROVED BY: | *Shannon E. Lemke* | GEOLOGY | DATE: | 1/6/21 |
| APPROVED BY: | *B Lone Bond* | ACCOUNTING | DATE: | 1-6-21 |

## NON-OPERATOR'S APPROVAL

COMPANY NAME: _____      DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Appx0862

EPSILON

December 22, 2020

VIA FEDEX AND ELECTRONIC MAIL

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re: Epsilon Energy's Proposed Craige N 1UHC Well
API: 37115228000000; Permit Number: 115-22800
Baltzley South and Baltzley North Unit
Rush Township
Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1UHC Well (the "Well") with a surface hole location of Latitude 41.755793° and Longitude -76.028656° (NAD 83); and an approximate bottom hole location of Latitude 41.789486° and Longitude -76.048982°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 19,344 feet, with an approximate vertical depth of 6,525 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,657,000.00 with a completed well costing approximately $8,855,452.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in the following units:

- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **40.9633345%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **59.0366655%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 1UHC
December 22, 2020
Equinor USA Onshore Properties Inc.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 1UHC WI | Craige N 1UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.354436% | 39.738353% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.118155% | 19.827832% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 25.027410% | 21.313343% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054918% |

Epsilon Energy USA Inc. and Equinor USA Onshore Properties Inc. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 1UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0864

Craige N 1UHC
December 22, 2020
Equinor USA Onshore Properties Inc.


_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley South JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects to the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____
    E-SIGNED by Danny McGraw
    on 2021-01-22 16:31:19 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: _____
    E-SIGNED by Danny McGraw
    on 2021-01-22 16:31:28 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021


*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0865

Craige N IUHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By:_____

Name:_____

Title:_____

Date:_____

# EPSILON
## Energy USA, Inc.

AFE # :     D2110141

| | |
|---|---|
| WELL NAME: | CRAIGE N 1UHC |
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22800-0000 (115-22800) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL |

DATE:     11/17/20

PROPOSED TMD:    20,489
PROPOSED TVD:    6,525
PROPOSED CLAT:    12,014

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,538,000 | $ 2,657,000 |
| B. COMPLETION COST | $ 807,000 | $ 5,391,452 | $ 6,198,452 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 926,000 | $ 7,929,452 | $ 8,855,452 |

WELL/PROJECT ID#: _____

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.35443576% | $ 4,282,004 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.11815454% | $ 2,135,772 |
| EPSILON ENERGY USA, INC. | | 25.02740970% | $ 2,216,290 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 221,386 |
| | | | |
| | | | |
| | | | |
| | | 100.00000000% | $ 8,855,452 |

## OPERATOR'S APPROVAL

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N. Clauson* | OPERATIONS | DATE: 1/6/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 1/6/2021 |
| APPROVED BY: | *Shannon P. Lemke* | GEOLOGY | DATE: 1/6/21 |
| APPROVED BY: | *B Dan Bond* | ACCOUNTING | DATE: 1-6-21 |

## NON-OPERATOR'S APPROVAL

COMPANY NAME: _____     DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.



December 22, 2020

VIA FEDEX AND ELECTRONIC MAIL

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:   Epsilon Energy's Proposed Craige N 1LH Well
      API: 37115228010000; Permit Number: 115-22801
      Baltzley South Unit
      Rush Township
      Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1LH Well (the "Well") with a surface hole location of Latitude 41.755847° and Longitude -76.028635° (NAD 83); and an approximate bottom hole location of Latitude 41.770464° and Longitude -76.036905°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 12,123 feet, with an approximate vertical depth of 6,680 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $1,984,000.00 with a completed well costing approximately $5,378,706.00. The anticipated spud date for the Well is on or about April 22, 2021.

This well will be a subsequent well drilled in the Baltzley South Unit, which covers 417.171123 acres.

The table below contains a summary of the working and net revenue interest ownership in the Well.

| Working Interest Owner | Craige N 1LH WI | Craige N 1LH NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 41.623478% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 20.821989% |
| Epsilon Energy USA, Inc. | 21.145145% | 18.322130% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.044433% |

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0868

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.


This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit. Accordingly, please indicate your election in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE. Failure to make a timely election shall be deemed an election not to participate.


At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.


Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.


Sincerely,
Epsilon Energy USA, Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator


Enclosures: AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat


*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0869

Craige N 1LH
December 22, 2020
Equinor USA Onshore Properties Inc.

_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1LH Well pursuant to the Baltzley South JOA.

\_\_\_X\_\_\_ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1LH Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____
  E-SIGNED by Danny McGraw
  on 2021-01-22 16:32:16 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021

Appx0870

# EPSILON
## Energy USA, Inc.

| | | | |
|---|---|---|---|
| | | AFE # : | D2110140 |
| WELL NAME: | CRAIGE N 1LH | DATE: | 11/17/20 |
| OPERATOR: | EPSILON ENERGY USA, INC | | |
| PROJECT: | AUBURN | | |
| LOCATION (TRACT): | CRAIGE | | |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE | | |
| API (PERMIT #): | 37-115-22081-0000 (115-22081) | PROPOSED TMD: | 13,200 |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA | PROPOSED TVD: | 6,700 |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL | PROPOSED CLAT: | 5,000 |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 127,000 | $ 1,857,000 | $ 1,984,000 |
| B. COMPLETION COST | $ 707,000 | $ 2,687,706 | $ 3,394,706 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 834,000 | $ 4,544,706 | $ 5,378,706 |

WELL/PROJECT ID#: _____

EXPLORATORY ☐   DEVELOPMENT ☑

WORKOVER ☐   RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 50.89856300% | $ 2,737,684 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 25.45629200% | $ 1,369,219 |
| EPSILON ENERGY USA, INC. | | 21.14514500% | $ 1,137,335 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.50000000% | $ 134,468 |
| | | | |
| | | | |
| | | | |
| | | 100.00000000% | $ 5,378,706 |

### OPERATOR'S APPROVAL

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | Henry N. Clauter | OPERATIONS | DATE: | 1/6/21 |
| APPROVED BY: | Rachel Collins | LAND/LEGAL | DATE: | 1/6/2021 |
| APPROVED BY: | Shannon P. Lemke | GEOLOGY | DATE: | 1/6/21 |
| APPROVED BY: | B. Lori Bond | ACCOUNTING | DATE: | 1-6-21 |

### NON-OPERATOR'S APPROVAL

COMPANY NAME: _____   DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Appx0871

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

 EPSILON

December 22, 2020

VIA FEDEX AND ELECTRONIC MAIL

Equinor USA Onshore Properties Inc.
Attn: Mr. Wally Stuka
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:   Epsilon Energy's Proposed Craige S 3LHC Well
      API: 3711522797000; Permit Number: 115-22797
      Craige Unit, Poulson North Unit, and Poulson South Unit
      Rush Township, Susquehanna County, Pennsylvania
      Auburn Township, Susquehanna County, Pennsylvania

Mr. Stuka:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige S 3LHC Well (the "Well") with a
surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate
bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township,
Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be
drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet,
to test the Marcellus Formation and all other formations that may be encountered in the wellbore.
Estimated costs to drill the Well are $2,660,000.00 with a completed well costing approximately
$9,019,243.00. The anticipated spud date for the Well is on or about April 22, 2021.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulson North Unit, which covers 132.810484 acres
- Poulson South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto
as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate,
based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the Poulson North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well being in the Poulson South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulson North Unit WI | Poulson South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% | 35.528850% | 36.941747% | 36.080090% |
| Equinor USA Onshore Properties Inc. | 18.345441% | 17.106484% | 17.786767% | 17.817658% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.338430% | 0.000000% | 0.000000% | 2.299235% |
| Enerplus Resources (USA) Corporation | 2.859873% | 0.000000% | 0.000000% | 1.231733% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.557414% | 0.000000% | 0.000000% | 0.240075% |
| Unconventionals Natural Gas, LLC | 0.000000% | 0.000000% | 0.000000% | 0.000000% |

EPSN and Equinor USA Onshore Properties Inc. hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit and that certain Farmout Agreement between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. dated effective February 1, 2010 with Exhibit Schedule 7.1.2 as Joint

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

Operating Agreement covering the Poulson North and Poulson South Units (both of these Joint Operating Agreements to be collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0874

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By: _E-SIGNED by Danny McGraw_
    _on 2021-01-22 16:32:50 GMT_

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021

_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson North Unit.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson North Unit.

By: _E-SIGNED by Danny McGraw_
    _on 2021-01-22 16:32:54 GMT_

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0875

Craige S 3LHC
December 22, 2020
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson South Unit.

____X____ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulson South Unit.

By: _E-SIGNED by Danny McGraw_
    _on 2021-01-22 16:33:00 GMT_____

Name: Danny McGraw

Title: Prin. Consultant Land

Date: January 22, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
December 22, 2020

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the existing Craige Unit, Poulson North Unit and Poulson South Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson North Unit.

3. That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulson South Unit.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit, Poulson North Unit and Poulson South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Craige S 3LHC
December 22, 2020


By:_____

Name:_____

Title:_____

Date:_____

Appx0878

# EPSILON
## Energy USA, Inc.

AFE # : D2110144

| | |
|---|---|
| WELL NAME: | CRAIGE S 3LHC |
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22797-0000 (115-22797) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL |

DATE: 11/17/20

PROPOSED TMD: 20,724
PROPOSED TVD: 6,875
PROPOSED CLAT: 12,499

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 119,000 | $ 2,541,000 | $ 2,660,000 |
| B. COMPLETION COST | $ 811,000 | $ 5,548,243 | $ 6,359,243 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 930,000 | $ 8,089,243 | $ 9,019,243 |

WELL/PROJECT ID#:

EXPLORATORY ☐   DEVELOPMENT ☑
WORKOVER ☐   RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 36.080090% | $ 3,254,151 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 17.317658% | $ 1,607,018 |
| EPSILON ENERGY USA, INC. | | 40.919737% | $ 3,690,651 |
| JAMESTOWN RESOURCES, L.L.C. | | 1.076738% | $ 97,114 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | | 2.299235% | $ 207,374 |
| ENERPLUS RESOURCES (USA) CORPORATION | | 1.231733% | $ 111,093 |
| RADLER 2000 LIMITED PARTNERSHIP | | 0.334733% | $ 30,190 |
| TUG HILL MARCELLUS, LLC | | 0.240075% | $ 21,653 |
| | | 100.00000% | $ 9,019,243 |

## OPERATOR'S APPROVAL

| | | | DATE: |
|---|---|---|---|
| PREPARED BY: | Henry N. Clartin | OPERATIONS | 1/8/21 |
| APPROVED BY: | Shannon E Lemke | ~~LAND/LEGAL~~ GEO | 1/8/21 |
| APPROVED BY: | Rachel Collins | ~~GEOLOGY~~ LAND | 1/8/2021 |
| APPROVED BY: | B Lou Bond | ACCOUNTING | 1-8-21 |

## NON-OPERATOR'S APPROVAL

COMPANY NAME:                DATE:
APPROVED BY:
TITLE:

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Appx0879



**CHESAPEAKE**
*ENERGY*

**Courtney Moad**
*Staff Landman - Appalachia*

**January 21, 2021**

<u>**VIA ELECTRONIC MAIL**</u>

Mr. Danny McGraw
Equinor USA Onshore Properties Inc.
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:     Chesapeake's Proposed Koromlan 107HC Well
        Craige, Poulsen North, Poulsen South, Davis and Bradbury Units
        Rush and Auburn Townships, Susquehanna County, Pennsylvania
        Mehoopany Prospect

Dear Mr. McGraw:

Pursuant to Operating Agreement dated December 16, 2010, covering the Craige Unit, Operating Agreement dated July 31, 2014, covering the Davis Unit, Farmout Agreement dated February 3, 2010, covering the Poulsen North and Poulsen South Units, and Operating Agreement dated TBD, covering the Bradbury Unit, Chesapeake Appalachia, L.L.C. ("CHK") hereby proposes to drill the Koromlan 107HC Well (the "Well") with a surface hole location of Latitude 41.738843° and Longitude -76.029805° (NAD 27); and an approximate bottom hole location of Latitude 41.706214° and Longitude -76.000833°, in Auburn Township and, Susquehanna County, Pennsylvania.  The Well will be drilled to an approximate measured depth of 24,607' feet, with an approximate vertical depth of 6,795' feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,898,000.00 with a completed well costing approximately $8,865,000.00.

Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt.

Should you have any questions in this regard, please do not hesitate to call me at 405-935-9164.

Sincerely,

Chesapeake Appalachia, L.L.C

Courtney Moad

**Chesapeake Energy Corporation**
P.O. Box 18496  /  Oklahoma City, OK 73154-0496  /  6100 N. Western Avenue  /  Oklahoma City, OK 73118
405-935-9164  /  fax: 405-849-0092 / courtney.moad@chk.com

Appx0880

Koromlan 107HC Proposal
January 21, 2021

____X____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Koromlan 107HC well under the governing unit JOA.

_____ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Koromlan 107HC well and elects to go non-consent under the governing unit JOA.

By: _____
E-SIGNED by Danny McGraw
on 2021-02-21 05:26:00 GMT

Name: ___Danny McGraw_____

Title: ___Prin. Consultant Land_____

Date: ___February 21, 2021_____

2

Appx0881

# APPENDIX OF UNPUBLISHED OPINIONS

1. *Epsilon-NDT Endustriyel Sistemleri Sanayi Ve Ticaret A.S. v. PowerRail Distrib., Inc.*, No. 18-821, 2018 WL 5078276 (M.D. Pa. Oct. 18, 2018)

2. *Fiscus v. Combus Finance AG*, No. 03-1328, 2007 WL 4164388 (D.N.J. Nov. 20, 2007)

3. *Gregoria v. Total Asset Recovery, Inc.,* No. 12-4315, 2015 WL 115501 (E.D. Pa. Jan. 8, 2015)

4. *Lamar Advantage GP Company, LLC V. Joyce*, No. 13-cv-1830, 2017 WL 4558006 (M.D. Pa. Oct. 12, 2017)

5. *Liggon-Redding v. American Sec. Ins. Co.,* No. 06-cv-227, 2009 WL 3101068 (M.D. Pa. Sept. 23, 2009)

6. *Mattia v. Allstate Ins. Co.*, No. 14-2099, 2014 WL 2880302 (E.D. Pa. Jun. 24, 2014)

7. *STI Oilfield Servs., Inc. v. Access Midstream Partners, L.P.*, No. 13-2923, 2018 WL 3076739 (M.D. Pa. June 21, 2018)

1

Case: 21-2806 Document: 20-3 Page: 316 Date Filed: 07/25/2022

Epsilon-NDT Endustriyel Kontrol Sistemleri Sanayi Ve..., Not Reported in Fed....

2018 WL 5078276
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

EPSILON-NDT ENDUSTRIYEL KONTROL
SSTEMLERI SANAYI VE TICARET A.S., Plaintiff,
v.
POWERRAIL DISTRIBUTION, INC., Defendant.

NO. 3:18-CV-00821
|
Signed 10/18/2018

**Attorneys and Law Firms**

Howard A. Rothenberg, Herlands Rothenberg & Levine, Scranton, PA, John J. Hay, LeVon Golendukhin, Dentons US LLP, New York, NY, for Plaintiff.

Eugene M.C. Kelley, Timothy P. Polishan, Kelley, Polishan & Solfanelli, LLC, Old Forge, PA, for Defendant.

## MEMORANDUM

A. Richard Caputo, United States District Judge

**\*1** Presently before me is a Motion to Dismiss (Doc. 17) filed by Defendant PowerRail Distribution. PowerRail contends that this Court lacks subject matter jurisdiction over Plaintiff Epsilon-NDT Endustriyel Kontrol Sistemleri's ("Epsilon's") claims due to failure to join an indispensable party, or in the alternative, that Epsilon has failed to state a claim upon which relief may be granted. Because this Court has subject matter jurisdiction, no absent party is indispensable, and Epsilon has plausibly stated its three claims, PowerRail's Motion will be denied.

## I. Background

The facts from Epsilon's Complaint (Doc. 1), taken as true and viewed in the light most favorable to Epsilon, are as follows:

Epsilon is a Turkish joint-stock company, with a principal place of business in Istanbul, that sells equipment, parts, and services to industrial clients. (Doc. 1 at ¶¶ 1, 5). Many of Epsilon's rail transport clients "operate American-designed

or American-made locomotives and rolling stock." (*Id.* ¶ 7). Accordingly, Epsilon works with North American suppliers like Rail & Traction Canada ("RTC"), located in Ontario, Canada. (*Id.* ¶ 14). RTC, in turn, works with PowerRail, a Pennsylvania corporation. (*Id.* ¶¶ 2, 18).

After securing a lucrative contract with Egyptian National Railways for the sale of spare parts for diesel locomotives, Epsilon contracted with RTC to get the parts. (*Id.* ¶¶ 11, 23; *see* Doc. 1-2 (the RTC contract) ). Pursuant to the RTC contract, Epsilon made an advance payment of $172,000. (Doc. 1 at ¶ 25). However, when the time came for RTC to perform, RTC failed to deliver—even though "RTC had already acquired most, if not all, of" the parts for Epsilon's order. (*Id.* at ¶¶ 26-27). Instead, RTC wound up its business in Canada, closed its operating facility, and delivered the parts intended for Epsilon to PowerRail's facilities in Duryea, Pennsylvania. (*Id.* ¶¶ 28-29). RTC did this, according to Epsilon, because PowerRail caused it to—49% of RTC's shares were owned by PowerRail's CEO, and PowerRail was so heavily involved in RTC's operations that it "effectively controlled RTC and its business." (*Id.* ¶¶ 15-22).

Despite Epsilon's numerous requests, PowerRail refused to deliver the parts in its possession or refund Epsilon's $172,000 advance payment. (*Id.* ¶¶ 31-32). Even though PowerRail has assumed RTC's other contracts, assumed the RTC contract with Epsilon, and handled all of Epsilon's inquiries regarding the RTC contract, PowerRail still refuses to perform. (*Id.* ¶¶ 30, 32, 36). Epsilon was unable "to locate a supplier that could provide substantially equivalent goods within the delivery timeframe" required by its contract with Egyptian National Railways, and suffered damages as a result. (*Id.* ¶¶ 33, 39).

Epsilon filed its Complaint on April 16, 2018, alleging three causes of action against PowerRail: Breach of Contract (Count I), Unjust Enrichment (Count Two), and Tortious Interference (Count Three). RTC was not named as a defendant. PowerRail filed its Motion to Dismiss (Doc. 17) on June 29, 2018, arguing that RTC is an indispensable party to this action and that in any event Epsilon has failed to state a claim upon which relief may be granted.

**\*2** The Motion has been fully briefed and is ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, my role is limited to determining if a plaintiff is entitled to offer evidence in support of his or her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). A court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam* ) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations " 'to raise a reasonable expectation that discovery will reveal evidence of' " each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, a court considers the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), and "legal arguments presented in memorandums or briefs and arguments of counsel," *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) (quotation omitted). Additionally, I may consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Am. Corp. Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 88 (3d Cir. 2011) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ). I may also consider a "document integral or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). At bottom, documents may be examined by a court when ruling on a motion to dismiss when the plaintiff had proper notice of the existence of the documents. *Id.* I need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's " 'bald assertions' " or " 'legal conclusions.' " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) ).

### III. Discussion

**\*3** PowerRail moves to dismiss Epsilon's Complaint on two grounds: first, that this Court lacks subject matter jurisdiction

Case: 1:21-cv-1800065 Document D20-3 Page 3 Filed Date Filed 07/25/2022

Epsilon-NDT Endustriyel Kontrol Sistemleri Sanayi Ve..., Not Reported in Fed....

because RTC is an indispensable party to this action whose joinder would destroy diversity; and second, that Epsilon's claims are not facially plausible and must therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## A. Failure to Join an Indispensable Party

PowerRail argues this suit must be dismissed under Federal Rule of Civil Procedure 12(b)(1) as RTC is an indispensable party. (Doc. 18 at 2-7; Doc. 30 at 10-15). As an initial matter, this Court has subject matter jurisdiction over all claims alleged in the Complaint pursuant to 28 U.S.C. § 1332(a)(2). (*See* Doc. 1 at ¶¶ 1-3). A pre-answer challenge to a plaintiff's failure to join an indispensable party is governed by Federal Rule of Civil Procedure 12(b)(7), not Rule 12(b)(1), even though joinder of that party would destroy diversity jurisdiction. *See Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016); *Halim v. Donovan*, No. CIV.A. 12-00384 CKK, 2013 WL 595891, at *2 (D.D.C. Feb. 15, 2013) (Rule 19 "*presumes* the preexistence of subject matter jurisdiction").

There are two steps to a Rule 12(b)(7) analysis. I must first determine whether RTC is a "necessary" party. Fed. R. Civ. P. 19(a); *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If RTC is a necessary party, then I must next determine whether RTC is "indispensable," as both Epsilon and PowerRail agree that RTC's joinder would defeat diversity. Fed. R. Civ. P. 19(b); *Gen. Refractories Co.*, 500 F.3d at 312. If RTC is both necessary and indispensable, then Epsilon's action "cannot go forward." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993).

RTC is a necessary party under Rule 19(a). A "party to a contract which is the subject of the litigation is a necessary party." *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461, 467 & n.32 (D. Mass. 2011) (quotation omitted) (collecting cases); *Abella v. Seven Seven Corp. Grp.*, No. CIV. 2:13-05263 WJM, 2014 WL 220570, at *4 (D.N.J. Jan. 21, 2014). Here, Epsilon's contract with RTC and RTC's actions in breach of that contract are the subject of this litigation, so RTC is a necessary party. It does not make a difference that Epsilon alleges and argues that RTC was

PowerRail's alter ego or agent, or that PowerRail assumed the RTC contract, (*see* Doc. 21 at 21-24), as RTC should still "be given a seat at the table to defend itself" from such allegations. *Abella*, 2014 Wl 220570, at *5 (absent party was necessary even if it was the defendant's alter ego, agent, or assignor of the contract at issue). This is the case even for Epsilon's unjust enrichment and tortious interference claims, because "[e]ach of the claims, regardless of the legal labels attached to it, involves [RTC's] conduct under the contract[ ]" and any finding involving the contract would "necessarily affect" RTC's rights. *Corsi v. Eagle Publ'g, Inc.*, No. 1:07-CV-02004ESH, 2008 WL 239581, at *3, 5 (D.D.C. Jan. 30, 2008) (finding the absent contracting party necessary and indispensable as to breach of contract, unjust enrichment, and tortious interference claims). As an example, a claim for tortious interference requires an underlying breach of contract. *Id.* at *3; *accord Kernaghan v. BCI Commc'ns, Inc.*, 802 F. Supp. 2d 590, 596 (E.D. Pa. 2011) (Pennsylvania law).

*4 However, at this juncture, I am unpersuaded that RTC is an indispensable party. The mere fact that RTC is a contracting party does not make it indispensable. *See, e.g., CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) ("[The] bright-line rule that all parties to a contract are indispensable ... is inconsistent with Rule 19(b)'s flexible standard."). Rule 19(b) lays out four factors for me to consider in deciding whether RTC is indispensable: (1) how a judgment in RTC's absence would prejudice it; (2) how prejudice could be lessened by "protective provisions," "shaping the relief," or "other measures;" (3) if a judgment in RTC's absence would be adequate; and (4) if Epsilon "would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b). Taking the allegations in the Complaint as true, and viewing them in Epsilon's favor, it appears that RTC is insolvent. (Doc. 1 at ¶ 29). If that is the case, then the first three factors weigh heavily against finding RTC indispensable because RTC "possesses no assets to support any judgment against it." *U.A.W., Local 1500 v. Bristol Brass Co.*, 123 F.R.D. 431, 433 (D. Conn. 1989) (insolvency of a non-party renders it not indispensable); *see BMG Music v. Vanxy, Inc.*, No. 98 CIV. 6496 (RO), 1999 WL 493345, at *2 & n.5 (S.D.N.Y. July 12, 1999) (concluding that a bankrupt non-party was not a necessary party, even if the non-party still "existed"). It may be that RTC is not in fact insolvent, or that under Ontario law, the legal effects of closing shop, winding up business, and insolvency would counsel a different conclusion as to indispensability. But

Appx0886

Case: 22-1280   Document: 2-3   Page: 319   Date Filed: 07/26/2022

Epsilon-NDT Endustriyel Kontrol Sistemleri Sanayi Ve..., Not Reported in Fed....

judging solely by the Complaint, as I must, RTC is not an indispensable party. Epsilon's failure to join RTC therefore does not warrant dismissal of the Complaint.

**B. Failure to State a Claim**
PowerRail also moves to dismiss the Complaint on the ground that Epsilon has failed to state a claim upon which relief may be granted. (Doc. 18 at 8-15; Doc. 30 at 1-10). Epsilon alleges claims for breach of contract, unjust enrichment, and tortious interference.

1. Breach of Contract
The issue with the breach of contract claim, PowerRail argues, is that RTC was the party Epsilon contracted with, so PowerRail cannot be liable under the contract. Epsilon advances three theories for holding PowerRail liable in RTC's place under the contract: alter ego, agency, and assumption. (Doc. 21 at 10-14). Only one of these three theories needs to be viable in order for Epsilon to survive PowerRail's Motion to Dismiss because the inquiry at this stage is focused on whether Epsilon has stated a claim, not whether it has stated a legal theory supporting a claim. *See Devon IT, Inc. v. IBM Corp.*, No. CIV.A. 10-2899, 2013 WL 7039608, at *32 (E.D. Pa. Dec. 30, 2013) ("[A] claimant is not required to set forth any legal theory or argument in a pleading.").

Looking solely to the Complaint, Epsilon has adequately pled PowerRail's assumption and breach of the RTC contract. Neither party has raised the issue of conflict of laws in its briefing on assumption, so I apply Pennsylvania law. *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 58 n.11 (3d Cir. 1977). The Complaint states that PowerRail has "assumed and performed obligations under various other [RTC] contracts," (Doc. 1 at ¶ 30), "received and accepted payment due to RTC under those contracts," (*id.*), "handled all inquiries by Epsilon related to [its contract with RTC,]" (*id.*), and took possession of the goods identified to Epsilon's contract (*id.* ¶ 28). These allegations plausibly suggest that PowerRail assumed the RTC contract, perhaps through assignment or delegation, by "stand[ing] in the shoes of [RTC] and assum[ing] all of [its] rights." *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167, 1172 (Pa. Super. Ct. 1997) (citing Restatement (Second) of Contracts §§ 317, 318, 323 (1981) ). Count One of the Complaint will therefore not be dismissed.

2. Unjust Enrichment

Next is Epsilon's unjust enrichment claim. PowerRail argues that because Epsilon has pled the existence of a contract between themselves, Epsilon cannot maintain a claim for unjust enrichment. (Doc. 18 at 8-9; Doc. 30 at 10).

Epsilon is pleading in the alternative, though. (Doc. 21 at 19). It is true that Epsilon cannot recover for both breach of contract and unjust enrichment, *see Constar, Inc. v. Nat'l Distribution Ctrs., Inc.*, 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000), but Epsilon may at the pleading stage "state as many separate claims ... as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3). Thus, by way of example, if it becomes clear through discovery that a contract only existed between Epsilon and RTC, Epsilon may still pursue its unjust enrichment claim against PowerRail because no contract between them would stand in the way. Accordingly, Epsilon has adequately pled unjust enrichment, and Count Two of the Complaint will not be dismissed.

3. Tortious Interference
**\*5** Finally, PowerRail challenges Epsilon's tortious interference claim. PowerRail contends that Epsilon has not sufficiently pled intent and lack of privilege or justification. (Doc. 18 at 9). "In order to prevail on a claim for intentional interference with contractual or prospective contractual relations, a plaintiff must prove ... purposeful action on the party of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998) (quoting *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1988) ). The defendant must also have acted without any privilege or justification, which can be satisfied by showing the defendant employed "wrongful means," which in turn requires that the means employed "be actionable for a reason independent from the claim of tortious interference itself." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 215 (3d Cir. 2009). At the pleading stage, therefore, Epsilon need only plead facts that plausibly suggest PowerRail acted with the specific intent to harm Epsilon's contractual relations with RTC and Egyptian National Railways, and that PowerRail's conduct was independently actionable.

Eplison has adequately pled tortious interference. The Complaint states that PowerRail had knowledge of the RTC contract and Epsilon's relationship with Egyptian National Railways (Doc. 1 at ¶ 49), and that PowerRail maliciously and

intentionally directed RTC to not perform and instead deliver the goods at issue to PowerRail to harm Epsilon (*id.* ¶¶ 51(a)-(b) ). Taken together, these allegations plausibly suggest that PowerRail specifically intended to harm Epsilon's contractual relations with RTC and Egyptian National Railways, and that the means PowerRail employed are independently actionable for unjust enrichment. *See Kentex Asia Ltd. v. ATT S. Inc.*, No. 1:17-CV-273, 2017 WL 4071389, at *3 (M.D. Pa. Sept. 14, 2017) (allegations of intentional harm are sufficient at the pleading stage); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Count Three of the Complaint will therefore not be dismissed.

## IV. Conclusion

For the above stated reasons, PowerRail's Motion to Dismiss will be denied.

An appropriate order follows.

## All Citations

Not Reported in Fed. Supp., 2018 WL 5078276

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2

KeyCite Yellow Flag - Negative Treatment
Distinguished by   Margulis v. Hertz Corp.,   D.N.J.,   April 30, 2015

2007 WL 4164388
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Michael FISCUS, Plaintiff,

v.

COMBUS FINANCE AG, a Swiss Corporation, d/b/
a COMBUS GmbH, d/b/a The Combus Group; Rolf
Schnellmann; Multiforum AG, a Swiss Corporation;
Rolf Haenni a/k/a Rolf Hanni, Defendants.

Civil Action No. 03–1328 (JBS).
|
Nov. 20, 2007.

## Attorneys and Law Firms

Roy D. Ruggiero, Esq., Earp Cohn, PC Cherry Hill, NJ, for
Plaintiff.

Andrew C. Miller, Esq., Karasik & Associates, LLC, Newark,
NJ, for Defendant Schnellmann.

*OPINION*

SIMANDLE, District Judge.

## I. INTRODUCTION

**\*1**  In this action, Plaintiff Michael Fiscus filed suit against
three Swiss nationals—Rolf Schnellmann ("Schnellmann"),
Flurin von Planta ("von Planta"), and Rolf Haenni ("Haenni")
—and three Swiss corporations—ComBus Finance AG
("ComBus"), Global Research AG ("Global Research"), and
Multiforum AG ("Multiforum") [Docket Item 1]. The
plaintiff's complaint arises out of a transaction in which Mr.
Fiscus allegedly tendered to defendants shares of stock in
a company called eVentures Group, Inc. ("eVentures") but
did not receive payment from the defendants. The complaint
contains allegations of securities fraud, common law fraud,
breach of contract, breach of fiduciary duty, and negligence.
(Compl.¶¶ 26–45.) In its July 22, 2004 Opinion and Order
[Docket Items 13 and 14], the Court dismissed defendants von
Planta and Global Research for lack of personal jurisdiction.
The Court subsequently denied Schnellmann's motion to
dismiss for lack of personal jurisdiction, finding that,

unlike von Planta and Global Research, Schnellmann had
purposefully availed himself of the privilege of conducting
business in New Jersey [Docket Items 37 and 38].

Presently before the Court is Schnellmann's motion for
summary judgment [Docket Item 62]. Plaintiff responded to
Schnellmann's motion by moving for a continuance pursuant
to Federal Rule of Civil Procedure 56(f) [Docket Item 68].
On August 10, 2007, the Court denied Plaintiff's motion for
a continuance, noting that Plaintiff had been afforded ample
discovery time and had failed to present any explanation
to justify his request for additional time, but gave Plaintiff
twenty additional days to submit evidence and arguments in
opposition to Schnellmann's motion. [Docket Items 73 and
74]. To this date, Plaintiff has not submitted any evidence
or additional arguments in opposition to Schnellmann's
summary judgment motion, and in its September 17, 2007
letter, the Court informed the litigants that it would consider
Schnellmann's motion unopposed and address it on the merits.
For the following reasons, the Court will dismiss Plaintiff's
claims against Schnellmann.

## II. BACKGROUND

### A. Facts
In 1999, Plaintiff was in possession of more than 2,000,000
shares of stock in eVentures, a company at which he had
at certain times served as an officer. (Compl.¶¶ 1, 11.)
Because the stock was not registered under United States
securities laws, Plaintiff's ability to transfer the shares was
subject to various restrictions imposed by the securities
laws. (Id. at ¶ 11.) When Plaintiff sought to sell some
of his shares in eVentures and began looking for a buyer
who was willing to purchase the stock subject to these
restrictions, Peter Schnellmann, who performed accounting
work for eVentures, informed Plaintiff that his brother, Rolf
Schnellmann, might be interested in purchasing the stock.
(Schnellmann's Statement of Material Facts ¶ 1.) Fiscus and
Rolf Schnellmann met once in New York City to discuss the
potential sale of Fiscus' stock. (Id. at ¶ 2.)

**\*2**  Between late 1999 and May 2002, Plaintiff and the
defendants engaged in a series of negotiations concerning
the sale of the stock. (Compl.¶ 12.) At first, it was
Plaintiff's impression that Multiforum and Haenni, who
Plaintiff believes was an officer or principal at Multiforum,
would purchase the eVentures stock. (Id. at ¶¶ 7, 13.)
For reasons that are not entirely clear in the record,
Plaintiff claims that in March 2000, he was informed by

Schnellmann, von Planta, and ComBus that there were "problems with Haenni," and that Multiforum would not purchase Plaintiff's shares. [1] (*Id.* at ¶ 14.) Instead, the parties determined that Global Research would act as the escrow agent for the sale and would purchase the shares from Fiscus for investment. (*Id.* at ¶ 16; Schnellmann's Statement of Material Facts ¶ 4.) Schnellmann's role in the Fiscus–Global Research transaction was apparently that of acting as a "sales representative." (Def.'s Br. Ex. F at 25.)

According to Plaintiff, after these lengthy negotiations, he entered into a written agreement (the "Letter Agreement") with Global Research under which Global Research would purchase from Plaintiff 100,000 shares of eVentures stock for $10 per share, for a total sale price of $1,000,000.00. (Compl.¶ 19.) The Letter Agreement, which was signed by Fiscus and by von Planta on behalf of Global Research, contains a clause providing that the Letter Agreement "represents the entire agreement between the parties with respect to the transaction described herein." (Def.'s Br. Ex. L.) The Letter Agreement also provides that it is to be "governed by and construed in accordance with the laws of the State of Delaware." (*Id.*) The agreement is dated May 17, 2000, and was signed by von Planta on June 9, 2000, and by Fiscus on June 12, 2000. (*Id.*) According to Plaintiff, the Letter Agreement is the "only one contract ... that matters" to the stock transfer transaction around which this case centers. (Def.'s Br. Ex. K at 29 .)

Schnellmann, by contrast, contends that an additional contract was signed by the parties in relation to the stock transfer transaction. According to Schnellmann, on May 23, 2000, Plaintiff's then-attorney, Stephan Dennis, Esq., sent by facsimile to both Fiscus and Schnellmann an escrow agreement (the "Escrow Agreement") pertaining to the stock transfer transaction. (Schnellmann's Statement of Material Facts ¶ 5.) The Escrow Agreement identifies Global Research as the escrow agent for the transaction and identifies as the "Sales Representative" a company called Makro Options Trading AG ("Makro"). (Def.'s Br. Ex. G.) Schnellmann is listed as Makro's representative in the agreement. (*Id.*) The Escrow Agreement contains a forum selection clause providing that the agreement "is subject to Swiss Law" and that the "[e]xclusive place of jurisdiction for both Parties is Zürich." (*Id.*) According to Schnellmann, the copy of the Escrow Agreement sent by facsimile by Mr. Dennis to Schnellmann and Fiscus on May 23 contains Fiscus' signature. [2] (Schnellmann's Statement of Material Facts ¶ 8.) Plaintiff contends that he never signed the Escrow Agreement

and that his signature on the agreement is a forgery. [3] (Def.'s Br. Ex. K at 72–73.) Fiscus makes this claim notwithstanding that his own attorney had sent the Escrow Agreement to Schnellmann containing what appears to be Fiscus' own signature.

**\*3** According to Plaintiff, after the Letter Agreement was signed, he tendered to Defendants 100,000 shares of eVentures stock in compliance with the parties' agreement, but has not received payment for the shares. (Compl.¶¶ 21, 23.) Instead, Plaintiff alleges that between July 2000 and June 15, 2002, "defendants (and particularly defendant Von Planta) sent and made a series of 'lulling' communications by fax, email and telephone" reassuring Plaintiff that they would pay Plaintiff in the near future. (*Id.* at ¶ 24.) The defendants allegedly never followed through on these reassurances and Plaintiff was not paid.

### B. Procedural History

On March 26, 2003, Plaintiff filed his complaint in this action, alleging that Schnellmann, von Planta, Haenni, ComBus, Global Research, and Multiforum should be held liable to him for damages resulting from the Defendants' securities fraud, common law fraud, breach of fiduciary duty, and negligence. (Compl.¶¶ 26–45.) In its July 22, 2004 Opinion and Order [Docket Items 13 and 14], the Court granted the motion of defendants von Planta and Global Research to dismiss Plaintiff's claims against them for lack of personal jurisdiction.

After the Court dismissed von Planta and Global Research, Schnellmann moved the Court to dismiss Plaintiff's claims against him for lack of personal jurisdiction. The Court denied Schnellmann's motion in its June 20, 2006 Opinion and Order [Docket Items 37 and 38], finding that (1) Schnellmann's contacts with the forum warranted the exercise of personal jurisdiction; (2) in light of Fiscus' denial of the genuineness of his signature, there was insufficient evidence that Fiscus had signed the Escrow Agreement to dismiss the case based on the forum selection clause subject to further discovery and hearing on the genuineness issue; and that (3) Schnellmann had failed to prove the adequacy of Swiss courts as a suitable forum to hear Plaintiff's claim in order to warrant dismissal on forum non conveniens grounds.

On March 20, 2007, Schnellmann filed the motion for summary judgment presently before the Court [Docket Items 61–63]. At Plaintiff's request, on April 27, 2007, the Court

Appx0891

Fiscus v. Combus Finance AG, Not Reported in F.Supp.2d (2007)

issued an Order [Docket Item 67] extending Plaintiff's time to file his opposition to Schnellmann's motion until May 4, 2007. On May 7, 2007, Plaintiff moved for a continuance pursuant to Federal Rule of Civil Procedure 56(f) in order to afford him additional time for discovery [Docket Item 68]. In its August 10 Opinion and Order [Docket Items 73 and 74], the Court denied Plaintiff's motion, finding that Plaintiff had not presented any reason to explain his failure to perform the discovery in question between October 2006 and May 2007, but affording him twenty additional days to submit his argument and evidence to oppose Schnellmann's motion. On September 17, 2007, after the twenty-day filing deadline had expired, the Court informed the parties in a letter that it would proceed to address the merits of Schnellmann's motion, and would consider the motion unopposed. [4] The Court now turns to the merits of that motion.

### III. DISCUSSION

**\*4** Schnellmann argues that he is entitled to summary judgment in this action on three separate grounds. First, Schnellmann argues that von Planta, who signed the Letter Agreement on behalf of Global Research, is an indispensable party to this litigation, and because the Court lacks personal jurisdiction over von Planta, Federal Rule of Civil Procedure 19 requires that Plaintiff's suit against Schnellmann be dismissed. Second, Schnellmann reiterates his argument, presented initially in his motion to dismiss, that the Escrow Agreement is genuine and that its forum selection clause controls this litigation and therefore warrants dismissal because the case should be brought in Switzerland. Finally, Schnellmann argues that the doctrine of forum non conveniens requires that Plaintiff pursue this case in Switzerland. The Court agrees with Schnellmann that von Planta is an indispensable party to this case, and, accordingly, will dismiss Plaintiff's claims against Schnellmann. [5]

#### A. Standard for Rule 19 Analysis

As a preliminary matter, the Court notes that while Schnellmann filed the instant motion as a motion for summary judgment, Schnellmann's argument that the case cannot proceed in the absence of von Planta is better framed as a motion to dismiss. *See* *Marten v. Godwin,* 499 F.3d 290, 295 n. 2 (3d Cir.2007) (noting that a summary judgment motion based on the absence of indispensable parties should be considered as a motion to dismiss) (citing *Martucci v. Mayer,* 210 F.2d 259, 260–61 (3d Cir.1954)).

Accordingly, because dismissing a claim due to the absence of an indispensable party is "more appropriately done by way of [ Rule 12(b)(7) ] of the Federal Rules of Civil Procedure, rather than Rule 56," *id.,* the Court will treat Schnellmann's motion as a request for dismissal, not summary judgment.

Rule 12(b)(7) provides that an action may be dismissed due to the plaintiff's failure to join an indispensable party pursuant to Rule 19. Federal Rule of Civil Procedure 19 [6], in turn, provides the standard the Court must employ in determining whether a case may proceed without the joinder of certain persons, and requires that the Court undertake a three-part analysis to evaluate the indispensability of the absent parties. The Court must decide (1) whether it is necessary that the absent party be joined; (2) whether it is possible for the absent necessary party to be joined; and (3) if joinder of the absent party is not feasible, whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." *Id.; see also Prader v. Science Dynamics Corp.,* No. 99–5303, 2000 U.S. Dist. LEXIS 18666, at \*13 (D.N.J. Dec. 19 2000). "If the party is indispensable, the action therefore cannot go forward." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 404 (3d Cir.1993). The question of an absent person's indispensability is a fact-specific issue that "can only be determined in the context of the particular litigation ." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118 (1968).

#### B. Von Planta and Global Research are Necessary Parties Under Rule 19(a)

**\*5** The Court finds that von Planta and Global Research are necessary parties to the instant action because each "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [the party's] absence may [ ] as a practical matter impair or impede [the party's] ability to protect that interest." F.R. Civ. P. 19(a). At the heart of this dispute is the Letter Agreement, which, according to Plaintiff, is the "only one contract ... that matters" to the transaction that is the focus of Plaintiff's case. (Def.'s Br. Ex. K at 29.) There is substantial case law to support the proposition that "a contracting party is the paradigm of an indispensable party." *Travelers Indem. Co. v. Household Intern., Inc.,* 775 F.Supp. 518, 527 (D.Conn.1991) (citing cases); *see also Prader,* 2000 U.S.

Appx0892

Dist. LEXIS 18666, at *14 (noting that "[a]s a direct party to the Contract, [the absentee] is a necessary party for several reasons under Fed.R.Civ.P. 19(a)"); *Ryan v. Volpone Stamp Co., Inc.,* 107 F.Supp.2d 369, 387 (S.D.N.Y.2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party"); *Rashid v. Kite,* 957 F.Supp. 70, 74 (E.D.Pa.1997) ("Generally, in breach of contract actions, all parties to the contract should be joined"); *cf. Lomayaktewa v. Hathaway,* 520 F.2d 1324, 1325 (9th Cir.1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable"). The indispensability of contracting parties to litigation concerning their contract is eminently sensible. When a court is called upon to interpret the terms of a contract and to evaluate whether the parties to the contract have breached those terms or upheld their respective responsibilities, the absence of one or more of the parties exposes the absent party to precisely the kind of risks that Rule 19(a)(2)(i) empowers courts to guard against.

In this case, Plaintiff alleges that Global Research breached its contract with Plaintiff, and that Schnellmann and von Planta should be held personally liable for Global Research's breach because the defendants used Global Research "to perpetrate a fraud upon the plaintiff." (Compl.¶ 39.) Whether Global Research upheld its obligations under the Letter Agreement is thus the central question in Plaintiff's breach of contract claims, and Global Research, as the contracting party, and von Planta, as Global Research's signatory, are necessary parties to this dispute. *See, e.g., Prader,* 2000 U.S. Dist. LEXIS 18666, at *14.

It is true that Plaintiff's claims in this case are not limited to the allegation that Global Research breached its contractual obligations, and the Court has considered the possibility that Plaintiff's contractual claim could be dismissed and his remaining claims against Schnellmann be permitted to proceed. *See Legal Aid Society v. City of New York,* 114 F.Supp.2d 204, 219 (S.D.N.Y.2000) (noting that "courts regularly dismiss individual causes of action for failure to join an indispensable party while allowing other causes of action to proceed") (citing *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 520 (1947)). However, it is clear that a finding that Global Research breached the Letter Agreement is a necessary factual predicate to all of Plaintiff's

remaining claims. The damage that Plaintiff alleges as the basis of his fraud, breach of fiduciary duty, and negligence claims is precisely the alleged failure of Global Research to comply with its contractually assumed obligation to pay Plaintiff for the shares of eVentures stock Plaintiff claims to have transferred to Global Research. (Compl.¶¶ 26–45.) Put another way, if the Court were to find that Global Research did not breach its obligations under the Letter Agreement, Plaintiff would not be able to recover under his remaining fraud, breach of fiduciary duty, and negligence claims .[7]

**\*6** In short, the Court finds that von Planta and Global Research are necessary parties to the instant litigation under Rule 19(a), and that the Court cannot rule on Plaintiff's remaining claims against Schnellmann without determining whether the absent parties have breached the Letter Agreement.

### C. Joinder of von Planta and Global Research is not Feasible

Having determined that von Planta and Global Research are necessary parties to Plaintiff's case, the Court must assess whether joinder of the absent parties is feasible. *See Prader,* 2000 U.S. Dist. LEXIS 18666, at *13. The Court determined in its July 22, 2004 Opinion and Order that it lacks personal jurisdiction over von Planta and Global Research [Docket Items 13 and 14]. The Court accordingly finds that joinder of von Planta and Global Research is not feasible.

### D. Von Planta and Global Research are Indispensable Parties Under Rule 19(b)

Once it is determined that an absentee is a necessary party to the litigation and that joinder of the absent party is unfeasible, Rule 19(b) requires that the Court assess "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." F.R. Civ. P. 19(b). Among the factors that Rule 19(b) lists as being relevant to this determination are

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of

relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.* The Court's consideration of these factors leads it to conclude that von Planta and Global Research are indispensable to this case and that it would be improper for Plaintiff's suit against Schnellmann to proceed in their absence.

As to the first factor, it is evident that a judgment in Plaintiff's favor would very likely be prejudicial to von Planta's and Global Research's interests. As the Court noted, *supra,* a necessary factual predicate for any of Plaintiff's claims against Schnellmann is a finding that Global Research breached the Letter Agreement. Such a finding would inarguably have a prejudicial impact on the absentees' interests. With regard to those interests, "[i]t is not necessary that any finding of liability on [the absentees'] part in this action be binding to show prejudice to the absent party" because the "practical prejudice exists to the absent party in the effect the case might have as precedent." *Whyham v. Piper Aircraft Corp.,* 96 F.R.D. 557 (D.C.Pa.1982) (citing, *inter alia,* *Provident Tradesmen Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110 (1968)). Particularly with this inclusive understanding of Rule 19(b) prejudice in mind, it would be implausible to assume that a ruling by this Court that Global Research breached its contractual obligations to Plaintiff would not adversely impact von Planta's and Global Research's interests in the event of a future lawsuit against these parties.

*7 Moreover, the Court is unaware of any means by which this risk of prejudice can be diminished. F.R. Civ. P. 19(b). Plaintiff's claims against Schnellmann are inextricably intertwined with the question of whether the absentees breached the Letter Agreement, and no creative efforts to fashion suitable relief would enable the Court to sidestep the matter of Global Research's performance under the contract, which lies at the heart of Plaintiff's allegations.

The third factor of Rule 19(b) requires the Court to consider "whether a judgment rendered in the person's absence will be adequate," F.R. Civ. P. 19(b), and to assess "the extent

to which exclusion of an interested person would leave significant matters unadjudicated." *HB General Corp. v. Manchester Partners, L.P.,* 95 F.3d 1185, 1197 (3d Cir.1996). As the Supreme Court has noted, "the Rule's third criterion ... refer[s] to [the] public stake in settling disputes by wholes, whenever possible." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111 (1968). In this case, Rule 19(b)'s third criterion weighs heavily in favor of finding the absentees indispensable. As the Court explained, *supra,* if Plaintiff's case against Schnellmann were permitted to proceed, the Court would be forced to analyze parties performance under the Letter Agreement even though it could not issue a binding order as to the breach of contract claim in the absence of one of the contracting parties. It is almost inevitable, therefore, that following Plaintiff's case against Schnellmann, there would need to be a second litigation on the contract itself between Plaintiff and Global Research and von Planta. The risk of successive litigation suggested here is not simply "the mere fact that [a] defendant might be required to defend multiple actions," *Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates,* 844 F.2d 1050, 1054 (3d Cir.1988), because the inconvenience imposed as a result of bringing two cases to address the same controversy extends beyond Schnellmann. Witnesses, for example, would be required to testify in at least two fora. The considerations of judicial economy that Rule 19(b)'s third factor instructs courts to evaluate weighs in favor of dismissal in order to avoid the inefficient, piecemeal disposition of Plaintiff's claims.

Of Rule 19(b)'s factors, the fourth consideration—"whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder"—is the only factor that does not militate strongly in favor of dismissal. F.R. Civ. P. 19(b). Schnellmann has maintained from the beginning of this lawsuit that Switzerland offers an adequate alternative forum for Plaintiff to pursue his claims. When Schnellmann moved to dismiss this case on forum non conveniens grounds, the Court noted in its June 20, 2006 Opinion [Docket Item 37] that Schnellmann had not provided sufficient evidence of the adequacy of Swiss fora for Plaintiff to pursue his claims. The Court is troubled by the fact that Schnellmann once again argues in favor of adequacy of Swiss courts without providing evidence, such as affidavits by Swiss attorneys or legal experts attesting to the adequacy of Swiss Courts, which would resolve the adequate forum question and which the Court noted was lacking in Schnellmann's previous submission. *See* *Kultur Intern. Films Ltd. v.*

*Covent Garden Pioneer, FSP., Ltd.,* 860 F.Supp. 1055, 1064 (D.N .J.1994).

**\*8** For the following reasons, however, the Court finds that the fourth Rule 19(b) factor does not require Plaintiff's case to proceed in this forum in the absence of necessary parties. First, in contrast with the doctrine of forum non conveniens, under which the proof of an adequate alternative forum is absolutely indispensable, under Rule 19(b), "[a]lthough the absence of an alternative forum creates a sympathetic climate for the federal court continuing the action, it should be remembered that this is only one of many factors to be considered." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1608 (3d ed.2001). In light of the Court's findings, *supra,* regarding the other Rule 19(b) factors, the adequacy of Swiss courts is an important but not dispositive consideration to the motion presently under consideration.

Moreover, the Court is convinced that two developments since the Court issued its June 20, 2006 Opinion and Order indicate that Switzerland is an appropriate forum for Plaintiff to pursue this case. First, while Schnellmann sought to prove the adequacy of Swiss courts with decades-old case law in his earlier forum non conveniens argument, the Court notes that multiple cases decided following this Court's issuance of its June 20, 2006 Opinion indicate that Switzerland is indeed an adequate alternative forum whose courts are receptive to litigants' tort and contract claims. [8] *See, e.g.,* ¹ *LaSala v. UBS, AG,* 510 F.Supp.2d 213 (S.D.N.Y.2007); *Do Rosario Veiga v. World Meteorological Organisation,* 486 F.Supp.2d 297, 304 (S.D.N.Y.2007) (noting that "Switzerland is an adequate forum for adjudication of civil disputes involving common law claims based on contract and tort principles").

Second, the course this case has taken in the wake of the June 20, 2006 Opinion and Order convinces the Court that litigating this dispute in the present forum has been difficult not only for the defendants but for Plaintiff as well, which suggests that Switzerland is not only adequate, but superior, as a forum for this action. In its June 20 Opinion, the Court expressed its concerns over whether "the transfer of this matter to a court in Switzerland will do anything more than simply transfer the inconvenience of litigating this matter in a foreign jurisdiction from Schnellmann to Fiscus" [Docket Item 37]. While it remains clear to the Court that litigating this dispute in this forum continues to be inconvenient to Schnellmann, this forum does not appear to have proven particularly convenient to Plaintiff either. As the Court noted

in its August 10, 2007 Opinion [Docket Item 73], between January 2007 and May 2007, Plaintiff spent five months unsuccessfully trying to depose Schnellmann, and when a dispute arose regarding the location of the deposition, Plaintiff failed to move the Court to compel the deposition or indeed to take any meaningful action apart from requesting more time to attempt to arrange Schnellmann's deposition. It appears that litigating the case in this jurisdiction when all parties and witnesses, apart from Plaintiff, are in Switzerland has proven inconvenient to Plaintiff as well as the defendants, which suggests that Switzerland is not just an adequate forum, but a preferable one, for Plaintiff's case. The Court accordingly finds that Rule 19(b)'s final factor, "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder," weighs in favor of dismissal.

**\*9** With all four considerations listed under Rule 19(b) indicating that Plaintiff's case should not proceed before this Court in the absence of necessary parties over whom this Court lacks jurisdiction, the Court finds that the absent parties are indispensable to this litigation and that "in equity and good conscience" Plaintiff's case cannot proceed in their absence.

## IV. CONCLUSION

Having concluded that von Planta and Global Research are necessary parties to this case within the meaning of Rule 19(a) and that they are indispensable to the case under Rule 19(b), the Court will dismiss Plaintiff's claims against Schnellmann.

The accompanying Order will be entered.

### *ORDER*

This matter having come before the Court on the motion [Docket Item 62] of defendant Schnellmann for summary judgment; Plaintiff having failed to oppose the defendant's motion after the Court invited Plaintiff to make submissions in opposition; the Court having considered the submissions of Schnellmann; for the reasons explained in the Opinion of today's date; and for good cause shown;

IT IS this 20th day of **November, 2007** hereby

ORDERED that defendant Schnellmann's motion for summary judgment, which the Court has considered as a motion to dismiss pursuant to ¹ Federal Rule of Civil Procedure Rule 12(b)(7), shall be, and hereby is, *GRANTED.*

Fiscus v. Combus Finance AG, Not Reported in F.Supp.2d (2007)

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4164388

**Footnotes**

1    Plaintiff alleges that both von Planta and Schnellmann represented to Plaintiff that they operated as officers, principals, or controlling persons at ComBus. (Compl.¶¶ 3–4.)

2    Schnellmann also subsequently signed the Escrow Agreement. (Def.'s Br. Ex. J.)

3    Despite his repeated allegations that his signature on the Escrow Agreement is a forgery, and his stated intentions to submit into evidence the opinion of an expert regarding the authenticity of the signature, Plaintiff failed to obtain any such evidence between October 2006 and May 2007.

4    Plaintiff likewise did not respond to the Court's September 17, 2007 letter.

5    Because the Court agrees with Schnellmann's argument that Plaintiff's case against him should be dismissed under F.R. Civ. P. 19, the Court does not address Schnellmann's arguments concerning the Escrow Agreement's forum selection clause and the doctrine of forum non conveniens.

6    Specifically, F.R. Civ. P. 19 provides in relevant part:
     **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....
     **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a) (1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
     F.R. Civ. P. 19.

7    While the fact that Schnellmann would bear full liability on claims premised on joint and several liability in the absence of von Planta and Global Research does not suffice to make the absentees necessary parties for Rule 19 purposes, *General Refractories Co. v.. First State Ins. Co.,* 500 F.3d 306, 314 (3d Cir.2007), it is at least worth noting that Plaintiff draws special attention to the role that von Planta in particular played in the events underlying this case. Plaintiff states in the complaint that it was "particularly defendant von Planta ... [who] sent and made a series of 'lulling' communications" as to the defendants' intent to comply with the terms of the Letter Agreement. (Compl.¶ 24.) The Court reiterates, however, that its determination as to whether von Planta and Global Research are necessary parties rests entirely on the Rule 19(a)(2)(i) consideration of the case's impact on the absentees' interests.

8    The parties have raised the possibility that Plaintiff might not be able to pursue one of his fraud claims—namely, his allegation that the defendants committed securities fraud in violation of 15 U.S.C. § 78j—in Swiss courts. (Def.Br.12.) While again emphasizing that the alternative forum analysis under Rule 19(b) is

more flexible than under the doctrine of forum non conveniens, *see* 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1608 (3d ed.2001), the Court notes that the mere fact that an alternative forum's substantive law might be less friendly to the plaintiff does not in itself render the alternative forum inadequate. *See* Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254–55 (1981) ("Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly.").

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

3

Gregoria v. Total Asset Recovery, Inc., Not Reported in F.Supp.3d (2015)

2015 WL 115501, RICO Bus.Disp.Guide 12,569

KeyCite Yellow Flag - Negative Treatment

Distinguished by Auto Equity Loans of Delaware, LLC v. Baird, Del.Com.Pl., May 2, 2018

2015 WL 115501
United States District Court,
E.D. Pennsylvania.

Constantine J. GREGORIA, et. al., Plaintiffs,
v.
TOTAL ASSET RECOVERY,
INC., et. al., Defendants.

Civil Action No. 12–4315.
|
Signed Jan. 7, 2015.
|
Filed Jan. 8, 2015.

**Attorneys and Law Firms**

Robert F. Salvin, Bala Cynwyd, PA, for Plaintiffs.

Elizabeth F. Walker, Campbell Lipski & Dochney, Philadelphia, PA, for Defendants.

**MEMORANDUM**

STENGEL, District Judge.

**\*1** Constantine J. Gregoria and Christie J. Hudson bring this action against Total Asset Recovery, Inc., and its owner and CEO Matthew Howard alleging violations of the Fair Debt Collection Practices Act,[1] 15 U.S.C. § 1692, et seq., and the Racketeer Influenced and Corrupt Organizations Act,[2] 18 U.S.C. § 1962(c). These claims arise from the repossession of the plaintiffs' car as collection for an allegedly usurious loan.

The defendants filed a motion to dismiss pursuant to Rules 12(b)(6), 12(b)(7), and 19 of the Federal Rules of Civil Procedure, and the plaintiffs responded. For the following reasons, I will grant the motion in part.

**I. BACKGROUND**

The plaintiffs were the owners of a 2006 Nissan Altima with a clear title, valued at over $10,000. The vehicle was titled, registered, and licensed in Pennsylvania, and was kept at the plaintiffs' personal residence in Marcus Hook. The plaintiffs were in need of a personal loan and went to a Delaware company known as Delaware Title Loans [DTL] for an auto title loan. The complaint describes an auto title loan as a "small personal loan issued at an enormous triple digit rate of interest, secured by a borrower's car. The loans are used to exploit people with poor credit and a crushing need for cash."

Beginning in June 2011, DTL entered into a series of five loan agreements with the plaintiffs wherein it lent the plaintiffs a total of $4,039 at 150% A.P.R. The plaintiffs were able to repay $2,013 but most of that money was applied to interest. By December 2012, the monthly payment for these loans had reached $630. Because the plaintiffs were late on their payments for February and March 2012, DTL sought to repossess their vehicle.

The complaint alleges that Defendant Total Asset Recovery [TAR], under the authority of Defendant Matthew Howard, agreed to work for DTL to repossess the plaintiffs' vehicle. TAR is a Delaware corporation. The complaint further alleges that "Total Asset Recovery is in the automobile repossession business and qualified as a debt collector under the Fair Debt Collection Practices Act." Its principal business is the collection of debts through the enforcement of security interests and uses various instrumentalities of interstate commerce in the course of its business including motor vehicles (tow trucks), the internet, telephones, and the mail.

On April 25, 2012, TAR "crossed the border into Pennsylvania" and repossessed the plaintiffs' vehicle in the vicinity of their home. The complaint insists that the repossession was performed pursuant to the express authorization and direction of Mr. Howard who had decided that his business would perform repossessions within Pennsylvania to enforce usurious auto title loans from Delaware. The plaintiffs believe that the defendants agreed to this repossession either knowing that the auto title loan was illegal or without performing any due diligence to determine the validity or legality of the loan or their right to enter Pennsylvania and repossess a car to enforce a 150% annual interest rate.

**\*2** The plaintiffs had various personal effects and possessions in their vehicle which have never been returned to them. Although the car was valued at over $10,000, the plaintiffs have not received any money back from the repossession. Accordingly, in bringing this action, the plaintiffs seek in Count I an award of actual and statutory

Appx0899

damages including damages for the deprivation of their vehicle, expenses for alternative transportation, emotional distress, attorney's fees, and costs. In Count II, they seek an award of damages against Defendant Howard equivalent to three times their actual damages including their economic and noneconomic injuries.

## II. STANDARD

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). *Id.* at 1965; *Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir.2005). A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), I may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben.Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). I must accept as true all of the factual allegations in the complaint, *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington* Twp., 478 F.3d 144, 150 (3d Cir.2007), viewing them in the light most favorable to the plaintiff. *Kanter v. Barella,* 489 F.3d 170, 177 (3d Cir.2007). However, I am not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir.2007) (internal quotation marks and citations omitted). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiffs' claim is "plausible on its face," a complaint will survive a motion to dismiss. *Bell Atlantic*

*Corp.,* 127 S.Ct. at 1965, 1974; *Victaulic Co. v. Tieman,* 499 F.3d 227, 234–35 (3d Cir.2007).

## III. DISCUSSION

### A. Count I–Fair Debt Collection Practices Act

Plaintiffs seek relief from TAR through Section 808 of the Fair Debt Collection Practices Act [FDCPA]. 15 U.S.C. § 1692f(6)(A). Pursuant to the statute, a "debt collector may not ... tak[e] or threaten[ ] to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security instrument." *Id.* For the purposes of this section of the FDCPA only, the term debt collector includes "... any business the principal purpose of which is the enforcement of security interests." § 1692a(6). A repossession agency, such as TAR, is an enforcer of security interests. *See Jordan v. Kent Recovery Servs.,* Inc., 731 F.Supp. 652, 657 (D.Del.1990). There appears to be no real dispute that TAR falls within the ambit of the statute. Mot. to Dismiss 8.

**\*3** The issue for this motion to dismiss is whether DTL had a present right to possession of the vehicle. This point is critical because the FDCPA imposes no liability on a repossessor "who enforce[s] security interests when a 'present right' to the collateral exists...." *Jordan,* 731 F.Supp. at 657. Plaintiffs allege that the loan agreement is not legally enforceable because the 150% APR violates Pennsylvania Law. Noting that the contract provides that it shall be governed by Delaware Law, Defendants contend that, even if Pennsylvania law applies, the note is not void, and DTL had a present right of possession in the vehicle when plaintiffs were late on their payments for February and March 2012.

To resolve this dispute, I must first decide whether Pennsylvania or Delaware law governs the agreement. *Kaneff v. Delaware Title Loans, Inc.,* 587 F.3d 616, 621 (3d Cir.2009) ("[Plaintiff] argues that the contract is unconscionable under Pennsylvania law, a challenge that requires us to conduct a choice of law analysis inasmuch as Delaware law is specified in the contract."). In a federal question case, I look to the choice of law principles of the forum state to determine which state's law applies. *Gay v. CreditInform,* 511 F.3d 369, 389 (3d Cir.2007) (applying the rule of *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S.

487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) to federal question cases). Accordingly, I will apply Pennsylvania's choice of law principles. In doing so, my analysis is controlled by the Third Circuit's decision in *Kaneff* which interpreted an identical title loan agreement between a Pennsylvania borrower and DTL.[3] 587 F.3d at 621–624.

Under Pennsylvania choice of law principles, I must first determine if a true conflict exist. A 150% annual interest rate applies to the loan agreement between Mr. Gregoria and DTL. Such an exorbitant rate of interest is perfectly legal and enforceable in Delaware which has no usury laws. *Id.* at 622. On the other hand, Pennsylvania's Loan Interest and Protection Law [LIPL] provides that the maximum lawful rate of interest which an unlicensed lender may charge is 6%. 41 Pa.C.S. § 201. A Pennsylvania lender licensed under the Consumer Discount Company Act [CDCA] may charge an annual interest rate not to exceed 24%. 7 Pa.C.S. §§ 6213.E and 6217.1.A; *Cash Am. Net of Nevada, LLC v. Com., Dep't of Banking,* 607 Pa. 432, 8 A.3d 282, 285 (Pa.2010). Accordingly, the plaintiffs would not be obligated to pay the interest in excess of the applicable LIPL or CDCA rate in Pennsylvania. 41 Pa.C.S. § 501.[4] "There can be no question that there is a true conflict between Delaware and Pennsylvania in their approach to and treatment of usurious interest." *Kaneff,* 587 F.3d at 622.

Pennsylvania choice of contract law principles "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Gay,* 511 F.3d at 389 (citing *Kruzits v. Okuma Machine Tool, Inc.,* 40 F.3d 52, 55 (3d Cir.1994)). Contractual choice of law provisions will be enforced unless:

> **\*4** (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Kaneff,* 587 F.3d at 621—22; *Gay,* 511 F.3d at 389. The *Kaneff* Court noted that Delaware bore a substantial relationship to the transaction since the contract was signed in Delaware. Nonetheless, the Third Circuit overruled the choice of law provision in the DTL contract finding Pennsylvania's "antipathy to high interest rates ... represents such a fundamental policy that we must apply Pennsylvania law." *Id.* at 624.[5] Here, the same DTL contract is at issue, and the same policy against usurious interest rates is implicated.[6] Therefore, I will apply Pennsylvania law to interpret the loan agreement.[7]

The LIPL provides Pennsylvania borrowers with remedies against predatory lenders. As previously discussed, the LIPL and CDCA cap permissible interest rates at 6% and 24% respectively. 41 Pa.C.S. § 201; 7 Pa.C.S. §§ 6213.E, 6217.1.A. A borrower who is subject to a usurious interest rate may, upon notice to the lender, deduct the illegal portion of the interest from the borrower's scheduled payment. 41 Pa.C.S. § 501. However, the borrower must continue to make payments. *Id.* In the alternative, the borrower may sue the lender to recover the excess interest. Id § 502. Despite these protections, the LIPL does not invalidate, in its entirety, a loan agreement with a usurious interest rate. *Pennsylvania Dept. of Banking v. NCAS of Delaware, LLC,* 995 A.2d 422, 440 (Pa.Cmwlth.Ct.2010). A rate of interest in violation of the LIPL "renders the note [loan] not void, but only voidable as to the interest specified beyond the lawful rate." *Id.* (citing *Mulcahy v. Loftus,* 439 439 Pa. 111, 267 A.2d 872, 873 (Pa.1970)). Thus, a loan agreement containing an excessive interest rate is still enforceable to the extent of the lawful rate.

Mr. Gregoria's loan agreement with DTL remained in force under Pennsylvania law. The LIPL permitted Mr. Gregoria to withhold the illegal interest or to pay the interest and sue for its recovery. The LIPL did not authorize Mr. Gregoria to stop making payments or to make payments late. Plaintiffs admit they were late in making payments in February and March 2012. Compl ¶ 20. It is undisputed that failing to make the scheduled payments when due is an event of default under the agreement. Pls.' Resp. ¶ 3; Compl. Ex. P–4 ¶ 8(a). Upon plaintiffs' default, DTL was contractually authorized to "foreclose upon its lien and liquidate any [c]ollateral securing [the][a]greement according to law including by using self-

help repossession." Compl. Ex. P–4 ¶ 9(b). Plaintiffs' 2006 Nissan Altima was the collateral securing the loan agreement. Pls.' Resp. ¶ 2; Compl. Ex. P–4 ¶ 2. Thus, DTL acquired a present interest to repossess plaintiff's Nissan Altima when plaintiffs failed to make timely payment in February and March 2012. TAR repossessed plaintiff's vehicle as DTL's agent and cannot be held liable under the FDCPA. *Jordan*, 731 F.Supp. at 657. (finding that the FDCPA imposes no liability on a repossessor "who enforce[s] security interests when a 'present right' to the collateral exists ..."). I will dismiss plaintiffs' FDCPA claim.

## B. Count II—Racketeer Influenced and Corrupt Organizations Act

**\*5** Plaintiffs allege that Mr. Howard violated the Racketeer Influenced and Corrupt Organizations Act [RICO] by using TAR to collect an unlawful debt. The statute prohibits "... any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through ... collection of unlawful debt." 18 U.S.C. § 1962(c). There is no dispute that plaintiffs have pleaded 1.) the existence of an enterprise; 2.) the defendant's employment with the enterprise; 3.) and that the defendant participated in the conduct or affairs of the enterprise. However, Mr. Howard denies he caused TAR to collect an unlawful debt.

An unlawful debt includes any "debt (A) ... which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with ... the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." *Id.* § 1961(6). Here, plaintiffs allege that part of the interest charged—at least 126%—was unenforceable under Pennsylvania's usury statutes.[8] Even assuming DTL is licensed under the CDCA, a triple digit interest rate is at least four times the enforceable rate.[9] Additionally, plaintiffs aver that DTL is a predatory lender which is in the business of issuing loans at triple digit interest rates to "people with poor credit and a crushing need for cash." Compl. ¶ 12; *see* *Durante Bros. & Sons v. Flushing Nat. Bank*, 755 F.2d 239, 250 (2d Cir.1985) (distinguishing occasional usurious transactions from the business of making usurious loans).[10] Considering my duty to read the RICO statute broadly to give full effect to its remedial purposes, *see*

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 497–98 (1985), I find that these allegations are more than sufficient to plausibly plead a civil RICO claim.

Mr. Howard argues that he cannot be considered a debt collector under RICO. I am unpersuaded. First, he contends that he did not collect a debt. Rather, he only collected collateral. This is a distinction without a difference. DTL repossessed the car to "liquidate the collateral" to satisfy the unpaid balance of plaintiff's loan. Compl. Ex. P–4 ¶ 9(b). Whether the defendant collected the car or cash, the purpose of the collection was to satisfy the debt.[11] Second, Mr. Howard notes that neither he nor TAR is in the business of lending money. The complaint contains no allegation to that effect, but plaintiffs have alleged that DTL is in the business of lending money. While an unlawful debt must be "incurred in connection with ... the business of lending money," 18 U.S.C. § 1961(6), the statute does not require the collector to also be the lender. *See* 18 U.S.C. § 1962(c). Finally, Mr. Howard asserts "courts have consistently found that repossession agencies are not considered 'debt collectors' under the FDCPA (except for purposes of [ 15 U.S.C.] § 1692f(6)(A))." However, § 1692f(6)(A) is the very section of the FDCPA implicated by the facts of this case. As I have already discussed, TAR is a debt collector for the purposes of § 1692f(6)(A). Therefore to the extent the FDCPA may be used to interpret RICO, the FDCPA would support RICO liability for a repossession company. I will deny defendant's motion to dismiss plaintiffs' RICO claim.

## C. Compulsory Joinder under Federal Rule of Civil Procedure 19

**\*6** Federal Rule of Civil Procedure 19(a) specifies the circumstances in which a party is necessary for the proper resolution of an action .[12] Rule 19(b) provides for the dismissal of a case when the joinder of a necessary party is not feasible because the party is not subject to service of process or joinder would destroy the court's subject matter jurisdiction. *See* *Gen. Refractories Co. v. First State Ins. Co.,* 500 F.3d 306, 312 (3d Cir.2007). I find that DTL is a necessary party, and that joinder of DTL is feasible. Accordingly, I will order plaintiffs to join DTL as a defendant. Since DTL's can be made a party, dismissal of this action is inappropriate. *See* FRCvP 19(b) ("If a person who is required to be joined ... **cannot be joined,** the court must

2015 WL 115501, RICO Bus.Disp.Guide 12,569

determine whether the action ... should be dismissed."); *Speakman Co. v. Harper Buffing Mach. Co.,* 583 F.Supp. 273, 278 (D.Del.1984) (citing 3A *Moore's Federal Practice* ¶ 19.052[2], at 19–91, 19–92 (2d ed. 1982)) ("Dismissal under Rule 19(b) is proper only if a person "cannot be made a party" under Rule 19(a).").

The first part of the analysis is to determine if DTL is a necessary party. I recognize that liability in a civil RICO action may be imposed on a joint and several basis. *See State Farm Mut. Auto. Ins. Co. v. Lincow,* 444 F. App'x 617, 621–22 (3d Cir.2011) ("... the nature of the RICO offense mandates joint and several liability."). I also appreciate that joint tortfeasors are not necessary parties for the purposes of Rule 19. *Temple v. Synthes Corp.,* 498 U.S. 5, 7–8, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990). However, it is equally clear that the rights and liabilities of the parties are premised on the loan agreement between DTL and plaintiffs. "[W]here rights sued upon arise from a contract all parties to it must be joined." *Ward v. Deavers,* 203 F.2d 72, 75 (D.C.Cir.1953); *see also Caribbean Telecommunications Ltd. v. Guyana Tel. & Tel. Co.,* 594 F.Supp.2d 522, 532 (D.N.J.2009) (citations omitted) ("It is well established that 'a contracting party is the paradigm of an indispensable party' for contract claims."). Accordingly, DTL is a necessary party.

Next, I must determine whether joinder of DTL is feasible. Here, it would appear that DTL's minimum contacts with Pennsylvania are sufficient to establish this court's jurisdiction over DTL. [13] DTL opened an office in Claymont, Delaware within one half mile of the Pennsylvania border. From this office, plaintiffs allege that DTL has extended title loans to many residents of Pennsylvania. When DTL forecloses on its lien, the effects on the borrower are felt in Pennsylvania. Given these allegations, the maintenance of

suit in the Eastern District of Pennsylvania does not offend traditional notions of fair play and substantial justice. Since joining DTL to this federal question case will not destroy the court's subject matter jurisdiction, joinder of DTL is feasible.

## IV. CONCLUSION

*7 For the foregoing reasons, I will dismiss plaintiffs' claim under the Fair Debt Collection Practices Act. I will deny Mr. Howard's motion to dismiss plaintiff's RICO claim, and I will order plaintiffs to join Delaware Title Loans as a party.

An appropriate order follows.

## ORDER

AND NOW, this 7th day of January 2015, upon consideration of defendants' motion to dismiss (doc. no. 12), plaintiff's response (doc. no. 18), and the parties' reply (doc. no. 19) and surreply (doc. no. 24) thereto, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss (doc. no. 12) is **GRANTED in part;**

2. Count I of the complaint is **DISMISSED with prejudice;**

3. Within 14 days of the entry of this order, plaintiff shall file an amended complaint naming Delaware Title Loans as a party to this action. If plaintiff fails to join Delaware Title Loans, this case will be dismissed with prejudice.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 115501, RICO Bus.Disp.Guide 12,569

## Footnotes

1    Title 15 of the United States Code, Section 1692(e) provides that the purpose of this Act is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

2    Title 18 of the United States Code, Section 1962(c) provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or

foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

3    Defendants attempt to distinguish *Kaneff* because the district court in *Kaneff* had diversity jurisdiction, whereas, this is a federal question case. Whether this is a federal question or diversity case has no impact on the choice of law analysis. *See Gay,* 511 F.3d at 389. Since *Kaneff* is otherwise indistinguishable from the present case, I am compelled to follow *Kaneff* in my choice of law analysis.

Defendants believe that *Gay* stands for the proposition that a difference in a court's jurisdictional basis can change the choice of law analysis, but defendants misread *Gay.* In *Gay,* the plaintiff filed an action pursuant to the Credit Repair Organization Act, 15 U.S.C. §§ 1679, *et. seq,* but the underlying agreement included a Virginia choice of law provision. In analyzing the contract's choice of law provision, the *Gay* Court first decided that it must use Pennsylvania choice of law principles in conducting the choice of law analysis. In reaching its conclusion to apply Pennsylvania choice of law principles, the *Gay* Court noted: "[I]f the District Court's jurisdiction in this federal question case had been based on diversity of citizenship of the parties we would apply Pennsylvania's choice-of-law principles as the court was in the Eastern District of Pennsylvania." 511 F.3d at 389 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). By concluding that the forum's choice of law principles applied in *Gay* as well, the Third Circuit recognized that *Klaxon* applies with equal force in both diversity and federal question cases. Accordingly, a court's jurisdictional basis is not dispositive of the choice of law analysis.

4    "When a rate of interest for the loan or use of money, exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over such maximum interest rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of such debt providing the borrower or debtor gives notice of the asserted excess to the creditor." 41 Pa.C.S. § 501.

5    Other factor's supporting Pennsylvania law included: "it is where [plaintiff] lives.... Pennsylvania is also the location of the collateral, [plaintiff's] car, and DTL was required to enter Pennsylvania in order to repossess the car. Finally, ... Pennsylvania will have to live with the aftermath of the transaction ." *Kaneff,* 587 F.3d at 623.

6    Ultimately, the *Kaneff* Court ruled that the loan agreement's arbitration clause was enforceable under Pennsylvania law. Thus, defendants urge that the choice of law was not at issue and is dicta. I disagree. The Court's choice of law analysis which focused on the differing usury policies of Delaware and Pennsylvania was essential to its decision to compel arbitration. *Kaneff,* 587 F.3d at 622 ("We do consider the usury issue as a part and parcel of whether the arbitration clause should be enforced. The choice of law analysis cannot be divorced from that issue."). Accordingly, the Court's choice of law analysis is not only persuasive —it has precedential effect. *See In re Friedman's Inc.,* 738 F.3d 547, 552 (3d Cir.2013) (If a determination by our Court is not necessary to our ultimate holding, "it properly is classified as dictum.").

7    Defendants argue that, "it is not clear that Pennsylvania law would apply to this case." Mot. to Dismiss 6. Other than their unsuccessful attempt to distinguish *Kaneff,* defendants provide no guidance on why Delaware law should govern.

8    For the present motion, I find that these facts are sufficient to plead that the debt was incurred in connection with a business of lending money at a rate usurious under state law. However, RICO's definition of unlawful debt with reference to state law is problematic. DTL's lending practices are perfectly legal in Delaware, but they would be illegal in Pennsylvania where plaintiffs reside. Did Congress intend to impose RICO liability on a lender or debt collector based on the usury laws of the borrower's domicile? Do I resolve this conflict by traditional choice of law principles? In my opinion, this is the big legal question posed by the facts of this case, yet neither party briefed the subject. Therefore, I will treat the fact as uncontested for this motion.

9    If DTL is licensed under the CDCA, then it could legally charge interest at 24%. A triple digit interest rate is at least 100%; although, plaintiffs contend that the rate of interest is often 300%.

10    In contrast, Mr. Howard relies heavily on the following passage from *Durante Bros.*: "The civil RICO action is not simply an action to recover excessive interest or to enforce a penalty for the overcharge. RICO is concerned with evils far more significant than the simple practice of usury." 755 F.2d at 248. To the extent Mr. Howard claims that DTL is only engaged in "the simple practice of usury," I am not persuaded. In *Durante*, plaintiff's sued Flushing National Bank for making usurious loans in violation of RICO. The Second Circuit struggled with whether the bank was in the business of making usurious loans or if there was a scheme to make a few isolated usurious loans. *Id.* at 250. In remanding the case, the Court noted that if the unlawful loans were isolated events rather than part of business practice the case could be dismissed on summary judgment. *Id.*

Unlike the lender in *Durante*, DTL is not a nationally chartered bank. According to plaintiffs, DTL's sole business is to make usurious loans. Indeed, the complaint suggests that this **predatory** lender is the very loan **shark** which RICO was crafted to target. *See Id.* ("The inclusion of "collection of unlawful debt" as a major predicate for RICO liability seems to have been an explicit recognition of the evils of loan sharking, and there is no indication that Congress was taking aim at legitimate banking institutions."). Therefore, the complaint plausibly alleges that the unlawful debt was "incurred in connection with 'the business of' lending money at a usurious rate." *Id.* at 249.

11    I recognize that my analysis of the *collateral v. debt* issue parts company with three of my colleagues. *See Gonzalez v. DRS Towing, LLC, et al*, No. 12–5508 (E.D.Pa. Feb. 28, 2013); *Collins v. Siani's Salvage, LLC*, No. CIV.A. 13–3044, 2014 WL 1244057 (E.D.Pa. Mar.26, 2014); *Goldenstein v. Repossessors, Inc. .*, No. 13–CV–02797, 2014 WL 3535112 (E.D.Pa. July 17, 2014). However, given the broad construction I must give the RICO statute and considering this is a motion to dismiss, I find that pleading repossession of collateral plausibly states a RICO claim.

12    Rule 19(a) defines a necessary party as:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest

13    A federal court may exercise personal jurisdiction over a nonresident defendant to the same extent provided by the law of the state in which the federal court sits. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984). Pennsylvania statute provides that a court in the Commonwealth may exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). Accordingly, plaintiff must establish that defendant has minimum contacts with Pennsylvania "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir.2009) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, (1945)).

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# 4

2017 WL 4558006

2017 WL 4558006
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

LAMAR ADVANTAGE GP COMPANY, LLC
and Lamar Central Outdoor, LLC, Plaintiffs

v.

Gerard JOYCE, Defendant

3:13-CV-01830
|
Signed 10/12/2017

**Attorneys and Law Firms**

Sean P. McDonough, John P. Finnerty, Dougherty, Leventhal & Price, L.L.P., Moosic, PA, for Plaintiffs.

Alfred J. Weinschenk, Joseph A. O'Brien, Kimberly J. Kost Scanlon, Oliver, Price & Rhodes, Clarks Summit, PA, for Defendant.

**MEMORANDUM OPINION**

Robert D. Mariani, United States District Judge

**I. PROCEDURAL HISTORY**

*1 The issue that has been placed before this Court is whether the action of Plaintiffs, Lamar Advantage GP Company, LLC, and Lamar Central Outdoor, LLC, (hereinafter "Lamar" or "the Lamar Plaintiffs") must be dismissed pursuant to Federal Rule of Civil Procedure 19 for failure to join Landmark Infrastructure Holding Company, LLC, Bank of America, N.A., and Wilmington Trust National Association, who are the assignees of certain leases between Defendant Joyce, as lessor, and Lamar, as the assignee of Chancellor Media Corporation. For the reasons that follow, the Court finds that the assignees of Joyce are indispensable parties whose joinder would destroy complete diversity as among the parties to this action, therefore requiring that Lamar's complaint, and the entirety of the action, be dismissed.

In order to engage in the required analysis of this issue, the procedural history of this case must be recounted.

On July 3, 2013, Lamar filed suit against Gerard Joyce, individually, Lofts at the Mill, LP, and Lofts GP, LLC (Doc. 1).

On July 31, 2013, the action against Lofts at the Mill, LP and Lofts GP, LLC, was dismissed without prejudice pursuant to a stipulation between the Plaintiff and all Defendants (Doc. 10).

On November 4, 2013, this Court granted Lamar's Motion for Leave to File an Amended Complaint in this case. (Doc. 20). Defendant Joyce then moved to dismiss the Amended Complaint. (Doc. 23). The matter was fully briefed and this Court, by Order dated June 16, 2014 (Doc. 33) denied Defendant's motion to dismiss. In the Memorandum Opinion accompanying this Court's Order, the Court referenced the allegations of Lamar's Amended Complaint, specifically that on October 23, 1998, Chancellor Media Corporation ("Chancellor") and Defendant Joyce entered into a Settlement Agreement and Mutual Release ("Agreement") (Doc. 32, at 2). The Settlement Agreement and Mutual Release whose provisions were alleged in the Amended Complaint to have been breached, is of record in this case (Doc. 85-2).

Paragraph 2D of that Agreement provides as follows:

> Joyce agrees not to compete with Chancellor, either separately or in association with others, as an owner, employee, manager, operator, principal, partner, officer, director, share-holder, consultant, representative, agent, investor or private individual in connection with any outdoor advertising business in the greater Scranton/Wilkes-Barre Pennsylvania area and the greater Hartford-Connecticut area for a period of thirty (30) years from the date of this Agreement. The greater Scranton/Wilkes-Barre area shall mean the counties of Lackawanna, Luzerne, Wayne, Pike, Wyoming, Susquehanna, Monroe, Carbon and Schuylkill. For purposes of this Agreement, outdoor advertising business shall mean the construction, ownership and/or leasing of bulletins and poster panels, including the sale of advertising on

Appx0907

the same and the leasing of land for the purposes of construction or maintaining bulletins and poster panels, except as contemplated in this Agreement. Notwithstanding the foregoing, Joyce shall not be prohibited from: (i) constructing, owning and leasing a sign structure and outdoor advertising thereon on property owned by Joyce between Exits 55 and 56 on Interstate 81 which structure will be a 660' setback structure; and (ii) purchasing properties on which bulletin boards or poster panels are located at the time of such purchase, provided that the pre-existing lease agreements for such bulletins or poster panels, in effect at the time of such purchase shall remain in effect, for a period of thirty (30) years from the date of Joyce's purchase of such property and shall be honored by Joyce for the said thirty (30) year period (this language is understood by the parties to expressly include the rental amounts as stated in such preexisting leases at the time of Joyce's purchase of any such property); or (iii) owning not more than five percent (5%) of the outstanding shares of any publicly-held corporation engaged in the outdoor advertising business. For purposes of this subsection 2D, the term Joyce shall include any corporation, partnership or other business entity in which Joyce has an ownership interest.

**\*2** (Doc. 85-2 at 4-5).

Joyce moved to dismiss Lamar's Amended Complaint on a single basis—that the Agreement bars competition only with Chancellor, not Joyce. (Doc. 24, at 8).

This Court denied Joyce's motion to dismiss on the following basis:

Since the Amended Complaint alleges that the Agreement contains a successors and assigns clause (Paragraph 7B), Plaintiff satisfactorily pleads that Agreement obliges Defendant to comply with its provisions, including the non-compete clause of paragraph 2D, for the benefit of Plaintiff as the successor and assignee of Chancellor.

(Doc. 32 at 5).

Lamar filed a Second Amended Complaint on December 23, 2014. (Doc. 55). Attached to the Second Amended Complaint is a document entitled "Intercompany Transfer and Assignment." (Doc. 55-1, Ex. K). That agreement recites that as of August 11, 1999, "Lamar Media Corp. acquired (directly or indirectly) ownership of all subsidiaries of the Chancellor Sellers then holding outdoor advertising assets (collectively, 'Chancellor Outdoor Subsidiaries'), and as a result Lamar Media Corp. acquired all outdoor advertising assets and operations of the Chancellor Outdoor Subsidiaries located in the Scranton, Pennsylvania metropolitan area (collectively 'Chancellor's Scranton Area Outdoor Assets')". Lamar Central Outdoor, LLC, as assignor, then assigned all of its "right, title and interest in, to and under Chancellor's Scranton Area Outdoor Assets (and the Agreement), to" Lamar Advantage GP Company assignee. (*Id.*).

The assignment between Lamar Central Outdoor, LLC, and Lamar Advantage GP Company, LLC, was undertaken because a prior, written assignment between these parties had not been located and according to this transfer agreement "Lamar Media Corp. desires that Assignor perfect the assignment of the Chancellor's Scranton Area Outdoor Assets (including the Joyce agreement) to Assignee herein." (*Id.*).

As to the claims of Lamar that Joyce had violated the non-compete provisions of the Settlement Agreement and Release entered into by Joyce and Chancellor which had been assigned to Lamar, Lamar filed a motion for partial summary judgment on January 22, 2015. (Doc. 58). Previously, Joyce had filed a motion for summary judgment on September 26, 2014. (Doc. 38). These motions were referred to Magistrate Judge Carlson for a Report and Recommendation ("R&R").

Appx0908

2017 WL 4558006

Judge Carlson issued his R&R on August 28, 2015. (Doc. 66). Judge Carlson recommended that "Lamar's motion for summary judgment (Doc. 58) be granted but only insofar as it seeks a legal judgment that it is the successor-in-interest to Chancellor and entitled to seek enforcement of its rights under the 1998 Settlement Agreement." (*Id.* at 23). In all other respects, Judge Carlson recommended that Lamar's motion be denied and that, likewise, the motion for summary judgment of Joyce also be denied.[1]

**\*3** This Court, by Order dated September 15, 2015 (Doc. 67), and in the absence of objections from either plaintiffs or defendant, adopted the R&R, granted plaintiffs' motion for partial summary judgment insofar as it sought a judicial determination that the plaintiffs are legally entitled to seek enforcement of the Settlement Agreement that provides the basis for this action. This Court further ruled that "[a]s a matter of law, Plaintiffs have standing to enforce their rights under the 1998 Settlement Agreement as successor-in-interest to Chancellor's rights." (*Id.* at 2). The plaintiffs' motion was denied in all other respects and the defendant's motion for summary judgment was likewise denied.

By Order dated September 23, 2015, trial was scheduled to begin in this case on February 22, 2016, and a final pretrial conference was set for February 12, 2016. (Doc. 70). In accordance with this Court's scheduling order, the parties filed pre-trial memoranda on February 8, 2016. (Docs. 91, 94).

Defendant Joyce's pre-trial memorandum made several assertions, including that Joyce took no action that violated the terms of the non-compete provisions set forth in the Settlement Agreement and Mutual Release. (Doc. 94, at 6-8). Joyce also presented his contentions that he did not engage in a material breach of the non-compete provisions of the Settlement Agreement and Mutual Release. (*Id.* at 8-11).

In addition, Joyce responded to the position taken by the plaintiffs that it was their intention to rescind the Settlement Agreement and to terminate the Site Leases and Facility Lease entered into as part of the Settlement Agreement by Joyce and Chancellor, with Chancellor's interest having been assigned to Lamar. (*Id.* at 11-13). Lamar had contended that Joyce's violation of the non-compete provisions of the Agreement constituted a material breach which excused Lamar from further performance under the Agreement. In response, Joyce argued that the site leases and facility lease had been assigned by Joyce or his companies to entities, who, if joined as

defendants, would destroy complete diversity as between the plaintiffs and Joyce, and thus deprive the Court of jurisdiction. Joyce's pre-trial memorandum stated in part:

> However, if Plaintiffs establish a material breach of the Agreement and if they elect to rescind the Agreement, it is anticipated that they may seek to have the Site Leases and the Scranton Facility Lease ("Facility Lease") declared void. The Court does not have jurisdiction over such a claim since its determination implicates indispensable parties that are not parties to this litigation. Joyce's interests under some of the Site Leases and the Facility Lease have been assigned to third parties ("Third Party Assignees") and were assigned to Third Party Assignees at the time of filing this action and Plaintiffs were aware of the same.

(*Id.* at 12).

The issue of the non-joinder of indispensable parties having been raised by Joyce, the Court, at the pretrial conference, engaged in a discussion of the issue with counsel for the parties. At the pretrial conference, an attempt was made to identify the entities to which Joyce had assigned the Site Leases and Facility Lease. Among the assignments which were identified as being currently in effect were assignments to Bank of America and Landmark Dividend. Counsel for Lamar confirmed Lamar's position that if it were successful in this action, it intended to terminate the Site Leases and Facility Lease which Joyce had assigned to Bank of America and Landmark Dividend. Counsel for Joyce described the nature and purpose of these assignments as follows:

**Mr. Weinschenk**: Landmark Dividend is probably a private equity company that purchases billboards, long-term leases from individuals and gives them cash. They take an assignment of that lease for the remainder of the term, and then when the term is up, the lease goes back to the original—

**\*4 The Court:** So Landmark fully expects they would get the benefit of that lease over its term.

**Mr. Weinschenk:** That's correct.

(Off. Pretrial Tr., Feb. 12, 2016, at 10).

After extended discussion as to the application of Federal Rule of Civil Procedure 19, as well as a discussion of Lamar's knowledge of the assignment of these leases occurring after the commencement of this litigation (*id.* at 10-15), the Court inquired as to whether Lamar would agree that the leases which had been assigned to the non-diverse third parties would be unaffected by any verdict or judgment in Lamar's favor. Counsel for Lamar did not agree to such an approach:

> **The Court:** ... But in any event, my suggestion here would be that we have to postpone this trial and allow you to join these people. I really do not see a way out of that, other than you committing—it would have to be, again, formally on the record, perhaps, even in documentary form from your client—that these leases would be unaffected by any verdict or judgment in your favor.

**Mr. McDonough:** No.

**The Court:** And you can't do that.

**Mr. McDonough:** We can't do that.

(*Id.* at 15).

This Court's Order entered February 12, 2016 (Doc. 99), immediately following the pretrial conference, summarizes the issue of joinder of the non-diverse third party assignees as raised in the defendant's pretrial memorandum and as discussed at the pretrial conference. The Order granted Plaintiff thirty days "to make a determination of all assignees of the Lamar-Joyce leases who shall be joined as Defendants in this matter, as well as to identify any other indispensable parties, who shall likewise be joined ('the Supplemental Discovery Period')." (*Id.* at ¶ 2).

The Order further granted Plaintiffs an additional thirty days "from the expiration of the Supplemental Discovery Period ... within which to effect the joinder of all indispensable parties." (*Id.* at ¶ 3).

Finally, the February 12, 2016, Order of this Court provided that within sixty days of the date of the Order, "Plaintiff shall submit of record a report of any assignee or other indispensable party whose joinder will deprive the Court of its jurisdiction. If any such indispensable parties exist, the parties shall have fourteen (14) days from the date on which Plaintiff submits its report to file briefs in support of their respective positions as to 'whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed,' Fed. R. Civ. P. 19 (b), pursuant to Federal Rule 19 and applicable case law." (*Id.* at ¶ 4).

By Order dated March 4, 2016, the Supplemental Discovery Period was extended to April 14, 2016, and Plaintiffs were granted until May 14, 2016 "to effectuate the joinder of indispensable parties" as well as "to submit a report to the Court identifying the assignees and/or indispensable parties whose joinder will deprive the Court of its jurisdiction in this matter." (Doc. 102, at ¶¶ 2, 3). The parties were further granted 14 days from the date Plaintiffs submitted the aforementioned report to file briefs on the issue of whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed ..." (*Id.* at ¶ 4).

**\*5** On May 10, 2016, the Lamar Plaintiffs moved to amend their Second Amended Complaint to permit the addition of certain "Joyce affiliated entities" who were identified as Lofts at the Mills, L.P., Lofts GP, LLC, AMB Investments of Pennsylvania, Inc. and May Acquisition, LLC. (Doc. 104). Thus, the Lamar Plaintiffs sought leave to file the Third Amended Complaint attached to their motion (Doc. 104-1).

Lamar's motion seeking leave to file a Third Amended Complaint, alleged:

> The Lamar Entities now seek to include the parties which it previously stipulated to dismiss without prejudice, as well as AMB Investments of PA, Inc., (a closely held Joyce entity) as well as May Acquisition, an entity recently formed by Joyce and an assignee of a site lease subject to the 1998 Settlement Agreement. These joinders will not destroy this Honorable Court's jurisdiction and will permit a merits determination as to the issues which

**Lamar Advantage GP Company, LLC v. Joyce, Not Reported in Fed. Supp. (2017)**

2017 WL 4558006

have been pending in this Court for nearly three years.

(Doc. 104, at ¶ 12).

In that same motion, the Lamar Plaintiffs asserted that "Joyce had also made an assignment of the lease payments for the Scranton facility lease which was at issue in this litigation on February 24, 2015. The assignment of the facility lease was to Bank of America, N.A. Bank of America, N.A. in turn assigned its interest in the leases and rents subject to the 1998 Settlement Agreement to Wilmington Trust, National Association on August 5, 2015." (*Id.* at ¶ 9). The Lamar Plaintiffs, however, did not seek in their motion for leave to file a Third Amended Complaint leave to add Bank of America, Landmark Infrastructure Holdings Company, LLC ("Landmark") or the Wilmington Trust.

Lamar Plaintiffs, in their brief in support of their motion to file a Third Amended Complaint (Doc. 107) offered:

> The entry of an Order to permit the filing of the Third Amended Complaint will accomplish the objectives and conform with the procedure outlined by this Honorable Court in its February 12, 2016 Order. Consistent with that Order, Lamar will advise the Court as to the assignees not sought to be joined that will deprive this court of its jurisdiction. Under this procedure, this court can retain jurisdiction in order to make the requisite finding under F.R.C.P. 19(a) and F.R.C.P. 19(b), if necessary.

(*Id.* at 6).

The filing by the Lamar Plaintiffs of a motion for leave to file a Third Amended Complaint without joining the non-diverse third party assignees of Joyce prompted this Court to issue an Order on May 23, 2016. (Doc. 112). In that Order, this Court noted that "the submissions thus far from Plaintiffs have not complied with the framework set forth in the Court's Order for identifying the 'assignee or other indispensable party whose joinder will deprive the Court of its jurisdiction [i]f any such

indispensable parties exist.' " (*Id.* at 1). The Court's Order continued:

> Until the issue of the necessary joinder of any indispensable party is resolved, the Court will not consider Plaintiffs' Motion to Add Additional Parties (Doc. 104) in that a review of the documents submitted reveals no attempt to join any indispensable party listed in Plaintiff's letter to the Court on May 13, 2016.

(*Id.* at 2).

The letter of counsel for the Lamar Plaintiffs dated May 13, 2016 (Doc. 108) identified "the following potential parties as assignees of Joyce/Lofts/ABM Investments of Pennsylvania, Inc., and May Acquisition, LLC, as assignees of those entities: (1) Landmark Infrastructure Holding Company, LLC; (2) Bank of America, N.A., and (3) Wilmington Trust, National Association, As Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2015-C24, Commercial Mortgage Pass-Through Certificates, Series 2015-C24."

**\*6** The letter further stated that "[t]he Lamar Entities wish to inform the Court that they will submit their brief consistent with the Court's directive which will include analysis under Federal Rule of Civil Procedure 19 as to whether the foregoing parties are indispensable so that the Court can make a determination as to whether it will relinquish jurisdiction in this matter." (*Id.*).

Counsel for the Lamar Plaintiffs, by letter dated May 31, 2016 (Doc. 113), identified the non-diverse assignees of Joyce whose joinder, Plaintiffs' counsel acknowledged, would deprive this Court of jurisdiction over this matter. Specifically, Plaintiffs' counsel wrote:

> In addition to the above identified indispensable parties, the Plaintiffs identified the following assignees of the Defendants who the Court may also consider to be indispensable parties:
>
> 1. Landmark Infrastructure Holding Company, LLC
>
> 2. Bank of America, N.A., and

3. Wilmington Trust National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2015-C24, Commercial Mortgage Pass-Through Certificates, Series 2015-C24.

The three assignees identified above are Delaware entities. Therefore, the joinder of any of these entities would deprive the Court of jurisdiction over this matter. For this reason and in accordance with Fed.R.C.P. 19 (a) and (b), the Plaintiffs made no attempt to join any of these three assignees as party Defendants in this matter. However, as required by Fed.R.C.P. 19 (c), the Plaintiffs set forth in their proposed Third Amended Complaint (attached as an Exhibit to their Motion for Joinder) the reasons why they were not attempting to join the three assignees identified above.

(*Id.*).

Thereafter, the Lamar Plaintiffs filed a "Memorandum of Law in Opposition to Compulsory Joinder of Parties". (Doc. 114). Defendant Joyce, in turn, filed a brief "in Support of his Position that Dismissal of Plaintiffs' Claims is Merited since Equity and Justice require Joinder of Indispensable Parties that Would Deprive the Court of Jurisdiction." (Doc. 115).

Following the Court lifting the stay of briefing on Plaintiffs' Motion to Add Parties (Doc. 116), Defendant Joyce filed his brief in opposition to Plaintiffs' motion to file a Third Amended Complaint (Doc. 117).

## II. POSITIONS OF THE PARTIES ON THE ISSUE OF WHETHER THE NON-DIVERSE THIRD PARTY ASSIGNEES OF JOYCE ARE INDISPENSABLE PARTIES SUCH THAT THEIR JOINDER WOULD DESTROY DIVERSITY JURISDICTION AND THUS REQUIRE THAT PLAINTIFFS' COMPLAINT BE DISMISSED

### A. The Position of Defendant Joyce

**\*7** In his Brief in Support of his Position that Dismissal of Plaintiffs' Claims is Merited since Equity and Justice require Joinder of Indispensable Parties that Would Deprive the Court of Jurisdiction (Doc. 115), Joyce begins by asserting that the Lamar Plaintiffs have made it clear to the Court that they are pursuing rescission of the Settlement Agreement and

that "such rescission would result in Plaintiffs' termination of the site leases and facility leases (collectively, the "Leases"), that were contemplated in the Settlement Agreement and eventually entered into with Joyce." (*Id.* at 1). Quoting *Krupa v. Hilcorp Energy I LP*, 2014 WL 2506144, at \*13 (W.D. Pa. 2014) and *Fluent v. Salamanca Indian Lease Authority*, 928 F.2d 542, 547 (2d Cir. 1991), for the proposition that "it is well settled that 'in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable' ", Joyce argues:

If the joinder of any assignee divests the district court of subject matter jurisdiction (i.e., destroy diversity), the court must determine whether "in equity and good conscience" the action should proceed without that party, or whether the court should dismiss it, "the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). If joinder of any of the assignees precludes the Court from exercising diversity jurisdiction then the Court may not properly dismiss that assignee and instead must dismiss the entire action for lack of subject-matter jurisdiction. *Second State Enterprises, Inc. v. Mid-Atl. Investments, LLC*, 2014 WL 4091846, at \*3 (M.D. Pa. August 18, 2014). Put another way, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).

(Doc. 115, at 6-7).

Defendant Joyce then argues that "each assignee is a party to at least one of the Leases which Plaintiffs seek to invalidate," and that "[i]f a judgment is granted in Plaintiffs' favor then they intend to terminate the Leases[; t]ermination of the Leases will directly impact the rights of the assignees, who are parties to the Leases." (*Id.* at 8). Joyce further argues that if the Plaintiffs are successful they will either "simply cease making rental payments pursuant to the Leases or Plaintiffs will notify the assignees of the judgment in this matter and seek to enforce it as to them. Either of these options directly implicates the rights of the assignees and more than likely results in secondary litigation involving Plaintiffs, the assignees, and potentially Joyce." (*Id.* at 9).

Joyce further argues that the non-diverse third party assignees of his assignments will be unavoidably prejudiced if this action were to proceed in their absence. Joyce maintains that if Plaintiffs are successful in obtaining the rescission of the Settlement Agreement and the concomitant invalidation

Appx0912

2017 WL 4558006

of the Leases entered into under the Settlement Agreement, termination of those Leases will be to the prejudice of the assignees whose rights will have been unprotected throughout the litigation. (*Id.* at 10).

Joyce also contends that should this Court dismiss this action for lack of complete diversity, the Plaintiffs will have an adequate remedy in state court since the Settlement Agreement is governed by Pennsylvania law and all issues as to necessary and indispensable parties "could be decided in one matter." This, Joyce argues, "eliminates the risk of duplicative or inconsistent litigation." (*Id.* at 11).

Similarly, Joyce, in his Brief in Opposition to Plaintiffs' Motion to File a Third Amended Complaint (Doc. 117), asserts that Landmark, Bank of America, N.A., and Wilmington Trust are necessary and indispensable parties under Rule 19 "because they are the present holders of the Leases, and are entitled to be a party to an action where the validity of those Leases is being challenged." (*Id.* at 4-5). Thus, Joyce argues "because these parties are indispensable and must be joined, such joinder would deprive this Court of jurisdiction." (*Id.* at 5).

**\*8** Joyce also defends the timing of his assertion that the non-diverse third party assignees are indispensable parties, stating first that Lamar proceeded through the discovery phase of this case without ever asserting or otherwise indicating that they intended to seek termination of the Leases if they were successful in their claims that Joyce engaged in a material breach of the Settlement Agreement by violating the non-compete provisions therein. Thus, Joyce argues that he "did not know of any issue that would potentially implicate indispensable parties. Upon the first notification of Plaintiffs' intent to seek rescission of the Settlement Agreement and resultant intent to terminate the Leases, Joyce promptly raised the issue of indispensable parties." (*Id.* at 5). Joyce also notes that the failure to join a party under Rule 19(b) is a defect that "is so basic that it can be raised after trial, and either the district court or any appellate court may raise the issue *sua sponte.*" (*Id.*) (*quoting* 1 James Wm. Moore & Kevin Shirey, Moore's Federal Practice, ¶ 19.3(2015)).

Joyce argues again that "Landmark, BOA, and Wilmington Trust are 'necessary parties' under this subsection of Rule 19(a) [Rule 19(a)(1)(A) ] because the Court would not be able to grant the relief the Plaintiffs are seeking (terminating the Leases) without mandating joinder of the parties to whom the Leases are assigned." (Doc. 117, at 7). Joyce again submits

that the prejudice which would result if the assignees are not joined cannot be lessened or avoided in that the invalidation of the leases should Lamar be successful in this action would "directly affect and prejudice the assignees who are parties to the Leases." (*Id.* at 9). Joyce further states that he "cannot envision any protective measure in the judgment which might preclude the prejudice to the assignees that will come from invalidating the Leases." (*Id.*) Thus, Joyce requests that this Court deny Plaintiffs' Motion to File a Third Amended Complaint because that Complaint "does not join three necessary and indispensable parties to said claims, and consequently it would not survive a motion to dismiss." (*Id.* at 12).

### B. The Position of the Lamar Plaintiffs

The Lamar Plaintiffs, in their proposed Third Amended Complaint, "acknowledge that by virtue of the recent assignment by Joyce and/or AMB Investments and Lofts at the Mill, L.P., of their lease interests to Landmark and Bank of America and Wilmington Trust, these assignees possess a putative interest in the outcome of this litigation that would, in this Honorable Court's discretion, warrant their joinder." (Doc. 104-1, ¶ 59).

Lamar then asserts in the next paragraph that when it was made aware of the assignments of certain site leases to Landmark on or about February 3, 2016, it "promptly notified Landmark of this litigation and advised Landmark that it was seeking a judicial declaration that by virtue of Joyce's violation of the 1998 Settlement Agreement, Lamar was entitled to a discharge of all of its obligations to perform under the subject leases." (*Id.* at ¶ 60).

The Lamar Plaintiffs further assert that the joinder of Landmark and Wilmington Trust is not required because they "do not meet the criteria for being a necessary party under Rule 19(a)." (*Id.* at ¶ 61). Alternatively, Lamar asserts that should the Court find that Landmark and Wilmington Trust are necessary parties, their joinder is not feasible "because joinder would defeat diversity of citizenship and deprive this Court of jurisdiction." (*Id.* at ¶ 62).

The Lamar Plaintiffs also claim that the joinder of Landmark, Bank of America and Wilmington Trust "will work a substantial hardship and prejudice to Lamar by requiring them to essentially begin this litigation all over again by virtue of what amount to several 'eleventh hour' conveyances by Joyce

on the eve of trial in order to avoid a merits determination as to whether Lamar is entitled to relief." (*Id.* at ¶ 63).

Finally, Lamar Plaintiffs claim that "both Landmark and Bank of America, and Wilmington Trust were aware of the instant litigation and chose to enter into these transactions and assignment with Joyce notwithstanding the instant litigation." (*Id.* at ¶ 64).

**\*9** Thus Lamar requests that this Court enter an Order declaring that Landmark, Bank of America, and Wilmington Trust "are not indispensable parties under F.R.C.P. 19 and permit the action to proceed among the parties named in this Third Amended Complaint." (Doc. 104-1, at 24).

The Lamar Plaintiffs, in their "Memorandum of Law In Opposition to Compulsory Joinder of Parties" (Doc. 114) note that Landmark, Bank of America, N.A., and Wilmington Trust are all Delaware companies (*id.* at 2 n.2) and that by letter dated May 13, 2016, "Plaintiffs' counsel advised the Court of the identity of the above-named non-diverse assignees of the defendant" (*id.* at 3). Plaintiffs argue that their suit may proceed against Joyce without the joinder of the third party non-diverse assignees because they "are not indispensable parties under Rule 19(b)." (*Id.* at 12).

In support of this argument, the Lamar Plaintiffs rely upon *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399 (3d Cir. 1993). (Doc. 114, at 4-6). Lamar likens the facts of the present case to those in *Janney* where only one co-obligor was made a defendant by Janney and the Court determined that the other co-obligor need not be joined because that co-obligor, the Underwood Group, Ltd., which was the parent of Shepard Niles, was jointly and severally liable to Janney and need not be joined by Janney should it decide to proceed against Shepard Niles only. *Janney*, 11 F.3d at 409. Thus, Lamar argues that "[i]f the Agreement in question could be construed or interpreted as a contract imposing joint and several liability on its co-obligors, the Court stated that 'complete relief may be granted in a suit against only one of them.' " (Doc. 114, at 5)(quoting *Janney* at 406). Lamar therefore argues that:

> it is not necessary to join Defendants' assignees in order to grant the Plaintiff the relief he is seeking. An order terminating the Agreement will

relieve the Plaintiffs of any further performance thereunder. Plaintiff's claim for breach-related restitution damages is only against the current Defendant. To the extent Defendant's assignees may bear any liability to the Plaintiffs in this matter, such liability would be joint and several.

(Doc. 114, at 5-6).

On this basis, the Lamar Plaintiffs argue that the Court can afford complete relief to them without the joinder of Joyce's third party non-diverse assignees so that they are not necessary parties under Rule 19(a)(1)(A).

With respect to the requirements of Rule 19(a)(1)(B)(i), Lamar asserts that "[a]s none of Defendant's assignees have claimed an interest in this matter or otherwise attempted to join the litigation as a party, F.R.C.P. 19(a)(1)(B) is not applicable to the analysis of whether they are necessary parties to this litigation." (*Id.* at 6). Yet, Lamar also argues that if the Court finds that the assignees of Joyce have claimed an interest in this matter, where an action results in a " 'persuasive precedent' against an absent party, the disposition of the action in that party's absence does not impair or impede that party's ability to protect its interest within the meaning of Rule 19(a)(2)(i)." (*Id.* at 7) (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 317(3d Cir. 2007)). Again, Lamar argues that Joyce's assignees are not necessary parties under Rule 19(a)(1)(B)(i).

**\*10** As to Rule 19(a)(1)(B)(ii), Lamar argues that if it is successful in establishing that Joyce engaged in a material breach of the Settlement Agreement and it accordingly terminates the Leases which have been assigned by Joyce to the non-diverse third party assignees, Joyce's assignees "would likely pursue breach of contract, contribution and/ or indemnification claims against the Defendant[; h]owever, Defendant would not be subject to 'the substantial risk of double, multiple or otherwise inconsistent obligations' in any subsequent litigation pursued by its assignees." (Doc. 114, at 7-8). Lamar argues that if the Court determines that the Agreement and the underlying Leases are terminated, "the assignees' claims against the Defendant would simply be to recover the consideration amount they bargained for and expected to receive, i.e., future lease payments." (*Id.* at 8). Lamar then concludes this argument by stating: "As

Lamar Advantage GP Company, LLC v. Joyce, Not Reported in Fed. Supp. (2017)

2017 WL 4558006

the Defendant was already compensated by the assignees based on the amounts it received in exchange for assigning the leases, no reasonable argument can be made that the Defendant would somehow now be subjected to 'double, multiple or otherwise inconsistent obligations' if the Court terminated the Agreement and the underlying leases." Accordingly, Lamar argues that Defendant's assignees "are not necessary parties under Rule 19(a)(1)(B)(ii)." (*Id.*).

Lastly, the Lamar Plaintiffs acknowledge they "would be able to re-file the action and seek the same remedies in state court against all parties" if this Court were to dismiss this case for lack of subject matter jurisdiction because of the non-joinder of Defendant's non-diverse third party assignees. Lamar argues, however, that requiring the Plaintiffs to do so would result "in considerable delay and increased costs" and that it is unfair to place these burdens upon the Plaintiffs because Joyce "intentionally attempted to destroy diversity in this matter on the eve of trial when he made the lease assignments." (*Id.* at 11).

Lamar concludes with the request that this Court allow the matter to proceed "among the existing parties who are all diverse." (*Id.* at 12).

### III. ANALYSIS

As stated at the outset of this Opinion, the fundamental issues before this Court are whether, under Federal Rule of Civil Procedure 19, the non-diverse lease assignees of Defendant Joyce must be joined as parties in this case under Rule 19(a) and, if they must be so joined, whether they are indispensable parties whose joinder, because it will operate to destroy complete diversity in this case, requires that this Court dismiss the Lamar Plaintiffs' Complaint.

In order to resolve these issues, a careful application of Rule 19 is required, and accordingly we begin with the Rule itself. Rule 19 provides:

**(a) Persons Required to Be Joined if Feasible.**

**(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**(2)** *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

**(3)** *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**\*11 (2)** the extent to which any prejudice could be lessened or avoided by:

**(A)** protective provisions in the judgment;

**(B)** shaping the relief; or

**(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

**(c) Pleading the Reasons for Non-joinder.** When asserting a claim for relief, a party must state:

**(1)** the name, if known, of any person who is required to be joined if feasible but is not joined; and

**(2)** the reasons for not joining that person.

Appx0915

2017 WL 4558006

Fed. R. Civ. P. 19.

Our Circuit, in *General Refractories Company v. First State Insurance Company,* discussed each of the requirements of Rule 19 for determining whether under subsection (a) a party may be deemed a "necessary party" who must be joined and whether such party must be deemed an "indispensable" party under subsection (b) whose joinder, if not feasible, will require the dismissal of a complaint.

The Court in *General Refractories* began its analysis as follows:

> Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory. In reviewing the district court's conclusion in this regard, we first must determine whether the absent insurers should be joined as "necessary" parties under Rule 19(a). If they should be joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship (as would be the case here), we next must determine whether the absent parties are "indispensable" under Rule 19(b). Should we answer this question in the affirmative, the action cannot go forward. *Janney Montgomery Scott,* 11 F.3d at 404 (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,* 844 F.2d 1050, 1053–54 (3d Cir. 1988)).

500 F.3d at 312.

The Court, after setting out the text of Rule 19(a), noted that "[c]ourts treat clauses (1) and (2) in the disjunctive just as the rule phrases them." *Id.* The Court explained this statement, quoting its prior decision in *Koppers Co. v. Aetna Cas. & Sur. Co.,* 158 F.3d 170, 174 (3d Cir. 1998) as follows: "As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible". *Id.* Further, the Court made clear that:

> a holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule 19(b) that it must dismiss a case because joinder is not feasible (i.e., will defeat diversity) and the party is indispensable to the just resolution of the controversy. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.* 11 F.3d 399, 405 (3d Cir. 1993).

*Id.* at 313.

In delineating the requirements of Rule 19(a)(1), the Court added:

> Under Rule 19(a)(1) we ask whether complete relief may be accorded to those persons named as parties to the action in the absence of any unjoined parties. As should be apparent, we necessarily limit our Rule 19(a)(1) inquiry to whether the district court can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial. *Angst v. Royal Maccabees Life Ins. Co.,* 77 F.3d 701, 705 (3d Cir. 1996) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought.");
>
> *Janney Montgomery Scott,* 11 F.3d at 405 (same).

**\*12** *Id.* (italics in original).

The Court then focused on Rule 19(a)(2) stating:

> Notwithstanding a determination that complete relief may be accorded to those persons already named as parties to an action, a court still may deem a party "necessary" under subsection (a) (2) of Rule 19. Unlike subsection (a) (1), subsection (a)(2) requires the court to take into consideration the effect that resolution of the dispute among

Appx0916

2017 WL 4558006

those parties before it may have on any absent parties.

*Id.* at 316.[2] Under this subsection, "the Court must decide whether determination of the rights of those persons named as parties to the action would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation." *Id.* Thus, "[i]t must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." *Id.* (quoting *Janney*, 11 F.3d at 409).

As for the other requirement of the former Rule 19(a)(2)(ii), now set forth as Rule 19(a)(1)(B)(ii), the Court in *General Refractories* explained the Court's duty under this section, stating "a Court must decide whether continuation of the action would expose named parties to the 'substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.' " *Id.* at 317.

The application of Rule 19 requires a court, once it determines that a party is a "necessary" party under Rule 19, to then determine whether the party is "indispensable" under Rule 19(b). Thus, the Court in *General Refractories* continued:

> As we noted above, when a party is deemed "necessary" under Rule 19(a), joinder must occur if feasible. If joinder of a "necessary" party would divest the district court of subject matter jurisdiction (i.e., destroy diversity), a court must determine whether "in equity and good conscience" the action should proceed without that party, or whether the court should dismiss it, "the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). Put another way, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction.

500 F.3d at 319.

The Court discussed the four factors listed in Rule 19(b), first noting that:

> The first and second factors under Rule 19(b) are "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties," and to what extent such prejudice "can be lessened

or avoided." Notably, the first factor under Rule 19(b) overlaps considerably with the Rule 19(a) analysis.

*Id.* at 320.

Once again, quoting its prior decision in *Janney*, the Court emphasized that " '[a] defendant's right to contribution or indemnity from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19.' " *Id.* at 320 (quoting *Janney*, 11 F.3d at 412).

**\*13** As to the third factor under Rule 19(b), the Court observed that this element allows the Court to consider "whether a judgment rendered in the person's absence will be adequate", and further observed that it "allows the court to consider whether the relief it grants will prove an adequate remedy for the plaintiff." *Id.* at 320-321. The Court repeated its admonition that "[t]he right to contribution and indemnity should not, therefore, be considered to cause inadequacy of the resulting judgment." *Id.* at 321.

Lastly, with respect to the fourth factor in Rule 19(b)—"whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder"—the Court viewed Rule 19 as "counsel[ing] that courts should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." *Id.*

With this analytical framework, we now address the particulars of the Rule 19 issues before this Court.

## A. Application of Rule 19(a)

First, this Court must determine whether the absent parties, Landmark, Bank of America, and Wilmington Trust are "necessary" to this action. We begin with Rule 19(a)(1)(A). There, the question presented is whether the absence of each or any of these non-diverse third party assignees of Defendant Joyce prevents the Court from according complete relief among the existing parties to this action. Here, it appears that the Court can accord complete relief among the parties already in this case. Should Lamar prevail on its breach of contract claim against Joyce, and further, should Lamar establish that Joyce's breach of contract is a material breach, then Lamar will be excused from further performance under the Settlement Agreement and accordingly may terminate the leases which were entered into by its assignor, Chancellor,

Case 1:21-cv-10006 Document 21-3 Filed 07/25/22 Page 350 of 500

Lamar Advantage GP Company, LLC v. Joyce, Not Reported in Fed. Supp. (2017)

2017 WL 4558006

with Joyce and which are specifically referenced in paragraph 2B and 2C of the Settlement Agreement (Doc 85-2). *See LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 641 (Pa. 2009) ("[W]e conclude that Pennsylvania law permits the immediate termination of such a contract [i.e., a contract that includes an express provision granting the breaching party the right to cure before the contract is terminated] when there is a material breach of the contract so serious it goes directly to the heart and essence of the contract, rendering the breach incurable ..."). *See also, Int'l Diamond Importers, Ltd., v. Singularity Clark, L.P.*, 40 A.3d. 1261, 1271 (Pa. Super. 2012) ("a 'material breach' relieves a non-breaching party of its obligation to perform ...").

Thus, were Lamar to prevail in this action and, in so doing, establish that Joyce's breach of the Settlement Agreement was indeed material, Lamar would be excused from further performance. This would in turn mean that Lamar could properly terminate, or fail to comply with, the leases that its assignor, Chancellor, had entered into with Joyce and which have now been assigned by Joyce to the third party non-diverse assignees named above. The result of such a termination of the leases assigned to Landmark, Bank of America, and Wilmington Trust is the cessation of lease payments from Lamar to Landmark, Bank of America, and Wilmington Trust. But certainly as to the entities "already named" as parties to this action, *General Refractories, supra* at 313, this Court can accord complete relief.[3]

**\*14** Rule 19(a)(1)(B), on the other hand, requires a different conclusion. The three third-party, non-diverse assignees clearly claim an interest relating to the subject of this action and are in fact so situated that disposing of the action in the assignees' absence will "as a practical matter impair or impede" each assignee's ability to protect its interest. *See* Rule 19(a)(1)(B)(i); Moore's Federal Rules Pamphlet 2017, § 19.4[1][b] ("Under the second test of Rule 19(a)(1)(B), if the absentee has an interest in the subject of the action that could be impaired or impeded or that might leave the present parties subject to inconsistent obligations, the absentee is a required party. 4 MOORE'S FEDERAL PRACTICE § 19.03 [3],[4] (Matthew Bender 3d ed.)").

Landmark, Bank of America, and Wilmington Trust, as assignees of Joyce have an interest relating to the subject of this action, the protection of which may be impaired by their absence in this proceeding.

In *Krupa v. Hilcorp Energy I LP*, 2014 WL 2506144 (W.D. Pa. 2014), the Court adopted the Report and Recommendation of the Magistrate Judge and held that the assignees of certain leases were indispensable parties in an action where the plaintiffs sought a declaratory judgment that the leases were void *ab initio* and that any purported assignments of the rights under those leases were also void *ab initio*.

The Court granted the plaintiffs' motion for remand to state court. The Magistrate Judge, whose Report and Recommendation had been adopted, had written:

> Plaintiffs are challenging the validity of the Leases, thus placing at issue the validity of all the subsequent assignments of those Leases. It is well settled that "in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) (citing *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975); *McClendon v. United States*, 885 F.2d 627, 633 (9th Cir. 1989)). Thus, if it is ultimately determined that the Krupa Lease and Class Member Leases are void *ab initio*, then none of the subsequent assignments would be valid, and any declaratory relief granted will have a collateral effect on the rights and interests of the subsequent assignees/assignors, including ERI. For that reason, the Court finds that all of the subsequent assignees/assignors with the exception for ERM, are necessary parties to this declaratory judgment action.

2014 WL 2506144, at \*13.

The *Salamanca Indian Lease* decision, relied upon in *Krupa*, leaves no question that parties who are affected by an action to set aside a lease or a contract are indispensable:

> There can be no doubt that the Nation qualifies under rule 19(a) as an indispensable party to these claims. As a party to an Agreement negotiated for over two decades, the Nation's interest in the validity of the lease agreement is significant. *See Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) (citing *Lomayaktewa*, 520 F.2d at 1325 ("[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable"));

2017 WL 4558006

*McClendon v. United States*, 885 F.2d 627, 633 (9th Cir. 1989) (same).

*Salamanca Indian Lease*, 928 F.2d at 547. *See also*, *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 81 (1st Cir. 1982) ("Our conclusion that Action is an 'indispensable' party under Rule 19(b) is supported by other cases holding that an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined.").

**\*15** As in *Krupa*, the Lamar Plaintiffs here seek to invalidate the leases which Joyce entered into with Lamar's assignor, Chancellor, as part of its claimed remedy for the material breach of the Settlement Agreement which it asserts has been engaged in by Joyce. In doing so, Lamar has, as did the plaintiff in *Krupa*, "plac[ed] at issue the validity of all the subsequent assignments of those Leases." *Krupa*, 2014 WL 2506144, at 13. [4]

Should it be determined that Joyce has in fact engaged in a material breach of the Settlement Agreement and that the Lamar Plaintiffs are entitled to terminate the leases which have been assigned to the non-diverse assignees, Landmark, Bank of America, and Wilmington Trust, then, as in *Krupa*, the rights and interests of these assignees would be directly placed at risk of termination. In effect, the lease payments which the Lamar Plaintiffs would otherwise pay to any one or all of these non-diverse third party assignees would cease. In those circumstances, that the interests of these assignees would be impaired is beyond dispute.

The conclusion that Landmark, Bank of America, and Wilmington Trust are parties who must be joined and in fact are indispensable to this case is significantly buttressed by the decision in *Denkmann Associates v. International Paper Company*, 132 F.R.D. 168 (M.D. La. 1990). There, the District Court held that the assignee of certain timber rights under two agreements was an indispensable party in a suit by a predecessor in interest seeking to rescind the lease agreements. Since the assignee, IP Timberlands Operating Company, Ltd. ("IPTO") was determined to be an indispensable party and IPTO could not be named as a party without destroying diversity jurisdiction, the action was dismissed.

In *Denkmann*, the plaintiff, Denkmann Associates, filed suit against International Paper Company seeking rescission of two agreements involving timber lease and mineral rights in Louisiana and Mississippi ("the 1945 Agreements"). Under the 1945 Agreements, the timber interests of properties owned by Denkmann Lumber Company were transferred to Southern Kraft for a period of 99 years. Southern Kraft then assigned all of its interest in the 1945 Agreements to International Paper. International Paper then transferred all of its interest to IP Timberlands, Ltd., and IP Timberlands transferred its interest to IPTO. 132 F.R.D. at 169. Denkmann Lumber Company, in turn, assigned its interest in the 1945 Agreements to Denkmann Associates and others. *Id.*

International Paper filed a motion to dismiss for failure to join an indispensable party and for lack of subject matter jurisdiction, asserting that the four factor test set forth in Rule 19(b) required a finding that IPTO was an indispensable party. International Paper argued that since IPTO held almost 100% of the timber rights under the leases and was the party in possession of the subject premises, its presence was required as a party indispensable to the resolution of the action.

**\*16** The Court identified the issue before it as follows:

> The issue before the Court is whether IPTO is an indispensable party to this litigation. If IPTO is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure, then the case must be dismissed for lack of subject matter jurisdiction under *Carden [v. Arkoma Assoc.*, 494 U.S. 185 (1990) ] since there is no diversity of citizenship between Denkmann and IPTO.

*Id.* at 171.

The District Court first found that "substantial doubt" existed as to whether complete relief could be accorded between Denkmann and International Paper. The Court reasoned:

> If Denkmann proves that International Paper is liable under the guaranty of the 1945 Agreements and/ or under operation of law for

Appx0919

2017 WL 4558006

any damages caused by IPTO, Denkmann would be entitled to a rescission of the 1945 Agreements. Presumably, the complete relief sought by Denkmann also includes being restored to possession of the timberland. However, IPTO is currently in possession of this timberland. Since IPTO is not a party to this litigation, any judgment would not be binding on it. Denkmann would have to resort to the state courts of Louisiana and Mississippi for recognition of any such termination of the 1945 Agreements against IPTO and to evict IPTO from possession of the timberland. It is possible and indeed probable that IPTO may have certain defenses to that action which might require the state court to relitigate all or part of this action.

*Id.* at 172.

The Court found that "IPTO should be joined as a party since complete relief cannot be accorded without its presence under Rule 19(a)(1)." The Court added that "[f]urthermore, IPTO's interest will be prejudiced without its presence under Rule 19(a)(2)(i)." *Id.* at 175.

Since diversity of citizenship was lacking as between IPTO and Denkmann, such that joinder of IPTO would destroy diversity jurisdiction, the Court then addressed whether the action could proceed without IPTO or whether the case must be dismissed for failure to join an indispensable party. *Id.* at 175-176.

Denkmann argued that neither it nor International Paper would be prejudiced if the case proceeded to trial without IPTO. *Id.* at 176. However the Court determined that the prejudice which IPTO would suffer if it were excluded as a party required its joinder. The Court explained:

What Denkmann fails to adequately address and consider is the prejudice which IPTO will suffer if it is excluded as a party. As discussed above, IPTO is the party in possession of the timberland in dispute and stands to lose the rights it now has for the remaining 54 years under the 1945 Agreements. Certainly IPTO has as much, if not more at stake in this litigation as Denkmann and any other party. Should the Court render a judgment which would cast a rescission of International Paper's rights under the 1945 Agreements, such a judgment could terminate IPTO's rights which were derived from International Paper under the 1945 Agreements even though IPTO would not be a party. The Court believes such a procedure would be harsh and not in the interest of justice or judicial economy.

**\*17** 132 F.R.D. at 176.

The Court's analysis in *Denkmann* has application to the case here where the third party non-diverse assignees of Joyce will suffer prejudice if this case proceeds in their absence, such as the Court in *Denkmann* found IPTO would face if it were not joined as a party. In this case, the Joyce third party non-diverse assignees expect to receive payments from the Lamar Plaintiffs for an additional 11 years. (*See* Settlement Agreement and Mutual Release, Doc. 85-2, dated October 23, 1998, and establishing terms of 30 years for the site leases (¶ 2(b)(i)) and a term of 30 years for the facility lease (¶ 2(c))). Should a judgment issue in this case rescinding the agreement between Joyce and Lamar on the basis of a material breach of that agreement by Joyce, the third party assignees' rights which were derived from Joyce's assignment of the leases entered into under the Settlement Agreement would be subject to termination, even though Landmark, Bank of America, and Wilmington Trust would not be parties to this action and would not have participated in this determination. Like the court in *Denkmann*, this Court believes such a procedure is not in the interest of justice or judicial economy. As in *Denkmann*, where that court observed that there was an available forum in which all the parties could litigate all of the issues at the same time, there is likewise such a forum here as will be addressed later in this Opinion.

Moreover, the court in *Denkmann* made clear that its decision was consonant with the principle that "an assignee of an agreement is generally an indispensable party to an action to terminate that agreement." 132 F.R.D. 178.

The Lamar Plaintiffs assert, citing to *Janney*, that joinder of the Joyce non-diverse third party assignees is not necessary since "[i]f the Agreement in question could be construed or interpreted as a contract imposing joint and several liability on its co-obligors, the Court [in *Janney*] stated that 'complete relief may be granted in a suit against only one of them.'" (Doc. 114, at 5). The Lamar Plaintiffs then argue that:

> it is not necessary to join Defendant's assignees in order to grant the Plaintiff the relief he is seeking. An order terminating the Agreement will relieve the Plaintiffs of any further performance thereunder. Plaintiff's claim for breach-related restitution damages is only against the current Defendant. To the extent defendant's assignees may bear any liability to the Plaintiffs in this matter, such liability would be joint and several. Where liability is several, complete relief may be granted in a suit against any one of severally liable parties.

(*Id.* at 5-6). Accordingly, the Lamar Plaintiffs argue that "because the Court can afford complete relief to the Plaintiff without joinder of Defendant's assignees, Defendant's assignees are not necessary parties under Rule 19(a)(1)(A)." (*Id.* at 6).

The Lamar Plaintiffs misread the decision in *Janney*. In that breach of contract action, Janney brought suit against only one of the *two co-obligors* who might be liable to it. Janney brought suit against Shepard Niles but not against its parent corporation, the Underwood Group, Ltd. Janney contended it was entitled under its Investment Banking Agreement to serve as an advisor to Underwood and its subsidiaries, including Shepard Niles, and to assist them in obtaining private placement financing to refinance Shepard Niles' debt obligations. 11 F.3d at 402. Subsequently, Underwood obtained private placement financing for Shepard Niles,

although not through Janney. Janney in turn contended that it provided substantial advice and support to Underwood and Shepard Niles and was therefore entitled to a contingent fee for its services. *Id.* at 402-403. Shepard Niles sought judgment on the pleadings against Janney for failure to join Underwood as an indispensable party. *Id.* at 403. The Court concluded that because the agreement between Janney and Underwood could be construed to impose joint and several liability, Underwood was not a necessary party under Rule 19(a) and that complete relief could be granted as between Shepard Niles and Janney without Underwood's presence. *Id.* at 406. This decision turned on the Court's determination that, consistent with principles of joint and several liability, a co-obligor is not a party whose joinder is required by Rule 19:

> **\*18** For the reasons already stated, we hold instead that Underwood, a co-obligor, is not a party whose joinder Rule 19(a)(2)(i) requires because continuation of the federal litigation in Underwood's absence will not create a precedent that might persuade another court to rule against Underwood on principles of *stare decisis*, or some other unidentified basis not encompassed by the rules of collateral estoppel or issue preclusion.

11 F.3d at 409.

*Janney* provides no support for the Lamar Plaintiffs because the joinder of co-obligors is not at issue here as it was in *Janney*. The co-obligors there, who were alleged to owe a fee to Janney, were Shepard Niles and its parent company, Underwood. Here, Joyce and its third party assignees are *co-obligees*, rather than co-obligors, in that Joyce initially was entitled to the lease payments to be made by the Lamar Plaintiffs for the leases granted to them under the terms of the Settlement Agreement and the third party non-diverse assignees, Landmark, Bank of America, and Wilmington Trust, became entitled to receive the lease payments from the Lamar Plaintiffs for the site and facility leases as assignees of Joyce with respect to those leases.

Significantly, the decision in *Janney* leaves no question that joint obligees are indispensable parties. In *Janney*, the Court discussed the First Circuit's decision in *Acton Co. v. Bachman Foods, Inc.* There, Acton Co., Inc. of Massachusetts ("ACIM"), filed suit, alleging that Bachman had breached an agreement that it had entered into with ACIM and Acton Corp., ACIM's parent company. The suit sought damages and a declaratory judgment that no enforceable agreement existed between Bachman and ACIM. The Court held that Acton Corp., as a co-obligee of the agreement, was an indispensable party and must be joined, despite the fact that the joinder of Acton Corp. would defeat diversity. *Janney*, 11 F.3d at 408. The First Circuit's concern focused on the ability of Acton Corp., as a co-obligee on the agreement with Bachman, to bring a separate cause of action against Bachman that could subject Bachman to double liability on the same claim that ACIM was making in the federal action.

Distinguishing *Acton* on the basis that Shepard-Niles and Underwood were co-obligors, the Court in *Janney* nonetheless recognized that joint obligees, like Acton Corp. and ACIM, are indispensable parties whose nonjoinder requires dismissal:

> [The *Acton* court] held Acton's presence was necessary for the grant of complete relief. [ ]. No such concern is present here. Shepard Niles argues that Underwood is a necessary and indispensable defendant because it is potentially a co-obligor with Shepard Niles, not a potential co-obligee, as in *Acton*. As one commentator has noted:

>> Today the joinder of obligors is left to plaintiff's discretion by many courts and he may select defendants without being concerned about dismissal because of nonjoinder. Joint obligors thus are treated as Rule 19(a) parties but are not deemed indispensable under Rule 19(b) .... Joint *obligees*, on the other hand, usually have been held indispensable parties and their nonjoinder has led to a dismissal of the action.

> 7 Charles A. Wright et al., *Federal Practice and Procedure* § 1613 at 182-85 (1986) (emphasis and footnote added); *cf.* *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 586–87 (11th Cir. 1983) (endorsing distinction between obligor and obligee in evaluating whether absent joint obligor was indispensable party under Rule 19); *Wolgin*, 397 F.Supp. at 1012 ("[J]oint obligors (persons who owe a duty of performance), as opposed to joint obligees (persons to whom a duty is owed), have

never been considered indispensable parties.") (citations omitted).

**\*19** *Id.* at 408.

Here, Joyce and the third party assignees are obligees in that they are entities to whom a duty, in this case the duty to make lease payments, is owed. They are as such indispensable parties as joint obligees under *Janney*. Thus, the case law with respect to the necessary joinder of parties, including assignees, who have an interest in a contract or a lease sought to be rescinded, as well as the status of Joyce and his third party non-diverse assignees as obligees, require their joinder.

As a result, the issue that now remains before this Court is whether such joinder is feasible. This in turn requires the application of the four factors set forth in Rule 19(b)(1-4). [5]

**B. Application of Rule 19(b)**

Where, as here, a court determines that a party must be joined under Rule 19(a), but that doing so is not "feasible", "then the court analyzes Rule 19(b) to determine if 'in equity and good conscience,' the necessary party is indispensable." *Foster Owners Co., LLC v. Farrell*, 2015 WL 778758, at \*3 (D.N.J. 2015). "In other words, where joinder is procedurally infeasible, the court must evaluate whether 'the action should proceed among the existing parties or should be dismissed.' Fed.R.Civ.P. 19(b); *see also* *Guthrie Clinic Ltd. v. Travelers Indem. Co. of Ill.*, 104 Fed. Appx. 218, 221 n.4 (3d Cir. 2004)." *Id.*

These Rule 19(b) principles were distilled by the Court in *General Refractories* and stated as follows:

> [W]hen a party is deemed "necessary" under Rule 19(a), joinder must occur if feasible. If joinder of a "necessary" party would divest the district court of subject matter jurisdiction (i.e., destroy diversity), a court must determine whether "in equity and good conscience" the action should proceed without that party, or whether the court should dismiss it, "the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). Put another way, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction.

500 F.3d at 319.

2017 WL 4558006

The Court in *General Refractories* turned to the four factors listed in Rule 19(b) which a court must consider in determining whether, where joinder of an absent party is not feasible, the action should proceed among the existing parties or should be dismissed.[6] The Court explained that while these four factors are not exhaustive, they are deemed to be " 'the most important considerations' in determining whether a party is indispensable." *Id.* (citing to Gardiner v. V.I. Water & Power Auth., 145 F.3d 635, 640 (3d Cir. 1998)).

**\*20** The application of the four factors compels the conclusion here that the action should not proceed among the existing parties and instead should be dismissed. We now discuss the application of those factors which warrant that conclusion.

*1. The extent to which a judgment rendered in the absence of Landmark, Bank of America, and Wilmington Trust might prejudice any of these assignees of Joyce or the existing parties to this action.*

This Court, in its discussion of *Krupa v. Hillcorp Energy, supra,* has already recognized the principle that "in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Krupa,* 2014 WL 2506144, at \*13. This principle underlies the ruling in *Denkmann Associates, supra,* 132 F.R. D. at 178 ("[a]n assignee of an agreement is generally an indispensable party to an action to terminate that agreement."). Here, the Joyce non-diverse third party assignees expect to receive lease payments for the Site Leases and Facility Lease from Lamar as the assignee of Chancellor under the Settlement Agreement between Chancellor and Joyce for the next 11 years. (*See* Settlement Agreement and Mutual Release, Doc. 85-2, dated October 23, 1998, and establishing terms of 30 years for the site leases (¶ 2(b)(i)) and a term of 30 years for the facility lease (¶ 2(c))). Clearly, the assignees, as the entities who expect to receive payments from the Lamar Plaintiffs, have a substantial stake in the subject action at issue here and a judgment rendered in each assignee's absence would prejudice that assignee in a direct and significant way.

As in *Denkmann,* "[i]t is possible and indeed probable" that the assignees may have certain defenses that would not be asserted in this Court as a result of their absence and "which might require the state court to relitigate all or part of this action." *Denkmann,* 132 F.R.D. at 172.

As noted in *General Refractories,* "the first factor under Rule 19(b) overlaps considerably with the Rule 19(a) analysis." 500 F.3d at 320. This court, having found that under Rule 19(a)(1)(B) the third party assignees of Joyce claim an interest relating to the subject matter of this action and are so situated that disposing of this action in their absence may impair or impede their ability to protect their interests, also finds under Rule 19(b)(1) that a judgment rendered in the absence of the third party assignees of Joyce would prejudice their interests, specifically their right to receive lease payments from Lamar in the circumstance where Lamar obtains a judgment terminating those leases on the basis of Joyce's material breach of the Settlement Agreement.

*2. The extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures.*

Here, the prejudice that would ensue with respect to the third party non-diverse Joyce assignees cannot be lessened or avoided by protective provisions in the judgment or by otherwise shaping the relief to which the Lamar Plaintiffs would be entitled should they succeed in establishing that Joyce engaged in a material breach of the Settlement Agreement.

At the pretrial conference held in this matter on February 12, 2016, the Lamar Plaintiffs expressed their firm intention to seek the termination of the site and facility leases to which they are a party with Joyce. Counsel for Lamar, in response to a suggestion from the Court that the issue of the indispensability of Joyce's non-diverse third party assignees might be avoided if the Lamar Plaintiffs agreed not to pursue the termination of those leases if they were successful in their suit against Joyce, specifically declined to agree to such a protective provision in the judgment or to the shaping of any relief to which Lamar may be entitled if successful in this action. (*See* Off. Pretrial Tr., Feb. 12, 2016, at 15). As a result, it is clear that there are no protective provisions, nor any manner in which the Court could shape relief, or take other measures, which could lessen or avoid the prejudice that the non-diverse assignees would suffer were they not joined. It also bears noting that Plaintiffs have offered none.

*3. Whether a judgment rendered in the absence of the Joyce non-diverse third party assignees would be adequate.*

2017 WL 4558006

**\*21** For the reasons offered with respect to factor one under Rule 19(b), a judgment rendered in the absence of the non-diverse assignees would not be adequate. Such a judgment implicates fundamental considerations of procedural due process if it were advanced by the Lamar Plaintiffs as grounds for terminating their obligation to make payments under the site and facility leases which had been assigned to the Joyce assignees. This conclusion follows unavoidably from the accession of the Joyce assignees to the rights of Joyce under the site and facility leases and, specifically, the right to receive the lease payments from Lamar for the remaining term of those leases.

*4. Whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.*

"Rule 19 counsels that courts should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." *Gen. Refractories,* 500 F.3d at 321.

The Lamar Plaintiffs, in their Memorandum in Opposition to Compulsory Joinder of Parties, acknowledge that "[i]f the Court did dismiss the case for lack of subject matter jurisdiction based on the non-joinder of Defendant's assignees, the Plaintiffs would be able to re-file the action and seek the same remedies in state court against all parties." (Doc. 114, at 11). The statement of the Lamar Plaintiffs is correct. Pennsylvania has specifically provided, at 42 Pa.C.S.A. § 5103(b), that "[w]here a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth in paragraph (2)." The full text of § 5103 is set forth as follows:

(a) General rule.—If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter; but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth. A matter which is within the exclusive jurisdiction of a court or magisterial district judge of this Commonwealth but which is commenced in any other tribunal of this Commonwealth shall be transferred by the other tribunal to the proper court or magisterial district of this Commonwealth where it shall be treated as if originally filed in the transferee court or magisterial district of this Commonwealth on the date when first filed in the other tribunal.

(b) Federal cases.—

(1) Subsection (a) shall also apply to any matter transferred or remanded by any United States court for a district embracing any part of this Commonwealth. In order to preserve a claim under Chapter 55 (relating to limitation of time), a litigant who timely commences an action or proceeding in any United States court for a district embracing any part of this Commonwealth is not required to commence a protective action in a court or before a magisterial district judge of this Commonwealth. Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth in paragraph (2).

**\*22** (2) Except as otherwise prescribed by general rules, or by order of the United States court, such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth. The pleadings shall have the same effect as under the practice in the United States court, but the transferee court or magisterial district judge may require that they be amended to conform to the practice in this Commonwealth. Section 5535(a)(2)(i) (relating to termination of prior matter) shall not be applicable to a matter transferred under this subsection.

(c) Interdivisional transfers.—If an appeal or other matter is taken to, brought in, or transferred to a division of a court to which such matter is not allocated by law, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper division of the court, where the appeal or other matter shall be treated as if originally filed in the transferee division on the date first filed in a court or magisterial district.

2017 WL 4558006

(d) Definition.—As used in this section "tribunal" means a court or magisterial district judge or other judicial officer of this Commonwealth vested with the power to enter an order in a matter, the Board of Claims, the Board of Property, the Office of Administrator for Arbitration Panels for Health Care and any other similar agency.

42 Pa.C.S.A. § 5103.

In *Williams v. F.L. Smithe Machine Co., Inc.*, the Pennsylvania Superior Court stated:

> It is evident from the clear and unambiguous language of 42 Pa. C.S.A. § 5103(a) and (b), that if a matter is originally filed within the statute of limitations in the federal court, but is dismissed for lack of jurisdiction by the federal court, the litigant may then effect a transfer of the action to state court by complying with the provisions set forth in 42 Pa. C.S.A. § 5103(b)(2). The state court will treat the matter as if originally filed in the state court if the litigant complies with the dictates of 42 Pa. C.S.A. § 5103(b)(2).

577 A.2d. 907, 909 (Pa. Super. 1990), *app. denied*, 593 A.2d 422 (Pa. 1991).

The Court in *Williams* also made clear that:

> in order for [§ 5103] to apply to prevent a litigant from losing the opportunity to litigate his case on the merits simply because he is in error regarding federal jurisdiction, it is not necessary that the federal court transfer the case or take other action following the determination that federal jurisdiction is absent. All that is required is an order entered by the federal court dismissing the matter for lack of jurisdiction. It is then

incumbent upon the litigant to take further action under the statute to move the case to state court.

*Id.*

In *Williams*, the federal district court had previously dismissed the action because "appellants are citizens of Pennsylvania and F.L. Smithe Machine Co., Inc. is a Pennsylvania corporation, thus preventing the exercise of diversity jurisdiction by the federal court." *Id.* at 908. *See also, Windle v. Earl*, 2012 WL 1694542 (E.D. Pa. 2012) (Where diversity of citizenship is lacking, plaintiff could still seek relief in state court under § 5103(a)(b)).

Because the joinder of Landmark, Bank of America or Wilmington Trust would destroy complete diversity and because this Court has found that each of these assignees is an indispensable party to the pending action between the Lamar Plaintiffs and Joyce, this Court has determined in accordance with the factors set forth in Rule 19(b)(1-4) that this action should not proceed among the existing parties and instead should be dismissed for lack of jurisdiction.

## IV. PLAINTIFFS' MOTION TO ADD ADDITIONAL PARTIES

**\*23** As previously mentioned, in addition to the parties' briefing on the issue of whether the assignees, and in particular the non-diverse assignees, are indispensable parties and must be joined, Plaintiffs also filed a Motion to Add Additional Parties (Doc. 104). Specifically, Plaintiffs moved to add Lofts at the Mills, L.P., Lofts GP, LLC, AMB Investments of Pennsylvania, Inc., and May Acquisition, LLC, all entities whose joinder would not defeat diversity.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has described Federal Rule 15 as follows:

> [Rule 15(a)'s] mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the

Appx0925

2017 WL 4558006

merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 222 (1962) (internal citations omitted); *see also Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility.").

Here, the Court has already found that non-diverse assignees Landmark Infrastructure Holding Company, LLC, Bank of America, N.A., and Wilmington Trust National Association are indispensable parties who must be joined. Therefore, allowing Plaintiffs to amend their Complaint to add the proposed parties would be futile, in that the three indispensable parties would remain absent from this action. Plaintiffs' motion will therefore be denied.

## V. CONCLUSION

For the foregoing reasons, the Court will dismiss this action for lack of subject matter jurisdiction. A separate Order shall issue.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4558006

## Footnotes

1    Judge Carlson's analysis with respect to the cross-motions for summary judgment properly turned on the existence of disputes of material fact which precluded summary judgment. For purposes of the issue now addressed by this court, i.e., whether the assignees of Joyce on the leases he entered into with Lamar as obligor must be joined as indispensable parties under Rule 19, extended discussion of Judge Carlson's R&R is not necessary.

2    Rule 19(a)(2) is now Rule 19(a)(1)(B)(i) as a result of an amendment to the Rule made effective December 1, 2007.

3    While it might be argued that this conclusion is erroneous because Lamar, even if successful, may face opposition from the assignees when it ceases making lease rental payments to them, Lamar has made no such argument. Indeed Lamar has argued that complete relief can be accorded among existing parties in the absence of the third party non-diverse assignees of Joyce. (*See* Doc. 114 at 6)("Therefore, because the Court can afford complete relief to the Plaintiff without joinder of Defendant's assignees, Defendant's assignees are not necessary parties under Rule 19(a)(1)(A).") Joyce, of course, has not only argued that its third party non-diverse assignees are necessary parties but that they are also indispensable, and since their joinder would destroy diversity, the Complaint must be dismissed.

4    The plaintiff in *Krupa* sought a determination that the leases at issue and the subsequent assignments were void *ab initio.* Here, the Lamar Plaintiffs seek to terminate their leases with Joyce based on the claim of a material breach by Joyce of the Settlement Agreement and their right to rescind that agreement. That Plaintiffs here seek to terminate the leases entered into under the Settlement Agreement as a remedy for Joyce's alleged breach of the Settlement Agreement rather than on the basis of a declaration that the leases are void *ab initio,* makes the principles set forth in *Krupa* requiring joinder of the lease assignees no less applicable here.

5   With respect to whether joinder of Landmark, Bank of America, or Wilmington Trust is required under Rule 19(a)(1)(B)(ii), neither defendant Joyce nor the Lamar Plaintiffs assert its application here. To the extent that this subsection of Rule 19(a) needs to be considered, the Court observes only that the nonjoinder of the third party assignees of Joyce could leave Joyce subject to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest" of the absent assignees, although Joyce does not argue for joinder on this basis.

6   The four factors are:

  (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

  (2) the extent to which any prejudice could be lessened or avoided by:

   (A) protective provisions in the judgment;

   (B) shaping the relief; or

   (C) other measures;

  (3) whether a judgment rendered in the person's absence would be adequate; and

  (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

  Fed.R.Civ.P. 19(b).

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

5

Liggon-Redding v. American Sec. Ins. Co., Not Reported in F.Supp.2d (2009)

2009 WL 3101068

2009 WL 3101068
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Elizabeth LIGGON–REDDING, Plaintiff

v.

AMERICAN SECURITY INSURANCE CO.
and National City Mortgage Co., Defendants.

No. 3:06cv227.
|
Sept. 23, 2009.

**Attorneys and Law Firms**

Matthew J. Butler, Timothy G. Lenahan, Lenahan &
Dempsey, PC, Scranton, PA, for Plaintiff.

John P. Rodgers, Wetzel, Caverly, Phillips Ad Rodgers,
Wilkes-Barre, PA, David A. Silverstein, Philadelphia, PA,
Lorraine Doyle, Udren Law Offices, P.C., Cherry Hill, NJ, for
Defendants.

*MEMORANDUM*

JAMES M. MUNLEY, District Judge.

**\*1** Before the court are Defendants National City Mortgage
Company ("National City") and American Security Insurance
Company's ("American Security") defendants' motions to
dismiss. The defendants seek dismissal both for failure to state
a claim pursuant to  Rule 12(b)(6) of the Federal Rules of
Civil Procedure and for failure to join pursuant to  Rule
12(b)(7). (Doc. Doc. 24; 27–2). The motions have been fully
briefed by all parties and this matter is ripe for disposition. [1]

**BACKGROUND**

From the evidence of the record, taken in a light most
favorable to the Plaintiff Elizabeth Liggon–Redding, the
pertinent facts are as follows. Plaintiff owned a home located
at 451 Fawn Road in Jim Thorpe, PA. (Amended Complaint
(Doc. 22) at ¶ 5) (hereinafter "Am. Complt."). A deed to
the property indicates that the plaintiff's husband, Tyrone N.
Redding, was a co-owner of the property. (Motion to Dismiss
by National City Mortgage Co. (Doc. 24), Ex. A) (hereinafter

"the deed"). Moreover, the plaintiff and her husband are
named in the deed as trustees of the estate for beneficiaries
Stewart A. Liggon and Brandi C. Liggon. (*Id.*)

Fire of an unknown cause destroyed the home on July
29, 2004. (Am. Complt. at ¶ 10). At the time, National
City was the mortgage holder of the property, while
Defendant American Security provided the residential
insurance coverage. (*Id.* at ¶ 7). Although not averred in
the complaint, National City presents documents in the
public record indicating that the home was involved in
protracted foreclosure proceedings commencing in August
2001.[2] (Motion to Dismiss by National City at ¶ 6). At the
time of the fire loss, the insurance policy listed National
City as the insured/mortgagee and plaintiff as the additional
insured. The policy provided liability coverage of $149,000.
(Am. Complt. at ¶ 8). National City asserts that it was paying
premiums to American Security for "forced placed" hazard
insurance on the property at the time of the loss because the
plaintiff defaulted on her obligations to keep her home insured
while it was mortgaged. (Motion to Dismiss by National City
at ¶ 7–8).

The plaintiff asserts that the home was fully furnished and
was not vacant when the fire occurred. Under the terms of the
residential insurance policy, Defendant American Security
was responsible for the full replacement value of the home,
according to the plaintiff. (Am. Complt. at ¶ 11). Moreover,
the plaintiff alleges deliberate undervaluation of the home
by American Security's claim adjusters. (*Id.* at ¶ 31). Since
American Security did not pay for the full replacement value
of the home, the plaintiff alleges breach of contract and bad
faith claims against them. (*Id.* at ¶¶ 36–46).

The first inspection by Defendant American Security's
adjuster in September 2004 estimated the repair or
replacement value of the plaintiff's home at $71,874.97. The
actual cash value of the home was appraised at $39,281.23
and a check in that amount was forwarded to National City.
(*Id.* at ¶ 12). A year before the check was issued, the plaintiff
secured a default judgment in magisterial court related to
property damage caused by National City or its agents while
the home was in foreclosure. National City appealed the
default judgment to the Court of Common Pleas.[3] Some time
later, National City and the plaintiff settled that case by a
formal written agreement titled "General Release of Any and
All Liability," dated February 11, 2005. (Complaint (Doc. 1),
Ex. D) (hereinafter "Complt."). In exchange for the plaintiff
releasing and discharging any legal claims against National

Appx0929

2009 WL 3101068

City, National City agreed to the release and satisfaction of the mortgage, applying $39,281.23 to the plaintiff's mortgage account. (Am. Complt at ¶ 12). The plaintiff asserts that National City agreed to accept this amount to satisfy the mortgage. (*Id.* at ¶ 15). However, National City did not actually release the mortgage until December 30, 2005, after several important events occurred. (Complt., Ex. B, "Release of Mortgage Form").

**\*2** In March 2005, upon the plaintiff's request, a second adjuster from Defendant American Security inspected the home, estimating the repair or replacement value to be $92,624.80 and the actual cash value to be $71,790.91. (Am. Complt. at ¶¶ 17–18). American Security issued a "supplemental" check made payable to National City and Plaintiff Liggon–Redding on June 16, 2005 in the amount of $20,427.60 in June 2005. (*Id.* at ¶ 19; *See* Complt., Ex. E). On December 1, 2005, another "partial" check in the amount of $28, 283.66 was made payable to National City and the plaintiff by American Security. (Am. Complt. at ¶ 21; *See* Complt., Ex. F). The plaintiff avers that National City accepted and deposited the supplemental checks in breach of the "General Release of Any and All Liability" agreement. (*Id.* at ¶¶ 21, 23).

Also on December 1, 2005, American Security issued a "partial" check made payable to the plaintiff in the amount of $3,173.81. However, the plaintiff avers that she is entitled to the balance of the $149,000 insurance policy on her home at the time of the loss, including the $48,711.26 that National City received after American Security reinspected the home. (*Id.* at ¶ 29).

In the period between National City's receipt of supplemental insurance checks, the plaintiff and National City apparently entered into another formal, written agreement titled "General Release of Any and All Liability with Single Exception" on October 17, 2005 under terms similar to the February 2005 agreement. Ostensibly, the single exception in this agreement was that the general release of liability did not apply to the claims asserted in a civil lawsuit filed in United States District Court for the Eastern District of Pennsylvania, which has since been dismissed.[4] (Motion to Dismiss by National City, Ex. B).

The plaintiff filed suit against National City and American Security in this court on January 30, 2006. (Doc. 1). We originally dismissed the case for lack of jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 5). Plaintiff appealed and the

Court of Appeals for the Third Circuit, remanded the case to this court (Doc. 12), and plaintiff filed an amended complaint. (Doc. 14). In the amended complaint, the plaintiff brings breach of contract and bad faith claims against American Security. (Am. Complt. at ¶¶ 36–46). A breach of contract claim and a tort claim for intentional interference with contractual relations are brought against National City. (*Id.* at ¶¶ 47–53). Both defendants subsequently filed motions to dismiss pursuant to Rule 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, bringing the case to its present posture.

## JURISDICTION

The plaintiff is a citizen of Pennsylvania. (*Id.* at ¶ 1). Defendant American Security is a Delaware corporation with business addresses in Miami, Florida and Atlanta, Georgia. (*Id.* at ¶ 2). Defendant National City is an Ohio corporation. (*Id.* at ¶ 3). By combining damage claims against each defendant, the amount in controversy exceeds $75,000. (*Id.* at ¶ 4). As such, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The substantive law of Pennsylvania shall apply to the case. *Chamberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir.2000), citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## DISCUSSION

### A. Defendants' Motion to Dismiss for Failure to Join a Party Under Rule 19

#### Standard of review—12(b)(7)

**\*3** Rule 19 of the Federal Rules of Civil Procedure specifies the circumstances when joinder of a party is compulsory. A defendant may move to dismiss a complaint for plaintiff's failure to join a party in accordance with Rule 19. FED. R. CIV. P. 12(b)(7). Courts considering a motion pertaining to Rule 19 follow a multi-step inquiry. *See Gen. Refractories Co. v. First State Ins. Co.,* 500 F.3d 306, 312 (3d Cir.2007); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 404 (3d Cir.1993) (hereinafter *"Janney"* ). The reviewing court must first determine whether the absent party "should be joined as [a] 'necessary' part[y] under Rule 19(a)." *Gen. Refractories Co.,* 500 F.3d at 312. Rule 19(a) provides:

Appx0930

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a).

If a "necessary" party should be joined, but "joinder is not feasible inasmuch as it would defeat diversity of citizenship ..." courts must next "determine whether the absent parties are 'indispensable' under Rule 19(b)." *Gen. Refractories Co.,* 500 F.3d at 312. There are four factors for courts to consider in determining whether a party is "indispensable":

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b); *General Refractories Co.,* 500 F.3d at 320–321 (3d Cir.2007) (analyzing all four factors).

In the Third Circuit, if a non-joined party is determined to be "indispensable," the action cannot go forward. *Gen. Refractories Co.,* 500 F.3d at 312 (citing *Janney,* 11 F.3d at 404); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,* 844 F.2d 1050, 1053–54 (3d Cir.1988).

In a motion to dismiss on the pleadings, courts must "accept all factual allegations in the complaints and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs." *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1411 (3d Cir.1993). Moreover, the burden is on the party filing the motion to prove that a non-joined party is indispensable to the adjudication of the action. *See F.D.I.C. v. Beall,* 677 F.Supp. 279, 283 (M.D.Pa.1987); *Am. Home Mortgage Corp. v. First Am. Title Ins. Co.,* No. 07–1257, 2007 WL 3349320, at *3 (D.N.J. Nov.9, 2007); *Fed. Home Loan Mortgage Corp. v. Commonwealth Land Title Ins. Co.,* No. 92–5255, 1993 WL 95494, at *5 (E.D.Pa. March 31, 1993).

**\*4** Defendants move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(7), arguing that Tyrone N. Redding, Stewart A. Liggon, and Brandi C. Liggon are "necessary" and "indispensable" parties as the Rules of Civil Procedure define those terms. According to the Deed, the record owners were "Tyrone N. Redding and Elizabeth H. Liggon, Redding, his wife as trustees for Stewart A. Liggon and Brandi C. Liggon." (*See* Motion to Dismiss by National City, Ex. A). Plaintiff Liggon–Redding is the only named plaintiff in this action. Defendant National City argues that Plaintiff Liggon–Redding wrongly pursues this action in an individual capacity, rather than as trustee. (Doc. 24 at 9). Furthermore, Defendants' motions assert that Tyrone N. Redding, as co-owner of the property, is a necessary and indispensable plaintiff. (Doc. 24 at 9; Doc. 27–2 at 9). The defendants fear that they will be subject to multiple obligations to these interested parties. (*Id.*)

The plaintiff argues that she is the only real party in interest in this action, as evidenced by her being the only named individual on the original mortgage instrument and the residential policy from American Security. (Plaintiff's Brief in Opposition to Motion to Dismiss by National City (Doc. 30) at 9) (hereinafter "Pl. Brief in Opp. to National City"). Plaintiff

2009 WL 3101068

is correct with this argument regarding her status as trustee of the estate for her children. Because a trustee in an express trust may sue in her own name as a real party in interest without joining the person for whose benefit the action is brought, Stuart A. Liggon and Brandi C. Liggon are not necessary or indispensable parties in this action. *See* FED. R. CIV. P. 17(a)(1)(E).

The absence of Tyrone N. Redding, a co-owner and trustee of the estate, is of more concern. Although the plaintiff asserts that she has limited power of attorney for matters concerning Tyrone N. Redding, (Pl. Brief in Opp. to National City at 6; *See* "Ex. B" "Limited Power of Attorney Form") we find that Tyrone N. Redding, Plaintiff Liggon-Redding's husband, is a necessary party pursuant to Rule 19(a)(2)(i) because he has a legitimate interest as co-owner of the property at the center of the dispute, and in his absence, his ability to protect his interest in recovery would be impaired. Even though power of attorney has been granted to one spouse by the other, a presumption exists in Pennsylvania law that "during the term of a marriage, either spouse has the power to act for both without specific authority, so long as the benefits of such action inure to both." *J.R. Christ Const. Co. v. Olevsky,* 426 Pa. 343, 349, 232 A.2d 196 (1967) (citing *Kennedy v. Erkman,* 389 Pa. 651, 658, 133 A.2d 550 (1957)). Having limited power of attorney for a spouse who is the joint owner of real property does not include a power to exclude the spouse from a cause of action related to that property. Evidence indicates that the plaintiff's husband co-owned the real property in question as a tenant in the entireties. Therefore, he has a considerable interest in the claims against the defendants, as well as in the outcome of this case.

**\*5** A party must be joined under Rule 19(a)(2)(i) if "some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." *Janney,* 11 F.3d at 409; *see also Sanders v. Sanders,* 384 Pa.Super. 311, 558 A.2d 556, 560 (Pa.Super.Ct.1989), *allocatur denied,* 525 Pa. 635, 578 A.2d 930 (Pa.1990) (explaining when a plea of issue preclusion is valid under Pennsylvania law). Thus, if the collateral estoppel or res judicata effect of our decision in this case will preclude the plaintiff's husband from seeking recovery in a later suit, he must be joined under Rule 19(a)(2)(i). "If issue preclusion or collateral estoppel could be invoked against [the absent party] in other litigation, continuation of

the federal action could as a practical matter impair or impede [the absent party's] interests and so Rule 19(a)(2)(i) would require its joinder if joinder were feasible." *Janney,* 11 F.3d at 409 (internal quotation marks omitted).

If we find that Plaintiff Liggon-Redding is not entitled to compensatory damages from her alleged claims and a subsequent court finds her husband to be in privity with her, he will be precluded from protecting his interest in recovering for damages in conjunction with the events alleged. *See Sanders,* 558 A.2d at 560 (issue preclusion applies where "the party against whom [it] is asserted was a party or in privity with a party to the prior adjudication"). Significantly, federal courts applying Pennsylvania law have found the spousal relationship sufficient to establish privity for the purposes of claim and issue preclusion. *See Seamon v. Bell Telephone Co. of Pennsylvania,* 576 F.Supp. 1458, 1460 (W.D.Pa.1983) *aff'd* 740 F.2d 958 (3d Cir.1984) (finding that res judicata barred the plaintiff from bringing her claims where her husband had previously litigated similar claims because the spousal relationship was sufficient to establish privity).

In *Jaillet v. Hill & Hill,* the court found that in an action to recover damages to real property, the plaintiff's joint tenants with rights of survivorship were necessary parties under 19(a)(2)(i). 460 F.Supp. 1075, 1078–79 (W.D.Pa.1978). There, the plaintiff alleged that the defendants negligently installed a sewer system, thus increasing the sewer assessments on his property. *Id.* at 1076. To the extent that the plaintiff had a claim, her joint tenants also had a claim. *Id.* The court found that absent joint tenants were necessary because they were in privity and the doctrine of res judicata would preclude them from protecting their interest in their property. *Id.*

As such, we find that the plaintiff's husband is a necessary party under Rule 19(a). He was a co-owner of the property in question, and our decision may, as a practical matter, preclude him from recovering for the alleged damage caused by the breach of contract, bad faith, and intentional interference with contractual relations claims.

**\*6** Before we determine if the plaintiff's husband is an "indispensable" party in this action under Rule 19(b), we must determine whether it will be feasible to join him. Neither party has suggested that Tyrone N. Redding is not amenable to service of process, generally unavailable, or that his presence in this litigation would destroy jurisdiction. Since joinder is feasible, we do not have to determine whether the plaintiff's husband is "indispensable," or if the action can continue. As

such, we will deny defendants' motions to dismiss for failure to join a party. However, we will order that plaintiff join Tyrone N. Redding be joined as a plaintiff in this lawsuit, considering the effects our decision in this case might have on his potential claims, in addition to the potential for multiple obligations bearing down on the defendants.

### B. Defendant National City's Motion to Dismiss Under Rule 12(b)(6)

**Standard of review—12(b)(6)**

When a 12(b)(6) motion is filed, the sufficiency of allegations in the complaint is tested. Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Third Circuit interprets *Twombly* to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint. *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly,* 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." *Id.* at 234–35 (citation omitted).

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' " *Twombly,* 550 U.S. at 555 (citation omitted). This standard does not require "detailed factual allegations." *Id.* (citation omitted). However, "the factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips,* 515 F.3d at 232 (citation omitted). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* (citation omitted).

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). However, the court is not bound to accept conclusions of law or unwarranted factual inferences. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,* 450 F.3d 130, 133 (3d Cir.2006) (citing *Morse,* 132 F.3d at 906).

*7 When considering a motion to dismiss, a court generally should look only to the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).

In their motion to dismiss, Defendant National City attacks the plaintiff's complaint on several fronts using many arguments that might be best suited for a summary judgment motion. We will address them in turn.

First, National City argues that because the parties entered into a settlement agreement in October 2005, titled "General Release of Any and All Liability with Single Exception," the plaintiff is precluded from bringing her claims before this court. (Motion to Dismiss by National City at 9–10, Ex. B). To complement that argument, Defendant National City asserts that any previous settlement agreement between the parties prior to this October 2005 agreement is barred by the parol evidence rule. (*Id.* at 10–12).

The "General Release of Any and All Liability with Single Exception" document is not referenced or attached to the plaintiff's original or amended complaint. [5] On a motion to dismiss, we refrain from considering the October 2005 document, as it is not "a 'document *integral to or explicitly relied upon* in the complaint.' " *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1429 (quoting *Shaw v. Digital Equipment Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996)). We will also not consider any arguments presented by National City related to this purported second settlement agreement on a motion to dismiss, including whether we should exclude the February 2005 document as parol evidence.

Next, National City argues that the February 2005 document does not satisfy Pennsylvania's Statute of Frauds, which provides that an interest in land be signed by the party so assigning, granting, or surrendering his land. [6] (Motion to Dismiss by National City at 12–13). National City relies on ⚑ *Eastgate Enterprises, Inc. v. Bank & Trust of Old York Road,* 236 Pa.Super. 503, 345 A.2d 279 (Pa.Super.Ct.1975) for the proposition that the February 2005 document was never an effective agreement between the plaintiff mortgagee and defendant mortgagor because the February 2005 agreement, pertaining to an interest in land, was not signed by a representative of National City.

On a motion to dismiss, we find National City's Statute of Frauds arguments unpersuasive, especially since National City at first attempts to argue the validity of the October 2005 document, which is also without signature by a National City representative. As for National City's reliance on *Eastgate Enterprises Inc.,* that case and this case both regard instruments related to a mortgage of real property; however, *Eastgate* involved an *oral* agreement between parties not to foreclose. ⚑ 345 A.2d at 281. The case at bar involves what is purported to be a *written* document prepared by National City for the agreed satisfaction of the plaintiff's mortgage in exchange for a release of Defendant National City's liability. Here, the plaintiff avers that the February 2005 settlement agreement was drafted solely by National City or National City's counsel, binding them in lieu of a formal signature. The plaintiff also alleges that National City breached this agreement when it accepted supplemental insurance checks from Defendant American Security. At this stage of litigation, we will make no determination as to whether this document was validly prepared by National City or whether it is equitable to consider this document in light of it being unsigned by a representative for National City.

**\*8** Finally, National City asserts that the plaintiff has failed to allege all the elements for her breach of contract and intentional interference with contractual relations claims, or, in the alternative, that she cannot prove actual damages, since proof of damages is an element of both averred claims. (Motion to Dismiss by National City at 13–17). Since these arguments are more attuned to a ⚑ Rule 12(b)(6) motion, we proceed carefully with direction from *Twombly* and *Phillips, supra.*

To support a claim for breach of contract under Pennsylvania law, "a plaintiff must plead: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage." ⚑ *Kane v. State Farm & Cas. Co.,* 841 A.2d 1038, 1042 (Pa.Super.Ct.2003) (quoting ⚑ *Presbyterian Med. Ctr. v. Budd,* 832 A.2d 1066, 1070 (Pa.Super.Ct.2003).

Here, the plaintiff has pled the existence of the February 2005 agreement, attached with its essential terms: that the plaintiff would release and discharge any legal claims against National City in exchange for National City agreeing to the release and satisfaction of the plaintiff's mortgage after accepting $39,281.23 in insurance proceeds from Defendant American Security. (Am. Complt. at ¶ 14). The plaintiff puts forth that National City breached this purported contract by contacting the plaintiff and informing her that the February 2005 agreement was no longer effective, then subsequently accepting and depositing two supplemental insurance checks after the real property was inspected by an American Security claim adjuster a second time. (*Id.* at ¶¶ 20–23).

We find that the plaintiff also plausibly pleads damages. The plaintiff asserts that, after the alleged breach of the February 2005 agreement, she is entitled to the amount of the supplemental checks totaling $48,711.26. (*Id.* at ¶ 34). We find that the plaintiff has made enough of a showing on her claim for breach of contract to justify moving the case beyond the pleadings. *See Phillips,* 515 F.3d 234–35. Whether there actually was a breach of contract, in light of other circumstances, is a matter for another day.

The second count against National City is intentional interference with contractual relations. The elements of this cause of action are as follows:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as the result of the defendant's conduct.

2009 WL 3101068

*Blackwell v. Eskin,* 916 A.2d 1123, 1127–28 (Pa.Super.Ct.2007); *Reading Radio, Inc. v. Fink,* 833 A.2d 199, 211 (Pa.Super.Ct.2003), *appeal denied,* 577 Pa. 723, 847 A.2d 1287 (2004) (quoting *Strickland v. Univ. of Scranton,* 700 A.2d 979, 985 (Pa.Super.Ct.1997)).

**\*9** The plaintiff puts forth that she was named as an additional insured on the insurance policy for her home along with mortgagor National City, which would make her party to a contract with Defendant American Security, a third party. (Am. Complt. at ¶ 8). The plaintiff also alleges that National City misrepresented to American Security "that Plaintiff's home was vacant at the time of the fire, thereby attempting to ensure that Plaintiff would not receive full and proper complement of fire loss benefits." (*Id.* at ¶ 34). The plaintiff also plainly states in her amended complaint that "Defendant National City Mortgage had no privilege or justification to engage in such conduct in this matter." (*Id.* at ¶ 54). Moreover, the plaintiff also puts forth that there was a $149,000 policy that covered the home on the property. About $91,000 of that policy was paid out as a result of the loss, leaving approximately $57,000 in remaining insurance proceeds that the plaintiff could not collect because National City allegedly interfered with her rights. (*Id.* at ¶¶ 8, 25, 55).

While National City argues that the pleadings are conclusory, we have no difficulty concluding that the plaintiff has pled sufficient facts to reasonably expect that discovery will reveal more evidence necessary for her to prove each element of her intentional interference with contractual relations claim. *See Phillips,* 515 F.3d at 234. Moreover, even if we were to find some flaw in the plaintiff's overall case simply from the pleadings, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Twombly,* 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). For all of the above reasons, we will deny Defendant National City's 12(b)(6) motion.

**B. Defendant American Security's Motion to Dismiss Under Rule 12(b)(6)**

In its motion to dismiss, American Security argues that the plaintiff's cause of action is barred under res judicata doctrine and by the agreed upon statute of limitations in the residential insurance policy. (Motion to Dismiss by American Security (Doc. 27–2) at 5–8). We approach each argument separately.

Plaintiff filed a lawsuit against American Security in the Court of Common Pleas for Carbon County, Pennsylvania.[7] This case was filed while her appeal of our earlier order was pending in the Third Circuit, and it avers a similar claim for a breach of contract against National City and American Security. (*Id.,* Ex. G). The County Court entered summary judgment in favor of Defendant American Security and against the plaintiff. Because summary judgment was entered in its favor and the plaintiff's claim was dismissed with prejudice, American Security argues that the plaintiff is precluded from making that same claim again in federal court. (*Id.* at 6).

Under federal law of claim preclusion, a claim cannot be raised in a second time in court where: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. *Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 963 (3d Cir.1991). Plaintiff concedes in her reply brief that the same parties are involved in this subsequent suit based on the same cause of action; however, she argues that the dismissal of her prior suit in Carbon County was not a final judgment on the merits. (Plaintiff's Brief in Opposition to Motion to Dismiss by American Security (Doc. 35) at 8) (hereinafter "Pl. Brief in Opp. to American Security")

**\*10** In her brief, plaintiff argues that a final judgment or "adjudication on the merits" has well-settled meaning: "a decision finally resolving that [party's] claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." (*Id.*) (quoting *Saranchak v. Beard,* 583 F.Supp.2d 847, 861 (M.D.Pa.2008)).

The Third Circuit Court of Appeals has explained that to determine whether a prior proceeding was a "final judgment" Pennsylvania Courts apply the law of judgments as set forth in the Restatement (Second) of Judgments, which provides four factors to examine. These four factors are:

(1) whether the prior decision was 'adequately deliberated and firm' and not 'avowedly tentative';

(2) whether the parties were fully heard;

Appx0935

2009 WL 3101068

(3) whether the court supported its decision with a reasoned opinion;

(4) whether the court's prior decision was subject to appeal or was in fact reviewed on appeal.

*Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 358 (3d Cir.1999) (quoting Restatement (Second) of Judgments § 13 (1982)).

Accordingly, we must review the state court action, which American Security claims has preclusive effect. As noted above, the plaintiff concedes that the same issues and parties were involved. In the state court case, however, plaintiff proceeded *pro se.* American Security filed a counterclaim and new matter in the state court case, and plaintiff filed an answer thereto. (Def.Ex. I, Doc. 26–5.) At the close of discovery, American Security moved for summary judgment. The basis for the motion was defendant's assertion that plaintiff had admitted the allegations of the counterclaim and new matter by inadequately answering them. (*Id.* at 8–18.) The court evidently did not issue an opinion but merely issued an order that granted the motion for summary judgment "after considering the Memorandum of Law provided by counsel for American Security Insurance Company and the oral argument of both the Plaintiff and counsel for American Security Insurance Company[.]" (Def. Ex. K, Doc. 26–5, at 2, Order of Carbon County, Pennsylvania Court of Common Pleas).

Based upon these facts and the Restatement factors set forth above, we find that the plaintiff did not receive a final ruling on the merits for her breach of contract claim in her case filed in the Court of Common Pleas. The plaintiff was not in fact fully heard. Plaintiff, who was at that time proceeding *pro se,* did not respond adequately to the defendant's counterclaim and new matter, thus judgment was granted against her. This manner of dismissal was more procedural than it was an actual review of the underlying merits of plaintiff's claim. Moreover, the court did not render a written opinion, but merely issued an order granting the motion for summary judgment. Accordingly, we conclude that the state court case does not have res judicata effect on the instant case as there was no final ruling on the merits. Defendant American Security's motion to dismiss based upon this argument will be denied.

*11 American Security next argues that the plaintiff is time barred by an agreed upon statute of limitations since the plaintiff did not commence the action prior to the expiration of the one-year period set forth in the residential insurance

policy. (Motion to Dismiss by American Security at 7). The policy states in paragraph 15 that "[n]o action shall be brought unless there has been compliance with the policy and the action is started within one year after the loss." (*Id.* Ex. D). The parties agree that the fire loss in the instant case occurred on July 29, 2004. Thus, under the terms of the policy plaintiff had one year to file suit. Defendant American Security argues that this action was not filed until January 30, 2006 and is thus time barred.

We disagree. As pointed out by the plaintiff, she originally filed suit in the United States District Court for the Eastern District of Pennsylvania on July 11, 2005, which is within the one-year time limit. That case, however, was dismissed for improper venue on January 17, 2006 and the case was refiled in this court thirteen (13) days later on January 30, 2006. As plaintiff filed her original case within the time limit, albeit in the improper venue, and then promptly refiled in the proper venue after it was dismissed in the original court, we find that she has met the one-year filing limit. *See* Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (holding a statute of limitations tolled when case filed in improper venue).

Indeed, the Third Circuit Court of Appeals has held that:

a statute of limitations is equitably tolled for a second action by the filing of a procedurally defective first action if there is: 1) timely notice to the defendant in filing the first claim; 2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; [and] 3) reasonable and good faith conduct by the plaintiff in prosecuting the first action and diligence in filing the second action.

*Island Insteel Sys., Inc. v. Waters,* 296 F.3d 200, 217 (3d Cir.2002) (citation and internal quotation marks omitted).

In the instant case, the defendant has not raised any issue with regard to timely notice of the first claim or prejudice in gathering evidence to defend against the second claim. Additionally, there is no issue raised regarding whether plaintiff reasonably and in good faith prosecuted the first

action. In fact, it was merely filed in the Eastern District of Pennsylvania when it should have been filed in the Middle District of Pennsylvania. She promptly filed the second action when the first one was dismissed. Accordingly, we find no merit to the defendant's argument regarding the one-year limitation. [8]

## CONCLUSION

For the reasons stated above, the court will deny defendants' motions to dismiss for failure to join a party pursuant to Rule 12(b)(7). However, we will order plaintiff to join Tyrone N. Redding as a plaintiff in this action within twenty (20) days or the defendants may refile their motion. We will also deny the defendant' motions to dismiss pursuant to Rule 12(b)(6). An appropriate order follows.

### ORDER

**\*12  AND NOW**, to wit, this 23rd day of September 2009:

1) Plaintiff is directed to join Tyrone N. Redding in the above-captioned proceeding with twenty (20) days of the date of this order or the defendants may move for dismissal for failure to join an indispensable party; and

2) The motions to dismiss filed by the defendants (Doc. 24 and Doc. 27) are hereby **DENIED.**

### All Citations

Not Reported in F.Supp.2d, 2009 WL 3101068

### Footnotes

1   Because the arguments in both defendants' 12(b)(7) motions are similar, we have considered them together. For the purposes of the 12(b)(6) motions, we consider the defendants' arguments separately.

2   On August 23, 2001, National City filed a complaint in mortgage foreclosure in the Court of Common Pleas in Carbon County, Pennsylvania. (See *National City Mortgage Co. v. Redding,* No. 01–1935). On or around May 22, 2002, the Court of Common Pleas granted National City's motion for summary judgment in that action. Judgment was entered in favor of National City in the amount of $64,356.60 on July 12, 2002. (See (Motion to Dismiss by National City Mortgage Co. (Doc. 24), Ex. D, Praecipe for Judgment). Plaintiff Liggon–Redding appealed this decision. Each time, her appeal or petition for certiorari was denied. *See National City v. Liggon,* 832 A.2d 551 (Pa.Super.2003), *app'l denied* 577 Pa. 723, 847 A.2d 1287 (2004), *cert. denied sub nom., Liggon v. National City Mortg.,* 543 U.S. 1131, 125 S.Ct. 1077, 160 L.Ed.2d 1087 (2005). National City issued a Writ of Execution in the action and a sheriff's sale was scheduled for September 2004. (Motion to Dismiss by National City Mortgage Co., Ex. D). The sheriff serving the writ posted service on the property, indicating that the property was "vacant" on the Return of Service form dated July 17, 2004. (*Id.,* Ex. E). The fire that destroyed the plaintiff's home occurred twelve days later.

3   *See National City Mortgage Co. v. Redding,* No. 03–3104 (Carbon Cty. Ct. of Com. Pleas, 2003).

4   That case was captioned, *Elizabeth Liggon–Redding v. National City Mortgage Co. and American Security Ins. Co.,* No. 05–03405 (E.D.Pa.2005). In that case, Judge Legrome Davis granted the defendants' motion to dismiss for improper venue in an order dated January 17, 2006. (Motion to Dismiss by National City, Ex. F).

5   However, a similar document, entitled "General Release of Any and All Liability," signed by the plaintiff in February 2005, does appear in the plaintiff's original pleading. (Complt., Ex. D).

6   Pennsylvania's Statute of Frauds states in relevant part that:
    no leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law.

2009 WL 3101068

      33 P.S. § 1

7      The state court case is captioned *E.L. Redding v. National City Mortgage and American Security Ins. Co.,* No. 07–cv–0052 (Carbon Cty. Ct. of Com. Pleas 2007).

8      As we find that plaintiff did file within the one-year time period, we make no ruling as to whether the one-year limitation actually applies to plaintiff's case. That issue is moot.

---

**End of Document**             © 2021 Thomson Reuters. No claim to original U.S. Government Works.

6

KeyCite Yellow Flag - Negative Treatment
Distinguished by  Davis v. Nationwide Mutual Insurance Co.,  E.D.Pa.,
January 10, 2017

2014 WL 2880302
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Anthony MATTIA

v.

ALLSTATE INSURANCE COMPANY.

Civil Action No. 14–2099.
|
Signed June 24, 2014.

**Attorneys and Law Firms**

Conrad J. Benedetto, Law Offices of Conrad J. Benedetto,
Philadelphia, PA, for Anthony Mattia.

Bonnie S. Stein, Curtin and Heefner L.L.P., Morrisville, PA,
for Allstate Insurance Company.

*MEMORANDUM*

SURRICK, District Judge.

***1** Presently before the Court is Defendant Allstate Property
and Casualty Insurance Company's Motion to Dismiss
Plaintiff's Complaint pursuant to Federal Rule of Civil
Procedure 12(b). (ECF No. 4.) [1] For the following reasons,
Defendant's Motion will be granted.

**I. BACKGROUND** [2]

On or about September 17, 2012, Plaintiff Anthony Mattia's
property sustained water damage due to a water leak. (Pl.'s
Compl. ¶ 4, Notice of Removal Ex. A, ECF No. 1.) At the
time, Plaintiff's property was insured by Defendant Allstate
Property and Casualty Insurance Company under policy
number 9 18 205324 09/01 (the "Policy"). (*Id.* at ¶ 5.) Plaintiff
gave Defendant timely and reasonable notice of his claim,
filled out all necessary paperwork, and complied with all of
the conditions contained in the Policy. (*Id.* at ¶ 8.) Defendant
has failed to pay all of the costs of Plaintiff's repairs and
renovations, as required by the Policy. (*Id.* at ¶¶ 9, 10.)

On March 7, 2014, Plaintiff filed a Complaint in the Court of
Common Pleas of Philadelphia County, Pennsylvania, against
Defendant alleging claims for breach of contract (Counts I &
III) and bad faith (Count II). (Pl.'s Compl. ¶ 3.) On April 10,
2014, Defendant removed the matter to this Court. (Notice of
Removal.) On April 17, 2014, Defendant filed this Motion to
Dismiss. (Def.'s Mot., ECF No. 4.) On May 29, 2014, Plaintiff
filed a timely response. (Pl.'s Resp., ECF No. 7.)

**II. LEGAL STANDARD**

Under Federal Rule 8(a)(2), "[a] pleading that states a claim
for relief must contain a short and plain statement of the claim
showing that the pleader is entitled to relief." Fed.R.Civ.P.
8(a)(2). Rule 12(b)(6) provides for the dismissal of a
complaint, in whole or in part, for failure to state a claim upon
which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). A
motion under Rule 12(b)(6), therefore, tests the sufficiency
of the complaint against the pleading requirements of Rule
8(a). "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face.' " *Ashcroft
v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d
868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550
U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A
complaint that merely alleges entitlement to relief, without
alleging facts that show entitlement, must be dismissed.
*See* *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d
Cir.2009). Courts need not accept "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements .... " *Iqbal,* 556 U.S. at 678. "While legal
conclusions can provide the framework of a complaint, they
must be supported by factual allegations." *Id.* at 679. This
" 'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element." *Phillips v. Cnty. of Allegheny,* 515
F.3d 224, 234 (3d Cir.2008) (quoting *Twombly,* 550 U.S.
at 556).

***2** In determining whether dismissal of the complaint is
appropriate, courts use a two-part analysis. *Fowler,* 578
F.3d at 210. First, courts separate the factual and legal
elements of the claim and accept all of the complaint's well-

pleaded facts as true. *Id.* at 210–11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a " 'plausible claim for relief.' " *Id.* at 211 (quoting *Iqbal,* 556 U.S. at 679). Given the nature of the two-part analysis, " [d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009) (quoting *Iqbal,* 556 U.S. at 679).

## III. DISCUSSION

Defendant contends that Plaintiff's Complaint should be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6).[3] Defendant argues that Plaintiff's pleadings fail to provide specific, factual allegations and consist solely of "bare-bones" conclusory allegations. (Def.'s Mot. ¶¶ 15, 22.) In addition, Defendant asserts that Plaintiff's Complaint is time-barred due to the one-year statute of limitations contained in the commencement of suit provision in the Policy. (*Id.* at ¶ 33.) Finally, Defendant argues that Plaintiff's Complaint should be dismissed for failure to join a necessary party. (*Id.* at ¶ 47.) In response, Plaintiff argues that any limitation period contained in the Policy does not extend to bad faith because the bad faith claim is predicated upon 42 Pa. Cons.Stat. Ann. § 8371, which provides the insured with additional protection and relief. (Pl.'s Resp. 4.)[4] Plaintiff contends that the bad faith claim is distinct from the breach of contract claim and not subject to any limitations imposed independently of Section 8371's plain language. (Pl.'s Resp. 4.)

### A. Breach of Contract Claim

Plaintiff alleges that Defendant breached its contract with Plaintiff by denying full payment of Plaintiff's claim under the Policy. Specifically, Plaintiff's Complaint alleges that Defendant's failure to compensate him the full amount of the cost of his home renovations caused damages in the amount of $22,227.46. (Pl.'s Compl. ¶ 9.)[5] Defendant responds that Plaintiff's breach of contract claim is barred by the one-year statute of limitations contained in the Policy's commencement of suit provision. Plaintiff has not responded to this argument.

Under Pennsylvania law, the statute of limitations for a breach of contract claim is four years. 42 Pa. Cons.Stat. § 5525. "Parties to a contract, however, may agree to a shorter limitations period provided it is reasonable." *Swan Caterers, Inc. v. Nationwide Mut. Fire. Ins. Co.,* No. 12–24, 2012 WL 5508371, at *4 (E.D.Pa. Nov.13, 2012). " 'A one-year time limit meets this test.' " *Id.* (quoting *McElhiney v. Allstate Ins. Co.,* 33 F.Supp. 405, 406 (E.D.Pa.1999)).

*3 Here, the commencement of suit provision in the Policy provides:

> No one may bring an action against us [Defendant] in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which section 1 conditions applies unless:
>
> (a): there has been full compliance with all policy terms;
>
> (b): the action is commenced within one year after the inception of loss or damages.

(Def.'s Mot. Ex. B.) It is well settled that a commencement of suit clause that imposes time limits on recovery is valid and will be sustained. *Gen. State Auth. v. Planet Ins. Co.,* 464 Pa. 162, 346 A.2d 265, 266 (Pa.1975); *Commonwealth v. Transamerican Ins. Co.,* 462 Pa. 268, 341 A.2d 74, 76 (Pa.1975) ("This Commonwealth has long recognized the validity of a policy provision limiting the time of bringing suit under its terms and rendering the normal statute of limitations for the cause of action in question inapplicable."); *Schreiber v. Pa. Lumberman's Mutual Ins. Co.,* 498 Pa. 21, 444 A.2d 647, 649 (Pa.1982) (upholding limitation of suit provision); *Dufy v. Allstate Ins.,* No. 97–6668, 1998 WL 470156, at *2 (E.D.Pa. Aug.11, 1998) (upholding limitations clause). The limitation period runs from " 'the date of the occurrence of the destructive event or casualty insured against.' " *Petraglia v. Am. Motorists Ins. Co.,* 284 Pa.Super. 1, 424 A.2d 1360, 1362 (Pa.Super.Ct.1981) (quoting *Gen. State. Auth.,* 346 A.2d at 267). Failure to bring a claim within the limitation period in the Policy will result in an "absolute bar" to the claim. *Toledo v. State Farm Fire & Cas. Co.,* 810 F.Supp. 156, 158 (E.D.Pa.1992) (citing *Gen. State Auth,* 346 A.2d at 742–43).

Plaintiff's Complaint alleges that, on or about September 17, 2012, Plaintiff's residence suffered direct and physical damage. On March 7, 2014, Plaintiff brought suit against the

Defendant contesting the amount of the coverage under the Policy. The commencement of suit provision contained in the Policy explicitly covers such a cause of action "related to the existence or amount of coverage" and mandates that a suit be brought within one year of the inception of damage or loss. Accordingly, Plaintiff should have filed suit by September 17, 2013. March 7, 2014, the date Plaintiff filed suit, is nearly six months after the one year deadline had passed. Given the valid one year statute of limitations contained in the commencement of suit provision, there can be no dispute that Plaintiff instituted this cause of action beyond the Policy's limitation period.[6] Plaintiff's breach of contract claim is time barred.

**B. Bad Faith Claim**

Although Plaintiff's breach of contract claim is barred by the commencement of suit provision in the insurance contract, a "bad faith claim is not affected by the one-year limitations period in the insurance contract." *March v. Paradise Mut. Ins. Co.,* 435 Pa.Super. 597, 646 A.2d 1254, 1257 (Pa.Super.Ct.1994). "[A] claim brought under Section 8371 is a cause of action which is separate and distinct from the underlying contract claim." *Id.* at 1256; *Margolies v. State Farm Fire & Cas. Co.,* 810 F.Supp. 637, 642 (E.D.Pa.1992) ("The evolving jurisprudence in this district has held that § 8371 creates a separate and independent cause of action."). Section 8371 was enacted to create a cause of action for acts of "bad faith" in insurance law. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford,* 742 F.Supp.2d 591, 598 (E.D.Pa.2010). Section 8371 states:

> *4 In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of the interest plus 3%.

> (2) Award punitive damages against the insurer.

> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Const. Stat. Ann. § 8371. While Section 8371 does not define "bad faith," the term has a "universally accepted meaning" in the context of insurance law as " 'any frivolous or unfounded refusal to pay proceeds of a policy.' " *Atiyeh,* 742 F.Supp.2d at 598 n. 14 (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (Pa.Super.Ct.1994)). This standard does not need to reach fraudulent; however, "mere negligence or bad judgment is not bad faith." *Id.*

To establish bad faith, Plaintiff must show that the insurer "(1) lacked a reasonable basis for denying benefits and (2) knew or recklessly disregarded its lack of a reasonable basis." *Id.* The Plaintiff must demonstrate that " 'the insurer breached its duty of good faith through some motive of self-interest or ill will.' " *Id.* (quoting *Brown v. Progressive Ins. Co.,* 860 A.2d 493, 501 (Pa.Super.Ct.2004)). Plaintiff must prove this by " 'clear, direct, weighty and convincing' " evidence. *Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 752 (3d Cir.1994) (quoting *U.S. Fire Ins. Co. v. Royal Ins. Co.,* 759 F.2d 306, 309 (3d Cir.1985)).

Defendant contends that Plaintiff has insufficiently pled his bad faith claim. Defendant argues that Plaintiff's Complaint alleges conclusory statements void of any specific facts to demonstrate Defendant lacked a reasonable basis for denying benefits under the Policy. Count II of Plaintiff's Complaint, which is entitled Bad Faith, reads as follows: "At all times material hereto, the Defendant, Allstate Insurance Company did not exercise good faith and fair dealing with the Plaintiff with respect to its agreements, actions and promises as required by law, causing the Plaintiff to suffer damages." (Pl.'s Compl. ¶ 12.) Plaintiff has failed to " 'describe who, what, where, when, and how the alleged bad faith conduct occurred.' " *See Miracle Temple Christian Acad. v. Church Mut. Ins. Co.,* No. 12–995, 2012 WL 1286751, at *4 (E.D.Pa. Apr.16, 2002) (quoting *Blasetti v. Allstate Ins. Co.,* No. 11–6920, 2012 WL 177419, at *4 (E.D.Pa. Jan.23, 2012)); *Iqbal,* 556 U.S. at 679 ("[W]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Plaintiff submits "bare-bones" conclusory allegations that do not sufficiently establish a plausible bad faith claim. *Fowler,* 578 F.3d at 210. Therefore, Plaintiff's bad faith claim will be dismissed.

**C. Necessary Party**

**\*5** Defendant argues that Plaintiff's Complaint should be dismissed under Rule 12(b)(7) for failure to join Carmel Mattia as a necessary party. (Def.'s Mot. 25.) Rule 12(b)(7) permits a claim to be dismissed when the plaintiff has failed to join a party as required by Rule 19. Under Rule 19(a), a party is deemed necessary and must be joined if:

(A) [I]n that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a). "It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party." *Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369, 387 (S.D.N.Y.2000). In a breach of contract claim, all parties to the contract should ordinarily be joined. *Rashid, v. Kite*, 957 F.Supp. 70, 74 (E.D.Pa.1997). Assessing the issue on a case-by-case basis requires "(1) appraising the [indispensable party's] interest, and then (2) considering the equitable principles described in Rule 19." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1011 (3d Cir.1987) (quotation omitted). Once it is determined that an absentee is a necessary party and that joinder of that party is impossible, then it must be determined "whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed.' " *Rashid*, 957 F.Supp. at 73 (quoting Fed.R.Civ.P. 19(b)). Rule 19(b) lists four factors to guide the Court to determine "whether in equity and good conscience" the action should proceed:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

*Id.* at 73 (quoting Fed.R.Civ.P. 19(b)). Courts have substantial discretion and must use a "fact specific, flexible analysis" to balance the interests of the existing parties, the absent party, the courts, and the public. *Johnson & Johnson v. Coopervision, Inc.*, 720 F.Supp. 1116, 1121–22 (D.Del.2000) (balancing the interests of (1) the defendant, (2) the absent party, (3) the courts and the public, and (4) the plaintiff). "The decision whether to dismiss (i.e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118–19, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

**\*6** Ms. Mattia may qualify as a necessary party to this action as an insured under the Policy and as an owner of the subject home along with her husband Anthony Mattia. *See Rashid*, 957 F.Supp. at 73 (determining that all parties to a contract should be joined). However, even if she is a necessary party, we currently lack sufficient facts to determine whether she can be joined to this action and, if she cannot, whether in equity and good conscience the matter should be dismissed. The only fact offered by Defendant is that Ms. Mattia is listed on the policy as "resident relative." This is insufficient.

## IV. CONCLUSION

For the foregoing reasons, Defendant Allstate Insurance Company's Motion to Dismiss will be granted. An appropriate Order follows.

## ORDER

**AND NOW**, this *24th* day of *June*, 2014, upon consideration of Defendant Allstate Property and Casualty Insurance Company's Motion to Dismiss Plaintiff's Complaint pursuant

to Federal Rule of Civil Procedure 12(b) (ECF No. 4), and all papers submitted in support thereof and in opposition thereto, it is **ORDERED** that Defendant's Motion is **GRANTED**.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2880302

## Footnotes

1   Plaintiff incorrectly identified Defendant as Allstate Insurance Company.

2   When considering a Rule 12(b) motion to dismiss, we must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir.1989).

3   Count I of Plaintiff's Complaint is duplicative of Count III. We will address them both as one Breach of Contract claim.

4   Plaintiff has filed a Response in opposition to Defendant's Motion for Summary Judgment. Defendant's Motion is not for Summary Judgment. It is a Motion to Dismiss under Rule 12(b).

5   Plaintiff's Complaint alleges damages in the amount of $22,227.46. Defendant's Notice of Removal refers to damages in the amount of $22,227.46. However, Plaintiff's memorandum of law in response to Defendant's Motion refers to damages in the amount of $222,227.46. Obviously, this raises questions regarding this Court's diversity jurisdiction.

6   Although a commencement of suit provision is legally enforceable, it may be extended or waived "where the actions of the insurer lead the insured to believe the contractual limitation period will not be enforced." *Gen. State. Auth.*, 346 A.2d at 267 n. 6. In addition, such a provision will not be enforced "where the insured's failure to comply is induced by the actions of the insurer." *Id.; see also Transamerican Ins. Co.*, 341 A.2d at 77 (explaining that "an insurer will not be permitted to take advantage of an insured's failure to act where the insurer induced such a failure"). Plaintiff has not argued any such waiver.

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

7

🚩 KeyCite Blue Flag – Appeal Notification
Appeal Filed by STI OILFIELD SERVICES, INC. v. ACCESS MIDSTREAM PARTNERS LP, ET AL, 3rd Cir., July 23, 2018

2018 WL 3076739
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

STI OILFIELD SERVICES, INC., Plaintiff,

v.

ACCESS MIDSTREAM PARTNERS,
L.P., et al., Defendants.

3:13-CV-02923
|
Filed 06/21/2018

**Attorneys and Law Firms**

Howard M. Levinson, Robert D. Schaub, Thomas J. Campenni, Rosenn, Jenkins & Greenwald, LLP, Wilkes-Barre, PA, James Edward Wimberley, Law Offices of James Wimberley, Nederland, TX, for Plaintiff.

Daniel T. Brier, Nicholas F. Kravitz, John B. Dempsey, Myers Brier & Kelly, LLP, Scranton, PA, David E. White, James D. Miller, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, for Defendants.

**MEMORANDUM OPINION**

Robert D. Mariani, United States District Judge

**I. INTRODUCTION & PROCEDURAL HISTORY**

*1 This matter concerns a dispute over a series of contracts for the construction of natural gas pipelines in Northeast Pennsylvania. Plaintiff, STI Oilfield Services, Inc., initiated this diversity action on December 4, 2013, with the filing of a Complaint. (Doc. 1). The Complaint alleged that Defendants, Access Midstream Partners, L.P., Appalachia Midstream Services, L.L.C., Chesapeake Energy Corporation, and Chesapeake Operating, Inc., were liable to Plaintiff under a variety of theories including breach of contract, unjust enrichment, quantum meruit, promissory estoppel, fraud, and the Pennsylvania Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. § 501 *et seq.* (Doc. 1). After a Motion to Dismiss and two Motions for Summary Judgment were

resolved, the following claims remained pending: (1) a breach of contract claim against Chesapeake Energy Corporation and Chesapeake Operating (collectively the "Chesapeake Defendants"), (Count I); (2) a claim under the CASPA against the Chesapeake Defendants, (Count V); (3) a breach of contract claim against Access Midstream Partners and Appalachia Midstream Services (collectively the "Access Defendants"), (Count VI); and (4) a claim under the CASPA against the Access Defendants, (Count X). (Docs. 1, 50, 125, 127).

A jury trial was scheduled to commence on October 30, 2017, to resolve the remaining claims. (Doc. 132). Then, on July 19, 2017, more than three and a half years after this matter was commenced, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. 135). On September 1, 2017, after partially briefing the Motion, the case was stayed to allow the parties to engage in private mediation. (Docs. 145, 146). After mediation proved unsuccessful, the parties finished briefing the Motion to Dismiss. This Motion is presently pending before the Court and is now ripe for resolution. For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and, as a result, dismiss this action in its entirety.

**II. BACKGROUND**

Through the present Motion, Defendants primarily contend that there is not complete diversity between Plaintiff and the Access Defendants. Defendants assert that Access Midstream Partners is a publicly-traded master limited partnership. Master limited partnerships "are limited partnerships or limited liability companies whose ownership interests, called 'common units,' are publicly traded." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 903-04 (10th Cir. 2015). "[T]he citizenship of partnerships and other unincorporated associations is determined by the citizenship of its partners or members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *see also Grynberg*, 805 F.3d at 906 (holding that the citizenship of a master limited partnership is determined by the citizenship of all unitholders).

According to Defendants, Access Midstream Partners has 187,000,000 outstanding common units, (Doc. 151 at 6), and 40% of its limited partnership is held by the public, (Doc. 135-1 at ¶ 4). Defendants also assert that 4,600 unit holders

Case 1:21-cv-00065-DCLC Document 21-3 Filed 07/25/22 Page 379 of 500 PageID #: ...

STI Oilfield Services, Inc. v. Access Midstream Partners, L.P., Not Reported in Fed....

"used a State of Texas business or residential address." (*Id.* at ¶ 5). From this, Defendants argue that Access Midstream Partners is a citizen of Texas for diversity jurisdiction purposes and thus is not diverse from Plaintiff, who is also a citizen of Texas. (Doc. 140 at 5-8).

*2 The Motion further contends that Appalachia Midstream Services, L.L.C., is also a citizen of Texas for diversity citizenship purposes. (Doc. 140 at 8-9). As the Third Circuit has explained,

> the citizenship of an LLC is determined by the citizenship of its members. And as with partnerships, where an LLC has, as one of its members, another LLC, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be" to determine the citizenship of the LLC.

*Zambelli Fireworks Mfg. Co.*, 592 F.3d at 420 (quoting *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003) ). Defendants assert that Appalachia Midstream Services has only one member, Access MLP Operating, L.L.C., which itself also has only one member, Access Midstream Partners. Thus, Defendants argued that Appalachia Midstream Services has the same citizenship as Access Midstream Partners and thus is not diverse from Plaintiff. (Doc. 140 at 8-9).

In its opposition, Plaintiff did not dispute the fact that it is not diverse from the Access Defendants. (Doc. 144 at 2). Nevertheless, relying on *Kaplan v. Industrial Risk Insurers*, 86 F.R.D. 484 (E.D. Pa. 1980), Plaintiff proposed that the Court allow it to (1) dismiss the Access Defendants and (2) proceed only against all of Access Midstream Partners' diverse limited partners. (Doc. 144 at 5-10). On May 15, 2018, after holding a conference call with the parties, this Court set a deadline for Plaintiff to file a Motion for Leave to Amend its Complaint. (Doc. 159). Then, in a letter dated June 11, 2018, Plaintiff notified the Court that, due to an unforeseen legal issue, Plaintiff would not seek to amend its Complaint and was therefore abandoning its arguments based on *Kaplan v. Industrial Risk Insurers*. (Doc. 162).

## III. DISCUSSION

Pursuant to 28 U.S.C. § 1332, district courts have subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive

of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1). "This statute and its predecessors have consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S. Ct. 2396, 57 L.Ed. 2d 274 (1978) (emphasis in original) (footnote omitted). As it is undisputed that Plaintiff is not diverse from the Access Defendants, the Court lacks subject matter jurisdiction over this action. With that issue resolved, the Court turns to the two secondary matters raised in Defendants' Motion to Dismiss: (1) whether the Access Defendants are dispensable parties such that the claims against the Chesapeake Defendants should proceed in federal court; and (2) whether this Court should vacate all prior orders and judgments entered in this action. The Court will address each of these issues in turn.

### A. Dispensability of the Access Defendants

Although the presence of the Access Defendants destroys diversity and divests this Court of subject matter jurisdiction, it does not necessarily follow that the entire case must be dismissed. Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party." Although this rule is generally concerned with misjoinder of parties, "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832, 109 S. Ct. 2218, 104 L.Ed. 2d 893 (1989); *see also CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 382 n.6 (3d Cir. 2004) ("[I]t is well established that courts, both district and circuit alike, have the power under Fed.R.Civ.P. 21 to dismiss dispensable parties to the suit in order to preserve diversity"). "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Slater v. Hoffman-La Roche Inc.*, 771 F. Supp. 2d 524, 529 (E.D. Pa. 2011).

*3 Defendants argue that the Access Defendants are dispensable parties, and, consequently, the Court should dismiss the claims against the Access Defendants but proceed with the claims against the Chesapeake Defendants. (Doc. 140 at 10-12). Defendants primarily rely on the fact that Plaintiff's claims against the Chesapeake Defendants are

separate and distinct from Plaintiff's claims against the Access Defendants. That is, the claims against the Chesapeake Defendants involve a specific set of contracts—the "Rome" and "Oilcan" contracts—and Plaintiff has not alleged that the Access Defendants were involved with those contracts.

Plaintiff, on the other hand, argues that the Access Defendants are indispensable parties. (Doc. 144 at 10-13). Plaintiff notes that many of the witnesses in this case have information concerning the claims against both the Chesapeake Defendants and the Access Defendants. Plaintiff also argues that at times it is unclear whether a particular individual worked for the Chesapeake Defendants or the Access Defendants. Further, Plaintiff contends that it will suffer prejudice if this lawsuit is broken up because each set of Defendants will be able to shift blame onto the absent Defendants at trial.

To determine if the Access Defendants are indispensable, the Court turns to Federal Rule of Civil Procedure 19. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 297 (3d Cir. 1980) ("Although the district court's authority to dismiss non-diverse parties who are not indispensable derives from Fed.R.Civ.P. 21, the primary factors to be considered by the district court in determining whether a party is indispensable are listed in Fed.R.Civ.P. 19"), *disagreed with on other grounds by Newman-Green, Inc.*, 490 U.S. at 833 n. 7; *see also Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979) (noting that a "district court is precluded from retaining diversity jurisdiction by dismissing a nondiverse party if that party is indispensable under Fed.R.Civ.P. 19"); *Rashid v. Kite*, 957 F. Supp. 70, 72-73 (E.D. Pa. 1997). Rule 19 provides, in part:

**(a) Persons Required to Be Joined if Feasible.**

**(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

...

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

**(A)** protective provisions in the judgment;

**(B)** shaping the relief; or

**(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19.

"Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). A court "first must determine whether the absent [parties] should be joined as 'necessary' parties under Rule 19(a)." *Id.* "As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998). "If they should be joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship (as would be the case here), [a court] next must determine whether the absent parties are 'indispensable' under Rule 19(b)." *Gen. Refractories Co.*, 500 F.3d at 312. If a necessary party who cannot be joined is indispensable, "the action cannot go forward." *Id.*

**\*4** Here, the Court concludes that Access Midstream Partners is a necessary party under Rule 19(a)(1)(A). This subsection of Rule 19 concerns itself with "whether complete relief can be accorded to the parties to the action in the absence of the unjoined party." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993). Previously, when ruling on the Chesapeake Defendants' Motion for Summary Judgment, this Court stated the following:

> It is undisputed that a representative of Plaintiff, Jerrold Gill, signed all of the Rome and Oilcan contracts. Beyond that, it is undisputed that the Rome contracts had four other signature lines, and the signature lines for at least two of the following three individuals have signatures placed next to the following names: Jimmy Rowell, Andrew Bischoff, and Patrick Myers. Similarly, it is also undisputed that the Oilcan contracts, which had one signature page, have signatures placed next to the following names: Jimmy Rowell, Fernando Rodriguez, Joel Moore, and Patrick Myers. The contracts themselves, however, provide no clear indication of who these individuals represent.
>
> First, the company name on the contracts—"Chesapeake Midstream Energy"—is not the name of any of the entities that are party to this lawsuit. The name appears to be a combination of Chesapeake Midstream Partners [1] and Chesapeake Energy Corporation. Second, the CMD acronym associated with the signatures is nowhere defined in the contracts and is not an obvious acronym for Chesapeake Midstream Partners. Third, the statement above the signatures—"Chesapeake Approval"—provides no indication which Chesapeake entity/entities is approving the contracts. Finally, the presence of the Chesapeake Energy logo on the front of the contracts would seem to indicate that the contracts were connected with Chesapeake Energy Corporation. The remainder of the record provides no clarity. It is devoid of any reference to who these individuals are, who they work for, and which Chesapeake entity/entities they were representing, if any, when they signed the contracts.

(Doc. 124 at 10-11). Accordingly, this Court concluded that there was a dispute of fact as to who was party to the Rome and Oilcan contracts with Plaintiff.

Further, it is Defendants' position that Access Midstream Partners is party to the Rome and Oilcan contracts. Specifically, both the Chesapeake Defendants and the Access Defendants asserted in their Answers that "Access, formerly known as Chesapeake Midstream Partners, L.P., contracted with Plaintiff in early 2012 to perform work on the Rome and Oilcan gas gathering systems." (Doc. 53 at ¶ 12; Doc. 54 at ¶ 12).

Because it is unclear who is a party to the Rome and Oilcan contracts—Chesapeake Energy Corporation, Chesapeake Operating, Access Midstream Partners, or some combination thereof—Plaintiff may not be able to obtain complete relief in the absence of Access Midstream Partners. Indeed, the Chesapeake Defendants readily admit that, at trial, they will assert that Access Midstream Partners, and not the Chesapeake Defendants, was party to the Rome and Oilcan contracts. (Doc. 140 at 11-12). If the jury believes the Chesapeake Defendants' arguments, Plaintiff will not be accorded complete relief if Access Midstream Partners is not present at the trial. As a result, Access Midstream Partners is a necessary party under Rule 19(a)(1)(A). *See Rashid*, 957 F. Supp. at 74 ("Generally, in breach of contract actions, all parties to the contract should be joined"); *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831, 836 n.7 (D. Del. 1978) ("In general, where rights sued upon arise from a contract, all parties to the contract must be joined"); *see also Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party"); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997) ("As a direct party to the contract which is under dispute, Karabu is a necessary party to this litigation for at least three reasons").

**\*5** Because Access Midstream Partners is a necessary party under Rule 19(a), the Court must now determine if it is an indispensable party under Rule 19(b). *See Gen. Refractories Co.*, 500 F.3d at 312. As laid out above, Rule 19(b) provides four factors a Court should consider when "determin[ing] whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). In *General Refractories Company v. First State Insurance Company*, the Third Circuit discussed the four factors listed in Rule 19(b):

> The first and second factors under Rule 19(b) are "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties,"

Case 1:21-cv-12800065 Document 21-3 Sent Page: 382 Date Filed: 07/25/2022

STI Oilfield Services, Inc. v. Access Midstream Partners, L.P., Not Reported in Fed....

and to what extent such prejudice "can be lessened or avoided." Notably, the first factor under Rule 19(b) "overlaps considerably with the Rule 19(a) analysis."

500 F.3d at 320 (first quoting FED. R. CIV. P. 19(b)(1) & (2), then quoting *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 641 n.4 (3d Cir. 1998) ). As to the third factor, the Court observed that this element allows the Court to consider "whether a judgment rendered in the person's absence will be adequate," and further observed that it "allows the court to consider whether the relief it grants will prove an adequate remedy for the plaintiff." *Id.* at 320-321. The Court, however, admonished that "[t]he right to contribution and indemnity should not ... be considered to cause inadequacy of the resulting judgment." *Id.* at 321. Lastly, with respect to the fourth factor—"whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder"—the Court viewed Rule 19 as "counsel[ing] that courts should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." *Id.*

Upon consideration of these factors, the Court concludes that Access Midstream Partners is an indispensable party and, as such, this matter should be dismissed in its entirety. With respect to the first factor, Plaintiff could be prejudiced by a federal judgment entered in Access Midstream Partners' absence. Specifically, a federal jury may find that Access Midstream Partners, and not the Chesapeake Defendants, was a signatory to the Rome and Oilcan contracts and thus find in favor of the Chesapeake Defendants. At the same time, a state jury may find that the Chesapeake Defendants, and not the Access Defendants, were signatories to the Rome and Oilcan contracts and thus find in favor of the Access Defendants. Turning to the second factor, the Court is not aware of any way this prejudice could be lessened or avoided except to allow Plaintiff to proceed against the Chesapeake Defendants and the Access Defendants at the same time in a single forum.

For many of the same reasons, the third factor also weighs in favor of finding that Access Midstream Partners is indispensable. Specifically, a judgment in favor of the Chesapeake Defendants based upon a jury determination that Access Midstream Partners was the only signatory to the Rome and Oilcan contracts would be an inadequate remedy for Plaintiff. Finally, turning to the fourth factor, Plaintiff would have an adequate remedy if this Court were to dismiss the entire action. Pennsylvania has specifically provided, at 42 Pa. C.S.A. § 5103(b), that "[w]here a matter is filed in any United States court for a district embracing any part

of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth" within the statute. Here, the Court finds that, if this matter is dismissed for lack of subject matter jurisdiction, Plaintiff will be able to proceed against the Defendants in Pennsylvania state court pursuant to 42 Pa. C.S.A. § 5103. *See* Williams v. F.L. Smithe Machine Co., 577 A.2d. 907, 909 (Pa. Super. 1990). Accordingly, upon consideration of the above factors, the Court holds that Access Midstream Partners is an indispensable party under Rule 19(b).

**\*6** The Court's ruling in this respect breaks no new ground. Indeed, "[i]t is well established that a contracting party is the paradigm of an indispensable party for contract claims." *Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co.*, 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (quotation marks omitted); *see also Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000); *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991). Further, such a holding is in line with "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies," which is embodied in Rule 19. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S. Ct. 733, 19 L.Ed. 2d 936 (1968).

Nevertheless, Defendants argue that the Access Defendants are not indispensable parties because Plaintiff has not brought any claims against the Access Defendants for the Rome and Oilcan contracts. (Doc. 140 at 10-12; Doc. 151 at 8-10). Defendants, however, have cited no authority for the proposition that parties are dispensable if there are no claims yet asserted against them. This is not surprising considering that Rule 19 is ordinarily concerned with the joinder of individuals or entities that are not yet party to the action and thus do not yet have any claims brought against them. As such, a rule that a party is dispensable if they do not yet have particular claims asserted against them would make little sense. *See* FED. R. CIV. P. 19(a)(1).

As discussed above, it is the Defendants' position that Access Midstream Partners is party to the Rome and Oilcan contracts and this Court has concluded that there is a dispute of

fact as to who is party to the Rome and Oilcan contracts. Further, Plaintiff has noted that if this matter is dismissed, it would seek to amend its Complaint in state court to assert claims against the Access Defendants on the Rome and Oilcan contracts. (Doc. 144 at 13). Accordingly, the fact that Plaintiff has not presently brought a claim against the Access Defendants on the Rome and Oilcan contracts is immaterial.[2]

Finally, Defendants argue that, because the claims based on the Rome and Oilcan contracts are separate and distinct from Plaintiff's other claims, this matter should proceed in two separate trials. (Doc. 151 at 11-13). This argument confuses the issues. The Court's inquiry is not whether Plaintiff's claims based on the Rome and Oilcan contracts should be tried separately from Plaintiff's other claims. Instead, the proper question is whether one or both of the Access Defendants are indispensable parties to Plaintiff's claims arising out of the Rome and Oilcan contracts. Because the Court answers this latter question in the affirmative, the Court must dismiss the entire action.

**\*7** In sum, the Court finds that Access Midstream Partners is a necessary and indispensable party under Rule 19. Accordingly, the Court will decline to dismiss only the Access Defendants and will instead dismiss this action in its entirety.

*B. Prior Orders and Judgments*

Finally, Defendants argue that this Court should vacate all its prior orders and judgments because it has lacked subject matter jurisdiction since the initiation of this lawsuit. (Doc. 140 at 12). Plaintiff opposes this request and argues that the Court need not vacate any prior orders or judgments. (Doc. 144 at 13-15).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). Defendants ask this Court to decide what legal effect its prior orders should have moving forward. As this Court has determined that it lacks subject matter jurisdiction, it is without power to rule on this issue. This Court, therefore, will leave it to the state court to decide what effect, if any, this Court's prior orders have on this litigation moving forward.

## IV. CONCLUSION

For the reasons outlined above, this Court will grant in part and deny in part Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and dismiss this matter in its entirety. A separate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3076739

## Footnotes

1    On July 24, 2012, Chesapeake Midstream Partners changed is corporate name to Access Midstream Partners, L.P. (Doc. 79 at ¶¶ 18, 20; Doc. 100 at ¶ 18, 20).

2    Similarly, Defendants argue that Plaintiff is barred by the statute of limitations from asserting claims against the Access Defendants for the Rome and Oilcan contracts. (Doc. 151 at 8). Defendants, however, have not briefed this issue beyond a passing reference to a prior filing. Thus, because Defendants have not presented arguments on this issue, the Court declines to address it. *See* John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived"); *see also* Local Rule 7.8 ("No brief may incorporate by reference all or any portion of any other brief").

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "A"



**Courtney Moad**
*Staff Landman - Appalachia*

**June 24, 2021**

<u>**VIA ELECTRONIC MAIL**</u>

Ms. Rachel Collins
Epsilon Energy USA, Inc
16945 Northchase Drive, Suite 1610
Houston, Texas 77060

Re:      Epsilon Energy USA, Inc.'s Proposed Craige S 3LHC
           Craige Unit, Poulsen North Unit and Poulsen South Unit
           Rush Township, Susquehanna County, Pennsylvania
           Auburn Township, Susquehanna County, Pennsylvania

Dear Ms. Collins:

Chesapeake Appalachia, L.L.C. hereby encloses its executed election <u>NOT</u> to participate in Epsilon Energy USA, Inc.'s ("Epsilon") Craige S 3LHC well proposal dated May 26, 2021 (the "Subsequent Well Proposal").

The Subsequent Well Proposal contravenes the provisions of the cited Joint Operating Agreements (the "JOAs") for multiple reasons, including without limitation, the following. First, the November 30, 2021 commencement date exceeds without explanation or justification the permissible timing under the JOAs as interpreted by the United States District Court for the Middle District of Pennsylvania in Case No. 1:21-CV-00658 (ECF No. 80).

Second, the Subsequent Well Proposal purports improperly to shift Operatorship from Chesapeake Appalachia, L.L.C. either to Epsilon Energy USA, Inc. or to Epsilon Operating, LLC (both are separately identified in the proposal as "operator"). Chesapeake Appalachia, L.L.C. is Operator of the Contract Areas covered in the JOAs, including at the Craige Well Pad where there are two active and producing wells. The Subsequent Well Proposal does not trigger the Operator-shifting provision in Article VI.2(a)(ii). Even if the Operator-shifting provision in Article VI.2(a)(ii) was applicable (and it was not), the Subsequent Well Proposal does not indicate that any other JOA party has: (1) elected to participate in the Subsequent Well Proposal; and/or (2) designated Epsilon Energy USA, Inc. to serve as Operator.

Third, the Subsequent Well Proposal does not indicate that Epsilon Energy USA, Inc. has triggered the "Resignation or Removal of Operator" and "Selection of Successor Operator" provisions in Article V.B(1) and (2). Epsilon Energy USA, Inc. does not claim to have: (1) provided Chesapeake Appalachia, L.L.C. with written notice and an opportunity to cure a purported default under the

Appx0953

May 26, 2021 Subsequent Well Proposal
June 24, 2021
Page 2 of 2

JOAs; (2) secured the affirmative removal vote of the Non-Operators owning a majority interest, exclusive of the voting interests of Chesapeake Appalachia, L.L.C.; and/or (3) been appointed as successor operator pursuant to Article V.B(2).

Without waiver of the foregoing, to the extent that the Subsequent Well Proposal is deemed valid, Chesapeake Appalachia, L.L.C. intends to propose the Koromlan 107HC Well as an alternate well proposal pursuant to the terms of the JOAs, including Article VI.6.

You will separately receive the Koromlan 107HC Well Proposal. In that proposal, Epsilon will be asked to elect between the Koromlan Well and the Epsilon's Subsequent Well Proposal.

Best regards,

Chesapeake Appalachia, L.L.C.

Courtney Moad

2

# CHESAPEAKE
## ENERGY

**Courtney Moad**
*Staff Landman - Appalachia*

June 24, 2021

**VIA ELECTRONIC MAIL**

Ms. Rachel Collins
Epsilon Energy USA, Inc
16945 Northchase Drive, Suite 1610
Houston, Texas 77060

Re:    Epsilon Energy USA, Inc.'s Proposed Craige N 1UHC
        Baltzley South and Baltzley North Units
        Rush Township, Susquehanna County, Pennsylvania

Dear Ms. Collins:

Chesapeake Appalachia, L.L.C. hereby encloses its executed election <u>NOT</u> to participate in Epsilon Energy USA, Inc.'s ("Epsilon") Craige N 1UHC well proposal dated May 26, 2021 (the "Subsequent Well Proposal").

The Subsequent Well Proposal contravenes the provisions of the cited Joint Operating Agreements (the "JOAs") for multiple reasons, including without limitation, the following. First, the October 16, 2021 commencement date exceeds without explanation or justification the permissible timing under the JOAs as interpreted by the United States District Court for the Middle District of Pennsylvania in Case No. 1:21-CV-00658 (ECF No. 80).

Second, the Subsequent Well Proposal purports improperly to shift Operatorship from Chesapeake Appalachia, L.L.C. either to Epsilon Energy USA, Inc. or to Epsilon Operating, LLC (both are separately identified in the proposal as "operator"). Chesapeake Appalachia, L.L.C. is Operator of the Contract Areas covered in the JOAs, including at the Craige Well Pad where there are two active and producing wells. The Subsequent Well Proposal does not trigger the Operator-shifting provision in Article VI.2(a)(ii). Even if the Operator-shifting provision in Article VI.2(a)(ii) was applicable (and it was not), the Subsequent Well Proposal does not indicate that any other JOA party has: (1) elected to participate in the Subsequent Well Proposal; and/or (2) designated Epsilon Energy USA, Inc. to serve as Operator.

Third, the Subsequent Well Proposal does not indicate that Epsilon Energy USA, Inc. has triggered the "Resignation or Removal of Operator" and "Selection of Successor Operator" provisions in Article V.B(1) and (2). Epsilon Energy USA, Inc. does not claim to have: (1) provided Chesapeake Appalachia, L.L.C. with written notice and an opportunity to cure a purported default under the

Appx0955

May 26, 2021 Subsequent Well Proposal
June 24, 2021
Page 2 of 2

JOAs; (2) secured the affirmative removal vote of the Non-Operators owning a majority interest, exclusive of the voting interests of Chesapeake Appalachia, L.L.C.; and/or (3) been appointed as successor operator pursuant to Article V.B(2).

Best regards,

**Chesapeake Appalachia, L.L.C.**

Courtney Moad

2



**Courtney Moad**
*Staff Landman - Appalachia*

**June 24, 2021**

**VIA ELECTRONIC MAIL**

Ms. Rachel Collins
Epsilon Energy USA, Inc
16945 Northchase Drive, Suite 1610
Houston, Texas 77060

Re:   Epsilon Energy USA, Inc.'s Proposed Craige N 4UHC
      Baltzley South and Baltzley North Units
      Rush Township, Susquehanna County, Pennsylvania

Dear Ms. Collins:

Chesapeake Appalachia, L.L.C. hereby encloses its executed election <u>NOT</u> to participate in Epsilon Energy USA, Inc.'s ("Epsilon") Craige N 4UHC well proposal dated May 26, 2021 (the "Subsequent Well Proposal").

The Subsequent Well Proposal contravenes the provisions of the cited Joint Operating Agreements (the "JOAs") for multiple reasons, including without limitation, the following.  First, the November 8, 2021 commencement date exceeds without explanation or justification the permissible timing under the JOAs as interpreted by the United States District Court for the Middle District of Pennsylvania in Case No. 1:21-CV-00658 (ECF No. 80).

Second, the Subsequent Well Proposal purports improperly to shift Operatorship from Chesapeake Appalachia, L.L.C. either to Epsilon Energy USA, Inc. or to Epsilon Operating, LLC (both are separately identified in the proposal as "operator").  Chesapeake Appalachia, L.L.C. is Operator of the Contract Areas covered in the JOAs, including at the Craige Well Pad where there are two active and producing wells.  The Subsequent Well Proposal does not trigger the Operator-shifting provision in Article VI.2(a)(ii).  Even if the Operator-shifting provision in Article VI.2(a)(ii) was applicable (and it was not), the Subsequent Well Proposal does not indicate that any other JOA party has: (1) elected to participate in the Subsequent Well Proposal; and/or (2) designated Epsilon Energy USA, Inc. to serve as Operator.

Third, the Subsequent Well Proposal does not indicate that Epsilon Energy USA, Inc. has triggered the "Resignation or Removal of Operator" and "Selection of Successor Operator" provisions in Article V.B(1) and (2).  Epsilon Energy USA, Inc. does not claim to have: (1) provided Chesapeake Appalachia, L.L.C. with written notice and an opportunity to cure a purported default under the

Appx0957

May 26, 2021 Subsequent Well Proposal
June 24, 2021
Page 2 of 2

JOAs; (2) secured the affirmative removal vote of the Non-Operators owning a majority interest, exclusive of the voting interests of Chesapeake Appalachia, L.L.C.; and/or (3) been appointed as successor operator pursuant to Article V.B(2).

Best regards,

Chesapeake Appalachia L.L.C.

Courtney Mead

2

Appx0958



<div align="right">

**Courtney Moad**
*Staff Landman - Appalachia*

</div>

June 24, 2021

**VIA ELECTRONIC MAIL**

Ms. Rachel Collins
Epsilon Energy USA, Inc
16945 Northchase Drive, Suite 1610
Houston, Texas 77060

Re:    Epsilon Energy USA, Inc.'s Proposed Craige N 1LH
       Baltzley South Unit
       Rush Township, Susquehanna County, Pennsylvania

Dear Ms. Collins:

Chesapeake Appalachia, L.L.C. hereby encloses its executed election <u>NOT</u> to participate in Epsilon Energy USA, Inc.'s ("Epsilon") Craige N 1LH well proposal dated May 26, 2021 (the "Subsequent Well Proposal").

The Subsequent Well Proposal contravenes the provisions of the cited Joint Operating Agreements (the "JOAs") for multiple reasons, including without limitation, the following. First, the October 1, 2021 commencement date exceeds without explanation or justification the permissible timing under the JOAs as interpreted by the United States District Court for the Middle District of Pennsylvania in Case No. 1:21-CV-00658 (ECF No. 80).

Second, the Subsequent Well Proposal purports improperly to shift Operatorship from Chesapeake Appalachia, L.L.C. either to Epsilon Energy USA, Inc. or to Epsilon Operating, LLC (both are separately identified in the proposal as "operator"). Chesapeake Appalachia, L.L.C. is Operator of the Contract Areas covered in the JOAs, including at the Craige Well Pad where there are two active and producing wells. The Subsequent Well Proposal does not trigger the Operator-shifting provision in Article VI.2(a)(ii). Even if the Operator-shifting provision in Article VI.2(a)(ii) was applicable (and it was not), the Subsequent Well Proposal does not indicate that any other JOA party has: (1) elected to participate in the Subsequent Well Proposal; and/or (2) designated Epsilon Energy USA, Inc. to serve as Operator.

Third, the Subsequent Well Proposal does not indicate that Epsilon Energy USA, Inc. has triggered the "Resignation or Removal of Operator" and "Selection of Successor Operator" provisions in Article V.B(1) and (2). Epsilon Energy USA, Inc. does not claim to have: (1) provided Chesapeake Appalachia, L.L.C. with written notice and an opportunity to cure a purported default under the

<div align="center">

**Chesapeake Energy Corporation**
P.O. Box 18496 / Oklahoma City, OK 73154-0496 / 6100 N. Western Avenue / Oklahoma City, OK 73118
405-935-9164 / fax: 405-849-0092 / courtney.moad@chk.com

</div>

<div align="right">Appx0959</div>

May 26, 2021 Subsequent Well Proposal
June 24, 2021
Page 2 of 2

JOAs; (2) secured the affirmative removal vote of the Non-Operators owning a majority interest, exclusive of the voting interests of Chesapeake Appalachia, L.L.C.; and/or (3) been appointed as successor operator pursuant to Article V.B(2).

Best regards,

Chesapeake Appalachia, L.L.C.

Courtney Moad

2

Case: 22-1280      Document: 21-3      Page: 393      Date Filed: 07/25/2022

# EXHIBIT "B"



June 23, 2021

VIA ELECTRONIC MAIL
Ms. Rachel Collins
Epsilon Energy USA, Inc.
16945 Northchase Drive, Suite 1610
Houston, TX 77060

Re:  Epsilon Energy's Proposed Craige S 3LHC, Craige N 1UHC, Craige N 4UHC, Craige N 1LH
Craige Unit
Poulsen North and Poulsen South Units
Baltzley South and Baltzley North Units
Rush Township, Susquehanna County, Pennsylvania
Auburn Township, Susquehanna County, Pennsylvania

Ms. Collins:

Equinor USA Onshore Properties Inc. is in receipt of Epsilon Energy's proposal letters dated May 26, 2021 for the Craige S 3LHC, Craige N 1UHC, Craige N 4UHC, Craige N 1LH wells.  Enclosed please find Equinor's executed elections not to participate in the following:

- Craige S 3LHC, pursuant to the Operating Agreement dated December 16, 2010 for the Craige Unit, and the Operating Agreement listed under Schedule 7.1.2 of Farmout Agreement dated February 3, 2010 for the Poulsen North and Poulsen South Units;
- Craige N 1 UHC Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit, and the Operating Agreement dated October 18, 2010 for the Baltzley North Unit;
- Craige N 4UHC Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit, and the Operating Agreement dated October 18, 2010 for the Baltzley North Unit;
- Craige N 1 LH Well, pursuant to the Operating Agreement dated October 18, 2010 for the Baltzley South Unit.

Equinor recognizes Chesapeake Appalachia, LLC is the operator under the above referenced Operating Agreements.

If you have any questions, please do not hesitate to contact me.

Best regards,

E-SIGNED by Danny McGraw
on 2021-06-24 11:42:29 GMT

Danny McGraw
Prinicpal Landman

Enclosure

Appx0962

Craige S 3LHC
May 26, 2021
Equinor USA Onshore Properties Inc.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Danny McGraw
6300 Bridge Point Pkwy., Bldg. 2, Ste. 100
Austin, TX 78730

Re:     Epsilon Energy's Proposed Craige S 3LHC Well
        API: 37115227970000; Permit Number: 115-22797
        Craige Unit, Poulsen North Unit, and Poulsen South Unit
        Rush Township, Susquehanna County, Pennsylvania
        Auburn Township, Susquehanna County, Pennsylvania

Mr. McGraw:

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Farmout Agreement between Epsilon Energy USA, Inc. ("EPSN") and Chesapeake Appalachia, L.L.C. dated effective February 1, 2010 with Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulsen North and Poulsen South Units (both of these Joint Operating Agreements to be collectively referred to hereinafter as the "Subject JOAs").

EPSN hereby proposes to drill the Craige S 3LHC Well (the "Well") with a surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township, Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,611,000.00 with a completed well costing approximately $9,226,398.00. We anticipate to commence the proposed operation on or about November 30, 2021.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0963

Date Filed: 07/25/2022     Page: 395     Document: 21-3     Case: 22-1280

Craige S 3LHC
May 26, 2021
Equinor USA Onshore Properties Inc.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulsen North Unit, which covers 132.810484 acres
- Poulsen South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to the Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the Poulsen North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well being in the Poulsen South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulsen North Unit WI | Poulsen South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% | 35.528850% | 36.941747% | 36.080090% |
| Equinor USA Onshore Properties Inc. | 18.345441% | 17.106484% | 17.786767% | 17.817658% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.338430% | 0.000000% | 0.000000% | 2.299235% |
| Enerplus Resources (USA) Corporation | 2.859873% | 0.000000% | 0.000000% | 1.231733% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.557414% | 0.000000% | 0.000000% | 0.240075% |

EPSN and Equinor USA Onshore Properties Inc. hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige S 3LHC
May 26, 2021
Equinor USA Onshore Properties Inc.

Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Date Filed: 07/25/2022   Page: 397   Document: 21-3   Case: 22-1280

Craige S 3LHC
May 26, 2021
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

____X____ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By: _____
  *E-SIGNED by Danny McGraw on 2021-06-24 11:43:31 GMT*
Name: Danny McGraw
Title: Prin. Consultant Land
Date: June 24, 2021

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen North Unit.

____X____ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen North Unit.

By: _____
  *E-SIGNED by Danny McGraw on 2021-06-24 11:43:35 GMT*
Name: Danny McGraw
Title: Prin. Consultant Land
Date: June 24, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0966

Craige S 3LHC
May 26, 2021
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen South Unit.

\_\_\_X\_\_\_ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to Farmout Agreement, dated February 1, 2010 and JOA (Schedule 7.1.2), dated February 1, 2010 covering the Poulsen South Unit.

By: _____

E-SIGNED by Danny McGraw
on 2021-06-24 11:43:39 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: June 24, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0967

Date Filed: 07/25/2022     Page: 399     Document: 21-3     Case: 22-1280

Craige S 3LHC
May 26, 2021

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into three units, the existing Craige Unit, Poulsen North Unit and Poulsen South Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1.  That certain Operating Agreement for the Craige Unit, dated December 16, 2010, by and between Chesapeake Appalachia, L.L.C., as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2.  That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulsen North Unit.

3.  That certain Farmout Agreement dated effective February 1, 2010, between Epsilon Energy USA, Inc. and Chesapeake Appalachia, L.L.C. which includes Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulsen South Unit.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Operating Agreements for the Craige Unit, Poulsen North Unit and Poulsen South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

Case: 22-1280   Document: 21-3   Page: 400   Date Filed: 07/25/2022

Craige S 3LHC
May 26, 2021

By:_____

Name:_____

Title:_____

Date:_____

Case: 22-1280     Document: 21-3     Page: 401     Date Filed: 07/25/2022


EPSILON
Energy USA, Inc.

AFE # :    **D2110144**

| | |
|---|---|
| WELL NAME: | **CRAIGE S 3LHC** |
| OPERATOR: | **EPSILON ENERGY USA, INC** |
| PROJECT: | **AUBURN** |
| LOCATION (TRACT): | **CRAIGE** |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** |
| API (PERMIT #): | **37-115-22797-0000 (115-22797)** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** |
| COMMENTS: | **D&C HZ LOWER MARCELLUS WELL** |

DATE:    **05/26/21**

| | |
|---|---|
| PROPOSED TMD: | **20,248** |
| PROPOSED TVD: | **7,050** |
| PROPOSED CLAT | **12,750** |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 151,000 | $ 2,460,000 | $ 2,611,000 |
| B. COMPLETION COST | $ 948,000 | $ 5,667,398 | $ 6,615,398 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,099,000 | $ 8,127,398 | $ 9,226,398 |
| | | | $ - |

WELL/PROJECT ID#: _____

EXPLORATORY ☐      DEVELOPMENT ☑

WORKOVER ☐      RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 36.080090% | $ 3,328,893 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 17.817658% | $ 1,643,928 |
| EPSILON ENERGY USA, INC. | | 40.919737% | $ 3,775,418 |
| JAMESTOWN RESOURCES, L.L.C. | | 1.076738% | $ 99,344 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | | 2.299235% | $ 212,137 |
| ENERPLUS RESOURCES (USA) CORPORATION | | 1.231733% | $ 113,645 |
| RADLER 2000 LIMITED PARTNERSHIP | | 0.334733% | $ 30,884 |
| TUG HILL MARCELLUS, LLC | | 0.240075% | $ 22,150 |
| | | 100.000000% | $ 9,226,398 |

**OPERATOR'S APPROVAL**

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | *Henry N Clate* | OPERATIONS | DATE: | 5/26/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: | 5/26/21 |
| APPROVED BY: | *Shannon E. Lenke* | GEOLOGY | DATE: | 5/26/21 |
| APPROVED BY: | *B Lou Dond* | ACCOUNTING | DATE: | 5-26-21 |

**NON-OPERATOR'S APPROVAL**

| | | |
|---|---|---|
| COMPANY NAME: | _____ | DATE: _____ |
| APPROVED BY: | _____ | |
| TITLE: | _____ | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Appx0970

Case: 22-1280    Document: 21-3    Page: 403    Date Filed: 07/25/2022

**Epsilon Energy**

**Preliminary Geological Prognosis**

Date Filed: 07/25/2022      Page: 404      Document: 21-3      Case: 22-1280

API Number:            37115227970000

Permit Number:         115-22797

Well Name:             Craige S 3LHC

Well Type:             Horizontal, development

Well Target:           Lower Marcellus

State:                 Pennsylvania

County:                Susquehanna

Township:              Rush & Auburn

Projection:            NAD83/Pennsylvania South

Surface Location:      Craige Pad

                       Lat/Long:  41.755814 / -76.028383

Landing Point:         Craige Unit

                       Lat/Long:  41.755641 / -76.023396

Bottom Hole:           Poulson South Unit

                       Lat/Long:  41.723511 / -76.005438

Surface Elevation:     1,533'

KB (est):              1,553'

Total Depth (est):     20,248'

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,571 | -3,018 | TVD @ pentetration point |
| Hamilton SH | 4,681 | -3,128 | TVD @ pentetration point |
| Marcellus | 6,684 | -5,131 | TVD @ pentetration point |
| Target | 7,050 | -5,347 | TVD @ pentetration point |
| Onondaga Limestone | 7,003 | -5,450 | |

Well Azimuth:          159°

Lateral Length:        12,750'

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Date Filed: 07/25/2022    Page: 405    Document: 21-3    Case: 22-1280



8000-PM-OOGM0002   Rev. 6/2014

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**OFFICE OF OIL AND GAS MANAGEMENT**
**WELL LOCATION PLAT**
PAGE 1 Surface Location

pennsylvania
DEPARTMENT OF ENVIRONMENTAL PROTECTION

| DEP | Auth ID#: | | G: |
| USE | Permit #: | | G: |
| ONLY | Project #: | | C: |

□ Denotes location of top of well on topo map.

Surface hole is located on topo map **13064** feet south of latitude **41° 47' 30"**

**SURFACE HOLE COORDINATES**
NAD 83
True Latitude: NORTH
**41° 45' 20.93"**
True Longitude: WEST
**76° 01' 42.18"**

NAD 83
N 41.755814°
W 76.028383°

NAD 27
N 41.755738°
W 76.028736°

N 583642.51
E 2469628.00

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |

PROPOSED SURFACE HOLE

ACCESS RD

EXISTING PRIVATE ROAD

**NOTES**
1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST

COMMONWEALTH REGISTERED PROFESSIONAL **TODD C. JACOBS** LAND SURVEYOR NO. SU 075184 PENNSYLVANIA

**LEGEND**
△ Well
● Found corner iron Pin or Pipe
⊕ Water Supply

**NOTE**
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

| Applicant/Well Operator Name: EPSILON OPERATING LLC | | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: | S3LHC | Serial #: |
|---|---|---|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | | County: SUSQUEHANNA | Municipality: RUSH | | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | | Surface Elevation: 1533 ft. | |
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 723 ± | | |
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 | |

- 1 -

Case: 22-1280     Document: 21-3     Page: 406     Date Filed: 07/25/2022

PLOT DATE/TIME: 9/16/2020 10:16:44AM

Appx0974

8000-PM-OOGM0002  Rev. 6/2014

## WELL LOCATION PLAT

### PAGE 2 Notifications

DEP Statewide toll–free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # S3LHC | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling): S85°29'19"E 1362.18'  S20°42'00"E 2999.92'  S19°02'01"E 2238.27'  S23°09'51"E 1514.08'  S20°42'00"E 2248.74'  S31°29'27"E 3740.08' | | Anticipated True Vertical Depth Feet (TVD): 7050 | Anticipated Total Measured Depth Feet (TMD): 20248.13 |
| Target Formation(s): MARCELLUS | | Deepest Formation to be penetrated: MARCELLUS | Number of Laterals: 1 | Total footage to be drilled all laterals: 20248.13 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177–1–33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177–1–32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177–1–30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176–1–14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177–1–30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177–1–29 | A N41°45'34.87" W76°01'55.70"  C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176–1–47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177–1–43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177–1–28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176–1–23 | N41°45'04.68" W76°02'09.73" | |
| ⑪ ROBERT N SHAFFER | 176–1–23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177–1–26 | A N41°44'56.14" W76°01'59.89"  C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99"  D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

-2-

PLOT DATE/TIME: 6/16/2020 10:16:51 AM

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | S3LHC |

| | |
|---|---|
| SURFACE HOLE COORDINATES NAD 83 True Latitude: NORTH 41° 45' 20.93" | WAYPOINT 2 COORDINATES NAD 83 True Latitude: NORTH 41° 44' 31.33" |
| True Longitude: WEST 76° 01' 42.18" | True Longitude: WEST 76° 01' 01.91" |
| NAD 83 N 41.755814° W 76.028383° | NAD 83 N 41.742037° W 76.017196° |
| NAD 27 N 41.755738° W 76.028736° | NAD 27 N 41.741962° W 76.017550° |
| N 583642.51 E 2469628.00 | N 578684.46 E 2472780.00 |
| KOP COORDINATES NAD 83 True Latitude: NORTH 41° 45' 25.68" | WAYPOINT 3 COORDINATES NAD 83 True Latitude: NORTH 41° 44' 17.47" |
| True Longitude: WEST 76° 01' 26.78" | True Longitude: WEST 76° 00' 54.42" |
| NAD 83 N 41.757135° W 76.024104° | NAD 83 N 41.738185° W 76.015116° |
| NAD 27 N 41.757059° W 76.024458° | NAD 27 N 41.738109° W 76.015470° |
| N 584147.00 E 2470785.48 | N 577292.45 E 2473375.58 |
| LANDING POINT COORDINATES NAD 83 True Latitude: NORTH 41° 45' 20.31" | WAYPOINT 4 COORDINATES NAD 83 True Latitude: NORTH 41° 43' 56.53" |
| True Longitude: WEST 76° 01' 24.22" | True Longitude: WEST 76° 00' 44.49" |
| NAD 83 N 41.755641° W 76.023396° | NAD 83 N 41.732369° W 76.012359° |
| NAD 27 N 41.755565° W 76.023749° | NAD 27 N 41.732294° W 76.012713° |
| N 583606.58 E 2470989.69 | N 575188.89 E 2474170.43 |
| WAYPOINT 1 COORDINATES NAD 83 True Latitude: NORTH 41° 44' 52.38" | BOTTOM HOLE COORDINATES NAD 83 True Latitude: NORTH 41° 43' 24.64" |
| True Longitude: WEST 76° 01' 10.98" | True Longitude: WEST 76° 00' 19.58" |
| NAD 83 N 41.747883° W 76.019716° | NAD 83 N 41.723511° W 76.005438° |
| NAD 27 N 41.747807° W 76.020069° | NAD 27 N 41.723435° W 76.005793° |
| N 580800.34 E 2472050.07 | N 571999.66 E 2476124.08 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |
| L3 | S88°29'19"E | 1362.18' |

PLOT DATE/TIME: 9/10/2020 1:43:25PM

Case: 22-1280    Document: 21-3    Page: 409    Date Filed: 07/25/2022



Bluegrass South Unit, Craige Unit, Poulson
North Unit & Poulson South Unit

Appx0977

Craige N 1UHC
May 26, 2021
Equinor USA Onshore Properties Inc.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Danny McGraw
6300 Bridge Point Pkwy., Bldg. 2, Ste. 100
Austin, TX 78730

Re:   Epsilon Energy's Proposed Craige N 1UHC Well
      API: 3711522800000; Permit Number: 115-22800
      Baltzley South and Baltzley North Unit
      Rush Township
      Susquehanna County, Pennsylvania

Mr. McGraw:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1UHC Well (the "Well") with a surface hole location of Latitude 41.755793° and Longitude -76.028656° (NAD 83); and an approximate bottom hole location of Latitude 41.789486° and Longitude -76.048982°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 19,344 feet, with an approximate vertical depth of 6,525 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,606,000.00 with a completed well costing approximately $9,122,124.00. We anticipate to commence the proposed operation on or about October 16, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to the Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **40.9633345%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **59.0366655%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0978

Date Filed: 07/25/2022        Page: 410        Document: 21-3        Case: 22-1280

Case: 22-1280    Document: 21-3    Page: 411    Date Filed: 07/25/2022

Craige N 1UHC
May 26, 2021
Equinor USA Onshore Properties Inc.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 1UHC WI | Craige N 1UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.354436% | 39.738353% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.118155% | 19.827832% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 25.027410% | 21.313343% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054918% |

Epsilon Energy USA Inc. and Equinor USA Onshore Properties Inc. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit, specifically Article VI.1 and XVI.A.2 as referenced above (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 1UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0979

Craige N 1UHC
May 26, 2021
Equinor USA Onshore Properties Inc.

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley South JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects to the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____ E-SIGNED by Danny McGraw
          on 2021-06-24 11:42:41 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: June 24, 2021

_____ **Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

___X___ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: _____ E-SIGNED by Danny McGraw
          on 2021-06-24 11:42:45 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: June 24, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Date Filed: 07/25/2022    Page: 412    Document: 21-3    Case: 22-1280

Craige N 1UHC
May 26, 2021

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1. That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2. That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By: _____

Name:_____

Title:_____

Date:_____

Date Filed: 07/25/2022     Page: 413     Document: 21-3     Case: 22-1280

**EPSILON**
Energy USA, Inc.

AFE # :    **D2110141**

| | |
|---|---|
| WELL NAME: | **CRAIGE N 1UHC** |
| OPERATOR: | **EPSILON ENERGY USA, INC** |
| PROJECT: | **AUBURN** |
| LOCATION (TRACT): | **CRAIGE** |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** |
| API (PERMIT #): | **37-115-22800-0000 (115-22800)** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** |
| COMMENTS: | **D&C HZ UPPER MARCELLUS WELL** |

DATE:    **05/26/21**

| | |
|---|---|
| PROPOSED TMD: | **19,344** |
| PROPOSED TVD: | **6,525** |
| PROPOSED CLAT: | **12,265** |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 151,000 | $ 2,455,000 | $ 2,606,000 |
| B. COMPLETION COST | $ 925,000 | $ 5,591,124 | $ 6,516,124 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,076,000 | $ 8,046,124 | $ 9,122,124 |

WELL/PROJECT ID# : _____

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| **CHESAPEAKE APPALACHIA, L.L.C.** | | 48.354436% | $ 4,410,952 |
| **EQUINOR USA ONSHORE PROPERTIES INC.** | | 24.118155% | $ 2,200,088 |
| **EPSILON ENERGY USA, INC.** | | 25.027410% | $ 2,283,031 |
| **JAMESTOWN RESOURCES, L.L.C.** | | 2.500000% | $ 228,053 |
| | | | |
| | | | |
| | | | |
| | | 100.000000% | $ 9,122,124 |

**OPERATOR'S APPROVAL**

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | *Henry N. Clayton* | OPERATIONS | DATE: | 5/26/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: | 5/26/21 |
| APPROVED BY: | *Shannon E. Lemke* | GEOLOGY | DATE: | 5/26/21 |
| APPROVED BY: | *B Lou Boyd* | ACCOUNTING | DATE: | 5-26-21 |

**NON-OPERATOR'S APPROVAL**

| | |
|---|---|
| COMPANY NAME: | DATE: |
| APPROVED BY: | |
| TITLE: | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

**Applicant/Well Operator Name:** Epsilon Operating LLC
**DEP #:** 328036
**Well Name:** Craige
**Well Number:** N1UHC

**PROJECT DETAILS:** Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1553' + KB 20' @ 1553.00usft (Prelim)

Azimuths to Grid North
True North: -1.14°
Magnetic North: -13.24°

Magnetic Field
Strength: 52280.6nT
Dip Angle: 67.127°
Date: 6/22/2020
Model: HDGM

**DESIGN TARGET DETAILS**

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|------|-----|-------|-------|----------|---------|----------|-----------|
| SHL (Craige N 1UHC) | 0.00 | 0.00 | 0.00 | 583672.15 | 2438136.73 | 41° 46' 20.856 N | 76° 1' 43.160 W |
| PBHL (Craige N 1UHC) | 6170.00 | 12165.21 | -5766.11 | 595837.36 | 2432350.62 | 41° 47' 22.14 N | 76° 2' 55.336 W |
| WP3 (Craige N 1UHC) | 6225.05 | 10556.81 | -5086.87 | 594228.96 | 2433049.86 | 41° 47' 6.128 N | 76° 2' 47.525 W |
| WP2 (Craige N 1UHC) | 6262.28 | 9335.67 | -4631.43 | 593007.82 | 2433505.30 | 41° 46' 53.975 N | 76° 2' 41.831 W |
| WP1 (Craige N 1UHC) | 6298.45 | 8189.88 | -4279.09 | 591862.03 | 2433857.64 | 41° 46' 42.589 N | 76° 2' 37.479 W |
| LP (Craige N 1UHC) | 6525.00 | 708.94 | -1443.18 | 584381.09 | 2436693.55 | 41° 46' 28.142 N | 76° 2' 2.013 W |

Formation est. at SHL
Base Elk SS  4325' TVD
Hamilton  4704' TVD

Formation est. at LP
Marcellus Shale  6485' TVD
Onondaga  6785' TVD

**Epsilon Energy**

**Preliminary Geological Prognosis**

| | |
|---|---|
| API Number: | 37115228000000 |
| Permit Number: | 115-22800 |
| Well Name: | Craige N 1UHC |
| Well Type: | Horizontal, development |
| Well Target: | Upper Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long: 41.755793 / -76.028656 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long: 41.757817 / -76.033893 |
| Bottom Hole: | Baltzley North Unit |
| | Lat/Long: 41.789486 / -76.048982 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 19,344' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,580 | -3,027 | TVD @ pentetration point |
| Hamilton SH | 4,670 | -3,117 | TVD @ pentetration point |
| Marcellus | 6,517 | -4,964 | TVD @ pentetration point |
| Target | 6,525 | -4,957 | TVD @ pentetration point |
| Onondaga Limestone | 6,836 | -5,283 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 12,265' |

Date Filed: 07/25/2022   Page: 416   Document: 21-3   Case: 22-1280

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Date Filed: 07/25/2022   Page: 417   Document: 21-3   Case: 22-1280



8000-PM-OOGM0002 Rev. 6/2014

pennsylvania DEPARTMENT OF ENVIRONMENTAL PROTECTION

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
OFFICE OF OIL AND GAS MANAGEMENT

# WELL LOCATION PLAT

PAGE 1 Surface Location

| DEP USE ONLY | | |
|---|---|---|
| Auth ID#: | | G: |
| Permit #: | | |
| Project #: | | C: |

Denotes location of top of well on topo map.

Surface hole is located on topo map 13071 feet south of latitude 41 ° 47 ' 30 "

Surface hole is located on topo map 7819 feet west of longitude 76 ° 00 ' 00 "

**SURFACE HOLE COORDINATES NAD 83**

True Latitude: NORTH 41° 45' 20.86"

True Longitude: WEST 76° 01' 43.16"

NAD 83
N 41.755793
W 76.028656

NAD 27
N 41.755718
W 76.029009

N 583633.67
E 2469553.71

NOTES

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST.

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N80°36'51"W | 720.71' |
| L2 | N65°19'30"W | 379.53' |

COMMONWEALTH OF PENNSYLVANIA REGISTERED PROFESSIONAL TODD C. JACOBS LAND SURVEYOR NO. SU 075184

LEGEND

- Well
- Found corner Iron Pin or Pipe
- Water Supply

NOTE
*No Wetlands Within 100' of Disturbance*
*No Wetlands Within 300' of Well Bore*

| | | | | | |
|---|---|---|---|---|---|
| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: N1UHC | Serial #: |
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. | |

| | | | | | |
|---|---|---|---|---|---|
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 856 ± |

| | | | | | | |
|---|---|---|---|---|---|---|
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/16/2020 10:06:08AM

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N1UHC | Serial # |
|---|---|---|---|---|

| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling): N63°50'25"W 1607.96' N20°45'37"W 8000.43' N17°05'35"W 1198.74' N20°27'13"W 1303.31' N23°29'48"W 1753.82' | | Anticipated True Vertical Depth Feet (TVD): 6175 | Anticipated Total Measured Depth Feet (TMD): 19343.85 |
|---|---|---|---|---|

| Target Formation(s): MARCELLUS | Deepest Formation to be penetrated: MARCELLUS | Number of Laterals: 1 | Total footage to be drilled all laterals: 19343.85 |
|---|---|---|---|

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177–1–33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177–1–32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177–1–30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176–1–14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177–1–30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177–1–29 | A N41°45'34.87" W76°01'55.70" C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176–1–47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177–1–43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177–1–28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176–1–23 | N41°45'04.68" W76°02'09.73" | |
| ⑪ ROBERT N SHAFFER | 176–1–23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177–1–26 | A N41°44'56.14" W76°01'59.89" C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99" D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 9/16/2020 10:06:30AM

-2-

Date Filed: 07/25/2022     Page: 419     Document: 21-3     Case: 22-1280

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N1UHC |

| | |
|---|---|
| **SURFACE HOLE COORDINATES** NAD 83 True Latitude: NORTH 41° 45' 20.86" | |
| True Longitude: WEST 76° 01' 43.16" | |
| NAD 83 N 41.755793° W 76.028656° | |
| NAD 27 N 41.755718° W 76.029009° | |
| N 583633.67 E 2469553.71 | |
| **KOP COORDINATES** NAD 83 True Latitude: NORTH 41° 45' 22.63" | **WAYPOINT 2 COORDINATES** NAD 83 True Latitude: NORTH 41° 46' 53.98" |
| True Longitude: WEST 76° 01' 59.39" | True Longitude: WEST 76° 02' 41.83" |
| NAD 83 N 41.756287° W 76.033164° | NAD 83 N 41.781660° W 76.044953° |
| NAD 27 N 41.756211° W 76.033517° | NAD 27 N 41.781584° W 76.045306° |
| N 583788.98 E 2468320.32 | N 592969.25 E 2464922.32 |
| **LANDING POINT COORDINATES** NAD 83 True Latitude: NORTH 41° 45' 28.14" | **WAYPOINT 3 COORDINATES** NAD 83 True Latitude: NORTH 41° 47' 06.13" |
| True Longitude: WEST 76° 02' 02.01" | True Longitude: WEST 76° 02' 47.52" |
| NAD 83 N 41.757817° W 76.033893° | NAD 83 N 41.785035° W 76.046535° |
| NAD 27 N 41.757742° W 76.034246° | NAD 27 N 41.784960° W 76.046888° |
| N 584342.58 E 2468110.48 | N 594190.38 E 2464466.89 |
| **WAYPOINT 1 COORDINATES** NAD 83 True Latitude: NORTH 41° 46' 42.59" | **BOTTOM HOLE COORDINATES** NAD 83 True Latitude: NORTH 41° 47' 22.15" |
| True Longitude: WEST 76° 02' 37.48" | True Longitude: WEST 76° 02' 56.34" |
| NAD 83 N 41.778497° W 76.043744° | NAD 83 N 41.789486° W 76.048982° |
| NAD 27 N 41.778422° W 76.044097° | NAD 27 N 41.789410° W 76.049335° |
| N 591823.48 E 2465274.66 | N 595798.77 E 2463767.65 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N80°36'51"W | 720.71' |
| L2 | N65°19'30"W | 379.53' |
| L3 | N63°50'25"W | 1607.96' |

PLOT DATE/TIME: 9/10/2020 1:34:57PM

8000-PM-OOGM0002   Rev. 6/2014

## WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N1UHC |
|---|---|---|---|

- 3B -

Appx0989

Case: 22-1280   Document: 21-3   Page: 421   Date Filed: 07/25/2022



Baltzley North Unit, Baltzley South
Unit & Craige Unit

Case: 22-1280     Document: 21-3     Page: 422     Date Filed: 07/25/2022

Appx0990

Craige N 4UHC
May 26, 2021
Equinor USA Onshore Properties Inc.



Date Filed: 07/25/2022      Page: 423      Document: 21-3      Case: 22-1280

May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Danny McGraw
6300 Bridge Point Pkwy, Bldg 2, Ste 100
Austin, TX 78730

Re:   Epsilon Energy's Proposed Craige N 4UHC Well
      API: 3711522808000; Permit Number: 115-22808
      Baltzley South and Baltzley North Unit
      Rush Township
      Susquehanna County, Pennsylvania

Mr. McGraw:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 4UHC Well (the "Well") with a surface hole location of Latitude 41.755855° and Longitude -76.028526° (NAD 83); and an approximate bottom hole location of Latitude 41.789462° and Longitude -76.044140°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 18,494 feet, with an approximate vertical depth of 6,410 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,508,000.00 with a completed well costing approximately $8,574,115.00. We anticipate to commence the proposed operation on or about November 8, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **41.4203317%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **58.5796683%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Date Filed: 07/25/2022          Page: 424          Document: 21-3          Case: 22-1280

Craige N 4UHC
May 26, 2021
Equinor USA Onshore Properties Inc.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 4UHC WI | Craige N 4UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.374130% | 39.752946% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.128513% | 19.835527% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 24.997357% | 21.290188% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054837% |

Epsilon Energy USA Inc. and Equinor USA Onshore Properties Inc. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit, specifically Article VI.1 and XVI.A.2 as referenced above (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 4UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx0992

Craige N 4UHC
May 26, 2021
Equinor USA Onshore Properties Inc.

_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley South JOA.

___X___**Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____
    E-SIGNED by Danny McGraw
    on 2021-06-24 11:43:00 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: June 24, 2021


_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 4UHC Well pursuant to the Baltzley North JOA.

___X___**Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 4UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: _____
    E-SIGNED by Danny McGraw
    on 2021-06-24 11:43:03 GMT

Name: Danny McGraw

Title: Prin. Consultant Land

Date: June 24, 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Date Filed: 07/25/2022   Page: 426   Document: 21-3   Case: 22-1280

Craige N 4UHC
May 26, 2021

Exhibit "A"

Allocation Consent Agreement

Epsilon Energy USA, Inc. ("EPSN") intends to drill a well or wells which will extend into two units, the existing Baltzley South Unit and Baltzley North Unit (any well drilled which extends into all of the aforementioned units to be referred to as a "Cross Unit Well"). In accordance therewith, Epsilon desires to establish the method by which production and costs will be allocated via this Allocation Consent Agreement ("ACA"), by and between the following parties (all of which to be collectively referred to herein as the "ACA Parties", and/ or individually as "ACA Party"), each of which own a working interest in one or all of the aforementioned Units under and subject to the following Operating Agreements:

1.  That certain Joint Operating Agreement for the Baltzley South Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

2.  That certain Joint Operating Agreement for the Baltzley North Unit, dated October 18, 2010, by and between Chesapeake, as Operator, and Epsilon Energy USA, Inc., et al, as Non-Operators.

All costs and production for each Cross Unit Well shall be allocated as follows for each of the ACA Parties: The Allocation Factor for each unit shall be a fraction, the numerator of which is equal to the length of that portion of the productive drainhole length of a Cross Unit Well that lies within each respective unit, and the denominator of which is equal to the entire productive drainhole length of the Cross Unit Well. The Allocation Factor shall be multiplied be each respective ACA Party's working and net revenue interest in each unit, and the equation for each unit will be summed together to determine each respective ACA Party's working and net revenue interest for the Cross Unit Well. The productive drainhole length shall be measured from the first take point to the last take point along the lateral of the Cross Unit Well. A preliminary estimate of those measurements shall be based on GIS measurements and shall be provided by Epsilon with the drilling proposals for the Cross Unit Wells, together with the resulting estimated Allocation Factors and working and net revenue interests of the ACA Parties. Upon completion of the Cross Unit Well, a final Allocation Factor for each unit will be determined.

Except as expressly set forth herein, the above referenced Joint Operating Agreements for the Baltzley North Unit and the Baltzley South Unit will govern the rights and obligations of the parties as to that portion of the productive drainhole length of each Cross Unit Well's lateral lying within each respective unit. By way of example and not limitation, if a party elects to not participate in the Cross Unit Well as to one of the units, then the non-consent penalty in the Joint Operating Agreement for that unit will apply to the costs allocated to that particular unit, and the interest of the non-consenting party will be offered only to the parties subject to that particular Joint Operating Agreement.

Epsilon Energy USA, Inc.
Rachel Collins

By: _____

Name: _____

Title: _____

Date: _____


EPSILON
Energy USA, Inc.

AFE # :  D2110145

DATE:  05/26/21

| WELL NAME: | CRAIGE N 4UHC |
|---|---|
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22808-0000 (115-22808) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL |

PROPOSED TMD: 18,494
PROPOSED TVD: 6,410
PROPOSED CLAT: 11,705

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 151,000 | $ 2,357,000 | $ 2,508,000 |
| B. COMPLETION COST | $ 903,000 | $ 5,163,115 | $ 6,066,115 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,054,000 | $ 7,520,115 | $ 8,574,115 |
|  |  |  | $ - |

WELL/PROJECT ID# : _____

EXPLORATORY ☐      DEVELOPMENT ☑

WORKOVER ☐      RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.374130% | $ 4,147,653 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.128513% | $ 2,068,806 |
| EPSILON ENERGY USA, INC. | | 24.997357% | $ 2,143,302 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.500000% | $ 214,353 |
| | | | |
| | | | |
| | | | |
| | | 100.000000% | $ 8,574,115 |

### OPERATOR'S APPROVAL

| PREPARED BY: | Henry N. Clark | OPERATIONS | DATE: 5/26/21 |
|---|---|---|---|
| APPROVED BY: | Rachel Collins | LAND/LEGAL | DATE: 5/26/21 |
| APPROVED BY: | Shannon E Lemke | GEOLOGY | DATE: 5/26/21 |
| APPROVED BY: | B Lou Bond | ACCOUNTING | DATE: 5-26-21 |

### NON-OPERATOR'S APPROVAL

COMPANY NAME: _____     DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only.  In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred.  Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Applicant/Well Operator Name: Epsilon Operating LLC
DEP #: 328036
Well Name: Craige
Well Number: N4UHC

Azimuths to Grid North
True North: -1.14°
Magnetic North: -13.22°

Magnetic Field
Strength: 52231.3nT
Dip Angle: 67.23°
Date: 10/13/2020
Model: HDGM

PROJECT DETAILS: Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1533' + KB 20' @ 1553.00usft (Permit)

DESIGN TARGET DETAILS

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|---|---|---|---|---|---|---|---|
| SHL (Craige N 4UHC) | 0.00 | 0.00 | 0.00 | 583695.45 | 2438171.72 | 41° 45' 21.079 N | 76° 1' 42.693 W |
| PBHL (Craige N 4UHC) | 6160.00 | 12159.10 | -4500.73 | 595854.55 | 2433670.99 | 41° 47' 22.062 N | 76° 2' 38.905 W |
| WP2 (Craige N 4UHC) | 6182.96 | 11147.39 | -4158.76 | 594842.84 | 2434012.96 | 41° 47' 12.002 N | 76° 2' 34.654 W |
| WP1 (Craige N 4UHC) | 6202.70 | 10303.89 | -3783.05 | 593999.34 | 2434388.66 | 41° 47' 3.597 N | 76° 2' 29.915 W |
| LP (Craige N 4UHC) | 6410.00 | 1250.62 | -293.49 | 584946.07 | 2437878.23 | 41° 45' 33.490 N | 76° 1' 46.236 W |

Formation est. at SHL

Base Elk SS 4325' TVD
Hamilton 4704' TVD

Formation est. at LP

Marcellus Shale 6385' TVD
Onondaga 6685' TVD

**Epsilon Energy**

**Preliminary Geological Prognosis**

Date Filed: 07/25/2022   Page: 429   Document: 21-3   Case: 22-1280

| | |
|---|---|
| API Number: | 37115228080000 |
| Permit Number: | 115-22808 |
| Well Name: | Craige N 4UHC |
| Well Type: | Horizontal, development |
| Well Target: | Upper Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long: 41.755855 / -76.028526 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long: 41.759303 / -76.029510 |
| Bottom Hole: | Baltzley North Unit |
| | Lat/Long: 41.789462 / -76.044140 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 18,494' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,540 | -2,987 | TVD @ pentetration point |
| Hamilton SH | 4,650 | -3,097 | TVD @ pentetration point |
| Marcellus | 6,410 | -4,882 | TVD @ pentetration point |
| Target | 6,410 | -4,897 | TVD @ pentetration point |
| Onondaga Limestone | 6,729 | -5,174 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 11,705' |

Appx0997

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Date Filed: 07/25/2022   Page: 430   Document: 21-3   Case: 22-1280



8000-PM-OOGM0002 Rev. 6/2014

pennsylvania DEPARTMENT OF ENVIRONMENTAL PROTECTION

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
OFFICE OF OIL AND GAS MANAGEMENT

# WELL LOCATION PLAT

PAGE 1 Surface Location

| DEP USE ONLY | | |
|---|---|---|
| Auth ID#: | | G: |
| Permit #: | | |
| Project #: | | C: |

Denotes location of top of well on topo map.

Surface hole is located on topo map 13049 feet south of latitude 41 ° 47 ' 30 "

Surface hole is located on topo map 7783 feet west of longitude 76 ° 00 ' 00 "

| SURFACE HOLE COORDINATES NAD 83 |
|---|
| True Latitude: NORTH 41° 45' 21.08" |
| True Longitude: WEST 76° 01' 42.69" |
| NAD 83 N 41.755855° W 76.028526° |
| NAD 27 N 41.755780° W 76.028879° |
| N 583656.97 E 2469588.70 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°48'04"W | 751.98' |
| L2 | N70°24'59"W | 403.18' |

NOTES

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.
2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.
3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.
4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST.

COMMONWEALTH OF PENNSYLVANIA REGISTERED PROFESSIONAL TODD C. JACOBS LAND SURVEYOR NO. SU 075184

LEGEND

- △ *Well*
- ● *Found corner Iron Pin or Pipe*
- ⊗ *Water Supply*

NOTE

*No Wetlands Within 100' of Disturbance*
*No Wetlands Within 300' of Well Bore*

| Applicant/Well Operator Name: | DEP ID #: | Well (Farm) Name: | Well #: | Serial #: |
|---|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N4UHC | |

| Address: | County: | Municipality: | Well Type: |
|---|---|---|---|
| 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | SUSQUEHANNA | RUSH | NATURAL GAS |

| 911 address of well site: | USGS 7½' Quadrangle Map Name: | Map Section: | Surface Elevation: |
|---|---|---|---|
| 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | LAWTON | 9 | 1533 ft. |

| Surveyor or Engineer: | Phone #: | Dwg #: | Date: | Scale: | Tract Acreage: |
|---|---|---|---|---|---|
| TODD C. JACOBS, P.L.S. | 570-278-3100 | NMPY 26 | 10/22/2020 | 1" = 1,000' | 931 ± |

| Lat. & Long Metadata Method: | Accuracy: | Datum: | Elevation Metadata Method: | Accuracy: | Datum: | Survey Date: |
|---|---|---|---|---|---|---|
| GPSOF(L1,L2)RTK | 0.033' ft. | NAD 83 | GPSOF (L1,L2)RTK | 0.069 ft. | NAVD 88 | 07/02/2010 |

PLOT DATE/TIME: 10/21/2020 0:36:39PM

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name:<br>EPSILON OPERATING LLC | DEP ID#<br>328036 | Well (Farm) Name<br>CRAIGE | Well #<br>N4UHC | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor:<br>HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling):<br>N13°12'25"W 1284.60' N21°04'45"W 9702.51'<br>N24°00'31"W 923.39' N18°40'33"W 1067.94' | | Anticipated True Vertical<br>Depth Feet (TVD):<br>6160 | Anticipated Total<br>Measured Depth<br>Feet (TMD):<br>18494.09 |
| Target Formation(s):<br>MARCELLUS | Deepest Formation to be penetrated:<br>MARCELLUS | | Number of<br>Laterals:<br>1 | Total footage to be<br>drilled all laterals:<br>18494.09 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70"<br>C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.73" | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89"<br>C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99"<br>D N41°44'57.55" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality: where the well will be drilled,<br>adjacent to the well, or within 3000 feet | Municipality: where the well will be drilled,<br>adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

-2-

Date Filed: 07/25/2022   Page: 432   Document: 21-3   Case: 22-1280

PLOT DATE/TIME: 10/21/2020 0:37:10PM

Case: 22-1280 Document: 21-3 Page: 433 Date Filed: 07/25/2022

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N4UHC |

| | |
|---|---|
| **SURFACE HOLE COORDINATES** NAD 83 True Latitude: NORTH 41° 45' 21.08" | |
| True Longitude: WEST 76° 01' 42.69" | |
| NAD 83 N 41.755855° W 76.028526° | |
| NAD 27 N 41.755780° W 76.028879° | |
| N 583656.97 E 2469588.70 | |
| **KOP COORDINATES** NAD 83 True Latitude: NORTH 41° 45' 28.06" | |
| True Longitude: WEST 76° 01' 43.60" | |
| NAD 83 N 41.757794° W 76.028779° | |
| NAD 27 N 41.757719° W 76.029132° | |
| N 584361.96 E 2469505.70 | |
| **LANDING POINT COORDINATES** NAD 83 True Latitude: NORTH 41° 45' 33.49" | **WAYPOINT 2 COORDINATES** NAD 83 True Latitude: NORTH 41° 47' 12.00" |
| True Longitude: WEST 76° 01' 46.24" | True Longitude: WEST 76° 02' 34.65" |
| NAD 83 N 41.759303° W 76.029510° | NAD 83 N 41.786667° W 76.042960° |
| NAD 27 N 41.759227° W 76.029864° | NAD 27 N 41.786592° W 76.043313° |
| N 584907.58 E 2469295.21 | N 594804.25 E 2465429.97 |
| **WAYPOINT 1 COORDINATES** NAD 83 True Latitude: NORTH 41° 47' 03.60" | **BOTTOM HOLE COORDINATES** NAD 83 True Latitude: NORTH 41° 47' 22.06" |
| True Longitude: WEST 76° 02' 29.92" | True Longitude: WEST 76° 02' 38.90" |
| NAD 83 N 41.784333° W 76.041643° | NAD 83 N 41.789462° W 76.044140° |
| NAD 27 N 41.784257° W 76.041996° | NAD 27 N 41.789386° W 76.044493° |
| N 593960.76 E 2465805.67 | N 595815.95 E 2465088.01 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°48'04"W | 751.98' |
| L2 | N70°24'59"W | 403.18' |
| L3 | N13°12'25"W | 1284.60' |

PLOT DATE/TIME: 10/21/2020 1:00:01PM

8000-PM-OOGM0002   Rev. 6/2014

## WELL LOCATION PLAT

### PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N4UHC |
|---|---|---|---|

MAP SCALE: 1"=800'

- 3B -

Appx1002

Case: 22-1280    Document: 21-3    Page: 435    Date Filed: 07/25/2022



Baltzley North Unit, Baltzley South
Unit & Craige Unit

Appx1003

Craige N 1LH
May 26, 2021
Equinor USA Onshore Properties Inc.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Equinor USA Onshore Properties Inc.
Attn: Mr. Danny McGraw
6300 Bridge Point Pkwy., Bldg. 2, Ste. 100
Austin, TX 78730

Re:    Epsilon Energy's Proposed Craige N 1LH Well
       API: 37115228010000; Permit Number: 115-22801
       Baltzley South Unit
       Rush Township
       Susquehanna County, Pennsylvania

Mr. McGraw:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1LH Well (the "Well") with a surface hole location of Latitude 41.755847° and Longitude -76.028635° (NAD 83); and an approximate bottom hole location of Latitude 41.770464° and Longitude -76.036905°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 12,123 feet, with an approximate vertical depth of 6,680 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $1,946,000.00 with a completed well costing approximately $5,398,707.00. We anticipate to commence the proposed operation on or about October 1, 2021.

This well will be a subsequent well drilled in the Baltzley South Unit, which covers 417.171123 acres.

The table below contains a summary of the working and net revenue interest ownership in the Well.

| Working Interest Owner | Craige N 1LH WI | Craige N 1LH NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 41.623478% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 20.821989% |
| Epsilon Energy USA, Inc. | 21.145145% | 18.322130% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.044433% |

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1004

Case: 22-1280   Document: 21-3   Page: 436   Date Filed: 07/25/2022

Craige N 1LH
May 26, 2021
Equinor USA Onshore Properties Inc.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date. Accordingly, please indicate your election in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE. Failure to make a timely election shall be deemed an election not to participate.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA, Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1005

Craige N 1LH
May 26, 2021
Equinor USA Onshore Properties Inc.

_____**Equinor USA Onshore Properties Inc.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1LH Well pursuant to the Baltzley South JOA.

____X____ **Equinor USA Onshore Properties Inc.** hereby elects **not** to participate in the drilling of the Craige N 1LH Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By:_____
E-SIGNED by Danny McGraw
on 2021-06-24 11:43:15 GMT

Name:_ Danny McGraw _____

Title:_ Prin. Consultant Land _____

Date:_ June 24, 2021 _____

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1006



**EPSILON**
Energy USA, Inc.

AFE # :     D2110140

| | |
|---|---|
| WELL NAME: | **CRAIGE N 1LH** |
| OPERATOR: | **EPSILON ENERGY USA, INC** |
| PROJECT: | **AUBURN** |
| LOCATION (TRACT): | **CRAIGE** |
| SURFACE OWNER: | **HAROLD C AND GLORIA CRAIGE** |
| API (PERMIT #): | **37-115-22081-0000 (115-22081)** |
| COUNTY, STATE: | **SUSQUEHANNA, PENNSYLVANIA** |
| COMMENTS: | **D&C HZ LOWER MARCELLUS WELL** |

DATE:     **05/26/21**

| | |
|---|---|
| PROPOSED TMD: | **12,123** |
| PROPOSED TVD: | **6,680** |
| PROPOSED CLAT: | **5,080** |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A.  DRILLING COST | $ 162,000 | $ 1,784,000 | $ 1,946,000 |
| B.  COMPLETION COST | $ 776,000 | $ 2,676,707 | $ 3,452,707 |
| C.  PLANT & FACILITY COST | $ - | $ - | $ - |
| D.  WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 938,000 | $ 4,460,707 | $ 5,398,707 |
| | | | - |

WELL/PROJECT ID#: _____

EXPLORATORY ☐      DEVELOPMENT ☑

WORKOVER ☐      RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 50.898563% | $ 2,747,864 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 25.456292% | $ 1,374,311 |
| EPSILON ENERGY USA, INC. | | 21.145145% | $ 1,141,564 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.500000% | $ 134,968 |
| | | | |
| | | | |
| | | | |
| | | 100.000000% | $ 5,398,707 |

**OPERATOR'S APPROVAL**

| | | | |
|---|---|---|---|
| PREPARED BY: | *Henry N Clarke* | OPERATIONS | DATE: 5/26/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: 5/26/21 |
| APPROVED BY: | *Shannon E Lemke* | GEOLOGY | DATE: 5/26/21 |
| APPROVED BY: | *B Lou Boyd* | ACCOUNTING | DATE: 5-26-21 |

**NON-OPERATOR'S APPROVAL**

COMPANY NAME: _____     DATE: _____

APPROVED BY: _____

TITLE: _____

The costs on this AFE are estimates only.  In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred.  Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.

Applicant/Well Operator Name: Epsilon Operating LLC
DEP #: 328036
Well Name: Craige
Well Number: N1LH

Azimuths to Grid North
True North: -1.14°
Magnetic North: -13.24°

Magnetic Field
Strength: 52260.5nT
Dip Angle: 67.27°
Date: 6/22/2020
Model: HDGM

PROJECT DETAILS: Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1533' + KB 20' @ 1553.00usft (Prelim)

DESIGN TARGET DETAILS

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|---|---|---|---|---|---|---|---|
| SHL (Craige N 1LH) | 0.00 | 0.00 | 0.00 | 583691.91 | 2438141.93 | 41° 45' 21.050 N | 76° 1' 43.087 W |
| PBHL (Craige N 1LH) | 6630.00 | 5280.53 | -2361.33 | 588972.44 | 2435780.60 | 41° 46' 13.672 N | 76° 2' 12.858 W |
| LP (Craige N 1LH) | 6680.00 | 548.45 | -517.53 | 584240.36 | 2437624.40 | 41° 45' 26.569 N | 76° 1' 49.770 W |

| Formation est. at SHL |
|---|
| Base Elk SS 4325' TVD<br>Hamilton 4704' TVD |

| Formation est. at LP |
|---|
| Marcellus Shale 6420' TVD<br>Onondaga 6720' TVD |

SHL (Craige N 1LH)
KOP at 2,600' MD _ 2°/100
Hold 4.73°
Base Elk SS
Hamilton
Drop _ 2.0°/100
Curve KOP at 6,119.31' MD _ 10°/100
LP at 7,043.18' MD - 6,680.02' TVD
TD at 12122.93
Marcellus Shale
Onondaga
Permit Plan
12124
0
1500
3000
4500
6000
7500
True Vertical Depth (1500 usft/in)
Vertical Section at 338.71° (1500 usft/in)

Craige N 1LH/Permit Plan
6630
TD at 12122.93
LP at 7,043.18' MD - 6,680.02' TVD
Curve KOP at 6,119.31' MD _ 10°/100
Drop _ 2.0°/100
Hold 4.73°
KOP at 2,600' MD _ 2°/100
6000
4500
3000
1500
0
-1500
-3000
South(-)/North(+) (1500 usft/in)
West(-)/East(+) (1500 usft/in)

**Epsilon Energy**

**Preliminary Geological Prognosis**

API Number:          37115228010000

Permit Number:       115-22801

Well Name:           Craige N 1LH

Well Type:           Horizontal, development

Well Target:         Lower Marcellus

State:               Pennsylvania

County:              Susquehanna

Township:            Rush

Projection:          NAD83/Pennsylvania South

Surface Location:    Craige Pad

                     Lat/Long:  41.755847 / -76.028635

Landing Point:       Baltzley South Unit

                     Lat/Long:  41.75738 / -76.030491

Bottom Hole:         Baltzley South Unit

                     Lat/Long:  41.770464 / -76.036905

Surface Elevation:   1,533'

KB (est):            1,553'

Total Depth (est):   12,123'

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,593 | -3,040 | TVD @ pentetration point |
| Hamilton SH | 4,714 | -3,161 | TVD @ pentetration point |
| Marcellus | 6,680 | -5,127 | TVD @ pentetration point |
| Target | 6,680 | -5,113 | TVD @ pentetration point |
| Onondaga Limestone | 6,999 | -5,446 | |

Well Azimuth:        339°

Lateral Length:      5,080'

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |



8000-PM-OOGM0002 Rev. 6/2014

pennsylvania DEPARTMENT OF ENVIRONMENTAL PROTECTION

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
OFFICE OF OIL AND GAS MANAGEMENT

# WELL LOCATION PLAT

PAGE 1 Surface Location

| DEP USE ONLY | | |
|---|---|---|
| Auth ID#: | | G: |
| Permit #: | | |
| Project #: | | C: |

Denotes location of top of well on topo map.

Surface hole is located on topo map 13052 feet south of latitude 41 ° 47 ' 30 "

| SURFACE HOLE COORDINATES NAD 83 |
|---|
| True Latitude: NORTH 41° 45' 21.05" |
| True Longitude: WEST 76° 01' 43.09" |
| NAD 83 N 41.755847° W 76.028635° |
| NAD 27 N 41.755772° W 76.028989° |
| N 583653.43 E 2469558.91 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°13'36"W | 722.91' |
| L2 | N68°23'20"W | 376.54' |

Surface hole is located on topo map 7813 feet west of longitude 76 ° 00 ' 00 "

NOTES

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.
2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.
3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.
4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST

LEGEND

- Well
- Found corner Iron Pin or Pipe
- Water Supply

NOTE
*No Wetlands Within 100' of Disturbance*
*No Wetlands Within 300' of Well Bore*

PLOT DATE/TIME: 9/13/2020 9:48:23AM

| | | | | | | |
|---|---|---|---|---|---|---|
| Applicant/Well Operator Name: EPSILON OPERATING LLC | | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: N1LH | Serial #: |
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. | |
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 380 ± | |
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

8000-PM-OOGM0002 Rev. 6/2014

## WELL LOCATION PLAT

### PAGE 2 Notifications

DEP Statewide toll−free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name:<br>EPSILON OPERATING LLC | DEP ID#<br>328036 | Well (Farm) Name<br>CRAIGE | Well #<br>N1LH | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor:<br>HAROLD C. AND GLORIA CRAIGE | | Angle & Course of Deviation (Drilling)<br>N43°20'22" W 754.01'<br>N21°17'17" W 5078.67' | Anticipated True Vertical<br>Depth Feet (TVD):<br>6630 | Anticipated Total<br>Measured Depth<br>Feet (TMD):<br>12122.93 |
| Target Formation(s):<br>MARCELLUS | | Deepest Formation to be penetrated:<br>MARCELLUS | Number of<br>Laterals:<br>1 | Total footage to be<br>drilled all laterals:<br>12122.93 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude, Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70"<br>C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.73" | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89"<br>C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99"<br>D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality: where the well will be drilled,<br>adjacent to the well, or within 3000 feet | Municipality: where the well will be drilled<br>adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

-2-

PLOT DATE/TIME: 9/16/2020 9:48:53AM

Case: 22-1280   Document: 21-3   Page: 444   Date Filed: 07/25/2022

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N1LH |

**SURFACE HOLE COORDINATES**
NAD 83
True Latitude: NORTH 41° 45' 21.05"
True Longitude: WEST 76° 01' 43.09"
NAD 83
N 41.755847
W 76.028635
NAD 27
N 41.755772
W 76.028989
N 583653.43
E 2469558.91

**KOP COORDINATES**
NAD 83
True Latitude: NORTH 41° 45' 21.03"
True Longitude: WEST 76° 01' 47.06"
NAD 83
N 41.755843
W 76.029738
NAD 27
N 41.755767
W 76.030091
N 583645.73
E 2469258.11

**LANDING POINT COORDINATES**
NAD 83
True Latitude: NORTH 41° 45' 26.57"
True Longitude: WEST 76° 01' 49.77"
NAD 83
N 41.757380
W 76.030491
NAD 27
N 41.757305
W 76.030845
N 584201.82
E 2469041.42

**BOTTOM HOLE COORDINATES**
NAD 83
True Latitude: NORTH 41° 46' 13.67"
True Longitude: WEST 76° 02' 12.86"
NAD 83
N 41.770464
W 76.036905
NAD 27
N 41.770389
W 76.037258
N 588933.91
E 2467197.60

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°13'36"W | 722.91' |
| L2 | N68°23'20"W | 376.54' |
| L3 | N43°20'22"W | 754.01' |

PLOT DATE/TIME: 9/10/2020 1:22:39PM



Baltzley South

Susquehanna County

Rush Township

Craige

Auburn Township

0          2,000
        FEET

● Surface Location
---►  Proposed well
▭  Unit

Baltzley South Unit & Craige Unit

EPSILON
Energy

Case: 22-1280    Document: 21-3    Page: 446    Date Filed: 07/25/2022

Case: 22-1280     Document: 21-3     Page: 447     Date Filed: 07/25/2022

# EXHIBIT "C"



**JAMESTOWN**
RESOURCES, L.L.C.

June 25, 2021

**VIA ELECTRONIC MAIL (rachel.collins@epsilonenergyltd.com**
**henry.clanton@epsilonenergyltd.com)**

Ms. Rachel Collins
Epsilon Energy Usa, Inc
16945 NORTHCHASE DRIVE, SUITE 1610
Houston, TX 77060

**Re:** Proposed Drilling Operation (Non-Consent)
CRAIGE S 3LHC
Susquehanna County, PA

Dear Ms. Collins,

Pursuant to your proposal letter dated May 26, 2021, please be advised that Jamestown Resources, L.L.C hereby elects NOT to participate in the proposed drilling of the captioned well. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**

Date Filed: 07/25/2022    Page: 448    Document: 21-3    Case: 22-1280

Craige S 3LHC
May 26, 2021
Jamestown Resources, L.L.C.



May 26, 2021

VIA FEDEX AND ELECTRONIC MAIL

Jamestown Resources, L.L.C.
Attn: Ms. Randi Walsh
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:   Epsilon Energy's Proposed Craige S 3LHC Well
      API: 37115227970000; Permit Number: 115-22797
      Craige Unit, Poulsen North Unit, and Poulsen South Unit
      Rush Township, Susquehanna County, Pennsylvania
      Auburn Township, Susquehanna County, Pennsylvania

Ms. Walsh:

This well proposal is made pursuant to that certain Joint Operating Agreement dated December 16, 2010, covering the Craige Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Farmout Agreement between Epsilon Energy USA, Inc. ("EPSN") and Chesapeake Appalachia, L.L.C. dated effective February 1, 2010 with Exhibit Schedule 7.1.2 as Joint Operating Agreement covering the Poulsen North and Poulsen South Units (both of these Joint Operating Agreements to be collectively referred to hereinafter as the "Subject JOAs").

EPSN hereby proposes to drill the Craige S 3LHC Well (the "Well") with a surface hole location of Latitude 41.755814° and Longitude -76.028383° (NAD 83); and an approximate bottom hole location of Latitude 41.723511° and Longitude -76.005438°, in Rush Township, Susquehanna County, and Auburn Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 20,248 feet, with an approximate vertical depth of 7,050 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,611,000.00 with a completed well costing approximately $9,226,398.00. We anticipate to commence the proposed operation on or about November 30, 2021.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Date Filed: 07/25/2022     Page: 449     Document: 21-3     Case: 22-1280

Craige S 3LHC
May 26, 2021
Jamestown Resources, L.L.C.

The Well will be a subsequent well drilled in each of the following units:
- Craige Unit, which covers 591.870858 acres
- Poulsen North Unit, which covers 132.810484 acres
- Poulsen South Unit, which covers 95.619792 acres

The Well will be drilled as a Cross Unit Well, pursuant to the Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **43.0695026%** of the productive drainhole of the Cross Unit Well being in the Craige Unit, approximately **30.8294457%** of the productive drainhole of the Cross Unit well being in the Poulsen North Unit, and approximately **26.1010516%** of the productive drainhole of the Cross Unit Well being in the Poulsen South Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

| Working Interest Owner | Craige Unit WI | Poulsen North Unit WI | Poulsen South Unit WI | Craige S 3LHC WI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 35.952489% | 35.528850% | 36.941747% | 36.080090% |
| Equinor USA Onshore Properties Inc. | 18.345441% | 17.106484% | 17.786767% | 17.817658% |
| Epsilon Energy USA, Inc. | 33.669160% | 47.364666% | 45.271485% | 40.919737% |
| Jamestown Resources, L.L.C. | 2.500000% | 0.000000% | 0.000000% | 1.076738% |
| Chief Exploration & Development LLC | 5.338430% | 0.000000% | 0.000000% | 2.299235% |
| Enerplus Resources (USA) Corporation | 2.859873% | 0.000000% | 0.000000% | 1.231733% |
| Radler 2000 Limited Partnership | 0.777193% | 0.000000% | 0.000000% | 0.334733% |
| Tug Hill Marcellus, LLC | 0.557414% | 0.000000% | 0.000000% | 0.240075% |

EPSN and Jamestown Resources, L.L.C. hereby acknowledge that the working interest ownership set forth above is only an estimate, and that the actual working interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1018

Date Filed: 07/25/2022      Page: 451      Document: 21-3      Case: 22-1280

Craige S 3LHC
May 26, 2021
Jamestown Resources, L.L.C.


Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.


At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.


Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.



Sincerely,
Epsilon Energy USA Inc.

Rachel Collins
Sr. Land Administrator




Enclosures: Allocation Consent Agreement Craige S 3LHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1019

Craige S 3LHC
May 26, 2021
Jamestown Resources, L.L.C.

_____ **Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige S 3LHC Well pursuant to the Craige JOA.

_____X_____ **Jamestown Resources, L.L.C.** hereby elects **not** to participate in the drilling of the Craige S 3LHC Well and elects the Non-Consent provision pursuant to the Craige JOA.

By: _____
Name: Michael Fiuzat
Title: Manager
Date: 6|24| 2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1020

Case: 22-1280   Document: 21-3   Page: 452   Date Filed: 07/25/2022


EPSILON
Energy USA, Inc.

| | | AFE # : | D2110144 |
|---|---|---|---|

| WELL NAME: | CRAIGE S 3LHC |
|---|---|
| OPERATOR: | EPSILON ENERGY USA, INC |
| PROJECT: | AUBURN |
| LOCATION (TRACT): | CRAIGE |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE |
| API (PERMIT #): | 37-115-22797-0000 (115-22797) |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL |

DATE: 05/26/21

| PROPOSED TMD: | 20,248 |
|---|---|
| PROPOSED TVD: | 7,050 |
| PROPOSED CLAT | 12,750 |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A.  DRILLING COST | $ 151,000 | $ 2,460,000 | $ 2,611,000 |
| B.  COMPLETION COST | $ 948,000 | $ 5,667,398 | $ 6,615,398 |
| C.  PLANT & FACILITY COST | $ - | $ - | $ - |
| D.  WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,099,000 | $ 8,127,398 | $ 9,226,398 |

WELL/PROJECT ID# : 

EXPLORATORY ☐    DEVELOPMENT ☑

WORKOVER ☐    RECOMPLETION ☐

| WORKING INTEREST OWNER: | PERCENT: | COST SHARE: |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | 36.080090% | $ 3,328,893 |
| EQUINOR USA ONSHORE PROPERTIES INC | 17.817658% | $ 1,643,928 |
| EPSILON ENERGY USA, INC. | 40.919737% | $ 3,775,418 |
| JAMESTOWN RESOURCES, L.L.C. | 1.076738% | $ 99,344 |
| CHIEF EXPLORATION & DEVELOPMENT LLC | 2.299235% | $ 212,137 |
| ENERPLUS RESOURCES (USA) CORPORATION | 1.231733% | $ 113,645 |
| RADLER 2000 LIMITED PARTNERSHIP | 0.334733% | $ 30,884 |
| TUG HILL MARCELLUS, LLC | 0.240075% | $ 22,150 |
| | 100.000000% | $ 9,226,398 |

**OPERATOR'S APPROVAL**

| PREPARED BY: | Henry N Clate | OPERATIONS | DATE: 5/26/21 |
|---|---|---|---|
| APPROVED BY: | Rachel Collins | LAND/LEGAL | DATE: 5/26/21 |
| APPROVED BY: | Shannon E. Lemke | GEOLOGY | DATE: 5/26/21 |
| APPROVED BY: | B Von Dord | ACCOUNTING | DATE: 5-26-21 |

**NON-OPERATOR'S APPROVAL**

| COMPANY NAME: | JRLLC | DATE: 6.24.2021 |
|---|---|---|
| APPROVED BY: | M. Finzat | |
| TITLE: | Manager | |

The costs on this AFE are estimates only.  In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred.  Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



Applicant/Well Operator Name: Epsilon Operating LLC
DEP #: 328036
Well Name: Craige
Well Number: S3LHC

Azimuths to Grid North
True North: -1.14°
Magnetic North: -13.24°

Magnetic Field
Strength: 62260.0nT
Dip Angle: 67.27°
Date: 6/22/2020
Model: HDGM

PROJECT DETAILS: Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1533' + KB 20' @ 1553.00usft (Prelim)

DESIGN TARGET DETAILS

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|---|---|---|---|---|---|---|---|
| SHL (Craige S 3LHC) | 0.00 | 0.00 | 0.00 | 583680.99 | 2438211.02 | 41° 45' 20.929 N | 76° 1' 42.178 W |
| LP (Craige S 3LHC) | 6900.00 | -35.92 | 1361.71 | 583645.07 | 2439572.72 | 41° 45' 20.306 N | 76° 1' 24.225 W |
| WP1 (Craige S 3LHC) | 6935.48 | -2842.19 | 2422.11 | 580838.80 | 2440633.12 | 41° 44' 52.378 N | 76° 1' 10.976 W |
| WP2 (Craige S 3LHC) | 6961.82 | -4958.09 | 3152.06 | 578722.90 | 2441363.07 | 41° 44' 31.334 N | 76° 1' 1.907 W |
| WP3 (Craige S 3LHC) | 6979.70 | -6350.11 | 3747.65 | 577330.88 | 2441958.66 | 41° 44' 17.466 N | 76° 0' 54.419 W |
| WP4 (Craige S 3LHC) | 7006.22 | -8704.35 | 4650.53 | 574976.64 | 2442861.54 | 41° 43' 54.033 N | 76° 0' 43.135 W |
| PBHL (Craige S 3LHC) | 7050.00 | -11642.93 | 6496.20 | 572038.06 | 2444707.21 | 41° 43' 24.640 N | 76° 0' 19.578 W |

| Formation est. at SHL |
|---|
| Base Elk SS 4325' TVD |
| Hamilton 4704' TVD |

| Formation est. at LP |
|---|
| Marcellus Shale 6877' TVD |
| Onondaga 7177' TVD |

Date Filed: 07/25/2022     Page: 455     Document: 21-3     Case: 22-1280

## Epsilon Energy

### Preliminary Geological Prognosis

| | |
|---|---|
| API Number: | 37115227970000 |
| Permit Number: | 115-22797 |
| Well Name: | Craige S 3LHC |
| Well Type: | Horizontal, development |
| Well Target: | Lower Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush & Auburn |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long:  41.755814 / -76.028383 |
| Landing Point: | Craige Unit |
| | Lat/Long:  41.755641 / -76.023396 |
| Bottom Hole: | Poulson South Unit |
| | Lat/Long:  41.723511 / -76.005438 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 20,248' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,571 | -3,018 | TVD @ pentetration point |
| Hamilton SH | 4,681 | -3,128 | TVD @ pentetration point |
| Marcellus | 6,684 | -5,131 | TVD @ pentetration point |
| Target | 7,050 | -5,347 | TVD @ pentetration point |
| Onondaga Limestone | 7,003 | -5,450 | |

| | |
|---|---|
| Well Azimuth: | 159° |
| Lateral Length: | 12,750' |

Appx1023

**Contacts:**

|  |  | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office |  | 281-670-0002 |  |  |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 |  | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Date Filed: 07/25/2022   Page: 456   Document: 21-3   Case: 22-1280



Case: 22-1280 Document: 21-3 Page: 457 Date Filed: 07/25/2022

8000-PM-OOGM0002 Rev. 6/2014

pennsylvania
DEPARTMENT OF ENVIRONMENTAL PROTECTION

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
OFFICE OF OIL AND GAS MANAGEMENT

# WELL LOCATION PLAT

PAGE 1 Surface Location

| DEP USE ONLY | | |
|---|---|---|
| | Auth ID#: | |
| | Permit #: | G: |
| | Project #: | C: |

Denotes location of top of well on topo map.

Surface hole is located on topo map 13064 feet south of latitude 41 ° 47 ' 30 "

Surface hole is located on topo map 7744 feet west of longitude 76 ° 00 ' 00 "

**SURFACE HOLE COORDINATES**
NAD 83
True Latitude: NORTH
41° 45' 20.93"
True Longitude: WEST
76° 01' 42.18"

NAD 83
N 41.755814°
W 76.028383°

NAD 27
N 41.755738°
W 76.028736°

N 583642.51
E 2469628.00

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°07'13"W | 792.84' |
| L2 | N70°21'30"W | 445.06' |

NOTES

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.
2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.
3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.
4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST

COMMONWEALTH OF PENNSYLVANIA
REGISTERED PROFESSIONAL
TODD C. JACOBS
LAND SURVEYOR
NO. SU 075184

LEGEND
- Well
- Found corner Iron Pin or Pipe
- Water Supply

NOTE
*No Wetlands Within 100' of Disturbance*
*No Wetlands Within 300' of Well Bore*

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: S3LHC | Serial #: |
|---|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS | |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. | |

| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 723 ± | |
|---|---|---|---|---|---|---|
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/16/2020 10:16:16AM

6000-PM-OOGM0002 Rev. 6/2014

## WELL LOCATION PLAT

### PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | | DEP ID# 328036 | Well (Form) Name CRAIGE | | Well # S3LHC | Serial # |
|---|---|---|---|---|---|---|
| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | | Angle & Course of Deviation (Drilling): S88°29'19"E 1362.18'  S20°42'00"E 2999.92'  S19°02'01"E 2238.27' S23°09'51"E 1514.08'  S20°42'00"E 2248.74'  S31°29'27"E 3740.08' | | | Anticipated True Vertical Depth Feet (TVD): 7050 | Anticipated Total Measured Depth Feet (TMD): 20248.13 |
| Target Formation(s): MARCELLUS | | | Deepest Formation to be penetrated: MARCELLUS | | Number of Laterals: 1 | Total footage to be drilled all laterals: 20248.13 |
| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | | Latitude-Longitude of Water Supply | | | |
| ① KEVIN C AND MELANIE A PIERSON | | 177–1–33.01 | A N41°45'48.15" W76°01'49.28" | | B N41°45'47.86" W76°01'48.22" | |
| ② JOSEPH AND DONNAGRILLO | | 177–1–32 | N41°45'44.14" W76°01'52.37" | | | |
| ③ RICHARD F DOLAN | | 177–1–30.01 | N41°45'38.92" W76°01'54.84" | | | |
| ④ STEPHEN JAMES MOLNAR | | 176–1–14 | A N41°45'38.40" W76°02'07.48" | | B N41°45'38.23" W76°02'07.53" | |
| ⑤ STEPHEN J MOLNAR | | 177–1–30 | A N41°45'37.02" W76°01'59.72" | | B N41°45'35.27" W76°02'02.65" | |
| ⑥ ANGELA VERY | | 177–1–29 | A N41°45'34.87" W76°01'55.70"  C N41°45'33.84" W76°01'56.11" | | B N41°45'34.46" W76°01'55.22" | |
| ⑦ ALLIANCE TO PROTECT LIFE | | 176–1–47 | N41°45'29.17" W76°02'10.17" | | | |
| ⑧ ALLIANCE TO PROTECT LIFE | | 177–1–43 | N41°45'18.88" W76°02'01.21" | | | |
| ⑨ HAROLD C AND GLORIA CRAIGE | | 177–1–28.01 | A N41°45'14.41" W76°02'04.56" | | B N41°45'14.78" W76°02'03.55" | |
| ⑩ ELIZABETH SPICKERMAN | | 176–1–23 | N41°45'04.68" W76°02'09.73" | | | |
| ⑪ ROBERT N SHAFFER | | 176–1–23.01 | N41°44'56.36" W76°02'02.67" | | | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | | 177–1–26 | A N41°44'56.14" W76°01'59.89"  C N41°44'57.94" W76°01'54.90" | | B N41°45'01.21" W76°02'00.99"  D N41°44'57.58" W76°01'53.49" | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Municipality where the well will be drilled, adjacent to the well, or within 300D feet | | | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | | | |
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | | | | | | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | | | | | | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | | | | | | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | | | Coal related parties | | | |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | | | | | | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | | | | | | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | | | | | | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | | | | | | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | | | | | | |

-2-

Date Filed: 07/25/2022    Page: 458    Document: 21-3    Case: 22-1280    PLAT DATE/TIME: 9/16/2020 10:16:58AM

Appx1026

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | S3LHC |

| SURFACE HOLE COORDINATES NAD 83 | WAYPOINT 2 COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 45' 20.93" | True Latitude: NORTH 41° 44' 31.33" |
| True Longitude: WEST 76° 01' 42.18" | True Longitude: WEST 76° 01' 01.91" |
| NAD 83 N 41.755814° W 76.028383° | NAD 83 N 41.742037° W 76.017196° |
| NAD 27 N 41.755738° W 76.028736° | NAD 27 N 41.741962° W 76.017550° |
| N 583642.51 E 2469628.00 | N 578684.46 E 2472780.00 |
| **KOP COORDINATES NAD 83** | **WAYPOINT 3 COORDINATES NAD 83** |
| True Latitude: NORTH 41° 45' 25.68" | True Latitude: NORTH 41° 44' 17.47" |
| True Longitude: WEST 76° 01' 26.78" | True Longitude: WEST 76° 00' 54.42" |
| NAD 83 N 41.757135° W 76.024104° | NAD 83 N 41.738185° W 76.015116° |
| NAD 27 N 41.757059° W 76.024458° | NAD 27 N 41.738109° W 76.015470° |
| N 584147.00 E 2470785.48 | N 577292.45 E 2473375.58 |
| **LANDING POINT COORDINATES NAD 83** | **WAYPOINT 4 COORDINATES NAD 83** |
| True Latitude: NORTH 41° 45' 20.31" | True Latitude: NORTH 41° 43' 56.53" |
| True Longitude: WEST 76° 01' 24.22" | True Longitude: WEST 76° 00' 44.49" |
| NAD 83 N 41.755641° W 76.023396° | NAD 83 N 41.732369° W 76.012359° |
| NAD 27 N 41.755565° W 76.023749° | NAD 27 N 41.732294° W 76.012713° |
| N 583606.58 E 2470989.69 | N 575188.89 E 2474170.43 |
| **WAYPOINT 1 COORDINATES NAD 83** | **BOTTOM HOLE COORDINATES NAD 83** |
| True Latitude: NORTH 41° 44' 52.38" | True Latitude: NORTH 41° 43' 24.64" |
| True Longitude: WEST 76° 01' 10.98" | True Longitude: WEST 76° 00' 19.58" |
| NAD 83 N 41.747883° W 76.019716° | NAD 83 N 41.723511° W 76.005438° |
| NAD 27 N 41.747807° W 76.020069° | NAD 27 N 41.723435° W 76.005793° |
| N 580800.34 E 2472050.07 | N 571999.66 E 2476124.08 |

PLOT DATE/TIME: 8/10/2020 1:43:25PM

Case: 22-1280     Document: 21-3     Page: 460     Date Filed: 07/25/2022



Bluegrass South Unit, Craige Unit, Poulson
North Unit & Poulson South Unit



# JAMESTOWN
## RESOURCES, L.L.C.

Date Filed: 07/25/2022   Page: 461   Document: 21-3   Case: 22-1280

June 25, 2021

**VIA ELECTRONIC MAIL (rachel.collins@epsilonenergyltd.com
henry.clanton@epsilonenergyltd.com)**

Ms. Rachel Collins
Epsilon Energy Usa, Inc
16945 NORTHCHASE DRIVE, SUITE 1610
Houston, TX  77060

**Re:**  Proposed Drilling Operation (Non-Consent)
CRAIGE N 1UHC
Susquehanna County, PA

Dear  Ms. Collins,

Pursuant to your proposal letter dated May 26, 2021, please be advised that Jamestown Resources, L.L.C hereby elects NOT to participate in the proposed drilling of the captioned well. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**

Craige N 1UHC
May 26, 2021
Jamestown Resources, L.L.C.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Jamestown Resources, L.L.C.
Attn: Ms. Randi Walsh
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:     Epsilon Energy's Proposed Craige N 1UHC Well
        API: 37115228000000; Permit Number: 115-22800
        Baltzley South and Baltzley North Unit
        Rush Township
        Susquehanna County, Pennsylvania

Ms. Walsh:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1UHC Well (the "Well") with a surface hole location of Latitude 41.755793° and Longitude -76.028656° (NAD 83); and an approximate bottom hole location of Latitude 41.789486° and Longitude -76.048982°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 19,344 feet, with an approximate vertical depth of 6,525 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,606,000.00 with a completed well costing approximately $9,122,124.00. We anticipate to commence the proposed operation on or about October 16, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to the Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **40.9633345%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **59.0366655%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 1UHC
May 26, 2021
Jamestown Resources, L.L.C.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 1UHC WI | Craige N 1UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.354436% | 39.738353% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.118155% | 19.827832% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 25.027410% | 21.313343% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054918% |

Epsilon Energy USA Inc. and Jamestown Resources, L.L.C. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit, specifically Article VI.1 and XVI.A.2 as referenced above (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 1UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Craige N 1UHC
May 26, 2021
Jamestown Resources, L.L.C.

_____ **Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley South JOA.

_____ **Jamestown Resources, L.L.C.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects to the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____
Name: Michael Fiuzat
Title: Manager
Date: 6.24, 2021

_____ **Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

_____ **Jamestown Resources, L.L.C.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: _____
Name: Michael Fiuzat
Title: Manager
Date: 6.24.2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1032


**EPSILON**
Energy USA, Inc.

| | | | |
|---|---|---|---|
| | | AFE # : | D2110141 |
| WELL NAME: | CRAIGE N 1UHC | DATE: | 05/26/21 |
| OPERATOR: | EPSILON ENERGY USA, INC | | |
| PROJECT: | AUBURN | | |
| LOCATION (TRACT): | CRAIGE | | |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE | | |
| API (PERMIT #): | 37-115-22800-0000 (115-22800) | PROPOSED TMD: | 19,344 |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA | PROPOSED TVD: | 6,525 |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL | PROPOSED CLAT | 12,265 |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 151,000 | $ 2,455,000 | $ 2,606,000 |
| B. COMPLETION COST | $ 925,000 | $ 5,591,124 | $ 6,516,124 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,076,000 | $ 8,046,124 | $ 9,122,124 |
| | | | $ - |

WELL/PROJECT ID#: _____

EXPLORATORY ☐     DEVELOPMENT ☑

WORKOVER ☐     RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.354436% | $ 4,410,952 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.118155% | $ 2,200,088 |
| EPSILON ENERGY USA, INC. | | 25.027410% | $ 2,283,031 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.500000% | $ 228,053 |
| | | | |
| | | | |
| | | | |
| | | 100.000000% | $ 9,122,124 |

*(handwritten diagonal text: "non consent")*

**OPERATOR'S APPROVAL**

| | | | | |
|---|---|---|---|---|
| PREPARED BY: | *Henry N Clark* | OPERATIONS | DATE: | 5/26/21 |
| APPROVED BY: | *Rachel Collins* | LAND/LEGAL | DATE: | 5/26/21 |
| APPROVED BY: | *Shannon E Lemke* | GEOLOGY | DATE: | 5/26/21 |
| APPROVED BY: | *B Van Dorn* | ACCOUNTING | DATE: | 5 26 21 |

**NON-OPERATOR'S APPROVAL**

| | | |
|---|---|---|
| COMPANY NAME: | *JRLLL* | DATE: 6.24.2021 |
| APPROVED BY: | *m. fiuzet X g-M-/-* | |
| TITLE: | *manager* | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



Applicant/Well Operator Name: Epsilon Operating LLC
DEP #: 328036
Well Name: Craige
Well Number: N1UHC

Azimuths to Grid North
True North: -1.14°
Magnetic North: -13.24°

Magnetic Field
Strength: 52260.5nT
Dip Angle: 67.27°
Date: 6/22/2020
Model: HDGM

PROJECT DETAILS: Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1533' + KB 20' @ 1553.00usft (Prelim)

DESIGN TARGET DETAILS

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|---|---|---|---|---|---|---|---|
| SHL (Craige N 1UHC) | 0.00 | 0.00 | 0.00 | 583672.15 | 2438136.73 | 41° 45' 20.856 N | 76° 1' 43.160 W |
| PBHL (Craige N 1UHC) | 6175.00 | 12165.21 | -5786.11 | 595837.36 | 2432350.62 | 41° 47' 22.148 N | 76° 2' 56.336 W |
| WP3 (Craige N 1UHC) | 6225.05 | 10556.81 | -5086.87 | 594228.96 | 2433049.86 | 41° 47' 6.126 N | 76° 2' 47.525 W |
| WP2 (Craige N 1UHC) | 6262.28 | 9335.67 | -4631.43 | 593007.82 | 2433505.30 | 41° 46' 53.975 N | 76° 2' 41.831 W |
| WP1 (Craige N 1UHC) | 6296.45 | 8189.88 | -4279.09 | 591862.03 | 2433857.64 | 41° 46' 42.589 N | 76° 2' 37.479 W |
| LP (Craige N 1UHC) | 6525.00 | 708.94 | -1443.18 | 584381.09 | 2436693.55 | 41° 45' 28.142 N | 76° 2' 2.013 W |

| Formation est. at SHL |
|---|
| Base Elk SS 4325' TVD<br>Hamilton 4704' TVD |

| Formation est. at LP |
|---|
| Marcellus Shale 6485' TVD<br>Onondaga 6785' TVD |

**Epsilon Energy**

**Preliminary Geological Prognosis**

| | |
|---|---|
| API Number: | 37115228000000 |
| Permit Number: | 115-22800 |
| Well Name: | Craige N 1UHC |
| Well Type: | Horizontal, development |
| Well Target: | Upper Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long:  41.755793 / -76.028656 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long:  41.757817 / -76.033893 |
| Bottom Hole: | Baltzley North Unit |
| | Lat/Long:  41.789486 / -76.048982 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 19,344' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,580 | -3,027 | TVD @ pentetration point |
| Hamilton SH | 4,670 | -3,117 | TVD @ pentetration point |
| Marcellus | 6,517 | -4,964 | TVD @ pentetration point |
| Target | 6,525 | -4,957 | TVD @ pentetration point |
| Onondaga Limestone | 6,836 | -5,283 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 12,265' |

Date Filed: 07/25/2022

Page: 467

Document: 21-3

Case: 22-1280

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Date Filed: 07/25/2022   Page: 468   Document: 21-3   Case: 22-1280



8000-PM-OOGM0002 Rev. 6/2014

pennsylvania
DEPARTMENT OF ENVIRONMENTAL PROTECTION

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
OFFICE OF OIL AND GAS MANAGEMENT

# WELL LOCATION PLAT

PAGE 1 Surface Location

| DEP USE ONLY | | |
|---|---|---|
| Auth ID#: | | G: |
| Permit #: | | C: |
| Project #: | | |

Denotes location of top of well on topo map.

Surface hole is located on topo map 13071 feet south of latitude 41 ° 47 ' 30 "

Surface hole is located on topo map 7819 feet west of longitude 76 ° 00 ' 00 "

**SURFACE HOLE COORDINATES NAD 83**

True Latitude: NORTH
41° 45' 20.86"

True Longitude: WEST
76° 01' 43.16"

NAD 83
N 41.755793°
W 76.028656°

NAD 27
N 41.755718°
W 76.029009°

N 583633.67
E 2469553.71

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N80°36'51"W | 720.71' |
| L2 | N65°19'30"W | 379.53' |

NOTES

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.
2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.
3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.
4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST.

COMMONWEALTH OF PENNSYLVANIA
REGISTERED PROFESSIONAL
TODD C. JACOBS
LAND SURVEYOR
NO. SU 075184

LEGEND
- Well
- Found corner Iron Pin or Pipe
- Water Supply

NOTE
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

| | | | | | |
|---|---|---|---|---|---|
| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | | Well #: N1UHC | Serial #: |
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | | Well Type: NATURAL GAS |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | | Surface Elevation: 1533 ft. |
| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 856 ± |
| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 / Survey Date: 07/02/2010 |

PLOT DATE/TIME: 9/16/2020 10:06:00AM

8000-PM-OOGM0002 Rev. 8/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll−free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N1UHC | Serial # |
|---|---|---|---|---|

| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | Angle & Course of Deviation (Drilling): N63°50'25"W 1607.96'  N20°45'37"W 8000.43'  N17°05'35"W 1198.74' N20°27'13"W 1303.31'  N23°29'48"W 1753.82' | | Anticipated True Vertical Depth Feet (TVD): 6175 | Anticipated Total Measured Depth Feet (TVD): 19343.85 |
|---|---|---|---|---|

| Target Formation(s): MARCELLUS | Deepest Formation to be penetrated: MARCELLUS | Number of Laterals: 1 | Total footage to be drilled all laterals: 19343.85 |
|---|---|---|---|

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude/Longitude of Water Supply | | |
|---|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15"  W76°01'49.28" | B N41°45'47.86'  W76°01'48.22" | |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14"  W76°01'52.37' | | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92'  W76°01'54.84' | | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40"  W76°02'07.48' | B N41°45'38.23"  W76°02'07.53' | |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02"  W76°01'59.72' | B N41°45'35.27'  W76°02'02.65' | |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87'  W76°01'55.70' C N41°45'33.84"  W76°01'56.11" | B N41°45'34.48'  W76°01'55.22' | |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17"  W76°02'10.17' | | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88'  W76°02'01.21' | | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41"  W76°02'04.56" | B N41°45'14.78'  W76°02'03.55' | |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68'  W76°02'09.73' | | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36"  W76°02'02.67' | | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14'  W76°01'59.89' C N41°44'57.94'  W76°01'54.90' | B N41°45'01.21'  W76°02'00.99' D N41°44'57.56"  W76°01'53.49' | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 9/16/2020 10:06:30AM

- 2 -

Date Filed: 07/25/2022   Page: 470   Document: 21-3   Case: 22-1280

Appx1038

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N1UHC |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N80°36'51"W | 720.71' |
| L2 | N65°19'30"W | 379.53' |
| L3 | N63°50'25"W | 1607.96' |

| SURFACE HOLE COORDINATES NAD 83 | |
|---|---|
| True Latitude: NORTH | 41° 45' 20.86" |
| True Longitude: WEST | 76° 01' 43.16" |
| NAD 83 | N 41.755793° W 76.028656° |
| NAD 27 | N 41.755718° W 76.029009° |
| | N 583633.67 E 2469553.71 |

| KOP COORDINATES NAD 83 | WAYPOINT 2 COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 45' 22.63" | True Latitude: NORTH 41° 46' 53.98" |
| True Longitude: WEST 76° 01' 59.39" | True Longitude: WEST 76° 02' 41.83" |
| NAD 83 N 41.756287° W 76.033164° | NAD 83 N 41.781660° W 76.044953° |
| NAD 27 N 41.756211° W 76.033517° | NAD 27 N 41.781584° W 76.045306° |
| N 583788.98 E 2468320.32 | N 592969.25 E 2464922.32 |

| LANDING POINT COORDINATES NAD 83 | WAYPOINT 3 COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 45' 28.14" | True Latitude: NORTH 41° 47' 06.13" |
| True Longitude: WEST 76° 02' 02.01" | True Longitude: WEST 76° 02' 47.52" |
| NAD 83 N 41.757817° W 76.033893° | NAD 83 N 41.785035° W 76.046535° |
| NAD 27 N 41.757742° W 76.034246° | NAD 27 N 41.784960° W 76.046888° |
| N 584342.58 E 2468110.48 | N 594190.38 E 2464466.89 |

| WAYPOINT 1 COORDINATES NAD 83 | BOTTOM HOLE COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 46' 42.59" | True Latitude: NORTH 41° 47' 22.15" |
| True Longitude: WEST 76° 02' 37.48" | True Longitude: WEST 76° 02' 56.34" |
| NAD 83 N 41.778497° W 76.043744° | NAD 83 N 41.789486° W 76.048982° |
| NAD 27 N 41.778422° W 76.044097° | NAD 27 N 41.789410° W 76.049335° |
| N 591823.48 E 2465274.66 | N 595798.77 E 2463767.65 |

PLOT DATE/TIME: 9/10/2020 1:34:57PM

8000-PM-OOGM0002    Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.



Date Filed: 07/25/2022    Page: 472    Document: 21-3    Case: 22-1280

- 3B -

Appx1040

Case: 22-1280   Document: 21-3   Page: 473   Date Filed: 07/25/2022



Baltzley North Unit, Baltzley South
Unit & Craige Unit

Surface Location
Proposed multi-unit well
Unit

EPSILON
Energy

Appx1041



# JAMESTOWN
## RESOURCES, L.L.C.

June 25, 2021

**VIA ELECTRONIC MAIL (rachel.collins@epsilonenergyltd.com**
**henry.clanton@epsilonenergyltd.com)**

Ms. Rachel Collins
Epsilon Energy Usa, Inc
16945 NORTHCHASE DRIVE, SUITE 1610
Houston, TX  77060

**Re:**  Proposed Drilling Operation (Non-Consent)
   CRAIGE N 4UHC
   Susquehanna County, PA

Dear  Ms. Collins,

Pursuant to your proposal letter dated May 26, 2021, please be advised that Jamestown Resources, L.L.C hereby elects NOT to participate in the proposed drilling of the captioned well. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**

Generated By 
Appx1042

Craige N 4UHC
May 26, 2021
Jamestown Resources, L.L.C.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Jamestown Resources, L.L.C.
Attn: Ms. Randi Walsh
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:     Epsilon Energy's Proposed Craige N 4UHC Well
        API: 37115228080000; Permit Number: 115-22808
        Baltzley South and Baltzley North Unit
        Rush Township
        Susquehanna County, Pennsylvania

Ms. Walsh:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 4UHC Well (the "Well") with a surface hole location of Latitude 41.755855° and Longitude -76.028526° (NAD 83); and an approximate bottom hole location of Latitude 41.789462° and Longitude -76.044140°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 18,494 feet, with an approximate vertical depth of 6,410 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $2,508,000.00 with a completed well costing approximately $8,574,115.00. We anticipate to commence the proposed operation on or about November 8, 2021.

The Well will be a subsequent well drilled in the following units:
- Baltzley South Unit, which covers 417.171123 acres
- Baltzley North Unit, which covers 589.277374 acres

The Well will be drilled as a Cross Unit Well, pursuant to Allocation Consent Agreement attached hereto as Exhibit "A" and incorporated herein by reference. The preliminary Allocation Factor is an estimate, based on approximately **41.4203317%** of the productive drainhole of the Cross Unit Well being in the Baltzley South Unit, and approximately **58.5796683%** of the productive drainhole of the Cross Unit Well being in the Baltzley North Unit. Please be advised that these percentages may be adjusted following completion of the Well to reflect the actual percentages of the productive drainhole length within each unit. The table below contains a summary of the estimated working and net revenue interest ownership in the Well based on the aforementioned preliminary Allocation Factor.

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Case: 22-1280     Document: 21-3     Page: 476     Date Filed: 07/25/2022

Craige N 4UHC
May 26, 2021
Jamestown Resources, L.L.C.

| Working Interest Owner | Baltzley South Unit WI | Baltzley North Unit WI | Craige N 4UHC WI | Craige N 4UHC NRI |
|---|---|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 46.589161% | 48.374130% | 39.752946% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 23.189671% | 24.128513% | 19.835527% |
| Epsilon Energy USA, Inc. | 21.145145% | 27.721168% | 24.997357% | 21.290188% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.500000% | 2.500000% | 2.054837% |

Epsilon Energy USA Inc. and Jamestown Resources, L.L.C. hereby acknowledge that the working and net revenue interest ownership set forth above is only an estimate, and that the actual working and net revenue interest ownership will be calculated following completion of the Well. Any necessary revisions will then be made to the working and net revenue interest ownership of the Well, and any necessary reversal and rebooking of funds shall be applied so as to accurately reflect such revisions.

Additionally, final unit configuration and working and net revenue interest is subject to adjustments after receipt of all elections and review of further review of the contributed oil and gas interest.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date; and that certain Joint Operating Agreement dated October 18, 2010 covering the Baltzley North Unit, specifically Article VI.1 and XVI.A.2 as referenced above (collectively referred to hereinafter as the "Subject JOAs"). Accordingly, please indicate your election as to each unit in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE.

At this time, the planned design summary is SW-5-50-3000. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: Allocation Consent Agreement Craige N 4UHC, AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Date Filed: 07/25/2022        Page: 477        Document: 21-3        Case: 22-1280

Craige N 4UHC
May 26, 2021
Jamestown Resources, L.L.C.

_____ **Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley South JOA.

___X___ **Jamestown Resources, L.L.C.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects to the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____

Name: Michael Fiuzat

Title: Manager

Date: 6.24.2021

_____ **Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1UHC Well pursuant to the Baltzley North JOA.

___X___ **Jamestown Resources, L.L.C.** hereby elects **not** to participate in the drilling of the Craige N 1UHC Well and elects the Non-Consent provision pursuant to the Baltzley North JOA.

By: _____

Name: Michael Fiuzat

Title: Manager

Date: 6.24.2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*



| | | AFE # : | D2110145 |
|---|---|---|---|
| WELL NAME: | CRAIGE N 4UHC | DATE: | 05/26/21 |
| OPERATOR: | EPSILON ENERGY USA, INC | | |
| PROJECT: | AUBURN | | |
| LOCATION (TRACT): | CRAIGE | | |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE | | |
| API (PERMIT #): | 37-115-22808-0000 (115-22808) | PROPOSED TMD: | 18,494 |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA | PROPOSED TVD: | 6,410 |
| COMMENTS: | D&C HZ UPPER MARCELLUS WELL | PROPOSED CLAT | 11,705 |

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A. DRILLING COST | $ 151,000 | $ 2,357,000 | $ 2,508,000 |
| B. COMPLETION COST | $ 903,000 | $ 5,163,115 | $ 6,066,115 |
| C. PLANT & FACILITY COST | $ - | $ - | $ - |
| D. WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 1,054,000 | $ 7,520,115 | $ 8,574,115 |

WELL/PROJECT ID # :

EXPLORATORY ☐        DEVELOPMENT ☑

WORKOVER ☐        RECOMPLETION ☐

| WORKING INTEREST OWNER: | | PERCENT: | COST SHARE: |
|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | 48.374130% | $ 4,147,653 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | 24.128513% | $ 2,068,806 |
| EPSILON ENERGY USA, INC. | | 24.997357% | $ 2,143,302 |
| JAMESTOWN RESOURCES, L.L.C. | | 2.500000% | $ 214,353 |
| | | | |
| | | | |
| | | 100.000000% | $ 8,574,115 |

**OPERATOR'S APPROVAL**

| PREPARED BY: | Henry N. Clark | OPERATIONS | DATE: 5/26/21 |
|---|---|---|---|
| APPROVED BY: | Rachel Collins | LAND/LEGAL | DATE: 5/26/21 |
| APPROVED BY: | Shannon & Lemke | GEOLOGY | DATE: 5/26/21 |
| APPROVED BY: | B Lan Bond | ACCOUNTING | DATE: 5-26-21 |

**NON-OPERATOR'S APPROVAL**

| COMPANY NAME: | JRLLC | DATE: 6.24.2021 |
|---|---|---|
| APPROVED BY: | M. Fruzat X 7-14-1. | |
| TITLE: | Manager | |

The costs on this AFE are estimates only. In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred. Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



**Epsilon Energy**

**Preliminary Geological Prognosis**

| | |
|---|---|
| API Number: | 37115228080000 |
| Permit Number: | 115-22808 |
| Well Name: | Craige N 4UHC |
| Well Type: | Horizontal, development |
| Well Target: | Upper Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long:  41.755855 / -76.028526 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long:  41.759303 / -76.029510 |
| Bottom Hole: | Baltzley North Unit |
| | Lat/Long:  41.789462 / -76.044140 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 18,494' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,540 | -2,987 | TVD @ pentetration point |
| Hamilton SH | 4,650 | -3,097 | TVD @ pentetration point |
| Marcellus | 6,410 | -4,882 | TVD @ pentetration point |
| Target | 6,410 | -4,897 | TVD @ pentetration point |
| Onondaga Limestone | 6,729 | -5,174 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 11,705' |

Date Filed: 07/25/2022   Page: 480   Document: 21-3   Case: 22-1280

Appx1048

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Date Filed: 07/25/2022    Page: 481    Document: 21-3    Case: 22-1280

8000-PM-OOGM0002 Rev. 6/2014

pennsylvania DEPARTMENT OF ENVIRONMENTAL PROTECTION

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
OFFICE OF OIL AND GAS MANAGEMENT

# WELL LOCATION PLAT

PAGE 1 Surface Location

| DEP USE ONLY | | |
|---|---|---|
| Auth ID#: | | G: |
| Permit #: | | |
| Project #: | | C: |

Denotes location of top of well on topo map.

Surface hole is located on topo map 13049 feet south of latitude 41 ° 47 ' 30 "

Surface hole is located on topo map 7783 feet west of longitude 76 ° 00 ' 00 "

| SURFACE HOLE COORDINATES NAD 83 |
|---|
| True Latitude: NORTH 41° 45' 21.08" |
| True Longitude: WEST 76° 01' 42.69" |
| NAD 83 N 41.755855° W 76.028526° |
| NAD 27 N 41.755780° W 76.028879° |
| N 583656.97 E 2469588.70 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°48'04"W | 751.98' |
| L2 | N70°24'59"W | 403.18' |

NOTES

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST.

COMMONWEALTH OF PENNSYLVANIA REGISTERED PROFESSIONAL TODD C. JACOBS LAND SURVEYOR NO. SU 075194

LEGEND

- Well
- Found corner Iron Pin or Pipe
- Water Supply

NOTE
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

| Applicant/Well Operator Name: | DEP ID #: | Well (Farm) Name: | Well #: | Serial #: |
|---|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N4UHC | |

| Address: | County: | Municipality: | Well Type: |
|---|---|---|---|
| 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | SUSQUEHANNA | RUSH | NATURAL GAS |

| 911 address of well site: | USGS 7½' Quadrangle Map Name: | Map Section: | Surface Elevation: |
|---|---|---|---|
| 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | LAWTON | 9 | 1533 ft. |

| Surveyor or Engineer: | Phone #: | Dwg #: | Date: | Scale: | Tract Acreage: |
|---|---|---|---|---|---|
| TODD C. JACOBS, P.L.S. | 570-278-3100 | NMPY 26 | 10/22/2020 | 1" = 1,000' | 931 ± |

| Lat. & Long Metadata Method: | Accuracy: | Datum: | Elevation Metadata Method: | Accuracy: | Datum: | Survey Date: |
|---|---|---|---|---|---|---|
| GPSOF(L1,L2)RTK | 0.033' ft. | NAD 83 | GPSOF (L1,L2)RTK | 0.069 ft. | NAVD 88 | 07/02/2010 |

PLOT DATE/TIME: 10/21/2020 0:36:30PM

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name:<br>EPSILON OPERATING LLC | DEP ID#<br>328036 | Well (Farm) Name<br>CRAIGE | Well #<br>N4UHC | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor:<br>HAROLD C. AND GLORIA CRAIGE |  | Angle & Course of Deviation (Drilling):<br>N13°12'25"W 1284.60' N21°04'45"W 9702.51'<br>N24°00'31"W 923.39' N18°40'33"W 1067.94' | Anticipated True Vertical<br>Depth Feet (TVD):<br>6160 | Anticipated Total<br>Measured Depth<br>Feet (TMD):<br>18494.09 |
| Target Formation(s):<br>MARCELLUS | | Deepest Formation to be penetrated:<br>MARCELLUS | Number of<br>Laterals:<br>1 | Total footage to be<br>drilled all laterals:<br>18494.09 |

| | Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude/Longitude of Water Supply | | | |
|---|---|---|---|---|---|---|
| ① | KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.28" | | B N41°45'47.86" W76°01'48.22" | |
| ② | JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | | | |
| ③ | RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | | | |
| ④ | STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | | B N41°45'38.23" W76°02'07.53" | |
| ⑤ | STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | | B N41°45'35.27" W76°02'02.65" | |
| ⑥ | ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70" C N41°45'33.84" W76°01'56.11" | | B N41°45'34.48" W76°01'55.22" | |
| ⑦ | ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | | | |
| ⑧ | ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | | | |
| ⑨ | HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.56" | | B N41°45'14.78" W76°02'03.55" | |
| ⑩ | ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.73" | | | |
| ⑪ | ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36" W76°02'02.67" | | | |
| ⑫ | RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'58.14" W76°01'59.89" C N41°44'57.94" W76°01'54.90" | | B N41°45'01.21" W76°02'00.99" D N41°44'57.58" W76°01'53.49" | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

-2-

Date Filed: 07/25/2022    Page: 483    Document: 21-3    Case: 22-1280

PLOT DATE/TIME: 10/21/2020 03:37:10PM

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N4UHC |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°48'04"W | 751.98' |
| L2 | N70°24'59"W | 403.18' |
| L3 | N13°12'25"W | 1284.60' |

| SURFACE HOLE COORDINATES NAD 83 |
|---|
| True Latitude: NORTH 41° 45' 21.08" |
| True Longitude: WEST 76° 01' 42.69" |
| NAD 83 N 41.755855° W 76.028526° |
| NAD 27 N 41.755780° W 76.028879° |
| N 583656.97 E 2469588.70 |

| KOP COORDINATES NAD 83 |
|---|
| True Latitude: NORTH 41° 45' 28.06" |
| True Longitude: WEST 76° 01' 43.60" |
| NAD 83 N 41.757794° W 76.028779° |
| NAD 27 N 41.757719° W 76.029132° |
| N 584361.96 E 2469505.70 |

| LANDING POINT COORDINATES NAD 83 | WAYPOINT 2 COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 45' 33.49" | True Latitude: NORTH 41° 47' 12.00" |
| True Longitude: WEST 76° 01' 46.24" | True Longitude: WEST 76° 02' 34.65" |
| NAD 83 N 41.759303° W 76.029510° | NAD 83 N 41.786667° W 76.042960° |
| NAD 27 N 41.759227° W 76.029864° | NAD 27 N 41.786592° W 76.043313° |
| N 584907.58 E 2469295.21 | N 594804.25 E 2465429.97 |

| WAYPOINT 1 COORDINATES NAD 83 | BOTTOM HOLE COORDINATES NAD 83 |
|---|---|
| True Latitude: NORTH 41° 47' 03.60" | True Latitude: NORTH 41° 47' 22.06" |
| True Longitude: WEST 76° 02' 29.92" | True Longitude: WEST 76° 02' 38.90" |
| NAD 83 N 41.784333° W 76.041643° | NAD 83 N 41.789462° W 76.044140° |
| NAD 27 N 41.784257° W 76.041996° | NAD 27 N 41.789386° W 76.044493° |
| N 593960.76 E 2465805.67 | N 595815.95 E 2465088.01 |

PLOT DATE/TIME: 10/21/2020 1:03:01 PM

Date Filed: 07/25/2022   Page: 485   Document: 21-3   Case: 22-1280

8000-PM-OOGM0002    Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N4UHC |
|---|---|---|---|



### LEGEND
△  Well
⊗  Landing Point and Bottom Hole
●  Found corner Iron Pin or Pipe

MAP SCALE: 1"=800'

- 3B -

Appx1053

Case: 22-1280   Document: 21-3   Page: 486   Date Filed: 07/25/2022



Surface Location
Proposed multi-unit well
Unit

Baltzley North Unit, Baltzley South
Unit & Craige Unit

EPSILON
Energy



# JAMESTOWN
## RESOURCES, L.L.C.

June 25, 2021

**VIA ELECTRONIC MAIL (rachel.collins@epsilonenergyltd.com**
**henry.clanton@epsilonenergyltd.com)**

Ms. Rachel Collins
Epsilon Energy Usa, Inc
16945 NORTHCHASE DRIVE, SUITE 1610
Houston, TX  77060

**Re:**  Proposed Drilling Operation (Non-Consent)
       CRAIGE N 1LH
       Susquehanna County, PA

Dear  Ms. Collins,

Pursuant to your proposal letter dated May 26, 2021, please be advised that Jamestown Resources, L.L.C hereby elects NOT to participate in the proposed drilling of the captioned well. Enclosed, please find Jamestown Resources, L.L.C 's executed AFE and Well Data Requirements sheet.

Jamestown Resources, L.L.C declines insurance coverage from the Operator. Operator shall not charge Jamestown Resources, L.L.C for any insurance related premiums and/or costs in respect of this well and the contract area. Jamestown Resources, L.L.C is insured with industry appropriate levels of insurance, including without limitation, commercial general liability, umbrella, and operators extra expense (Control of Well) coverage for its working interest ownership. Certificates of Insurance have previously been provided to the Operator as evidence of coverage. Additional copies of such Certificates can be provided upon request if Operator cannot locate them in its records.

If you have any questions, or need additional information, please contact the undersigned via email at pfoster@bfenergy.us or by phone at (832) 320-1286.

Respectfully,

Peter W. Foster
Sr. Landman
**Black Falcon Energy, LLC**


Date Filed: 07/25/2022     Page: 487     Document: 21-3     Case: 22-1280

Craige N 1LH
May 26, 2021
Jamestown Resources, L.L.C.



May 26, 2021

<u>VIA FEDEX AND ELECTRONIC MAIL</u>

Jamestown Resources, L.L.C.
Attn: Ms. Randi Walsh
717 Texas Avenue, Suite 3100
Houston, TX 77002

Re:    Epsilon Energy's Proposed Craige N 1LH Well
       API: 37115228010000; Permit Number: 115-22801
       Baltzley South Unit
       Rush Township
       Susquehanna County, Pennsylvania

Ms. Walsh:

Epsilon Energy USA Inc. ("EPSN") hereby proposes to drill the Craige N 1LH Well (the "Well") with a surface hole location of Latitude 41.755847° and Longitude -76.028635° (NAD 83); and an approximate bottom hole location of Latitude 41.770464° and Longitude -76.036905°, in Rush Township, Susquehanna County, Pennsylvania. The Well will be drilled to an approximate measured depth of 12,123 feet, with an approximate vertical depth of 6,680 feet, to test the Marcellus Formation and all other formations that may be encountered in the wellbore. Estimated costs to drill the Well are $1,946,000.00 with a completed well costing approximately $5,398,707.00. We anticipate to commence the proposed operation on or about October 1, 2021.

This well will be a subsequent well drilled in the Baltzley South Unit, which covers 417.171123 acres.

The table below contains a summary of the working and net revenue interest ownership in the Well.

| Working Interest Owner | Craige N 1LH WI | Craige N 1LH NRI |
|---|---|---|
| Chesapeake Appalachia, L.L.C. | 50.898563% | 41.623478% |
| Equinor USA Onshore Properties Inc. | 25.456292% | 20.821989% |
| Epsilon Energy USA, Inc. | 21.145145% | 18.322130% |
| Jamestown Resources, L.L.C. | 2.500000% | 2.044433% |

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Date Filed: 07/25/2022    Page: 488    Document: 21-3    Case: 22-1280

Craige N 1LH
May 26, 2021
Jamestown Resources, L.L.C.

This well proposal is made pursuant to that certain Joint Operating Agreement dated October 18, 2010, covering the Baltzley South Unit, specifically Article VI.1 giving any party who desires to drill any well within the Contract Area the right to propose such, and Article XVI.A.2 governing horizontal well proposals including the estimated commencement date. Accordingly, please indicate your election in the space provided below, sign and return this letter to the undersigned within thirty (30) days from receipt. Should you elect to participate in the proposed operation, please also execute and return the enclosed AFE. Failure to make a timely election shall be deemed an election not to participate.

At this time, the planned design summary is SW-5-50-2500. Please note this is subject to change.

Your prompt attention and response to this proposal is appreciated. Should you have any questions, please contact the undersigned at (281) 670-0002 or email at Rachel.Collins@epsilonenergyltd.com.

Sincerely,
Epsilon Energy USA, Inc.

*Rachel Collins*

Rachel Collins
Sr. Land Administrator

Enclosures: AFE, Well Plan, Geological Prognosis, Survey Plat, and Unit Plat

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive, Suite 1610, Houston, TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1057

Craige N 1LH
May 26, 2021
Jamestown Resources. L.L.C.

_____ **Jamestown Resources, L.L.C.** hereby elects to participate with the full extent of its interest in the drilling of the Craige N 1LH Well pursuant to the Baltzley South JOA.

___X___ **Jamestown Resources, L.L.C.** hereby elects not to participate in the drilling of the Craige N 1LH Well and elects the Non-Consent provision pursuant to the Baltzley South JOA.

By: _____

Name: Michael Fiuzat

Title: Manager

Date: 6/24/2021

*Epsilon Energy USA, Inc.*
*16945 Northchase Drive. Suite 1610, Houston. TX 77060*
*Phone: 281.670.0002; Fax: 281.668.0985*

Appx1058

Date Filed: 07/25/2022     Page: 491     Document: 21-3     Case: 22-1280


**EPSILON**
Energy USA, Inc.

| | | |
|---|---|---|
| WELL NAME: | CRAIGE N 1LH | |
| OPERATOR: | EPSILON ENERGY USA, INC | |
| PROJECT: | AUBURN | |
| LOCATION (TRACT): | CRAIGE | |
| SURFACE OWNER: | HAROLD C AND GLORIA CRAIGE | |
| API (PERMIT #): | 37-115-22081-0000 (115-22081) | |
| COUNTY, STATE: | SUSQUEHANNA, PENNSYLVANIA | |
| COMMENTS: | D&C HZ LOWER MARCELLUS WELL | |

AFE # : D2110140

DATE: 05/26/21

PROPOSED TMD: 12,123
PROPOSED TVD: 6,680
PROPOSED CLAT: 5,080

| SUMMARY OF ESTIMATED COSTS | (1) TANGIBLES | (2) INTANGIBLES | (3) TOTAL COSTS |
|---|---|---|---|
| A.  DRILLING COST | $ 162,000 | $ 1,784,000 | $ 1,946,000 |
| B.  COMPLETION COST | $ 776,000 | $ 2,676,707 | $ 3,452,707 |
| C.  PLANT & FACILITY COST | $ - | $ - | $ - |
| D.  WORKOVER COST | $ - | $ - | $ - |
| TOTALS: | $ 938,000 | $ 4,460,707 | $ 5,398,707 |

WELL/PROJECT ID # : _____

EXPLORATORY ☐       DEVELOPMENT ☑
WORKOVER ☐       RECOMPLETION ☐

| WORKING INTEREST OWNER: | | | PERCENT: | COST SHARE: |
|---|---|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C. | | | 50.898563% | $ 2,747,864 |
| EQUINOR USA ONSHORE PROPERTIES INC. | | | 25.456292% | $ 1,374,311 |
| EPSILON ENERGY USA, INC. | | | 21.145145% | $ 1,141,564 |
| JAMESTOWN RESOURCES, L.L.C. | | | 2.500000% | $ 134,968 |
| | | | 100.000000% | $ 5,398,707 |

**OPERATOR'S APPROVAL**

| PREPARED BY: | Henry N Clarke | OPERATIONS | DATE: 5/26/21 |
|---|---|---|---|
| APPROVED BY: | Rachel Collins | LAND/LEGAL | DATE: 5/26/21 |
| APPROVED BY: | Shannon E Lemke | GEOLOGY | DATE: 5/26/21 |
| APPROVED BY: | B Lou Bond | ACCOUNTING | DATE: 5-26-21 |

**NON-OPERATOR'S APPROVAL**

| COMPANY NAME: | JRLLL | DATE: 6.24.2021 |
|---|---|---|
| APPROVED BY: | M. Fiuzat  X m./Y-t | |
| TITLE: | Manager | |

The costs on this AFE are estimates only.  In executing this AFE, the participant agrees to pay its proportionate share of all actual costs incurred.  Participant shall be covered by and billed proportionately for Operator's well control and general liability insurance unless participant provides Operator a certificate evidencing its own insurance in amounts acceptable to the Operator by the date of spud.



Applicant/Well Operator Name: Epsilon Operating LLC
DEP #: 328036
Well Name: Craige
Well Number: N1LH

Azimuths to Grid North
True North: -1.14°
Magnetic North: -13.24°

Magnetic Field
Strength: 52260.6nT
Dip Angle: 67.27°
Date: 6/22/2020
Model: HDGM

PROJECT DETAILS: Susquehanna County, PA

Geodetic System: US State Plane 1983
Datum: North American Datum 1983
Ellipsoid: GRS 1980
Zone: Pennsylvania Northern Zone
Datum: GE 1533' + KB 20' @ 1553.00usft (Prelim)

DESIGN TARGET DETAILS

| Name | TVD | +N/-S | +E/-W | Northing | Easting | Latitude | Longitude |
|---|---|---|---|---|---|---|---|
| SHL (Craige N 1LH) | 0.00 | 0.00 | 0.00 | 583691.91 | 2438141.93 | 41° 45' 21.050 N | 76° 1' 43.087 W |
| PBHL (Craige N 1LH) | 6630.00 | 5280.53 | -2361.33 | 588972.44 | 2435780.60 | 41° 46' 13.672 N | 76° 2' 12.858 W |
| LP (Craige N 1LH) | 6680.00 | 548.45 | -517.53 | 584240.36 | 2437624.40 | 41° 45' 26.569 N | 76° 1' 49.770 W |

# Epsilon Energy

## Preliminary Geological Prognosis

| | |
|---|---|
| API Number: | 37115228010000 |
| Permit Number: | 115-22801 |
| Well Name: | Craige N 1LH |
| Well Type: | Horizontal, development |
| Well Target: | Lower Marcellus |
| State: | Pennsylvania |
| County: | Susquehanna |
| Township: | Rush |
| Projection: | NAD83/Pennsylvania South |
| Surface Location: | Craige Pad |
| | Lat/Long:  41.755847 / -76.028635 |
| Landing Point: | Baltzley South Unit |
| | Lat/Long:  41.75738 / -76.030491 |
| Bottom Hole: | Baltzley South Unit |
| | Lat/Long:  41.770464 / -76.036905 |
| Surface Elevation: | 1,533' |
| KB (est): | 1,553' |
| Total Depth (est): | 12,123' |

Formations:

| Formation | TVD | Subsea Depth | Notes |
|---|---|---|---|
| Tully LS | 4,593 | -3,040 | TVD @ pentetration point |
| Hamilton SH | 4,714 | -3,161 | TVD @ pentetration point |
| Marcellus | 6,680 | -5,127 | TVD @ pentetration point |
| Target | 6,680 | -5,113 | TVD @ pentetration point |
| Onondaga Limestone | 6,999 | -5,446 | |

| | |
|---|---|
| Well Azimuth: | 339° |
| Lateral Length: | 5,080' |

**Contacts:**

| | | Office | Mobile | Email |
|---|---|---|---|---|
| Epsilon Energy Main Office | | 281-670-0002 | | |
| Rachel Collins | Land | 281-453-3392 | 832-257-9251 | rachel.collins@epsilonenergyltd.com |
| Shannon Lemke | Geology | 281-453-3386 | 713-204-6768 | shannon.lemke@epsilonenergyltd.com |
| Brian Ramey | Operations | 281-453-3390 | 432-528-0076 | bpramey77@gmail.com |
| Paul Atwood | Marketing | 281-453-3387 | 803-730-3778 | paul.atwood@epsilonenergyltd.com |
| Auria Flores | JIB / AP | 281-453-3393 | | auria.flores@epsilonenergyltd.com |
| Henry Clanton | Corporate | 281-453-3389 | 432-770-3642 | henry.clanton@epsilonenergyltd.com |

Date Filed: 07/25/2022   Page: 494   Document: 21-3   Case: 22-1280



8000-PM-OOGM0002 Rev. 6/2014

pennsylvania
DEPARTMENT OF ENVIRONMENTAL PROTECTION

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
OFFICE OF OIL AND GAS MANAGEMENT

# WELL LOCATION PLAT

PAGE 1 Surface Location

| DEP USE ONLY | | |
|---|---|---|
| | Auth ID#: | |
| | Permit #: | G: |
| | Project #: | C: |

Denotes location of top of well on topo map.

Surface hole is located on topo map 13052 feet south of latitude 41 ° 47 ' 30 "

Surface hole is located on topo map 7813 feet west of longitude 76 ° 00 ' 00 "

| SURFACE HOLE COORDINATES NAD 83 |
|---|
| True Latitude: NORTH 41° 45' 21.05" |
| True Longitude: WEST 76° 01' 43.09" |
| NAD 83 N 41.755847° W 76.028635° |
| NAD 27 N 41.755772° W 76.028989° |
| N 583653.43 E 2469558.91 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°13'36"W | 722.91' |
| L2 | N68°23'20"W | 376.54' |

NOTES

1. WELL LOCATION POSITION ON A 7.5', 1:24,000 USGS TOPO QUAD WHEN THIS SHEET BORDER IS ADJUSTED TO SCALE AND OVERLAYED AND ORIENTED TO THE RESPECTIVE SECTION GRID.

2. PLAN INFORMATION SHOWN ON THIS PLAT IS BASED ON COUNTY TAX PARCELS, DEED PLOTS, AND BASE DATA FROM PASDA AND USGS. SURVEYED LOCATIONS WERE SOLVED USING DUAL FREQUENCY GPS (L1/L2) THAT WAS POST-PROCESSED WITH THE NGS OPUS SERVICE.

3. THIS PLAT IS FOR WELL LOCATION PURPOSES ONLY. IT IS NOT A BOUNDARY RETRACEMENT SURVEY. TIES TO PINS OR PIPES FOUND IS PROVIDED FOR GAS WELL RE-LOCATION PURPOSES ONLY.

4. BASE STATION CONTROL DATA IS AVAILABLE UPON REQUEST

COMMONWEALTH OF PENNSYLVANIA
REGISTERED PROFESSIONAL
TODD C. JACOBS
LAND SURVEYOR
NO. SU 075184

LEGEND

- Well
- Found corner Iron Pin or Pipe
- Water Supply

NOTE
No Wetlands Within 100' of Disturbance
No Wetlands Within 300' of Well Bore

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID #: 328036 | Well (Farm) Name: CRAIGE | Well #: N1LH | Serial #: |
|---|---|---|---|---|
| Address: 16945 NORTHCHASE DR, SUITE 1610, HOUSTON, TX 77060 | | County: SUSQUEHANNA | Municipality: RUSH | Well Type: NATURAL GAS |
| 911 address of well site: 1016 COUNTY HOME ROAD, MONTROSE, PA 18801 | | USGS 7½' Quadrangle Map Name: LAWTON | Map Section: 9 | Surface Elevation: 1533 ft. |

| Surveyor or Engineer: TODD C. JACOBS, P.L.S. | Phone #: 570-278-3100 | Dwg #: NMPY 26 | Date: 09/16/2020 | Scale: 1" = 1,000' | Tract Acreage: 380 ± |
|---|---|---|---|---|---|

| Lat. & Long Metadata Method: GPSOF(L1,L2)RTK | Accuracy: 0.033' ft. | Datum: NAD 83 | Elevation Metadata Method: GPSOF (L1,L2)RTK | Accuracy: 0.069 ft. | Datum: NAVD 88 | Survey Date: 07/02/2010 |
|---|---|---|---|---|---|---|

PLOT DATE/TIME: 9/16/2020 9:48:23AM

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

## PAGE 2 Notifications

DEP Statewide toll—free phone number for reporting cases of water contamination which may be associated with development of oil and gas resources is **1-866-255-5158**.

| Applicant/Well Operator Name: EPSILON OPERATING LLC | DEP ID# 328036 | Well (Farm) Name CRAIGE | Well # N1LH | Serial # |
|---|---|---|---|---|
| Surface Landowner/Lessor: HAROLD C. AND GLORIA CRAIGE | | Angle & Course of Deviation (Drilling) N43°20'22"W 754.01' N21°17'17"W 5078.67' | Anticipated True Vertical Depth Feet (TVD): 6630 | Anticipated Total Measured Depth Feet (TMD): 12122.93 |
| Target Formation(s): MARCELLUS | | Deepest Formation to be penetrated: MARCELLUS | Number of Laterals: 1 | Total footage to be drilled all laterals: 12122.93 |

| Surface Owner/Water Purveyor w/Water Supply within 1000'/3000' | | Latitude-Longitude of Water Supply | |
|---|---|---|---|
| ① KEVIN C AND MELANIE A PIERSON | 177-1-33.01 | A N41°45'48.15" W76°01'49.26" | B N41°45'47.86" W76°01'48.22" |
| ② JOSEPH AND DONNAGRILLO | 177-1-32 | N41°45'44.14" W76°01'52.37" | |
| ③ RICHARD F DOLAN | 177-1-30.01 | N41°45'38.92" W76°01'54.84" | |
| ④ STEPHEN JAMES MOLNAR | 176-1-14 | A N41°45'38.40" W76°02'07.48" | B N41°45'38.23" W76°02'07.53" |
| ⑤ STEPHEN J MOLNAR | 177-1-30 | A N41°45'37.02" W76°01'59.72" | B N41°45'35.27" W76°02'02.65" |
| ⑥ ANGELA VERY | 177-1-29 | A N41°45'34.87" W76°01'55.70" C N41°45'33.84" W76°01'56.11" | B N41°45'34.48" W76°01'55.22" |
| ⑦ ALLIANCE TO PROTECT LIFE | 176-1-47 | N41°45'29.17" W76°02'10.17" | |
| ⑧ ALLIANCE TO PROTECT LIFE | 177-1-43 | N41°45'18.88" W76°02'01.21" | |
| ⑨ HAROLD C AND GLORIA CRAIGE | 177-1-28.01 | A N41°45'14.41" W76°02'04.56" | B N41°45'14.78" W76°02'03.55" |
| ⑩ ELIZABETH SPICKERMAN | 176-1-23 | N41°45'04.68" W76°02'09.75" | |
| ⑪ ROBERT N SHAFFER | 176-1-23.01 | N41°44'56.36" W76°02'02.67" | |
| ⑫ RAYMOND AND CHRISTINE K POULSEN | 177-1-26 | A N41°44'56.14" W76°01'59.89" C N41°44'57.94" W76°01'54.90" | B N41°45'01.21" W76°02'00.99" D N41°44'57.58" W76°01'53.49" |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Municipality where the well will be drilled, adjacent to the well, or within 3000 feet | Municipality where the well will be drilled, adjacent to the well, or within 3000 feet |
|---|---|
| RUSH TOWNSHIP, SUSQUEHANNA COUNTY (Well Located in) | |
| AUBURN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| TUSCARORA TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| STEVENS TOWNSHIP, BRADFORD COUNTY (Adjacent) | Coal related parties |
| PIKE TOWNSHIP, BRADFORD COUNTY (Adjacent) | |
| MIDDLETOWN TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| FOREST LAKE TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| JESSUP TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |
| DIMOCK TOWNSHIP, SUSQUEHANNA COUNTY (Adjacent) | |

PLOT DATE/TIME: 9/14/2020 9:48:50AM

-2-

Date Filed: 07/25/2022   Page: 496   Document: 21-3   Case: 22-1280

Appx1064

8000-PM-OOGM0002 Rev. 6/2014

# WELL LOCATION PLAT

PAGE 3 Plan View of Deviated Well Bore

If well has a lateral other than vertical show the bottom hole location on the plat drawing as ⊗ and include the Coordinates in the provided section at the bottom of the drawing area. The top hole and bottom hole locations are to be connected by a bolded line this is to depict the proposed courses of the actual wellbore to be drilled.

| Applicant/Well Operator Name: | DEP ID# | Well (Farm) Name | Well # |
|---|---|---|---|
| EPSILON OPERATING LLC | 328036 | CRAIGE | N1LH |

| | |
|---|---|
| **SURFACE HOLE COORDINATES** NAD 83 | True Latitude: NORTH 41° 45' 21.05" |
| | True Longitude: WEST 76° 01' 43.09" |
| NAD 83 | N 41.755847 W 76.028635 |
| NAD 27 | N 41.755772 W 76.028989 |
| | N 583653.43 E 2469558.91 |
| **KOP COORDINATES** NAD 83 | True Latitude: NORTH 41° 45' 21.03" |
| | True Longitude: WEST 76° 01' 47.06" |
| NAD 83 | N 41.755843 W 76.029738 |
| NAD 27 | N 41.755767 W 76.030091 |
| | N 583645.73 E 2469258.11 |
| **LANDING POINT COORDINATES** NAD 83 | True Latitude: NORTH 41° 45' 26.57" |
| | True Longitude: WEST 76° 01' 49.77" |
| NAD 83 | N 41.757380 W 76.030491 |
| NAD 27 | N 41.757305 W 76.030845 |
| | N 584201.82 E 2469041.42 |
| **BOTTOM HOLE COORDINATES** NAD 83 | True Latitude: NORTH 41° 46' 13.67" |
| | True Longitude: WEST 76° 02' 12.86" |
| NAD 83 | N 41.770464 W 76.036905 |
| NAD 27 | N 41.770389 W 76.037258 |
| | N 588933.91 E 2467197.60 |

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | N82°13'36"W | 722.91' |
| L2 | N68°23'20"W | 376.54' |
| L3 | N43°20'22"W | 754.01' |

PLOT DATE/TIME: 9/10/2020 1:22:39PM



Case: 22-1280    Document: 21-3    Page: 498    Date Filed: 07/25/2022

Date Filed: 07/25/2022      Page: 499      Document: 21-3      Case: 22-1280

GEOLOGY & ENGINEERING DEPARTMENT
WELL DATA REQUIREMENTS

# LARCHMONT RESOURCES, L.L.C.;

# JAMESTOWN RESOURCES, L.L.C.;

# PELICAN ENERGY, L.L.C.

717 Texas Avenue, Suite 3100
Houston, TX 77002

**I.     SPECIFIC INFORMATION REQUESTED PRIOR TO SPUD:**

Name, address and phone numbers of landman, geologist and engineer who will service the well, and one (1) copy of each: final AFE, Survey Plat, Regulatory Permit, Geological Prognosis, Drilling Prognosis, Anticipated Completion Prognosis, and Directional Plan. E-mail to: engineering@bfenergy.us

**II.     E-MAIL DAILY REQUIREMENT - DRILLING, COMPLETION, PRODUCTION REPORTS TO:**

Engineering@bfenergy.us

Included with daily reporting, drilling data should contain but is not limited to  Well name  and Number, UWI number, rig contractor and rig number, daily cost, daily footage, mud weight and viscosity details, casing and cement details (casing size, weight and grade, amount of cement and slurry, grade, centralizers and cement baskets if used),rig release date, perf interval depths and formations, frac plug depths, first sales date and pipeline, objective of workover and recompletion work if applicable and return to production notification following workover and recompletion work. This data shall also include copies of full company and/or third party (vendor) frac reports, completion and stimulation reports.

**III.     NOTICES:**

Provide 24 hour advance notice of intention to SPUD, LOG, CORE, begin FRAC OPERATIONS or COMPLETION TESTING, FLOW-BACK, WELL TEST OR FORMATION TESTING via e-mail to:

Engineering@bfenergy.us

Provide all elections for COMPLETION, SIDETRACK, or ABANDON via e-mail to: anorris@bfenergy.us and proposals@bfenergy.us

**IV.     LOGS AND DATA TO BE PROVIDED IN DIGITAL FORMAT ASAP:**

Mail to: Black Falcon Energy, 717 Texas Avenue, Suite 3100, Houston, TX 77002

E-mail to: geology@bfenergy.us   LAS and Tiff (raster) files with all open hole and/or cased hole log data.

| | | | |
|---|---|---|---|
| 1. | All open hole and cased hole log………………… | Final Prints | 1 |
| - | Includes Dipmeter, FMS, etc. | | |
| 2. | Mud Logs………………………………………… | Final Prints | 1 |
| 3. | Oil, gas and water analysis…………………….… | Final Print | 1 |
| 4. | Directional Survey……………………………….. | Final Print | 1 |
| 5. | Bottom hole pressure surveys and reports... | Final Print | 1 |
| 6. | Geological and Paleontological Reports…………… | Copies | 1 |

GEOLOGY & ENGINEERING DEPARTMENT
WELL DATA REQUIREMENTS

V.   **PRODUCTION DATA:**

E-Mail daily production to engineering@bfenergy.us no later than 45 days after the last day of the production month.  Production data includes all information, specifically, but not limited to, API, choke size, FTP/CP (PSI), flow rates (mcfg/d, bo/d, bw/d), method of production (free flow, rod pumping, etc.) downtime (hrs) and pressure base.

Also email Monthly Production to engineering@bfenergy.us no later than 45 days after the last day of the production month.  Monthly Production data should include Well, API, Month of Production, Oil Produced, Oil Sold, Gas Produced, Gas Sold, NGL Sold, Water Produced, Days on Production

VI.   **QUESTIONS:**

Land Contact: Jordan Collier; jcollier@bfenergy.us ; 832-320-1269

Geology/Engineering Contact: Angela Norris; anorris@bfenergy.us ; 832-320-1289

Case: 22-1280      Document: 21-3      Page: 500      Date Filed: 07/25/2022